# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| Samuel Randles, Kaitlan Ross, Patrick Wayne Tuter, and Conghua Yan, Plaintiffs, | ) ) ) |
| v. | ) Case No. 4-25CV1422-0 |
| Jimmy Blacklock, in his official capacity as Chief Justice of the Supreme Court of Texas and, to the extent permitted by law, in his individual capacity; | ) ) ) |
| David L. Evans, in his official and individual capacities as Presiding Judge of the 8th Administrative Judicial Region | ) ) |
| Susan Brown, in her official capacity as Presiding Judge of the Eleventh Administrative Judicial Region and, to the extent permitted by law, in her individual capacity; | ) ) ) |
| Ray Wheless, in his official capacity as Presiding Judge of the 1st Administrative Judicial Region and, to the extent permitted by law, in his individual capacity; | ) ) ) |
| Cynthia Favila Terry, in her official capacity as Presiding Judge of the 325th District Court of Tarrant County, Texas and, to the extent permitted by law, in her individual capacity; | ) ) ) ) |
| Lisa Grimaldi, in her official capacity as Court Coordinator of the 325th District Court of Tarrant County, Texas, and, to the extent permitted by law, in her individual capacity; | ) ) ) |
| Tom Wilder, in his official and individual capacities as District Clerk of Tarrant County, Texas; | ) ) |
| Tarrant County, Texas, a political subdivision; | ) |
| Kirk Moss, in his individual capacity; | ) |
| Crawford R. "Randy" Catterton, in his official capacity as a retired judge sitting by assignment; and | ) ) |
| William Wren "Bill" Harris, in his official capacity as a retired judge sitting by assignment, and, to the extent permitted by law, in his individual capacity; | ) ) ) |
| Sherill Youngberg Dean, in her official capacity as a retired judge sitting by assignment and, to the extent permitted by law, in her individual capacity; | ) ) ) |
| Kim Cooks, in her official capacity as a retired judge sitting by assignment and, to the extent permitted by law, in her individual capacity; | ) ) ) |
| and John Roach Jr., in his official capacity as Presiding Judge of 296th District Court of Collin County, Texas and to the extent permitted by law, in his individual capacity, Defendants, | ) ) ) ) |

**FIRST AMENDED COMPLAINT FOR PROSPECTIVE RELIEF AND DAMAGES UNDER 42 U.S.C. § 1983, AND JURY DEMAND ON ALL ISSUES SO TRIABLE**

Come Now, *pro se* Plaintiffs Samuel Randles ("Randles"), Kaitlan Ross ("Ross"), Patrick Wayne Tuter ("Tuter"), and Conghua Yan ("Yan") (collectively, "Plaintiffs"), file this First Amended Complaint for prospective relief and damages under *42 U.S.C. § 1983*, and jury demand on all issues so triable.

## Table of Contents

Table of Contents ..................................................................................... 3

I.     INTRODUCTION AND NATURE OF THE ACTION ...................................... 5

II.    JURISDICTION AND VENUE ............................................................... 7

III.   PARTIES ..................................................................................... 8

IV.    STATUTORY FRAMEWORK ................................................................. 11

V.     FACTUAL ALLEGATIONS ................................................................. 15

   A.   Plaintiffs Randles, Ross and Tuter's Cases ..................................... 15

      i.    Randles (Tarrant County) Assignment/Notice Defects and *Ex Parte*
      Contempt.......................................................................................... 15

      ii.   Ross (Matagorda County) Visiting-Judge Assignment/Contempt and
      Child-Removal Proceedings ................................................................ 18

      iii.  Tuter (Collin County) Spouse-Mediator Conflict and § 74.053 Objection
      Deprivation ..................................................................................... 19

   B.   Plaintiff Yan's Cases (Tarrant County) Rule 145 Contest Scheme,
   Composite "Notice," and Assignment Irregularities ................................ 21

      i.    Clerk-Initiated Rule 145 Contest and Preferential Processing ............. 21

      ii.   Composite "Notice," Coordinator Involvement, and Notice Defects........ 23

      iii.  Sworn-Evidence Predicate and County Pattern Context, Ending in the
      November 6 Denial............................................................................. 25

      iv.   Assignment-Authority Irregularities and Downstream Harm, Including the
      Integrated Mechanism ...................................................................... 28

   C.   Structural Conflicts of Interest ................................................... 35

   D.   Systemic Assignment Practices ................................................... 37

   E.   Denial of Access to Assignment Records ....................................... 40

   F.   Systematic Expansion of Subpar-Ethics Judicial Seats.................... 41

   G.   Ongoing Risk From Statewide Appointment and Assignment Safeguard
   Gaps .............................................................................................. 43

VI.    INJURY AND THREAT OF FUTURE HARM.......................................... 45

VII.    CLAIM FOR RELIEF ...................................................................49

   A.   COUNT I - 42 U.S.C. § 1983: Deprivation of Impartial Tribunal via Financial Conflict (Fourteenth Amendment Due Process) ...................................49

   B.   COUNT II - 42 U.S.C. § 1983: Deprivation of Lawfully Constituted Tribunal (Fourteenth Amendment Due Process)...................................51

   C.   COUNT III - 42 U.S.C. § 1983: Arbitrary Deprivation of Statutory Objection Right (Fourteenth Amendment Due Process)......................................56

   D.   COUNT IV - 28 U.S.C. §§ 2201-2202: Declaratory Judgment....................59

   E.   COUNT V - 42 U.S.C. § 1983: Individual-Capacity Damages Against Defendant Evans for Deprivation of Statutory Objection Right (Fourteenth Amendment Due Process) ...................................................................61

   F.   COUNT VI - 42 U.S.C. § 1983: Damages Against Defendants Grimaldi, Wilder, Moss, and Tarrant County for Deprivation of Rule 145 Protections and Arbitrary Clerk Practices (Fourteenth Amendment Due Process and Equal Protection)..............................................................................61

   G.   COUNT VII - 42 U.S.C. § 1983: Against Defendants Grimaldi, Wilder, Moss, and Tarrant County for Deprivation of Meaningful Access to Courts and Retaliation for Petitioning (First Amendment Right to Petition and Fourteenth Amendment Due Process) ...................................................................65

VIII.   REQUEST FOR DECLARATORY RELIEF ...............................................68

IX.    REQUEST FOR INJUNCTIVE RELIEF .....................................................73

X.    REQUEST FOR MONETARY RELIEF ......................................................77

XI.    ATTORNEYS' FEES AND COSTS.............................................................80

XII.    JURY DEMAND...................................................................................81

XIII.   REQUEST FOR JUDICIAL NOTICE........................................................81

XIV.   PRAYER.............................................................................................81

## I.    INTRODUCTION AND NATURE OF THE ACTION

1.    Plaintiffs bring this civil rights action under *42 U.S.C. § 1983* seeking prospective declaratory and injunctive relief against certain Defendants in their official capacities for completed administrative acts and omissions, and seeking monetary damages against certain Defendants in their individual capacities for *ultra vires* acts. Plaintiffs allege that in their state proceedings, visiting judges conducted judicial acts before Plaintiffs received timely written notice identifying the visiting judge and the basis for the assignment, and before Plaintiffs were given a fair opportunity to exercise the statutory one-time absolute objection entitlement under *Texas Government Code § 74.053*. Plaintiffs allege that this pre-deprivation assignment-and-notice process deprived them of a duly identified and impartial tribunal and caused concrete harms, including incarceration in contempt proceedings and loss of indigent fee protections.

2.    Plaintiffs challenge the administrative practices as applied regarding assignment authority, notice, and conflict screening and disclosure, i.e., the procedures used to constitute the tribunals that adjudicate liberty and property interests. This action challenges the procedures themselves rather than seeking review, reversal, vacatur, or modification of any substantive state-court ruling, judgment, or adjudication.

3.    Additionally, Plaintiff Yan alleges that the Tarrant County District Clerk maintains an arbitrary and capricious policy of unlawfully contesting indigent status. This policy constitutes a years-long pattern of retaliation and hostility in local family courts, misusing public funds and enlisting the aid of the Tarrant County Criminal District Attorney's Office to harass the Plaintiff and others in similar situations, resulting in the deprivation of the Plaintiff's right of access to the courts.

4.      This pleading addresses four different Texas family-court matters that arise from different factual backgrounds but present a common federal question: whether the Fourteenth Amendment provides a remedy when litigants suffer a shared structural injury from a defective pre-deprivation tribunal-constitution process.

5.      Section *1983* supplies a federal remedy for constitutional violations by state officials acting under color of state law regardless of whether state-law remedies exist. *Monroe v. Pape*, 365 U.S. 167 (1961). That the same conduct may also violate Texas law does not foreclose this federal action.

6.      Plaintiffs allege the constitutional offence  is the deprivation of federal liberty and property interest through pre-deprivation procedural due process violation and the denial of court access: Defendants (a) fail to provide timely written notice of visiting-judge assignments with adequate identifying information, (b) assign structurally conflicted judges who maintain fee-generating mediation/ADR businesses dependent on referrals from attorneys appearing before them, (c) permit judicial action by tribunals Plaintiffs allege are unlawfully constituted. Plaintiffs plead these defects as Counts I–III (impartial tribunal/financial conflict; lawfully constituted tribunal; meaningful notice and opportunity to exercise the *§ 74.053* objection right), (d) maintain an arbitrary Tarrant County District Clerk policy that unlawfully contests indigent status to retaliate against and harass Plaintiff Yan and similarly situated litigants.

7.      Plaintiffs further allege the injury occurs when an assigned judge performs a judicial act before those safeguards are provided, or when the District Clerk arbitrarily contests indigent status to obstruct appellate review; later proceedings cannot retroactively supply the missing pre-act notice, objection opportunity, or wrongfully withheld indigent status protections.

8.      Plaintiffs allege that, in Randles's, Ross's, Tuter's, and Yan's cases, retired judges exercised purported judicial authority without filed written assignment orders, without timely notice, and without adequate disclosure of conflicts.

9.      Plaintiffs allege these events reflect the same administrative failure across cases: Defendants Blacklock, Evans, Brown, and Wheless implemented no uniform mechanism to screen for, disclose, or prevent judicial service by individuals with disqualifying financial conflicts—whether arising from the judge's own business activities or a family member's financial stake—while Defendant Wilder, as District Clerk, maintained arbitrary policies to contest indigent status, collectively ensuring that financial conflicts and retaliatory barriers obstruct Plaintiffs' access to impartial tribunals.

10.      Plaintiffs allege the challenged practices are systemic and affect litigants in the Eighth, Eleventh, First Administrative Judicial Regions and Tarrant County District Clerk office, and Plaintiffs assert these claims on their own behalf.

11.      Plaintiffs seek prospective declaratory and injunctive relief directed to these administrative practices. Plaintiff Randles (Count V) and Plaintiff Yan (Counts VI–VII) also seek individual-capacity monetary damages for completed, non-adjudicative administrative acts and omissions (notice, docketing, fee-assessment, and service practices) that allegedly deprived them of procedural due process and equal protection.

## II.    JURISDICTION AND VENUE

12.      This Court has subject-matter jurisdiction under *28 U.S.C. § 1331* (federal question) and *28 U.S.C. § 1343(a)(3)-(4)* (civil rights). Declaratory relief is authorized by *28 U.S.C. § 2201*, and injunctive relief by *28 U.S.C. § 2202*.

13.    Plaintiffs need not exhaust state administrative or judicial remedies before bringing this *§1983* action. *Patsy v. Board of Regents*, 457 U.S. 496 (1982).

14.    Venue is proper under *28 U.S.C. § 1391(b)(1)*. A substantial part of the events giving rise to Plaintiff Randles' claims occurred in Tarrant County, Texas, within the Northern District of Texas, Fort Worth Division. Defendant Evans maintains his official offices in this District.

15.    The official-capacity claims for declaratory and injunctive relief proceed under *Ex parte Young*, 209 U.S. 123 (1908). Defendants are sued in their official capacities for prospective relief to end ongoing violations of federal law, and Plaintiffs seek no retroactive monetary damages against any Defendant in an official capacity. Separately, Plaintiff Randles asserts Count V against Defendant Evans, in his individual capacity, for monetary damages under *42 U.S.C. § 1983*.

### III.    PARTIES

16.    Plaintiff Samuel Randles ("Randles") is a Denton County resident and a party to Cause No. 322-619733-17 pending in the 322nd District Court, Tarrant County, in which visiting judges were appointed under Chapter 74. Randles has further hearings scheduled in the next twelve months.

17.    Plaintiff Kaitlan Ross ("Ross") is a Lampasas County resident and a party or party-in-interest to Cause Nos. 18-E-0625, 23-F-0331, and 25-F-0457 pending in the 23rd and 130th District Courts, Matagorda County, in at least one of which a retired judge purported to act "by assignment" under Texas Government Code Chapter 74. Ross has further hearings scheduled or reasonably anticipated in the next twelve months, including in Cause Nos. 25-F-0457 and 18-E-0625.

18.    Plaintiff Patrick Tuter ("Tuter") is a Collin County resident and a party to Cause No. 296-50864-2022, pending in the 296th District Court, Collin County.

Tuter reasonably anticipates further hearings, proceedings, or judicial actions within the next six months, including a Final Trial scheduled for February 16, 2026, at 9:00 a.m.

19.    Plaintiff Conghua Yan ("Yan") is a Tarrant County resident and a party in Cause No. 360-707596-21 pending in the 360th District Court of Tarrant County, Texas, which was previously pending as Cause No. 325-707596-21 in the 325th District Court. Additional hearings in this matter are scheduled and/or reasonably anticipated within the next twelve months.

20.    Defendant Jimmy Blacklock is the Chief Justice of the Supreme Court of Texas, sued in his official capacity as Chief Justice of the Supreme Court of Texas and, to the extent permitted by law, in his individual capacity. Under *Tex. Gov't Code §§ 74.021* and *74.023*, he has authority to issue administrative directives ensuring uniform compliance with Chapter 74's requirements.

21.    Defendant David L. Evans is the statutory Presiding Judge (regional administrative officer) of the Eighth Administrative Judicial Region, sued in his official and individual capacities as Presiding Judge of the Eighth Administrative Judicial Region. He is sued in his official capacity for prospective declaratory and injunctive relief, and in his individual capacity by Plaintiff Randles for monetary damages as alleged.

22.    Defendant Susan Brown is the Presiding Judge of the Eleventh Administrative Judicial Region of Texas, sued in her official capacity as Presiding Judge of the Eleventh Administrative Judicial Region and, to the extent permitted by law, in her individual capacity.

23.    Defendant Ray Wheless is the Presiding Judge of the First Administrative Judicial Region of Texas, sued in his official capacity as Presiding Judge of the First

Administrative Judicial Region and, to the extent permitted by law, in his individual capacity.

24.    Defendant Cynthia Terry is the elected presiding judge of the 325th District Court of Tarrant County, Texas, sued in her official capacity as Presiding Judge of the 325th District Court of Tarrant County, Texas and, to the extent permitted by law, in her individual capacity.

25.    Defendant Lisa Grimaldi is Court Coordinator for the 325th District Court of Tarrant County, Texas, sued in her official and individual capacities as Court Coordinator of the 325th District Court of Tarrant County, Texas.

26.    Defendant Thomas A. Wilder is the elected District Clerk of Tarrant County, Texas, sued in his official and individual capacities as District Clerk of Tarrant County, Texas.

27.    Defendant Tarrant County, Texas is a political subdivision of the State of Texas and operates the Tarrant County District Clerk's Office.

28.    Defendant Kirk Moss is a court reporter, sued in his individual capacity.

29.    Defendant John Roach Jr. is the presiding judge of the 296th District Court, Collin County, Texas, sued in his official capacity as Presiding Judge of the 296th District Court of Collin County, Texas and, to the extent permitted by law, in his individual capacity. Judge Roach presides over Plaintiff Tuter's case, Cause No. 296-50864-2022.

30.    Defendant Crawford R. "Randy" Catterton is a retired judge who has purported to sit by assignment under Chapter 74, sued in his official capacity as a retired judge sitting by assignment.

31.    Defendant William Wren "Bill" Harris is a retired judge who has purported to sit by assignment under Chapter 74, sued in his official capacity as a retired judge sitting by assignment and, to the extent permitted by law, in his individual capacity.

32.    Defendant Sherill Youngberg Dean is a retired/former judge who has purported to sit by assignment under Chapter 74, sued in her official capacity as a retired judge sitting by assignment and, to the extent permitted by law, in her individual capacity.

33.    Defendant Kim Cooks is a former judge who purported to sit by assignment under Chapter 74, sued in her official capacity as a retired judge sitting by assignment and, to the extent permitted by law, in her individual capacity.

34.    At all relevant times, all Defendants acted under color of state law within the meaning of *42 U.S.C. § 1983*.

## IV.    STATUTORY FRAMEWORK

35.    **Constitutional Vesting of Judicial Power; Administrative Judicial Regions Are Not Courts.** The Texas Constitution vests the judicial power of the State in enumerated courts, including the Supreme Court, courts of appeals, district courts, county courts, commissioners courts, and justice courts, and in such other courts as may be provided by law. *Tex. Const. art. V, § 1*. Each such court exercises jurisdiction conferred by the Constitution and implementing statutes. Administrative Judicial Regions are not courts and possess no original or appellate jurisdiction to hear or decide cases; they are statutory administrative units created by the Texas Court Administration Act to facilitate court administration and the temporary assignment of judges. See *Tex. Gov't Code ch. 74*; *Tex. R. Jud. Admin. 1*.

36.    **Constitutional Basis for Substitution.** *Article V, Section 7(e)* of the Texas Constitution requires the Legislature to "provide for the holding of district court

when the judge thereof is absent, or is from any cause disabled or disqualified from presiding." It authorizes temporary substitution, not the creation of concurrent, unelected presiding judges alongside an available elected judge.

37.     **Constitutional Allocation of Substitute-Judge Selection.** Article V, Section 11 of the Texas Constitution provides that when a district judge is disqualified, "the parties may, by consent, appoint a proper person to try said case; or upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law." *Tex. Const. art. V, § 11*. The Constitution thus permits private litigants to select a substitute decisionmaker, confirming that the selection or appointment function is administrative in character, not an exercise of adjudicative judicial power in the case. Chapter 74 assigns this same selection and assignment function to regional presiding judges as statutory administrative officers; the character of the function remains administrative.

38.     **Presiding Judge as Administrative Officer Under Chapter 74.** The Presiding Judge of an Administrative Judicial Region is a statutory administrative officer who performs Chapter 74 functions on behalf of the region. When issuing assignment orders, maintaining eligibility lists, and administering notice under § 74.053, the Presiding Judge acts in a nonadjudicative, administrative capacity, and those acts do not constitute adjudication in any party's underlying case. Stated differently, "Presiding Judge" is a statutory title for placeholder of Administrative Judicial Region; when performing Chapter 74 regional-presiding duties, including assignment and notice functions, the officer acts administratively, not as an adjudicatory tribunal exercising the judicial power of a court.

39.     **Statutory Notice-and-Objection Scheme (Tex. Gov't Code § 74.053).** *Tex. Gov't Code § 74.053* establishes an integrated notice-and-objection scheme: (a)(1) the assignment order must state whether the assigned judge is active, former, retired,

or senior; (a)(2) the presiding judge shall, if reasonable and practicable and if time permits, give notice of the assignment to each attorney representing a party; (b) each party is entitled to one objection in the case (subject to (d)); (c) an objection must be filed not later than the 7th day after actual notice of the assignment or before the date the first hearing or trial (including pretrial hearings) commences, whichever occurs earlier, with a good-cause extension available on written motion; (d) if the assigned judge was defeated in the last election for that office, either party's objection disqualifies the judge; (e) an active judge assigned under Chapter 74 is not subject to objection; and (f) notice/objection may be by email.

40.    **Importance of Notice.** This statutory objection right is meaningful only if litigants receive timely notice identifying the assigned individual and the statutory basis for the assignment; without such notice, parties cannot verify eligibility, investigate conflicts, or exercise their *§ 74.053* objection right at all. *§ 74.053(a)(2)* imposes a duty on the Presiding Judge of the Administrative Judicial Region to give notice if it is reasonable and practicable and if time permits. *§ 74.053 (f)* provides that email notice meets the requirement.

41.    **Conflict of Interest and Judicial Conduct Restrictions.** The restrictions on a retired or former judge's eligibility and conduct are further governed by:

    1) **Texas Constitutional Conflicts.** The Texas Constitution imposes disqualification requirements for judges with a personal or financial interest in a case. This includes the structural conflict created by a visiting judge who maintains an ongoing, paid mediation business within the same district courts where they are assigned to preside, raising questions about impartiality and the appearance of impropriety.

    2) **Texas Judicial Canons.** The Texas Code of Judicial Conduct, specifically Canon 4D(1), requires a judge to refrain from financial and

business dealings that tend to reflect adversely on their impartiality, interfere with the proper performance of judicial duties, or exploit their judicial position. Canon 4F further restricts a judge from acting as an arbitrator or mediator for compensation outside the judicial system, but this prohibition does not expressly apply to retired judges sitting by assignment under Chapter 74.

42.    **Rule 145 State-Created Entitlement and Sworn-Evidence Predicate (2016 Rewrite).** Texas Rule of Civil Procedure 145 creates a state-law entitlement to proceed without prepayment of court costs upon filing a compliant Statement of Inability to Afford Payment of Court Costs, unless and until a contest is properly filed and adjudicated. Rule 145 makes sworn evidence a mandatory predicate to any challenge: the clerk or the court may not challenge a Rule 145 statement "without sworn evidence," and a contest must be supported by sworn evidence showing the statement is materially false or no longer true due to changed financial circumstances. The Texas Supreme Court's 2016 rewrite (Misc. Docket No. 16-9122) adopted this sworn-evidence predicate to reduce harassment and frivolous contests that impose costs on indigent litigants and deter access to courts.

43.    **Property Interest in Indigent Status (State-Created Entitlement).** State law can create an entitlement (a protected property interest). Once the State grants that entitlement, like a judicial welfare benefit or continued status, it cannot terminate it without constitutionally adequate procedures, at minimum notice and a meaningful opportunity to be heard, and it cannot define the entitlement while denying the process due. *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

44.    **Pre-Deprivation Function of the Sworn-Evidence Predicate.** Because a Rule 145 "contest" immediately forces an indigent litigant to respond, appear, and risk loss of fee-waiver status, the sworn-evidence predicate functions as the rule's pre-deprivation safeguard. When the District Clerk's office (or clerk-directed proxies) initiates or processes contests without sworn evidentiary support, Rule 145's protection is nullified at the moment it is needed most, and the deprivation begins through an unauthorized, harassment-enabled process.

## V.    FACTUAL ALLEGATIONS

45.    In this Factual Allegations section, descriptive or evaluative terms (including adjectives and adverbs) are used only to describe the observed effects of the events alleged, or reasonable inferences drawn from those events, and not as standalone legal conclusions. To the extent a term could be read as a legal conclusion, Plaintiffs intend it as shorthand for the supporting factual allegations stated in this section and the specific elements pleaded in the Counts below.

46.    Plaintiffs allege the following facts for purposes of this Complaint, based on personal knowledge, review of court records, and, where specifically indicated, information and belief.

**A.    Plaintiffs Randles, Ross and Tuter's Cases**

   i. **Randles (Tarrant County) Assignment/Notice Defects and *Ex Parte* Contempt**

47.    Plaintiff Randles is a pro se litigant in Tarrant County district courts (231st and 322nd District Courts).

48.    Plaintiff Randles alleges that, in Cause No. 322-619733-17, on June 4, 2025, retired Senior Judge Crawford R. "Randy" Catterton, <u>without prior written notice to any party</u> and <u>without a hearing</u>, signed an *ex parte* "Order Holding Respondent in Direct Contempt and Ordering Commitment," thereby ordering Plaintiff Randles

committed to jail for criminal contempt. Randles was incarcerated from June 4 through June 6, 2025, pursuant to that contempt commitment.

49.    On June 6, 2025, Judge Catterton signed an *ex parte* "Order of Release from Jail." No written order of assignment for Judge Catterton was issued, filed, served, or docketed before the June 4 contempt commitment or the June 6 release, nor is there record evidence that the elected district judge was absent, disabled, recused, or disqualified.

50.    Source of Plaintiffs' Injuries (Independent of Any State Judgment). Plaintiffs allege that the source of Plaintiffs' pleaded constitutional injuries is Defendants' independent administrative conduct and systemic practices—namely, the failure to issue, file, docket, and serve timely written assignment orders; the nondisclosure and non-screening of disqualifying financial conflicts; the arbitrary deprivation of meaningful pre-hearing notice and opportunity to exercise the § 74.053 objection right; and (as to Plaintiff Yan) the clerk-facilitated processing of Rule 145 contests without sworn-evidence predicates or adequate notice. These administrative acts and omissions constitute the true and direct source of the pleaded deprivations of impartial and lawfully constituted tribunals, meaningful statutory safeguards, and (for Yan) indigent protections and court access. Plaintiffs do not complain of injuries caused by any state-court judgment itself; rather, the injuries arise from Defendants' pre-judgment and extra-judicial administrative practices that enabled flawed tribunal composition and notice failures before any merits adjudication occurred. See Truong v. Bank of Am., N.A., 717 F.3d 377, 382–83 (5th Cir. 2013) (key inquiry is source of injury: if from defendant's independent misconduct rather than the judgment itself, claim is not barred by Rooker-Feldman); accord English v. Crochet, No. 25-30074 (5th Cir. Oct. 8, 2025) (reaffirming Truong; doctrine inapplicable where injury stems from defendants' conduct contributing to state proceedings, not the judgment).

51.    Plaintiff Randles was incarcerated from June 4 through June 6, 2025, under this contempt commitment. Based on publicly available court dockets and the absence of any recusal or absence order, the elected presiding judge was present and available on both June 4 and June 6.

52.    Defendant Evans did not provide Plaintiff Randles or the opposing party timely written notice that Catterton was a retired Senior Judge sitting by assignment in Cause No. 322-619733-17. As a result, Randles did not receive timely written notice identifying Catterton's status as a retired Senior Judge before Catterton signed the contempt commitment, and Randles did not file a § 74.053 objection before that judicial act occurred.

53.    On September 11, 2025, the 322nd District Court's court coordinator notified parties by email that Senior Judge William Wren "Bill" Harris had been assigned to preside. This informal email notification:

　　1) Did not inform Plaintiff Randles of his statutory right to object under *§ 74.053* or the deadline for doing so;

　　2) Did not disclose previous *§ 74.053* assignment record;

　　3) Did not disclose that Defendant Harris simultaneously operates a for-profit mediation business dependent on referrals from attorneys appearing in Tarrant County district courts;

　　4) Left Plaintiff Randles uncertain whether (and when) he could exercise his one objection under *§ 74.053(b)* and *§ 74.053(c)*, because he had already been subjected to proceedings before Defendant Catterton without timely notice or a filed assignment order identifying Defendant Catterton's status and triggering the *§ 74.053(c)* clock.

54.     In Randles's proceedings, he alleges he received no notice before Catterton acted, and later received only an informal inadequate notice before Harris was assigned.

### ii. Ross (Matagorda County) Visiting-Judge Assignment/Contempt and Child-Removal Proceedings

55.     In Plaintiff Ross' Matagorda County proceedings in the 23rd District Court, retired/former Judge Sherill Youngberg Dean ("Dean") presided and exercised judicial authority as a visiting judge in at least one of the cases where Ross's interests are being adjudicated.

56.     Plaintiff Ross alleges that, following a trial that concluded on or about June 16, 2023, Retired Judge Defendant Dean signed and entered a final order on or about August 1, 2023, in Cause No. 18-E-0625, in the 23rd District Court. Approximately sixteen days later, on or about August 16, 2023, a new modification proceeding was filed. Defendant Dean subsequently signed multiple orders in the proceedings, including a May 2024 criminal-contempt order that resulted in Ross's incarceration. Plaintiff Ross was represented by her counsel Shane Kersh, but her counsel never informed her about the existence of the assignment order or her objection right.

57.     Ross alleges that she was not adequately informed, timely or at all, of her Chapter 74 objection right by the court or by her own counsel until on or about December 3, 2025, long after Dean had already exercised purported authority in her case. Ross received her first written assignment notice on or around December 3, 2025 in connection with a protective order case under Cause No. 25-F-0457 in the 130th District Court. Prior to that December 2025 assignment notice, Ross had not received timely written assignment orders and accompanying information sufficient to allow her to understand and timely exercise her objection rights to visiting-judge assignments under *§ 74.053* in her earlier proceedings. By the time Ross learned of

her *§ 74.053* objection right, Judge Dean had already presided over hearings, signed multiple orders, and exercised contempt authority resulting in Ross's loss of liberty.

58.    Ross further alleges that Dean also presided over a DFPS "aid to investigate" matter, Cause No. 23-F-0331, on or about August 28, 2023, in the 130th District Court without a timely written assignment order being issued, filed, served, or docketed before Dean acted. Ross has searched the court records for Cause No. 23-F-0331 and cannot locate any written assignment order for Judge Dean that was filed and docketed before August 28, 2023. In each instance, including proceedings that culminated in confinement, the constitutional injury is the same: the deprivation of timely notice and a meaningful opportunity to object to a visiting judge before that Defendant exercises judicial power. The DFPS proceedings in which Defendant Dean presided implicated Plaintiff Ross's fundamental liberty interest in family integrity, protected by the Due Process Clause. Additionally, DFPS investigations receive federal funding under Title IV-E of the Social Security Act, creating federal statutory issues.

### iii. Tuter (Collin County) Spouse-Mediator Conflict and § 74.053 Objection Deprivation

59.    In Plaintiff Tuter's Collin County proceedings (Cause No. 296-50864-2022), the case began on February 11, 2022 in the 468th District Court before Judge Lindsey Wynne. Judge Wynne referred the parties to mediator Laura Roach, and the parties conducted mediation on June 2, 2022, at One Cowboys Way, Suite 175, Frisco, Texas 75034, paying Laura Roach $1,400 each. The divorce proceedings adjudicated property rights, which constitute protected property interests under the Due Process Clause. Additionally, enforcement of any judgments would implicate the Full Faith and Credit Clause.

60.    On or about September 13, 2023, Plaintiff Tuter's case was assigned to Defendant John Roach Jr. (under Defendant Wheless's administrative oversight). The relationship between Defendant John Roach Jr. and mediator Laura Roach is a matter of public record. Plaintiff alleges Defendant Roach knew that his spouse had served as mediator in Plaintiff Tuter's case and received mediation fees from both parties, and Defendant Wheless knew that relationship before assigning the case to Defendant Roach.

61.    The assignment ignored the spouse-mediator conflict; no disclosure or self-recusal occurred, and no screening was completed, before Defendant Roach presided. In a hearing on September 17, 2024, Defendant Roach found Plaintiff Tuter in criminal contempt and ordered his incarceration, alleging that Plaintiff Tuter had violated a temporary order that never existed, based on knowledge derived from *ex parte* communications with his spouse, Laura Roach. Plaintiff Tuter was incarcerated pursuant to Defendant Roach's contempt order from September 17, 2024 through October 8, 2024.

62.    On December 10, 2024, Plaintiff Tuter filed a single motion to recuse both Defendant Roach and Defendant Wheless. On December 11, 2024, Defendant Roach declined to recuse, and Defendant Wheless issued an assignment order assigning Defendant Cooks, a former judge, to hear and rule on the motion; Plaintiff Tuter was notified of that assignment on December 12, 2024, at 9:29 a.m.

63.    On December 12, 2024, at approximately 3:21 p.m., Plaintiff Tuter filed his first written objection under *Tex. Gov't Code § 74.053* to strike Defendant Cooks as an assigned visiting judge. This was the first time he had filed an objection under § 74.053 in this case, and he had not previously been assigned a retired or former judge. Plaintiff Tuter did not receive notice of a hearing on this recusal motion; later that day, he learned that on December 12, 2024, Defendant Cooks proceeded with a

hearing and rendered an order denying the recusal motion as to both Defendant Roach and Defendant Wheless. The court did not serve the signed order on Plaintiff Tuter after rendition.

64.    Neither Defendant Cooks nor any other authority provided Plaintiff Tuter any written or oral explanation for proceeding despite the objection, even though Plaintiff Tuter understood Texas law to require an assigned visiting judge to immediately cease exercising authority upon receiving a timely objection under § 74.053(b).

65.    Plaintiff Tuter further alleges Defendant Cooks had no authority to deny his motion to recuse Defendant Wheless; as Plaintiff understands it, only the Chief Justice of the Supreme Court of Texas could rule on the recusal of the regional presiding judge.

66.    Despite the objection, Defendant Cooks proceeded, and Plaintiff Tuter believes he exhausted his one absolute objection right under § 74.053(b) and exhausted any right he had to object to Defendant Roach's assignment or to seek Defendant Roach's disqualification based on this spouse-mediator conflict, leaving him without that statutory protection if another retired or former judge is assigned to his case in the future. Defendant Roach continues to preside over Plaintiff Tuter's case despite the spouse-mediator conflict.

## B.    Plaintiff Yan's Cases (Tarrant County) Rule 145 Contest Scheme, Composite "Notice," and Assignment Irregularities

### i.Clerk-Initiated Rule 145 Contest and Preferential Processing

67.    Plaintiff Yan is a pro se litigant in Tarrant County district courts (Cause No. 360-707596-21, formerly 325-707596-21). On May 1, 2024, Yan filed a Rule 145 Statement of Inability to Afford Payment of Court Costs.

68.    Under Texas Rule of Civil Procedure 145, filing a Statement of Inability to Afford Payment of Court Costs is sufficient to proceed without prepayment, and the court must treat the filer as protected from costs unless and until a contest is properly filed and adjudicated through Rule 145's procedures.

69.    On October 28, 2024, Clerk LaToya Turner filed/initiated a Rule 145 contest (docket entry #602) against Plaintiff Yan.

1) Yan did not receive any e-filing notification or other record showing that Moss personally filed the contest through ordinary channels or served it in the ordinary adversarial manner.

2) Rather, the District Clerk's office itself initiated the contest.

3) The docket reflects Deputy Clerk LaToya Turner, acting for the District Clerk's Office, in-person accepted and filed Moss's Rule 145 contest on Moss's behalf (without assessing required contest fees), thereby causing the deprivation process to begin through clerk action even though the contest was captioned in Moss's name.

4) The contest reflected no filing fee on the docket despite OCA-published mandatory fees of $35 (*Tex. Loc. Gov't Code § 135.101*) and $45 (*Tex. Loc. Gov't Code § 135.151*).

5) This zero-fee processing was consistent with Tarrant County District Clerk's Office policy, practice, or custom of routinely waiving or failing to assess filing fees for Rule 145 contests filed by favored court reporters and other court-affiliated parties.

70.    The contest filed by Clerk LaToya Turner violated Tarrant County's Local Rules requiring a certificate of conference before filing contested motions.

1) Moss never attempted to confer with Yan before the contest was filed.

2) No certificate of conference was included.

3) This mandatory "no certificate of conference, no filing accepted" procedural requirement was systematically waived for court-affiliated contestants, such as Moss, while being strictly enforced against ordinary indigent litigants.

4) This demonstrates preferential treatment and joint state-private action to circumvent due process mandates when the Tarrant County financially benefits from the contest success.

### ii. Composite "Notice," Coordinator Involvement, and Notice Defects

71.    The "notice" Yan received bore what appeared to be the signature of Court Coordinator Lisa Grimaldi and consisted of a single page combining (a) only a partial fragment of Moss's contest text and (b) Grimaldi's handwritten hearing-date notation and signature on the same physical page.

1) The handwritten hearing date on the instrument Yan received was not clearly legible to Yan.

2) The single-page instrument Yan received contained no clerk file-stamp, no e-filing acceptance/confirmation, and no certificate of service showing ordinary filing and service of a complete motion through the District Clerk.

3) No judge-signed order setting the hearing was provided with the instrument Yan received.

72.    To Yan's knowledge, before the November 6, 2024 hearing, Yan was not served with a complete, clerk-filed Rule 145 contest pleading through ordinary channels required for court filings. Instead, Yan was served only the single-page instrument described above, not a complete filed contest pleading.

73.     The notice afforded only nine days before the November 6, 2024 hearing date, despite Rule 145's requirement of at least ten days' notice.

1) On November 5, 2024, Yan received a USPS mailer from the District Clerk regarding the contest.

2) On November 5, 2024, Yan separately emailed Coordinator Grimaldi requesting clarification of the hearing date and a legible written hearing setting, and requesting confirmation of the actual filed contest.

3) Other than the automated "received/opened" indication, Yan received no substantive response and no corrected hearing setting before the hearing.

74.     Defendant Grimaldi knew, at the time she transmitted the contest notice bearing an illegible handwritten hearing date, that the hearing date was not legible.

1) Grimaldi was informed the day before the hearing that Yan could not read the hearing date and needed clarification, yet no corrected notice issued.

2) Grimaldi knew Yan's non-appearance would likely be treated as a basis to deny the Rule 145 Statement and strip Yan's fee-waiver protection.

3) Despite these circumstances, Grimaldi took no corrective action and allowed the November 6, 2024 hearing to proceed in Yan's absence.

75.     On information and belief, Grimaldi's act of handwriting the hearing setting and signing on the same page as Moss's partial contest was a one-sided, extra-record accommodation to Moss that bypassed the ordinary filing-and-service process through the District Clerk and gave the appearance of court endorsement of Moss's contest.

1) Moss knowingly used this staff-endorsed, composite "notice" to trigger state power against Yan's Rule 145 entitlement.

2) Plaintiffs allege this was not mere private filing, but joint participation with court staff in generating the mechanism of deprivation.

### iii. Sworn-Evidence Predicate and County Pattern Context, Ending in the November 6 Denial

76.   On information and belief, for years, including at least since 2019, Tarrant County and the District Clerk's Office have adopted and implemented a pattern and practice of facilitating Rule 145 contests against indigent litigants.

1) This includes accepting contests with no sworn evidence from non-parties such as court reporters.

2) This includes docketing such contests without following mandatory third-party fee-assessment requirements.

3) This includes treating these contests as court-sponsored filings rather than adversarial pleadings subject to ordinary filing-fee and service requirements.

77.   The Office of Court Administration has published schedules entitled "District Court Civil Suits and Actions" and "District Court Civil Filing Fees."

1) Those schedules specify that the filing fee for a third-party action is $35 (local consolidated civil fee pursuant to Tex. Loc. Gov't Code § 135.101) and $45 (local consolidated civil fee pursuant to Tex. Loc. Gov't Code § 135.151).

2) These published schedules confirm that third-party filings in district court civil matters are subject to mandatory filing fees, including the consolidated civil fee.

3) Yan alleges that Tarrant County routinely fails to apply these mandatory fee requirements to Rule 145 contests initiated by court-affiliated non-parties.

78.    Rule 145 required that any "contest" be supported by sworn evidence showing the Statement was materially false or no longer true, and the 2016 rewrite was designed to prevent cost-triggering contests from being used as informal, extra-record mechanisms to strip indigent protections without constitutionally adequate procedures.

79.    In Plaintiff Yan's case, the District Clerk and/or court staff served the contest and hearing notice (including by USPS mailer and email).

1) The District Clerk and/or court staff did not require the contesting filer to prepare, certify, and file service in the ordinary adversarial manner contemplated by Texas Rules of Civil Procedure 21 and 21a.

2) This court-facilitated service materially reduced the costs and burdens for the contesting filer while increasing the burdens on the indigent litigant.

3) It conveyed the appearance of court endorsement of the contest.

80.    Grimaldi's handwriting-and-signature act was not the ministerial transmission of a clerk-filed document or a judge-signed hearing-setting order.

1) It was a unilateral, non-filed, non-adversarial facilitation that created apparent court authority for Moss's contest before constitutionally adequate filing and notice occurred.

81.    On information and belief, this type of practice is not isolated.

1) In Cause No. 325-584465-15 (Tarrant County, Texas), court reporter Kirk Moss likewise contested an indigent litigant's Rule 145 statement without paying contest filing fees.

2) Moss sought approximately $500,000 in reporter-related fees/costs and obtained a ruling favorable to the contest from the presiding judge.

3) This example illustrates a continuing pattern in which contests against indigent litigants are treated as risk-free and cost-free for the contestant, while the indigent litigant bears the downside risk of losing fee waivers and appellate access.

82.     In 2013, a class of indigent family-court litigants filed suit against Defendant Wilder and Tarrant County alleging that the District Clerk's Office charged fees in divorce cases despite properly filed Rule 145 indigency paperwork. The litigation resulted in *Campbell v. Wilder*, 487 S.W.3d 146 (Tex. 2016), in which the Texas Supreme Court held that assessing costs against an uncontested indigency filing was improper and criticized the challenged fee-charging practice. The case later settled in July 2023 for $150,000. Yan alleges that the 2016 opinion and the July 2023 settlement placed Wilder and Tarrant County on actual notice regarding improper fee-and-cost practices affecting Rule 145 indigent litigants, yet in late 2024 the District Clerk's Office again processed a Rule 145 contest against Yan through the contested contest-and-notice practices alleged here, resulting in denial of Yan's Rule 145 protection and assessment of costs.

83.     Due to the insufficient and unclear notice, Yan was not able to appear.

1) On November 6, 2024, retired Judge Crawford R. "Randy" Catterton conducted proceedings in Yan's absence.

2) Party-In-Interest Erica Patino appeared and made statements.

3) Judge Catterton signed an order denying Yan's Statement of Inability (docket entry #593, filed November 12, 2024).

4) The order denying Yan's Statement was entered based on the contest instrument without requiring the sworn-evidence predicate that Rule 145 presupposes before stripping fee-waiver protection.

5) Based on Yan's review of the November 6, 2024 hearing transcript, Yan did not receive copies of any written communications or subpoena between Patino and the court, Court Coordinator Grimaldi, or court reporter Moss relating to Patino's appearance at that hearing.

### iv. Assignment-Authority Irregularities and Downstream Harm, Including the Integrated Mechanism

84.    No written Chapter 74 assignment order authorizing Judge Catterton to act was filed, docketed, or served before November 6, 2024.

1) Yan received no timely written notice of Catterton's status or of Yan's right to object under Tex. Gov't Code § 74.053.

2) The District Clerk's and Court Coordinator's notice-and-docketing practices facilitated this defective process, depriving Yan of a meaningful opportunity to be heard on his Rule 145 entitlement.

3) The defective process caused economic injury, including court costs and fees incurred or required to be incurred to continue litigating and to challenge the denial.

4) On information and belief, Judge Cynthia Terry was not absent, disabled, recused, or disqualified on November 6, 2024.

5) Additionally, to the best of Yan's knowledge, Judge Terry was not absent, disabled, recused, or disqualified on November 7, 2024 or any date thereafter.

85.    On January 13, 2025, Coordinator Grimaldi requested a Chapter 74 assignment for Judge Catterton.

1) Grimaldi falsely claimed the assignment followed the appellate court's instruction, despite the fact that the order contains no such instruction on its face.

2) In fact, the Thirteenth Court of Appeals' January 6, 2025 order vacating the November 6 denial and abating for findings did not instructor require assignment of any particular visiting judge.

3) To the best of Yan's knowledge, Judge Terry was not absent, disabled, recused, or disqualified on January 13, 2025, and Grimaldi knew that the elected judge (Judge Terry) was available.

4) The resulting assignment order signed by Presiding Judge David Evans was dated January 9, 2025, four days before the request, creating an unexplained date discrepancy.

5) No prior request or assignment order produced to Yan explains how Judge Catterton purportedly acquired authority before the November 6 hearing.

86.    At all relevant times, Judge Cynthia Terry was the elected presiding judge in Yan's case. Based on Yan's review of the publicly available docket and record, Yan did not locate any written order, docket entry, or finding stating that Judge Terry was absent, disabled, recused, or disqualified at the times a visiting judge acted in his

case, nor did Yan locate written findings stating the factual basis for the sua sponte recusal/transfer actions reflected in the record.

87.    Yan further alleges that Court Coordinator Lisa Grimaldi acted under Judge Terry's supervision, yet Yan did not locate any written policy, instruction, or supervisory directive governing the assignment-request process or the manner of notice used for visiting-judge hearings in his case. Yan also did not locate a written conflict disclosure by Judge Catterton in the record.

88.    Following the appellate abatement/vacatur events, Yan alleges that a new assignment was requested rather than the elected judge presiding, without documentation in the public record establishing the elected judge's unavailability, and Yan was required to proceed without being able to confirm in advance from the public record that a filed-and-docketed assignment order existed or that he had been given advance written notice sufficient to timely exercise objection rights.

89.    On February 6, 2025, Yan received notice of the assignment/appointment (docket entry #636).

90.    On February 11, 2025, Yan filed his one peremptory objection under *§ 74.053(b)* (docket entry #638).

91.    Judge Catterton denied Yan's objection and referred the objection to Presiding Judge David Evans (docket entry #640).

92.    As of the date of Yan's declaration, Yan has not received a written order from Evans granting or denying Yan's objection.

93.    Yan alleges that the absence of a written disposition of his first objection— paired with the lack of timely, filed-and-served assignment documentation—renders the *§ 74.053(b)* objection right illusory in practice, because Yan cannot verify authority and cannot obtain a definitive ruling on the objection he timely filed.

94.    Yan submitted a Texas Rules of Judicial Administration Rule 12 request for written assignment orders, assignment requests, and communications among Judge Terry, Coordinator Grimaldi, and Presiding Judge Evans regarding assigned-judge activity.

> 1)  Yan has not received the requested assignment-related records or communications.

95.    Plaintiff Yan alleges that this fee-waiver-and-court-service practice operates as an incentive structure that encourages repeat contests against Rule 145 claimants and distorts the adversarial process.

> 1)  It predictably generates economic injury to indigent litigants (court costs, fees to respond, and costs to seek appellate relief).

> 2)  It can be leveraged to impair meaningful access to the trial and appellate courts by creating cost-based barriers and deadlines tied to payment status.

> 3)  Yan further alleges that, in his case, the resulting cost-and-record dispute functioned as a threshold barrier to merits review such that the appellate courts did not reach Yan's dispositive due-process challenge on the merits during those proceedings.

96.    In at least two additional instances separate from Moss's contest against Yan, Defendant Wilder instructed Tarrant County Criminal DA office to facilitate Rule 145 unsworn "proxy contests" in ways that imposed substantial cost pressure to harass  Plaintiff Yan's appeal, demonstrating an ongoing threat of repeated injury absent prospective relief.

97.    This clerk-directed use of unsworn "proxy contests" escalated after Yan pursued appellate review, reinforcing that the challenged Rule 145 handling was not

a one-off error but a repeatable, office-driven mechanism that predictably burdens petitioning and appellate access.

98.    Plaintiff Yan alleges that Defendant Wilder utilized the legal resources and personnel of the Tarrant County Criminal District Attorney's Office to research, draft, and/or file the Rule 145 contest against him. This misusing of public funded government legal staff to harass an indigent litigant, despite the clear lack of third-party statutory standing and the failure to meet the mandatory sworn-evidence prerequisite, demonstrates a coordinated joint state action between the District Clerk's Office and the District Attorney's Office. These resources were deployed for the purpose of collecting funds for Tarrant County by stripping indigent entitlement through a unlawful mechanism that Defendants knew, or should have known, violated Rule 145 and the Fourteenth Amendment.

99.    Plaintiff Yan alleges that Defendant Wilder deploy a policy, custom, and practice, as applied in Tarrant County, contests against indigent litigants operate as a one-way incentive structure.

      1) The contestant faces little or no filing-fee risk and may receive clerk/court-facilitated notice/service.

      2) Tarrant County benefits from costs assessed and collected after an indigent litigant's fee-waiver status is stripped.

      3) Presiding/assigned judges benefit when cost barriers reduce appellate review.

      4) The only predictable loser is the indigent litigant whose access to trial and appellate courts is impaired.

100.    On information and belief, in at least one appeal arising from these proceedings, the court of appeals dismissed Yan's appeal for want of prosecution

based on his failure to pay required costs (including filing, clerk, and/or reporter's record fees).

1) The appeal was dismissed on cost/prosecution grounds after the appellant could not pay required record-related costs (including clerk and/or reporter costs).

101.   On best knowledge of Yan, in at least one federal civil litigation (Cause No. 4:24-cv-00579, North District of Texas, Fort Worth Division) where Yan faces an opposing party in their individual capacity, Defendant Wilder has provided that party's counsel, the civil division of the Tarrant County Criminal District Attorney's Office, free copies of district court records as an in-kind benefit. In contrast, Yan is required to pay for the same materials, demonstrating a pattern of disparate treatment and fee-and-service favoritism.

102.   In 2025, Yan also received *sua sponte* recusal and transfer notices involving Judge Terry and Presiding Judge Evans (including docket entry #403 (May 7, 2025) and docket entry #678 (June 10, 2025)).

103.   Due to the transfer, Yan's access to prior filings and assignment records was prejudiced on the public docket (including docket entry #605 (June 2, 2025)).

1) Yan was unable to view complete older filings needed to verify assignment authority and to exercise statutory objection rights.

2) On or about June 2, 2025, Yan obtained a transfer certificate (docket entry #375). Yan observed missing items and later-added records posted out of chronological order, which impaired his ability to locate older filings and assignment-related documents.

    3) Yan alleges that Wilder has instructed his staffs to purge and reorganize the filed records from previous case docket to prejudice Yan's future discovery.

104.   After Evans appointed another visiting judge, Yan filed an additional written challenge to the assignment in July 2025 (docket entries #686 and #687).

    1) On July 2, 2025, Yan cited Chapter 74 and Rule 18b as alternative grounds because his February 11, 2025 § 74.053(b) peremptory objection remained unresolved.

    2) Yan later received an Order of Termination granting that challenge and terminating the assignment.

105.   On July 25, 2025, David Evans assigned retired Judge William Wren "Bill" Harris (docket entry #706).

    1) Publicly available information showed Harris maintains an active mediation business in Tarrant County courts that depends on referrals from appearing attorneys.

    2) Yan also understood that opposing counsel Cody Martin had previously been Harris's client, and is likely to be his future client.

    3) Yan also understood that Harris is longtime friends with Lori DeAngelis, a named defendant in Yan's separate federal RICO action (Case No. 4:23-cv-00758).

    4) Yan filed a verified objection/recusal request to Harris's assignment (docket entry #734, October 6, 2025) and sought discovery relevant to impartiality.

5) Evans ordered opposing party to file a sanction against Yan's verified claim against Harris. Evans hand-picked another visiting judge Wallace to hear the recusal. An assignment order appointing Judge Wallace is dated October 24, 2025 (docket entry #468), and Wallace conducted the sanctions hearing.

6) Subsequent proceedings led to sanctions against Yan (~$6,000 in attorney's fees, docket entry #752), underscoring the chilling effect and economic harm from exercising statutory recusal rights.

## C.    Structural Conflicts of Interest

106.   Both Catterton and Harris simultaneously maintain active, for-profit mediation and ADR businesses in Tarrant County. Harris actively solicits business over social media platforms and Catterton appears formally on local "approved mediator" lists and they market their judicial status and former-judge credentials to secure fee-generating mediation work from attorneys who appear, or are reasonably likely to appear, before them as visiting judges.

107.   In Plaintiff Tuter's case, an elected judge, Defendant John Roach was assigned to preside over his case after that judge's spouse Laura Roach served as the court-recommended mediator in the same matter and received mediation fees, without timely disclosure or screening. Plaintiff Tuter paid Laura Roach $1,400 for mediation services on June 2, 2022, and the opposing party paid an equal amount, totaling $2,800.

108.   Based on Texas community property law, Defendant John Roach has a community property interest in this joint marital income regardless of how it is reported for tax purposes. After Plaintiff Tuter filed the disqualification motion, Defendant John Roach declined to disqualify himself, the motion was referred to

Defendant Wheless (as Presiding Judge of the First Administrative Judicial Region) for assignment of the judge to hear the motion, and the assigned judge denied the motion on December 12, 2024.

109.   Defendant Dean similarly maintains an active, fee-generating mediation/ADR business (or comparable private, referral-based service business) while remaining eligible for judicial assignment and while being assigned to preside in cases involving attorneys who are reasonably likely to be referral sources or repeat clients. This overlap creates an ongoing pecuniary conflict of interest and an unconstitutional appearance of partiality of the same structural kind described above.

110.   This arrangement creates an ongoing pecuniary conflict of interest and an appearance of partiality: attorneys who act as referral sources or repeat mediation clients for Catterton, Harris, or Dean also appear before them in court, intertwining judicial assignments with private income streams.

111.   The Eighth Administrative Judicial Region's eligibility list maintained by Defendant Evans includes at least 10 retired or former judges who simultaneously:

1) Appear on both the Chapter 74 visiting judge eligibility list and on approved mediator lists for Tarrant County district courts;

2) Actively advertise and market fee-generating mediation services to attorneys practicing in those same courts where they sit by assignment;

3) Derive substantial income from mediation and ADR work involving attorneys who appear or are reasonably likely to appear before them as visiting judges; and

4) Remain eligible for assignment without any disclosure requirement or conflict-screening mechanism

112.   The Eleventh Administrative Judicial Region's eligibility list maintained by Defendant Brown likewise includes retired or former judges who simultaneously maintain fee-generating mediation/ADR practices and who are assigned to preside in matters involving attorneys who are reasonably likely to be referral sources or repeat mediation clients.

113.   Plaintiffs allege that a substantial number of retired or former judges on the eligibility lists used by Defendants Evans and Brown maintain these dual roles. Similar dual-role overlap exists across regions, yet no uniform conflict-screening, disclosure, or disqualification mechanism is required before such judges preside by assignment.

114.   This overlap between judicial assignments and private income streams is publicly visible (for example, by comparing local mediator lists and the Chapter 74 eligibility lists used for assignments) and is therefore known, or should be known, to Defendants Evans and Brown and to Defendant Blacklock through OCA.

115.   The Subpar Ethical Standard Applied to Stepped-down Judges. The 96-month eligibility threshold in Texas Government Code *§ 74.055* has produced a large pool of retired/former judges eligible for assignment while maintaining active, fee-generating mediation/ADR practices that would be restricted for active judges. Defendants Catterton, Harris, and Dean each served as judges, then maintained mediation/ADR businesses while remaining eligible for (and receiving) Chapter 74 assignments.

**D.     Systemic Assignment Practices**

116.   Defendant Evans has:

1) Placed on assignment lists, and assigned to cases, retired judges who maintain active mediation practices among the same attorneys from whom they derive income;

2) Routinely assigned such judges without providing written assignment orders or disclosing concurrent mediation practices;

3) Assigned visiting judges while elected judges remained available, creating unlawfully constituted tribunals.

117. Defendant Brown has implemented, maintained, authorized, and/or acquiesced in substantially similar Chapter 74 assignment and notice practices within the Eleventh Region. These practices include assigning retired or former judges to sit by assignment without ensuring that a written assignment order is issued, filed, and docketed before the visiting judge exercises authority, and without uniform procedures ensuring timely, informative notice sufficient to enable litigants to exercise the § 74.053 objection right before the first hearing.

118. Defendant Brown has assigned (or allowed) Defendant Dean to preside in other proceedings adjudicated Ross' interest without providing a written assignment order filed and docketed in time to allow Plaintiff Ross to exercise her statutory objection rights, and without any uniform mechanism to disclose, screen, or prevent structural financial conflicts associated with privately operated, fee-generating mediation/ADR businesses maintained by visiting judges.

119. The pattern of notice practices administered by Defendants Evans, Brown, and Wheless is arbitrary and inconsistent. In some cases, informal email notification is provided; in others no advance notice is provided at all. In some instances, written assignment orders are filed only after the visiting judge has already exercised judicial authority; in others no written order appears on the docket at all.

120.   This arbitrary and inconsistent practice has the following effects:

1) Litigants have no way to predict whether they will receive advance notice of a visiting judge assignment sufficient to exercise their *§ 74.053* objection right before the judge acts;

2) The timing, form, and content of any notice varies unpredictably from case to case and judge to judge, with no uniform standard applied;

3) Some litigants receive the procedural protections mandated by *§ 74.053* while others do not, based on no rational or discernible criteria;

4) Even when some form of notice is provided, such as an informal email from court personnel, it frequently lacks the adequate information required to exercise *§ 74.053* rights;

5) Without complete information, litigants cannot determine whether they have an absolute right to object under *§ 74.053(b),(c)* or only a limited right under *§ 74.053(d)*;

6) Whether a litigant can meaningfully exercise *§ 74.053* rights depends on arbitrary factors beyond their control, such as which court coordinator happens to send an notice, when that notice is sent relative to the first hearing, and whether the email contains sufficient information to trigger awareness of statutory rights.

121.   Plaintiffs allege that almost every visiting-judge assignment issued or approved by Defendant Evans grants the retired judge broad authority to hear "any other matters" or matters "in other cases" during the appointment period. Similarly, assignment orders issued or approved in the Eleventh Administrative Judicial Region routinely contain open-ended language and omit the statutory requirement

that the assignment is conditioned on the absence or disqualification of the elected district judge.

122. For example, representative assignment orders from the Eleventh Administrative Judicial Region typically state: "This assignment shall continue as may be necessary for the assigned Judge to dispose of any accumulated business and to complete trial of any case or cases begun during this assignment, ... or until terminated by the Presiding Judge."

123. By using open-ended assignments while elected judges remain available and without record evidence of the constitutional prerequisites, Defendants Evans and Brown engaged in an *ultra vires* delegation of concurrent judicial authority, permitting a retired or former judge to exercise recurring judicial power across multiple cases outside the limits contemplated by *Tex. Const. art. V, § 7(e)* and Chapter 74.

**E.    Denial of Access to Assignment Records**

124. To verify the existence and validity of written assignment orders authorizing visiting judges to preside, Plaintiffs submitted written requests for assignment records to: (a) the Office of Court Administration (OCA) under Chief Justice Blacklock, and (b) the regional presiding judges responsible for their counties, including Defendant Evans (Eighth Administrative Judicial Region) and Defendant Brown (Eleventh Administrative Judicial Region).

125. Plaintiff Randles submitted requests to (a) OCA (under Chief Justice Blacklock) and (b) Defendant Evans (the statutory regional presiding officer for the Eighth Administrative Judicial Region) seeking copies of any written assignment orders authorizing Senior Judge Catterton to exercise judicial authority in Cause No. 322-619733-17.

126.    Neither OCA nor Defendant Evans produced the requested assignment records or identified where a filed assignment order could be found; instead, the requests were denied, went unanswered, or Plaintiffs were told the records were not available as public records.

127.    OCA (under Chief Justice Blacklock) and the regional presiding judges responsible for Chapter 74 assignments in Plaintiffs' counties, including Defendants Evans and Brown, have taken the position that visiting-judge assignment orders/records are not publicly available or are not required to be produced on request, leaving litigants unable to confirm before a hearing whether a written assignment order existed and was docketed before the visiting judge acted.

128.    Plaintiff Yan likewise served a Rule 12 request seeking written assignment orders, assignment requests, and related communications among Judge Terry, Court Coordinator Grimaldi, and Presiding Judge Evans regarding assigned-judge activity concerning Randy Catterton. Yan has not received the requested assignment-related records or communications.

129.    This non-disclosure policy, as maintained by OCA under Chief Justice Blacklock and implemented by Defendants Evans and Brown in their regions, creates a "black-box" mechanism for the future exercise of judicial power by assignment and undermines the statutory notice-and-objection scheme. These notice and transparency failures are magnified by the scale and routine deployment of Chapter 74 assignments.

## F.    Systematic Expansion of Subpar-Ethics Judicial Seats

130.    The problems identified above are not static; in the family courts of Tarrant County and the Eighth Administrative Judicial Region, Plaintiffs allege that Chapter 74 assignment has become a routine operating feature of the docket, not an

occasional substitute used only when an elected judge is absent, disabled, recused, or disqualified.

131.   The 96-month eligibility threshold in Texas Government Code *§ 74.055* creates a structural pipeline: judges serve long enough to qualify, then retire into the Chapter 74 visiting-judge pool while remaining free to operate private mediation/ADR businesses that would have been prohibited or restricted during active service.

132.   Upon information and belief, the Eighth Administrative Judicial Region alone has approximately 56 elected district judges, yet approximately 44 retired or former judges are available for assignment under Chapter 74, a visiting-judge pool approaching four-fifths the size of the elected bench. Tarrant County's family courts reflect a similar but higher ratio: 6 elected district judges accompanied by 5 retired judges who possess equal authority but no term limits. Plaintiffs allege that this scale, combined with reduced ethical constraints and the absence of uniform conflict screening, disclosure, and timely written notice under *§ 74.053*, increases the probability that litigants will face an undisclosed, conflicted, or unlawfully constituted tribunal. As a corroborating example, on information and belief, the Third Administrative Judicial Region maintains approximately 51 retired/senior judges available for Chapter 74 assignment compared with approximately 66 elected district judges in that region, illustrating that the challenged assignment-and-notice practices recur across regions.

133.   This growth and reliance in the Eighth Administrative Judicial Region has occurred without corresponding expansion of ethical oversight, conflict-screening mechanisms, or transparency requirements. The result is that a large pool of unelected visiting judges may exercise full judicial power while litigants lack

reliable pre-hearing notice, public assignment records, and meaningful opportunity to object.

134.   Each additional eligible retired or former judge expands the substitution pool that Defendant Evans can deploy in the Eighth Administrative Judicial Region. Without enforceable prerequisites and uniform, filed-and-docketed assignment orders, Plaintiffs allege the system functions as a parallel adjudicatory bench that operates outside electoral accountability and outside the mandatory pre-deprivation safeguards Chapter 74 was designed to provide. This growth depends on statewide eligibility lists and OCA policy, addressed in the next subsection.

## G.    Ongoing Risk From Statewide Appointment and Assignment Safeguard Gaps

135.   In June 2023, it was publicly reported that three appointed judicial actors in Dallas County, Texas, Lorna Bedard, Tahira Merritt, and Ronald Hurdle, had been exercising judicial authority since 2022 despite not meeting the statutory residency requirement of *Tex. Gov't Code § 54A.003(a)(1)*, which requires an associate judge to "be a resident of . . . one of the counties the person will serve." Public reporting further stated that these appointed judicial actors presided over cases, issued binding orders, and exercised contempt authority for an extended period before the eligibility issue was exposed. Plaintiffs further allege that the eligibility issue became public through private litigation rather than through any publicly described internal auditing or verification mechanism.

136.   Plaintiffs allege that the publicly reported Dallas County episode is consistent with an absence of uniform, pre-appointment verification safeguards that would reliably prevent an ineligible judicial actor from exercising authority before the defect is discovered. Plaintiffs further allege that the same category of administrative

vulnerability, lack of transparent verification and pre-act safeguards, also exists in the Chapter 74 visiting-judge assignment context alleged in this Complaint.

137.   Following the June 2023 public reporting, Plaintiffs allege that Defendant Blacklock, acting through the Office of Court Administration, did not implement statewide corrective directives or verification protocols under *Tex. Gov't Code §§ 74.021* and *74.023* to prevent recurrence of comparable eligibility defects in judicial-actor selection and assignment systems. On information and belief, any response to the Dallas County episode was limited to addressing the specific individuals publicly identified, rather than adopting a statewide verification-and-notice protocol. Plaintiffs allege that the challenged events in Plaintiffs' cases occurred after June 2023 and reflect that the administrative conditions alleged here remained operative.

138.   Plaintiffs allege that the Texas Legislature enacted S.B. 664 in May 2025 (effective September 1, 2025), and that this later legislative action reflects that statewide safeguards for appointed judicial officers were a recognized subject of governmental attention after the Dallas County reporting. Plaintiffs allege that, regardless of the Legislature's later action, no timely statewide corrective protocol was implemented through OCA during the period relevant to Plaintiffs' injuries and threat of recurrence alleged in this Complaint.

139.   The Office of Court Administration (OCA), which reports directly to Defendant Blacklock, publishes and maintains an official eligibility list of senior and former judges eligible for assignment under Chapter 74 at txcourts.gov. Plaintiffs allege the list includes Defendants Catterton and Harris while they simultaneously operate for-profit mediation businesses, and Plaintiffs further allege that similar dual-role overlap appears publicly across the eligibility list and local court-approved mediator lists.

140.   Plaintiffs allege that, to their knowledge, neither the Texas Rules of Judicial Administration nor any administrative directive issued by Defendant Blacklock requires written assignment orders to be filed and docketed before a visiting judge exercises authority, notwithstanding the statutory notice-and-objection scheme in *§ 74.053*. Plaintiffs further allege that Defendant Blacklock has statutory authority under *§§ 74.021* and *74.023* to issue corrective administrative orders and has not issued a directive adopting a uniform filed-and-docketed assignment-order requirement.

141.   Plaintiffs allege that OCA publishes statewide eligibility lists used for Chapter 74 assignments; that regional presiding judges rely on those lists to make assignments; and that, unlike elected judges, retired and former judges serving by assignment are not subject to periodic electoral review. Plaintiffs further allege that the assignment process described in this Complaint is frequently not disclosed to litigants through a timely, filed-and-docketed written order that would permit meaningful exercise of *§ 74.053* rights before any judicial act occurs.

142.   Plaintiffs allege that senior and retired judges on the OCA eligibility list are permitted to maintain private mediation/arbitration/ADR practices while remaining eligible for judicial assignment, and that no uniform rule or policy requires pre-assignment disclosure of financial relationships with attorneys likely to appear in the assigned court. Plaintiffs further allege that, as a result, potential conflict information is not uniformly screened, disclosed, or monitored through a statewide process before a visiting judge begins exercising authority.

## VI.    INJURY AND THREAT OF FUTURE HARM

143.   As articulated in the Introduction above, Plaintiffs' injury is complete upon the deprivation of notice and opportunity to object, regardless of any ruling's

outcome. This stand-alone procedural due process injury exists independently of any particular adjudication.

144. **State-created entitlements as injury.** Plaintiffs allege the State has created mandatory, pre-deprivation entitlements that establish protected property interests: 1. The Objection Entitlement: The absolute right under *Tex. Gov't Code § 74.053(b)*, which is meaningful only if the State provides timely written notice and identifying information before a judicial act occurs. 2. The Judicial Welfare Entitlement: The status of an indigent litigant as a judicial welfare beneficiary under Rule 145, which grants a state-created right to proceed without prepayment of costs. This benefit cannot be stripped unless and until a contest is adjudicated through constitutionally adequate procedures, including the mandatory sworn-evidence predicate. Plaintiffs allege their injury is complete when Defendants' practices deprive them of these state-created entitlements, i.e., when the mandatory entitlement is stripped or rendered unusable, regardless of the later merits outcome.

145. Randles remains a party to active post-judgment proceedings in case 322-619733-17, including anticipated various proceedings. Randles reasonably anticipates further hearings within the next twelve months, and the same Chapter 74 assignment practices will apply. Randles has been *sua sponte* transferred once, he could be transferred to Judge Terry's court and to face same violation that Yan had faced.

146. Ross remains a party to ongoing state-court proceedings in case 25-F-0457 and 18-E-0625, and reasonably anticipates further hearings in the next twelve months. Absent prospective relief, the same Chapter 74 assignment and notice practices alleged herein are likely to recur in Ross's future proceedings.

147. Plaintiff Tuter likewise remains an active litigant with ongoing proceedings and reasonably anticipates further hearings in the next six months. The stakes are

concrete: all three Plaintiffs have already been confined under orders issued through the challenged assignment regime, Randles was jailed from June 4 through June 6, 2025, under orders signed by Defendant Catterton; Ross was jailed in May 2024, under orders signed by Defendant Dean; and Tuter was jailed in 2024 in proceedings that continued despite the alleged conflict and lack of meaningful pre-deprivation screening and notice.

148.    Yan remains a party to active proceedings in Cause No. 360-707596-21 (formerly 325-707596-21) in Tarrant County. Additional hearings in this matter are scheduled and/or reasonably anticipated within the next twelve months, and the same Chapter 74 assignment and notice practices are likely to recur absent prospective relief.

149.    Yan likewise alleges concrete harm: after he filed a verified *§ 74.053* objection in his case, an assigned judge later denied the objection and imposed approximately $6,000 in attorney's-fee sanctions, and Yan incurred and/or was required to incur court costs and fees following the denial of his Rule 145 Statement. This includes, at minimum: (1) court costs and filing fees assessed after the November 6, 2024 denial of his Rule 145 Statement in an approximate amount of at least $1,000; (2) appellate filing fees and/or cost deposits required to pursue appellate review in an approximate amount of at least $1,000 that Yan could not pay, resulting in dismissal of his appeal for want of prosecution; (3) reporter-related fees and costs sought by Defendant Moss in an amount to be determined at trial; (4) costs to obtain court records and assignment-related documentation necessary to verify judicial authority and exercise statutory objection rights; and (5) substantial time expenditure responding to the defective contest, seeking clarification of illegible notices, preparing appellate filings, and attempting to obtain assignment records.

150.   Yan further alleges continuing mental anguish and emotional distress arising from these events. But for the challenged acts and omissions, Yan would have retained his Rule 145 protection and would not have been assessed the challenged costs and fees or had his appeal dismissed for inability to pay.

151.   Plaintiffs remain subject to further hearings at which the same assignment-and-notice failures are likely to recur absent prospective relief. Plaintiffs have no practical ability to control which judge will preside at future hearings and no assurance that any visiting judge will be statutorily eligible, free from conflicts, or disclosed in a written order filed in time to exercise the § 74.053 objection right. Given the ongoing post-judgment proceedings in his case and the established Chapter 74 assignment practices of Defendants Evans and Brown (and, as to First-AJR matters, Defendant Wheless), Plaintiffs face a real and immediate-not conjectural or hypothetical-threat of repeated constitutional injury in future hearings.

152.   The denial of access to visiting judge assignment records independently injures Plaintiffs and exacerbates the constitutional violations alleged herein. Even if Plaintiffs had received timely notice of a visiting judge assignment, they would be unable to verify the assignment's validity because the underlying records are shielded from disclosure.

153.   A statutory objection right that cannot be exercised due to lack of notice is hollow; an objection right that cannot be informed by access to the very records that confer judicial authority is meaningless. Plaintiffs face ongoing injury from this lack of transparency.

154.   In future proceedings, Plaintiffs will be unable to determine in advance whether any visiting judge has been lawfully assigned, whether the elected judge was actually absent or disqualified, or whether the visiting judge satisfies statutory eligibility requirements. The black-box nature of the assignment process ensures that

Plaintiffs cannot protect their own constitutional rights, because the information necessary to do so is systematically withheld.

155.   This injury is traceable to specific official conduct: (1) Defendant Blacklock, through OCA, has determined that assignment records are not subject to public disclosure; (2) Defendants Evans and Brown (and, as applicable to their region, Defendant Wheless) have denied or failed to respond to Plaintiffs' requests for assignment records; and (3) Defendants Blacklock, Evans, Brown, and Wheless have not implemented policies requiring transparency in the assignment process.

156.   The injury is redressable by the prospective relief requested herein, which would require written assignment orders to be filed and docketed-and thus made part of the public court record-before any visiting judge exercises authority. The two-tier ethical standard further injures Plaintiffs on an ongoing basis.

157.   In any future proceeding, Plaintiffs face a substantial probability that a visiting judge operating under reduced ethical constraints-including the freedom to maintain mediation businesses with appearing attorneys-will be assigned to their cases. This probability approaches certainty given the numerical prevalence of such judges on the eligibility lists.

158.   Plaintiffs have no mechanism to ensure they receive adjudication by a judge subject to full ethical constraints, and Defendants Blacklock, Evans, Brown, and Wheless have implemented no conflict-screening or transparency mechanism to prevent assignment of ethically compromised visiting judges. Accordingly, Plaintiffs assert the following claims for prospective relief.

## VII.    CLAIM FOR RELIEF

## A.    COUNT I - 42 U.S.C. § 1983: Deprivation of Impartial Tribunal via Financial Conflict (Fourteenth Amendment Due Process)

159.   Plaintiffs incorporate by reference the allegations in Sections I-VI of this Complaint. The factual basis for this Count is particularly set forth in Section V.A (Plaintiffs' Cases), Section V.C (Structural Conflicts of Interest), Section V.D (Systemic Assignment Practices), Section V.E (Denial of Access to Assignment Records), Section V.F (Systematic Expansion of Subpar-Ethics Judicial Seats), Section V.G (Ongoing Risk From Statewide Appointment and Assignment Safeguard Gaps), and Section VI (Injury and Threat of Future Harm).

160.   The Due Process Clause requires a neutral tribunal free from the probability of bias. The disqualifying financial interest need not be a direct stake in the case's outcome; due process is violated by ongoing financial relationships creating structural incentives for bias, including undisclosed business relationships with appearing attorneys. *Tumey v. Ohio*, 273 U.S. 510 (1927); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986); *Gibson v. Berryhill*, 411 U.S. 564 (1973). When state courts exercise concurrent jurisdiction over federal constitutional claims, the Supremacy Clause requires these standards apply with full force. *Howlett v. Rose*, 496 U.S. 356 (1990).

161.   Defendants Catterton, Harris, and Dean maintain for-profit mediation businesses in the same counties where they preside as visiting judges, soliciting referrals from attorneys appearing before them. Defendant Roach's spouse received $1,400 in mediation fees from Plaintiff Tuter in the same case over which Defendant Roach presides, creating a community property interest in income from the litigation itself. Plaintiff Tuter further alleges Defendant Roach incarcerated him based on knowledge derived from *ex parte* communications with his spouse concerning the mediation. Similarly, Defendant Catterton incarcerated Plaintiff Randles in June 2025 without any publicly filed assignment order; and Defendant Dean incarcerated

Plaintiff Ross in May 2024 while maintaining her mediation/ADR practice. These are structural conflicts that operate before any particular dispute is decided, and before parties can meaningfully use Chapter 74's screening and objection safeguards. Plaintiffs need not prove actual bias; probability of bias is sufficient. *Caperton*, 556 U.S. at 872. Prospective relief requiring conflict screening and disclosure is the constitutionally required remedy.

162. Defendants Blacklock (through OCA), Evans, Brown, and Wheless administer and enforce the assignment regime that permits these conflicts described above: retired or former judges to maintain fee-generating mediation or ADR practices and to preside over matters involving attorneys who are current or recent sources of mediation referrals, without mandatory conflict screening or written, case-specific disclosure in the public record.

163. As applied to Plaintiffs, this regime resulted in the assignment of judges with disqualifying financial conflicts without meaningful opportunity for recusal, disqualification, or objection before any judicial act. Plaintiffs further allege that Chapter 74's screening/notice and *§ 74.053* objection safeguards operate as state-created entitlements; Defendants' failure to require disclosure and to provide workable, filed-and-docketed notice deprived Plaintiffs of those entitlements before any judicial act, which itself constitutes a concrete procedural injury.

164. Plaintiffs seek prospective declaratory and injunctive relief to require conflict screening and written disclosure as prerequisites to any exercise of judicial power by a visiting or senior judge in Plaintiffs' proceedings.

**B.    COUNT II - 42 U.S.C. § 1983: Deprivation of Lawfully Constituted Tribunal (Fourteenth Amendment Due Process)**

165. Plaintiffs incorporate by reference the allegations in Sections I-VI of this Complaint. The factual basis for this Count is particularly set forth in Section V.A

(Plaintiffs' Cases), Section V.C (Systemic Assignment Practices), and Section VI (Injury and Threat of Future Harm).

166.   The Fourteenth Amendment Due Process Clause guarantees litigants the right to have judicial power exercised only by a lawfully constituted tribunal. That guarantee is at its apex when the State uses contempt power to restrain physical liberty: the State may not jail a person through an adjudicator who lacks lawful authority under the State's own allocation of judicial power (including Article V, § 7(e) and Chapter 74 prerequisites). A tribunal is lawfully constituted when the presiding judge holds authority under the constitutional and statutory framework governing judicial power in the relevant jurisdiction. When state courts adjudicate federal constitutional rights, the Supremacy Clause requires that those federal minimums be honored and not nullified by contrary state administrative practices. Where state law prescribes prerequisites for a judge to exercise judicial authority, systematic practice disregarding of those prerequisites violates federal due process.

167.   The Texas Constitution vests judicial power in courts presided over by elected judges accountable to the electorate. *Tex. Const. art. V, §§ 1, 7.* Visiting and senior judges, who are not elected to the courts over which they preside, may exercise judicial authority only as temporary substitutes and only when specific prerequisites are satisfied. Texas Constitution Article V, Section 7(e) and Government Code Chapter 74 establish these prerequisites, limiting visiting-judge authority to circumstances where the elected judge is absent, disabled, recused, or disqualified, and requiring compliance with assignment and notice procedures before any exercise of judicial power.

168.   These prerequisites are not mere procedural formalities. They are the constitutional mechanism ensuring that non-elected judges displace elected judges only in defined circumstances. Without these safeguards, the visiting-judge regime

permits appointed officials to exercise power the people delegated to elected judges, undermining the constitutional structure through which judicial authority is legitimately exercised.

169.    The Texas Constitution creates a constitutionally protected entitlement for litigants to have their cases adjudicated by duly elected district judges. Article V, §7 vests judicial power in district courts presided over by elected judges who serve four-year terms and are accountable to voters. Article V, §7(e) permits temporary substitution only "when the judge thereof is absent, or is from any cause disabled or disqualified from presiding." This constitutional structure is not advisory—it defines the exclusive circumstances under which judicial power may be exercised by someone other than the elected judge.

170.    This constitutional entitlement creates a protected property and liberty interest under the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). The state may not deprive Plaintiffs of this entitlement except through constitutionally adequate procedures that ensure the Article V, §7(e) prerequisites are actually satisfied. *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

171.    Judge Terry, as a constitutional officer under Article V, §7, has a non-delegable duty to exercise her judicial office. She may not ultra vires subdelegate or abdicate that constitutional responsibility to visiting judges except when:

> 1)  She is actually absent, disabled, or disqualified within the meaning of Article V, §7(e);
>
> 2)  The factual basis for absence, disability, or disqualification is documented in a written finding filed in the public record;

3) A proper assignment order is issued under Chapter 74 procedures and filed before any visiting judge acts;

4) Parties receive constitutionally adequate notice enabling meaningful exercise of *§ 74.053* objection rights; and

5) The visiting judge is free from disqualifying conflicts and properly authorized under statute.

172.   Judge Terry's decisions about whether to exercise her constitutional office, whether to step aside in favor of visiting judges, whether to permit visiting judges to proceed without verifying their authority, and how to supervise her subordinates in managing court operations and assignment processes, these are administrative decisions about the allocation of judicial authority and court management, not judicial rulings on the merits of cases.

173.   By permitting Defendant Catterton to exercise authority in the 325th District Court without ensuring satisfaction of Article V, §7(e) prerequisites, without adequate written documentation, and without constitutionally sufficient notice to parties, Judge Terry *ultra vires* subdelegated her constitutional authority in violation of Plaintiffs' due process rights. This sub-delegation is *ultra vires* because it exceeds the narrow substitution authority permitted by Article V, §7(e) and deprives Plaintiffs of their constitutional entitlement without due process of law.

174.   Judge Terry's supervisory failures regarding Court Coordinator Grimaldi's *ultra vires* conduct, including Grimaldi's unlawful requests for Defendant Catterton's assignments, misrepresentations about appellate court instructions, and participation in defective notice practices, constitute official policies or practices for which Terry is liable in her official capacity. *Pembaur v. Cincinnati*, 475 U.S. 469 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).

175.   The injury to Plaintiffs is not speculative or hypothetical. Plaintiff Yan was subjected to proceedings before Defendant Catterton who lacked proper constitutional authorization, without adequate notice, and without meaningful opportunity to vindicate his constitutional entitlement to his elected judge.

176.   Prospective injunctive relief against Judge Terry is necessary to restore the constitutional structural tribunal framework to status quo ante. Such relief does not interfere with Judge Terry's judicial decision-making on the merits of cases; rather, it ensures that when she makes any judicial decisions, her court has structural tribunal framework satisfy the constitutional prerequisites.

177.   Federal Jurisdiction and Supremacy Clause. Texas state courts exercise concurrent jurisdiction over federal constitutional rights, including the liberty and property interests at stake in Plaintiffs' cases. Because those interests are federally protected rights, state courts may not apply state rules or administrative practices that, in operation, nullify or discriminatorily burden their adjudication. *Howlett v. Rose*, 496 U.S. 356 (1990); *Haywood v. Drown*, 556 U.S. 729 (2009*)*.

178.   *In Ryder v. United States*, 515 U.S. 177 (1995), the Supreme Court held that when a party timely challenges a defect in the authority of the decisionmaker, the party is entitled to have that defect adjudicated and not ignored as a mere technicality. Here, visiting judges purported to exercise authority without satisfying the constitutional and statutory prerequisites established by Article V, Section 7(e) of the Texas Constitution and Chapter 74 of the Texas Government Code.

179.   These defects are not abstract, and the resulting harm is not hypothetical: Randles alleges he was jailed from June 4 through June 6, 2025 under an *ex parte* contempt commitment signed by a retired judge acting "by assignment" with no publicly filed assignment order; Ross alleges she was jailed in May 2024 under orders signed by Defendant Dean, a visiting judge who presided without a timely

written assignment order being issued, filed, or docketed; And Tuter alleges he was jailed in a 2024 hearing before any disclosed screening or recusal addressing the spouse-mediator conflict and related *ex parte* communications. Because physical confinement is the paradigmatic deprivation of liberty, the federal due-process requirement of a lawful and impartial tribunal is at its apex, and after-the-fact remedies cannot restore the lost liberty.

180.   Defendants Evans and Brown caused or permitted visiting judges to exercise judicial power in Plaintiffs' proceedings without record evidence that the elected judge was absent, disabled, recused, or disqualified, and without a case-specific, filed-and-docketed written assignment order and timely notice.

181.   As applied to Plaintiff Randles, Defendant Catterton exercised authority and signed orders in Cause No. 322-619733-17 while the constitutional and statutory prerequisites for visiting-judge authority were not satisfied in the public record.

182.   These practices are ongoing and systemic and therefore threaten recurrence in Plaintiffs' present and future proceedings.

183.   Plaintiffs seek prospective declaratory and injunctive relief requiring compliance with assignment and notice prerequisites before any exercise of judicial power by a visiting or senior judge in Plaintiffs' proceedings.

## C.    COUNT III - 42 U.S.C. § 1983: Arbitrary Deprivation of Statutory Objection Right (Fourteenth Amendment Due Process)

184.   Plaintiffs incorporate by reference the allegations in Sections I-VI of this Complaint. The factual basis for this Count is particularly set forth in Section IV (Statutory Framework), Section V.A (Plaintiffs' Cases), Section V.D (Systemic Assignment Practices), Section V.E (Denial of Access to Assignment Records), and Section VI (Injury and Threat of Future Harm).

185.    Texas Government Code Section 74.053(b) gives each party one objection to an assigned judge. Once created, the State may not administer this strike right in an arbitrary manner that deprives Plaintiffs of a meaningful opportunity to use it before any judicial act occurs.

186.    **No forfeiture by nondisclosure.** Due process does not allow the State to create a mandatory procedural safeguard and then nullify it through nondisclosure. Where the assignment system fails to provide timely written notice identifying the assigned judge and the *§ 74.053* objection right **before** the visiting judge acts, the statutory safeguard is destroyed by the State's own procedure and cannot fairly be treated as waived for non-use. See *Mosley v. Tex. Health & Hum. Servs. Comm'n, 593 S.W.3d 250 (Tex. 2019)* (rejecting the government's position that a person "should have known better" than the State's own defective notice).

187.    **The Necessary Predicate.** Once a state creates such a strike entitlement, it may not arbitrarily deprive litigants of it. *Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)*. The *§ 74.053(b)* objection right can be exercised only if the litigant receives, before the first hearing: (a) notice that a visiting judge has been assigned, (b) identification of the judge's status as retired, former, or senior, and (c) sufficient time to file a written objection. Without this information, a litigant cannot know whether the objection right exists, whether it is absolute under *§ 74.053(b)* or limited under *§ 74.053(d)*, or when the deadline expires. Notice is not ancillary to the entitlement; it is the mechanism by which the entitlement can be exercised.

188.    **The Information Asymmetry**. Even the minimal notice Plaintiffs received was rendered meaningless by the systematic denial of access to underlying assignment records. To meaningfully exercise the *§ 74.053(b)* objection right, a litigant must be able to verify: (a) that an assignment order exists; (b) that it was issued before the visiting judge acted; (c) that the assigned judge's status (active,

retired, former, senior) is accurately stated; and (d) that constitutional prerequisites were satisfied.

189.   Plaintiffs sought this information through administrative channels and were denied. OCA has determined that assignment records are not subject to open records disclosure. The Presiding Judges have not produced responsive records. Without access to assignment records, the *§ 74.053* objection right exists only in form; in substance, litigants are required to object (or waive objection) to assignments they cannot verify and based on information they cannot obtain.

190.   By withholding underlying assignment records and by failing to ensure a timely, filed-and-docketed written assignment order and notice identifying the assigned judge and status, Defendants deny Plaintiffs a meaningful opportunity to exercise the Section 74.053(b) objection right.

191.   The Arbitrary Deprivation. The Chapter 74 notice practices administered by Defendant Evans (Eighth Administrative Judicial Region), Defendant Brown (Eleventh Administrative Judicial Region), and Defendant Wheless (First Administrative Judicial Region) are arbitrary and inconsistent: Plaintiffs received no notice before Catterton exercised judicial authority, and received only informal, incomplete notice before Harris was assigned. In Tuter's case, notice of the assignment and hearing was effectively compressed into hours, and the assigned visiting judge proceeded to rule after Tuter filed a written *§ 74.053* objection before the hearing began. As detailed in Section V.C (Systemic Assignment Practices), the pattern across cases is unpredictable-some litigants receive advance written orders, others receive informal emails, others receive nothing until after the visiting judge has already acted. Whether a litigant can exercise the *§ 74.053(b)* entitlement depends on arbitrary factors unrelated to any legitimate governmental purpose.

192.  The deprivation is not random or unauthorized. Plaintiffs allege that Defendants Evans, Brown, and Wheless, as assigning authorities, administer notice and assignment practices that systematically allow visiting judges to act before the objection right can be exercised.

193.  Because the objection right must be exercised before the first hearing or judicial act, post-deprivation remedies cannot restore the lost opportunity. Plaintiffs therefore seek prospective relief requiring timely written assignment orders and notice as prerequisites to any judicial act by a visiting or senior judge in Plaintiffs' proceedings.

194.  **Combined Effect and Prospective Relief.** The three constitutional violations described in Counts I–III-(1) assignment of financially conflicted visiting judges, (2) creation of unlawfully constituted tribunals when elected judges remain available, and (3) arbitrary deprivation of the *§ 74.053* objection right-each independently violate due process. Taken together, they create a structurally invalid system for determining who may exercise judicial power in Plaintiffs' case.

195.  Counts I–III seek no remedies beyond the declaratory and injunctive relief specifically described in Sections VIII and IX. Count V seeks individual-capacity money damages against Defendant Evans, as described in the Request for Monetary Relief section.

D.    **COUNT IV - 28 U.S.C. §§ 2201-2202: Declaratory Judgment**

196.  Plaintiffs incorporate by reference the allegations in Sections I-VI of this Complaint. The factual basis for this Count is particularly set forth in Section IV (Statutory Framework), Section V.A (Plaintiffs' Cases), Section V.D (Systemic Assignment Practices), Section V.E (Denial of Access to Assignment Records), and Section VI (Injury and Threat of Future Harm).

197.   The constitutional violations alleged herein result from an official policy, custom, or practice of Defendants Blacklock, Evans, Brown, and Wheless, as evidenced by:

1) the absence of any conflict-screening mechanism or written policy prohibiting: (i) assignment of visiting judges who maintain fee-generating mediation or ADR practices with attorneys appearing before them, or (ii) presiding by any judge whose spouse previously served as a paid mediator in the same matter;

2) the consistent practice of assigning visiting judges to preside while elected judges remain available, without record evidence that the elected judge is absent, disabled, recused, or disqualified;

3) the consistent practice of permitting visiting judges to exercise judicial authority without any written assignment order filed and docketed in the case record;

4) the absence of any written directive requiring a filed-and-docketed assignment order and timely pre-hearing notice before a visiting judge exercises judicial authority;

5) the systematic denial of access to assignment records, rendering the *§ 74.053* objection right unverifiable and meaningless; and

6) the failure to issue corrective directives despite actual knowledge of specific constitutional violations raised by litigants.

198.   An actual controversy exists regarding Defendants Blacklock, Evans, Brown, and Wheless's future Chapter 74 assignment practices and compliance with Chapter 74 and the Fourteenth Amendment. Plaintiffs seek declaratory relief as specified in Section VIII below. Count IV does not seek any remedies different from or in

addition to the declaratory and injunctive relief requested in Sections VIII and IX; it invokes the Declaratory Judgment Act as a procedural vehicle for entering those declarations.

### E.    COUNT V - 42 U.S.C. § 1983: Individual-Capacity Damages Against Defendant Evans for Deprivation of Statutory Objection Right (Fourteenth Amendment Due Process)

199.    Plaintiff Randles incorporates by reference Sections I-VI of this Complaint and the Request for Monetary Relief section below.

200.    Defendant Evans, acting under color of state law and in his nonadjudicative statutory administrative capacity as the regional presiding officer under *Tex. Gov't Code ch. 74*, caused or permitted the assignment and notice practices described above, including the failure to provide timely written notice of Judge Catterton's assignment before Judge Catterton exercised purported judicial power in Randles's case.

201.    By these administrative acts and *ultra vires* omissions, Evans deprived Randles of procedural due process, including a meaningful opportunity to exercise the objection right created by *Tex. Gov't Code § 74.053* before any judicial act occurred. Randles alleges that the *§ 74.053(b)* objection right is a state-created entitlement, and that Evans's administrative acts and omissions deprived him of that entitlement (and its notice predicates) before any judicial act occurred, constituting a completed procedural due-process injury.

202.    Because the challenged conduct is administrative rather than adjudicative, *ultra vires*, arbitrary, and capricious, absolute judicial immunity does not apply. See *Forrester v. White*, 484 U.S. 219, 229-30 (1988). Randles seeks compensatory, nominal, and punitive damages against Evans in his individual capacity.

### F.    COUNT VI - 42 U.S.C. § 1983: Damages Against Defendants Grimaldi, Wilder, Moss, and Tarrant County for Deprivation of Rule 145 Protections and

## Arbitrary Clerk Practices (Fourteenth Amendment Due Process and Equal Protection)

203.   Plaintiff Yan incorporates by reference the allegations in Sections I–VI of this Complaint and the Request for Monetary Relief section below. The factual basis for this Count is particularly set forth in Section IV (Rule 145 entitlement and sworn-evidence predicate), Section V.A(iv) (Yan's Rule 145 contest events), Section V.E (record-access/assignment irregularities), and Section VI (injury and threat of future harm).

204.   Rule 145 creates a state-law entitlement to proceed without prepayment of court costs unless and until a contest is properly filed and adjudicated through constitutionally adequate procedures, including Rule 145's mandatory sworn-evidence predicate and minimum notice-and-hearing safeguards. Once the State confers this entitlement, it may not terminate it through unauthorized or arbitrary procedures. The Deprivation Mechanism. This Count challenges the following completed administrative acts and omissions by the named Defendants—implemented through a clerk-facilitated, court-staff-assisted policy, practice, and custom—that bypassed Rule 145's mandatory predicates and minimum notice safeguards, terminated Yan's Rule 145 protection, and imposed predictable cost barriers:

1) Defendant Wilder and Tarrant County, through the District Clerk's Office, accepted, docketed, and processed a Rule 145 contest against Yan without the rule-required sworn evidentiary support and without ordinary fee-and-service channels;

2) Defendant Moss used the clerk-facilitated process to trigger the contest and the ensuing loss of Yan's Rule 145 protection and costs; and

3) Defendant Grimaldi transmitted a composite "contest/notice" that gave the appearance of court sponsorship while depriving Yan of clear, timely, and legible notice.

205.   Defendant Kirk Moss, although a non-party, is alleged to have acted under color of state law through joint participation with state actors, Defendants Lisa Grimaldi and Tom Wilder, and through clerk-facilitated handling of his composite-page contest and notice. Moss is alleged to have used court staff assistance to set in motion State power to strip Yan's Rule 145 protection and impose cost barriers.

206.   Defendant Lisa Grimaldi, acting in her role as Court Coordinator and under color of state law, is alleged to have participated in the deprivation mechanism by transmitting and endorsing the composite "contest/notice" in a manner that (a) did not provide clear, legible, and timely written notice of the hearing setting, (b) did not include a judge-signed hearing-setting order, and (c) foreseeably increased the likelihood that Yan would miss the hearing and lose Rule 145 protections by default. Yan further alleges Grimaldi was informed before the hearing that the handwritten hearing date was not legible to him and did not correct it.

207.   Defendant Tom Wilder, acting under color of state law as District Clerk and final policymaker for the Tarrant County District Clerk's Office, is alleged to have implemented, maintained, and/or ratified fee-assessment, docketing, and service practices that (a) allowed Moss's contest to be accepted and processed without assessing and collecting mandatory third-party fees reflected on published fee schedules, (b) treated the contest as a clerk-facilitated or court-sponsored filing rather than an adversarial pleading subject to ordinary filing, service, and proof requirements, and (c) facilitated contests lacking Rule 145's sworn-evidence predicate.

208.   Yan further alleges a related equal-protection defect in the District Clerk's fee administration: Defendants, through the District Clerk's Office under Wilder's direction and/or ratification, selectively waived or failed to assess copy fees for court records when the requester was court-affiliated or otherwise favored (including counsel identified as the Civil Division of the Tarrant County Criminal District Attorney's Office acting as opposing counsel in litigation involving Yan), while enforcing copy-fee requirements against Yan for comparable record requests. Yan alleges this differential fee treatment was intentional, lacked a rational basis as applied in that litigation context, and caused economic injury and impeded Yan's ability to obtain the record materials needed to litigate and seek review.

209.   Defendant Tarrant County, Texas is liable because Yan alleges the challenged deprivation was caused by a County policy, custom, or practice (including through the District Clerk's Office) that was the moving force behind the Rule 145 deprivation, namely, a practice of accepting and processing Rule 145 contests by court-affiliated non-parties without mandatory fee assessment and without enforcing Rule 145's sworn-evidence predicate, and of facilitating service/notice outside ordinary channels in a manner that predictably strips indigent protections and triggers costs.

210.   Intent is pleaded as follows: Yan alleges Defendants Grimaldi, Wilder, Moss, and Tarrant County intentionally and purposefully administered a two-tier contest-and-fee regime, permitting court-affiliated contestants (including court reporters) to initiate and advance contests with preferential handling and without mandatory fee-and-proof requirements, while enforcing cost consequences and procedural defaults against the indigent litigant whose Rule 145 entitlement was being terminated. Yan alleges this differential treatment lacked a rational basis and was carried out

knowingly or with deliberate indifference to the foreseeable constitutional consequences.

211.   Causation is pleaded as follows: Yan alleges that, but for Defendants' clerk-facilitated contest processing, composite notice practices, and failure to enforce Rule 145's sworn-evidence and notice predicates, Yan would have retained Rule 145 protection (or at minimum would have received constitutionally adequate notice and an opportunity to be heard before deprivation), would not have been subjected to predictable cost assessments and barriers, and would not have suffered the economic and appellate-access injuries that flowed from the loss of indigent status.

212.   As a direct and proximate result of Defendants' acts and omissions, Yan alleges actual injury including required costs and fees, dismissal of at least one appeal for want of prosecution due to inability to pay costs imposed after the challenged deprivation, and related sanctions and financial pressure; Yan also alleges non-economic injury including anxiety, sleeplessness, and emotional distress from the threatened and actual loss of meaningful access to judicial review.

213.   Yan seeks compensatory and nominal damages against Defendants Lisa Grimaldi, Tom Wilder, and Kirk Moss in their individual capacities; compensatory and nominal damages against Defendant Tarrant County, Texas to the extent the County's policy, custom, or practice was a moving force behind the deprivation; and punitive damages against the individual defendants to the extent permitted by law, plus any further relief the Court deems just.

## G.    COUNT VII - 42 U.S.C. § 1983: Against Defendants Grimaldi, Wilder, Moss, and Tarrant County for Deprivation of Meaningful Access to Courts and Retaliation for Petitioning (First Amendment Right to Petition and Fourteenth Amendment Due Process)

214.   Plaintiff Yan incorporates by reference the allegations in Sections I–VI of this Complaint and the Request for Monetary Relief section below. The factual basis for

this Count is particularly set forth in Section IV (Rule 145 entitlement; access-to-courts principles), Section V.A(iv) (timing and handling of the contest), and Section VI (injury).

215. Defendants Lisa Grimaldi, Tom Wilder, Kirk Moss, and Tarrant County, acting under color of state law (including through joint participation and clerk-facilitated handling of Moss's contest), are alleged to have implemented and maintained contest, fee, and service/notice practices that foreseeably obstruct indigent litigants' ability to obtain meaningful judicial review, including appellate review, of nonfrivolous claims.

216. The Deprivation Mechanism. This Count challenges an integrated, clerk-facilitated sequence of completed acts and omissions by Defendants Grimaldi, Wilder, Moss, and Tarrant County that predictably converts a Rule 145 contest into a cost barrier to trial and appellate review. The access-to-courts deprivation mechanism alleged here is an "integrated system" of acts and omissions that predictably converts a Rule 145 contest into a cost barrier to review:

    1) a court-affiliated contestant's Rule 145 contest is accepted, docketed, and processed without ordinary fee-and-service burdens and without Rule 145's sworn-evidence predicate;

    2) clerk/court-facilitated notice and service practices (including composite-page notice) increase the likelihood of default and loss of indigent status;

    3) costs are assessed and demanded after Rule 145 protection is stripped; and

    4) Plaintiff Yan alleges that the deprivation of Rule 145's state-created judicial welfare entitlement, through the predicate/notice/processing

failures described above, is itself the actual injury that predictably produced the cost barrier to appellate review, including dismissal for inability to pay. The indigent litigant is thereby impeded from pursuing appellate review and obtaining a merits adjudication.

217.    As applied to Yan, Defendants' acts and omissions—including accepting and processing Moss's contest without required fee assessment, providing preferential clerk-facilitated handling outside ordinary channels, and stripping Rule 145 protection through defective notice and predicate failures, are alleged to have imposed predictable cost barriers that directly impaired Yan's ability to pursue appellate review and obtain a merits adjudication of his constitutional challenges.

218.    Yan further pleads retaliation for petitioning as follows. Yan engaged in protected activity by filing a Notice of Appeal and by filing post-judgment motions and requests that disclosed and pursued appellate grounds and constitutional challenges. Yan alleges that the timing and pattern of the Rule 145 contest—and the manner in which Defendants Wilder and Grimaldi facilitated its processing— support a plausible inference of retaliatory motive.

219.    Specifically, Yan alleges that for months after he filed his Rule 145 Statement, no comparable contest was pursued; then, after Yan initiated appellate activity and his constitutional grounds became known, Moss's contest was filed/processed and advanced through the preferential, clerk-facilitated mechanism described above, creating foreseeable cost barriers likely to cause dismissal for inability to pay.

220.    Yan alleges causation for retaliation: the adverse actions (contest processing, defective notice, loss of Rule 145 protection, cost demands) would not have occurred in the same manner and at the same time but for Yan's protected petitioning activity, and the foreseeable and intended effect was to punish Yan for appealing and to deter continued resort to the courts.

221.   Municipal liability is pleaded as follows: Defendant Tarrant County is liable because the retaliation and access-to-courts deprivations were carried out through a systemic policy and custom of the District Clerk's Office, managed under Defendant Wilder's final policymaking authority. This policy is characterized by a "two-tier" system of fee-and-service favoritism for court-affiliated contestants that predictably burdens indigent appellants.

222.   Specifically, the County misused public funds by deploying Tarrant County Criminal District Attorney resources to prosecute a Rule 145 contest, facilitated without the mandated sworn-evidence predicate and without statutory standing. This coordinated joint state action was designed to obstruct Plaintiff Yan's appellate review and to abstract unentitled funds for the County by orphaning him from his Fourteen Amendment protected state-law entitlement to proceed *in forma pauperis*. This deployment of government legal power to harass an indigent litigant further demonstrates a retaliatory motive intended to deter the exercise of First Amendment rights.

223.   Yan seeks compensatory and nominal damages against Defendants Lisa Grimaldi, Tom Wilder, and Kirk Moss in their individual capacities; compensatory and nominal damages against Defendant Tarrant County, Texas to the extent the County's policy, custom, or practice was a moving force behind the deprivation; and punitive damages against the individual defendants to the extent permitted by law, plus any further relief the Court deems just.

## VIII.    REQUEST FOR DECLARATORY RELIEF

224.   Pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, Plaintiffs seek a declaratory judgment that, as applied to Plaintiffs' present and future cases and limited to preventing recurrence of the pleaded pre-deprivation mechanisms in Counts I–III (and, as to Plaintiff Yan, Counts VI–VII), Defendants' challenged

assignment/notice/conflict and clerk-processing practices violate the United States Constitution as set forth below.

225. **Scope (primary request + expressly pled alternatives).** Plaintiffs request region-wide declarations as the primary remedy—i.e., declarations governing Defendants Blacklock, Evans, Brown, and Wheless in their administrative capacities within the Eighth, Eleventh, and First Administrative Judicial Regions, and declarations governing Defendants Wilder and Tarrant County county-wide as to Rule 145 processing—so that the same pleaded deprivation mechanisms cannot recur in any present or future proceeding involving Plaintiffs within those jurisdictions. In the alternative, if the Court concludes a narrower scope is sufficient, Plaintiffs expressly request entry of the same declarations limited to one or more narrower levels (as the Court deems appropriate): (a) court-level (limited to the specific district courts in which Plaintiffs' matters are pending, including the 325th District Court as to Terry/Grimaldi); (b) county-level (limited to the county clerk operations at issue, including Tarrant County as to Wilder/Tarrant County); and/or (c) case-specific (limited to the identified cause numbers involving each Plaintiff).

> 1) **Financial Conflict Disclosure (Count I)**: The practice of assigning visiting judges who maintain fee-generating mediation practices dependent on referrals from attorneys appearing before them, and the practice of a district judge's presiding over a case in which the judge's spouse previously served as a paid mediator in the same matter, without written disclosure and disqualification/recusal, violates Plaintiffs' right to a neutral tribunal under the Fourteenth Amendment and constitutes an unconstitutional structural conflict.

> 2) **Unlawfully Constituted Tribunal (Count II)**: The practice of assigning visiting judges to sit concurrently with available elected judges,

without record evidence of absence, disability, recusal, or disqualification, exceeds constitutional and statutory authority and violates due process.

3) **Notice (Count III)**: The arbitrary and inconsistent practice of allowing any visiting/senior judge to exercise judicial power in a case without a timely, written, filed-and-docketed assignment order and notice sufficient to permit Plaintiffs to meaningfully exercise the *Tex. Gov't Code § 74.053* objection right violates the Fourteenth Amendment.

4) **Assignment Regime With Disqualifying Conflicts (Count I & III)**: It violates due process for a visiting/senior judge to exercise judicial power under an assignment regime that (i) lacks the required written assignment/notice and (ii) permits service despite disqualifying conflicts of interest (including financial conflicts that would require disclosure and disqualification/recusal).

5) **Application to Catterton (Count I & III)**: This declaration includes the future exercise of judicial power by Defendant Catterton in Plaintiffs' proceedings under Chapter 74, including any contempt, commitment, or incarceration orders, without a filed-and-docketed written assignment order, timely notice, and conflict disclosure.

6) **Application to Harris (Count I)**: This declaration includes the future exercise of judicial power by Defendant Harris in Plaintiffs' proceedings under Chapter 74 without a conflict disclosure.

7) **Application to Dean (Count I & III)**: This declaration includes the future exercise of judicial power by Defendant Dean in Plaintiffs' proceedings under Chapter 74, including any contempt, commitment, or

incarceration orders, without a conflict disclosure and without timely, filed, and docketed written assignment authority.

8) **Application to Roach (Count I)**: This declaration includes the future exercise of judicial power by Defendant Roach in Plaintiff Tuter's proceedings, including any contempt, commitment, or incarceration orders, while Defendant Roach's spouse had received mediation fees in the same matter, without written disclosure of that financial interest and without disqualification or recusal.

9) **Application to Cooks (Count III)**: This declaration includes the future exercise of judicial power by Defendant Cooks in Plaintiff Tuter's proceedings under Chapter 74 after Plaintiff Tuter timely filed a Tex. Gov't Code § 74.053 objection to her assignment.

10)    **Ethical Parity (as applied) (Count I):** As applied to Plaintiffs, the assignment regime that permits visiting/senior judges to maintain compensated mediation/ADR practices that depend on referrals from attorneys who may appear before them, without a uniform disclosure/recusal mechanism equivalent to the baseline protections applicable to sitting judges, denies Plaintiffs due process by exposing Plaintiffs to an undisclosed financial-conflict risk when a visiting judge is assigned to their matters.

11)    **Transparency (Count III)**: The systematic denial of access to visiting judge assignment records, combined with OCA's position that such records are not subject to public disclosure, creates an unconstitutional black-box mechanism as applied to Plaintiffs because it prevents Plaintiffs from verifying assignment authority, conflicts, and § 74.053 objection timing before judicial acts occur.

12)      **Rule 145 Sworn-Evidence Predicate and Anti-Harassment Safeguard (Count VI–VII)**: The practice of initiating, accepting, docketing, or prosecuting a "contest" to a Rule 145 Statement without sworn evidence—and providing fee-free processing and clerk-facilitated service for such contests—violates the Fourteenth Amendment's procedural due process and equal protection guarantees and burdens the First Amendment right to petition.

13)      **Rule 145 Due-Process Notice and Opportunity (Clerk Practices) (Count VI–VII)**: The practice, maintained and implemented by Defendants Wilder and Tarrant County through the District Clerk's filing, docketing, and notice operations, of stripping Rule 145 fee-waiver protection without constitutionally adequate notice and a meaningful opportunity to be heard—including defective handling of contests and hearing notices, failure to docket or serve key contest materials, and record-notice defects—violates the Fourteenth Amendment, where the same practices remain ongoing in Plaintiffs' pending matters.

14)      **Monell Policy/Custom Causing the Rule 145 Deprivation(Count VI–VII)**: Defendant Tarrant County, through the District Clerk's Office under Defendant Wilder's final policymaking authority (or ratification), maintained a policy, custom, or practice of processing Rule 145 contests or related notices in a manner that predictably deprives indigent litigants of Rule 145 protection without adequate process, and that policy/custom was a moving force behind Plaintiffs' due-process injuries.

15)      **Equal Protection—Differential Administration of the Cost-Waiver Mechanism(Count VI)**: The practice, maintained and

implemented by Defendants Wilder and Tarrant County, of differentially administering Rule 145's cost-waiver mechanism, as applied to Plaintiffs and compared to similarly situated litigants, violates the Equal Protection Clause where Plaintiffs allege specific comparator facts (who, what, when, and how treated differently) showing intentional and irrational differential processing that caused disparate loss of fee-waiver protection and appellate access.

## IX.    REQUEST FOR INJUNCTIVE RELIEF

226. Declaratory relief is practically unavailable pre-deprivation because assignment authority and conflict information are not reliably docketed or disclosed before the visiting judge acts, and Plaintiffs cannot meaningfully seek pre-hearing review of an assignment they cannot verify from the public record. Accordingly, declaratory relief is unavailable as a practical matter to prevent the imminent deprivation described in Counts I–III.

227. Consistent with the foregoing declaratory relief, and only to prevent recurrence of the specific pre-deprivation mechanisms pleaded in Counts I–III (and, as to Plaintiff Yan, Counts VI–VII), Plaintiffs request narrowly tailored prospective injunctive relief. The requested injunction is not a command to revise, vacate, or supervise any state-court merits ruling; it is a prohibition on future administrative assignment/notice/conflict and clerk-processing practices that create the pleaded deprivations before a judicial act occurs.

228. Scope (primary request + pleaded alternatives). Plaintiffs request region-wide relief as the primary remedy—i.e., relief that binds the Chapter 74 assigning/notice authorities within the Eighth, Eleventh, and First Administrative Judicial Regions, and binds the Tarrant County District Clerk's Office county-wide as to Rule 145 processing—as applied to any present or future proceeding involving Plaintiffs

within those jurisdictions. In the alternative, if the Court concludes a narrower scope is sufficient, Plaintiffs expressly request the same prohibitions be entered at any one or more of the following narrower levels (as the Court deems appropriate): (a) court-level (limited to the specific district courts in which Plaintiffs' matters are pending, including the 325th District Court as to Terry/Grimaldi); (b) county-level (limited to the county clerk operations at issue, including Tarrant County as to Wilder/Tarrant County); and/or (c) case-specific (limited to the identified cause numbers involving each Plaintiff).

229.    Accordingly, Plaintiffs request an order prohibiting Defendants from the following in any present or future proceeding involving Plaintiffs:

1) No judicial act by a visiting/assigned judge absent a filed-and-docketed written assignment order + meaningful § 74.053 notice (Counts I–III). Defendants Evans, Brown, Wheless, Terry, and Grimaldi shall not cause or facilitate any visiting/assigned judge to conduct a hearing or exercise judicial power in any proceeding involving Plaintiffs unless and until a written assignment order identifying the judge, the judge's status, the specific case/matter, and the statutory basis is issued, filed, and docketed, and notice is served in time to allow meaningful exercise of § 74.053 rights..

2) No assignment where the constitutional/statutory "substitution predicate" is missing from the record (Counts II–III). Defendants Evans, Brown, Wheless, and Terry shall not request, transmit, process, or implement a Chapter 74 assignment in any proceeding involving Plaintiffs unless the case record reflects the lawful basis for substitution (e.g., the elected judge is absent, disabled, recused, or disqualified), as required by the pleaded constitutional/statutory framework.

3) No assignment/presiding with an undisclosed disqualifying financial conflict (Counts I, III). Defendants Blacklock (through OCA), Evans, Brown, and Wheless shall not assign (and Defendants Catterton, Harris, Cooks, Dean, and Roach shall not accept or exercise authority under) any Chapter 74 service in any proceeding involving Plaintiffs while a material financial conflict exists and remains undisclosed and unresolved through the State's recusal/disqualification process.

4) Spouse-mediator conflict: no presiding absent disclosure + recusal/disqualification resolution (Counts I, III). Defendants Blacklock (through OCA), Evans, Brown, Wheless, and Roach shall not assign, accept, or preside in any proceeding involving Plaintiffs where the judge's spouse previously served as a paid mediator in the same matter unless the relationship is disclosed in writing on the public record and the conflict is addressed through the State's recusal/disqualification process before any further judicial act.

5) Rule 145 (as applied): no clerk processing of a "contest" absent sworn-evidence predicate + rule-compliant notice (Counts VI–VII, Yan). Defendants Wilder and Tarrant County shall not initiate, accept, docket, process, or treat a submission as a Rule 145 "contest" against Plaintiff Yan (or any Plaintiff) unless the submission is accompanied by sworn evidence satisfying Rule 145's predicate requirement and is processed as an adversarial filing through ordinary channels (including ordinary fee assessment/reflection on the docket and ordinary service by the contestant absent a judge-signed order). Absent sworn evidence, the Clerk shall not issue (or facilitate issuance of) hearing notices predicated on the submission.

6) Assigned judges: no acceptance/exercise of authority absent prerequisites (Counts I–III). Defendants Catterton, Harris, Dean, Roach, and Cooks shall not accept any assignment or exercise any judicial power in any proceeding involving any Plaintiff unless and until (i) a written assignment order identifying the judge, status, case/matter, and statutory basis is filed and docketed; and (ii) Plaintiffs have received notice sufficient to permit meaningful exercise of § 74.053 rights before any judicial act occurs. This prohibition is limited to the administrative prerequisites for assignment authority and notice, not to any merits ruling.

7) 325th District Court administration: prohibit subdelegation-through-staff and extra-record assignment/notice practices (Counts II–III; Yan's ongoing risk). Defendants Terry and Grimaldi shall not request, transmit, or implement visiting-judge assignments in proceedings involving any Plaintiff in the 325th District Court through informal, extra-record, or staff-driven mechanisms that bypass the filed-and-docketed written assignment order and timely notice prerequisites stated above. They shall not transmit "assignment/setting" notices that are not anchored to a filed-and-docketed assignment order and that do not provide readable, rule-compliant notice sufficient to permit exercise of *§ 74.053* rights, as applied to proceedings involving Plaintiffs.

230.   Where a safeguard must be stated affirmatively, it is phrased as a prohibition ("must", "may not/shall not … unless/until …") to prevent recurrence of the pleaded deprivations, rather than a programmatic mandate to adopt policies, training, or

statewide reforms[1]. This injunction request is pleaded in descending scope (region-wide first, then court/county/case-specific alternatives) so the Court may select the narrowest scope it finds adequate to prevent recurrence of the pleaded deprivation mechanisms.

231.   The requested injunction operates only prospectively and addresses the four individual Plaintiffs' ongoing risk of future injury as described in Counts I–III. It does not seek to alter any past judgment or provide any retroactive relief. This prospective limitation applies to the declaratory and injunctive relief sought against Defendants in their official capacities, and does not limit Plaintiffs' individual-capacity damages claims pleaded elsewhere in this Complaint.

## X.    REQUEST FOR MONETARY RELIEF

232.    Plaintiff Randles alleges that, in Cause No. 322-619733-17, on June 4, 2025, retired Senior Judge Crawford R. "Randy" Catterton signed an ex parte contempt commitment that ordered Plaintiff Randles confined in jail, and Randles was incarcerated from June 4 through June 6, 2025.

233.   Based on Plaintiff Randles's review of publicly available docket entries and the records in his possession, Plaintiff Randles has not located any written assignment order for Judge Catterton that was issued, filed, served, or docketed before the June 4, 2025 contempt commitment (or before Plaintiff Randles's June 6, 2025 release). Plaintiff Randles further alleges that the public record does not reflect an order showing the elected district judge was absent, disabled, recused, or disqualified at the time a visiting judge purported to act.

---

[1] (2) "Shall" imposes a duty. (3) "Must" creates or recognizes a condition precedent. (4) "Is entitled to" creates or recognizes a right. See Texas Government Code § 311.016; "each party to the case is only **entitled** to one objection under this section for that case." GOV'T Code § 74.053; "When a Statement has been filed, the declarant **must not** be ordered to pay costs **unless** …" Texas Rule of Civil Procedure Rule 145.
"

234.   Plaintiff Randles alleges that Defendant Evans, as the assigning authority for the Eighth Administrative Judicial Region, did not provide Plaintiff Randles timely written notice that Judge Catterton was sitting by assignment in Plaintiff Randles's case before Judge Catterton exercised judicial power, including by issuing the contempt commitment that caused Randles's confinement.

235.   Plaintiff Randles alleges that, because he did not receive timely notice of the visiting-judge assignment, he lacked a meaningful opportunity—before any judicial act occurred—to verify authority and eligibility, seek disclosure of disqualifying conflicts, and exercise the objection right provided by *Tex. Gov't Code § 74.053*.

236.   Plaintiff Randles further alleges that Defendant Evans and/or his office maintained and executed practices under which assignment orders and assignment records were not timely provided to litigants who sought to verify a visiting judge's authority to act in their cases, including in response to requests for copies of written assignment orders for Judge Catterton.

237.   Plaintiff Randles alleges that he suffered a procedural due-process injury at the time he was subjected to the exercise of judicial power by a visiting judge without timely notice and a meaningful opportunity to object, irrespective of the later procedural posture of the case.

238.   Plaintiff Randles alleges that, as a direct and proximate result of Defendant Evans's acts and omissions described above, Randles suffered actual injuries including loss of liberty during his confinement, emotional distress and humiliation associated with being jailed through the process described above, disruption to daily life and work, and the need to incur time and costs to address and mitigate the consequences of the confinement.

239.   Randles seeks compensatory damages in the amount of at least $1,000,000 against Defendant Evans in his individual capacity, consisting of: (a) economic losses, including lost wages, the value of the lost opportunity to object to a conflicted or unauthorized judge, and hardship spending incurred; and (b) non-economic damages for mental anguish, emotional distress, and humiliation resulting from the confinement and related events described above. He further seeks at least $1.00 nominal damages to the extent any component of the injury does not yield measurable compensatory damages on the evidence presented.

240.   Plaintiff Randles further seeks punitive damages in the amount of at least $1,000,000 against Defendant Evans in his individual capacity. Randles alleges that Defendant Evans acted under color of state law and with at least reckless or callous indifference to Plaintiff Randles's federally protected rights by maintaining, authorizing, and/or enforcing assignment, notice, and records practices that predictably allowed a visiting judge to act, including by issuing an *ex parte* contempt commitment, before Plaintiff Randles could receive timely notice and exercise the objection right created by Texas law.

241.   Plaintiff Yan alleges that, at the time of the challenged conduct, the Office of Court Administration published fee schedules entitled "District Court Civil Suits and Actions" and "District Court Civil Filing Fees," which list filing fees for third-party actions, including a $35 local consolidated civil fee (*Tex. Loc. Gov't Code § 135.101*) and a $45 local consolidated civil fee (*Tex. Loc. Gov't Code § 135.151*). Yan alleges these fees are required for third-party filings and that the District Clerk generally collects such fees when third-party actions are filed. Yan further alleges that the District Clerk did not assess or collect the third-party contest filing fees from court-affiliated non-party contestants (including court reporter Kirk Moss) in connection

with Rule 145 contests, while assessing or enforcing cost requirements against indigent litigants, including Plaintiff Yan.

242.  Yan seeks compensatory damages in the amount of at least $1,000,000 against Defendants Grimaldi, Wilder, and Moss in their individual capacities, and against Defendant Tarrant County to the extent permitted by law, consisting of:

> 1) economic damages including court costs and filing fees assessed after denial of Rule 145 protection, appellate cost deposits, costs to obtain records, loss of opportunity to obtain merits-based appellate review, and the value of time expended responding to the contest process;
>
> 2) non-economic damages for mental anguish, anxiety, sleep disturbances, emotional distress, and humiliation arising from the loss of indigency protection through the procedures alleged, the dismissal of Yan's appeal for inability to pay costs that allegedly flowed from that denial, and the chilling effects alleged; and
>
> 3) nominal damages of at least $1.00 to vindicate the constitutional violations alleged.

243.  Yan further seeks punitive damages in the amount of at least $2,000,000 against Defendant Wilder in his individual capacity, and against the other individual defendants as allowed by law. Yan alleges deliberate indifference based on the 2013–2023 *Campbell v. Wilder* litigation and its $150,000 settlement, which Yan alleges provided actual notice that similar Rule 145 fee practices were constitutionally infirm.

## XI.    ATTORNEYS' FEES AND COSTS

244.   Plaintiffs do not claim *§ 1988* attorneys' fees for their own *pro se* time but seek reasonable fees and costs should they later retain counsel and prevail. As *pro se* litigants, Plaintiffs currently seek only taxable costs.

## XII.   JURY DEMAND

To the extent any issues in this action are triable to a jury, Plaintiffs demand trial by jury pursuant to the Seventh Amendment and *Fed. R. Civ. P. 38*.

## XIII.   REQUEST FOR JUDICIAL NOTICE

Under Federal Rule of Evidence 201, Plaintiff Yan requests judicial notice of *Campbell v. Wilder*, No. 017-264181-13 (17th Dist. Ct., Tarrant County); *Wilder v. Merritt*, No. 02-16-00477-CV, 2017 WL 5494258 (Tex. App.—Fort Worth Nov. 16, 2017, pet. denied) (mem. op.); *Campbell v. Wilder*, 487 S.W.3d 146 (Tex. 2016), a 2013–2023 litigation and $150,000 settlement challenging Defendant Wilder's practice of charging fees to indigent litigants despite Rule 145 filings. As a matter of public record, the existence, and procedural posture of this case are proper subjects for judicial notice.

## XIV.   PRAYER

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Exercise jurisdiction over this action and enter judgment in Plaintiffs' favor;

2. Enter the declaratory relief requested in the REQUEST FOR DECLARATORY RELIEF section;

3. Enter the permanent injunctive relief requested in the REQUEST FOR INJUNCTIVE RELIEF section;

4. Award Plaintiffs their taxable costs under *Fed. R. Civ. P. 54(d)(1)* and *28 U.S.C. § 1920*, and any other fees authorized by law;

5. Award monetary relief (including compensatory, nominal, and punitive damages) as specifically requested in the REQUEST FOR MONETARY RELIEF section, incorporated herein by reference;

6. Award prejudgment and post-judgment interest, as allowed by law, on any damages awarded against Defendants in their individual capacities;

7. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Samuel Randles*
Samuel Randles
5001 SH114E, Apt 1313,
Roanoke, TX 76262
Telephone: (214) 250-6187
randles.sam@gmail.com

*/s/ Kaitlan Ross*
Kaitlan Ross
915 County Road 2719
Goldthwaite, Texas 76844
Telephone: (512) 529-0294
Kaitlan.ross33@gmail.com

*/s/ Patrick Tuter*
Patrick Wayne Tuter
430 Christi Ln.
Princeton, Texas 75407
Telephone: (214) 497-6152
patrick762soldier@hotmail.com

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439,
Southlake, Texas 76092
Telephone: (214) 228-1886
arnold200@gmail.com
