## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| Samuel Randles, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4-25CV1422-0 |
| | ) | |
| Jimmy Blacklock, et. al. | ) | |
| | ) | |
| Defendants, | ) | |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

## Table of Contents

I.    LEGAL STANDARD ................................................................................................3

II.    LEGAL FRAMEWORK..........................................................................................3

    A.   Neutral Tribunal and Financial Conflicts..........................................................3

    B.   Notice and Opportunity to Be Heard .................................................................4

    C.   State-Created Entitlements.................................................................................4

    D.   Structural Defects in Tribunal Composition ......................................................4

    E.   Access to Courts and Indigent Protections ........................................................4

III.   STATEMENT OF FACTS.......................................................................................5

    A.   Randles (Tarrant County) ..................................................................................5

    B.   Ross (Matagorda County)...................................................................................5

    C.   Tuter (Collin County) .........................................................................................6

    D.   Yan (Tarrant County) .........................................................................................7

    E.   Structural Conflicts and Systemic Practices ......................................................9

IV.   ARGUMENT.........................................................................................................10

    A.   PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS ........................................10

        i.    Standing.................................................................................................10

        ii.   Denial of Notice and Statutory Objection Right (Counts I, III) .................................11

iii.   The § 74.053 Objection Right Is Non-Waivable and Self-Executing......................................... 13

iv.   Financial Conflicts of Interest (Count I)..................................................................... 14

v.   Unlawful Concurrent Jurisdiction (Count II) ............................................................ 15

vi.   325th District Court Administrative Practices (Yan).................................................. 16

vii.   Rule 145 Contest Practices (Counts VI-VII, Yan)...................................................... 17

B.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM.................................................................. 18

C.   THE BALANCE OF EQUITIES FAVORS PLAINTIFFS............................................................... 19

D.   THE PUBLIC INTEREST SUPPORTS THE INJUNCTION ......................................................... 20

E.   EX PARTE YOUNG AND JURISDICTIONAL DEFENSES ......................................................... 20

i.   Ex parte Young Applies ......................................................................................... 20

ii.   Younger Abstention Does Not Apply ...................................................................... 21

iii.   Rooker-Feldman Does Not Apply ........................................................................... 21

V.   CONCLUSION.................................................................................................................... 22

CERTIFICATE OF CONFERENCE ................................................................................................ 23

CERTIFICATE OF SERVICE .......................................................................................................... 23

Plaintiffs seek narrow, prospective relief to require Defendants to comply with existing constitutional and statutory requirements before visiting judges exercise judicial power. The relief targets only administrative assignment and notice practices—not any state-court ruling or adjudication.

Three Plaintiffs, Randles, Ross, and Tuter, have been jailed through contempt orders. Randles was jailed by a visiting judge who acted without filed assignment orders and without timely notice. Ross was jailed by a visiting judge and a family court active mediator (same to Randle's visiting judge). Tuter was jailed by an elected judge presiding despite an undisclosed spouse-mediator conflict. Yan suffered loss of indigent status protections and dismissal of his appeal through defective Rule 145 contest processing and visiting-judge (a family court active mediator as well) assignment practices. All four remain active litigants facing the same practices absent relief.

## I.    LEGAL STANDARD

1.    A preliminary injunction requires: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable harm; (3) balance of equities favoring plaintiff; and (4) public interest served. *Valentine v. Collier*, 978 F.3d 154, 162 (5th Cir. 2020); *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). When constitutional rights are threatened, courts presume irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs request bond be set at $0 or nominal amount given no monetary loss to Defendants. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).

## II.    LEGAL FRAMEWORK

2.    The constitutional principles governing this case are well-established. This section consolidates the governing legal standards referenced throughout the Argument.

### A.  Neutral Tribunal and Financial Conflicts

3.    The Due Process Clause guarantees a neutral tribunal free from structural conflicts of interest. In *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), the Supreme Court held that due process is denied where procedures create "a possible temptation to the average man as a judge ... not to hold the balance nice, clear and true." *Id*. at 532. The violation exists regardless of actual bias; it lies in creating structural incentives inconsistent with neutrality. *Ward v. Village of Monroeville*, 409 U.S.

57, 60 (1972); *In re Murchison*, 349 U.S. 133, 136 (1955); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009).

### B. Notice and Opportunity to Be Heard

4.      Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process also prohibits arbitrary and inconsistent application of procedural protections. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

### C. State-Created Entitlements

5.      When state law creates a mandatory procedural framework, individuals acquire a federal due process interest in having that framework followed. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). Protected property interests stem from "existing rules or understandings" like state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The State cannot defeat a pre-deprivation safeguard through nondisclosure and then claim forfeiture. *Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 254 (Tex. 2019). A protected entitlement may also arise from mutually explicit understandings and established practices that constrain discretion. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

### D. Structural Defects in Tribunal Composition

6.      Structural defects in tribunal composition are not cured by post hoc review or harmless-error analysis. *Williams v. Pennsylvania*, 579 U.S. 1, 8-14 (2016); *Ryder v. United States*, 515 U.S. 177, 182-83 (1995). When judicial power is exercised by someone lacking lawful authority, the tribunal is not lawfully constituted, regardless of any particular ruling's correctness. *Nguyen v. United States*, 539 U.S. 69, 83-84 (2003).

### E. Access to Courts and Indigent Protections

7.      The Constitution protects meaningful opportunity to pursue nonfrivolous claims. *Tennessee v. Lane*, 541 U.S. 509, 523 (2004). The State may not erect wealth-based barriers conditioning appellate review on ability to pay. *M.L.B. v. S.L.J.*, 519 U.S. 102, 120-24 (1996); *Griffin v. Illinois*, 351 U.S. 12, 17 (1956). Once the State creates an indigent-status entitlement, it

cannot terminate it without pre-deprivation due process. *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Little v. Streater*, 452 U.S. 1, 16–17 (1981).

### III.    STATEMENT OF FACTS

#### A.  Randles (Tarrant County)

8.      On June 4, 2025, retired Senior Judge Crawford R. "Randy" Catterton signed an *ex parte* contempt commitment ordering Randles jailed (**APP-027 to APP-030** (Exhibit E – Order Holding Respondent in Direct Contempt, June 4, 2025)). Randles was incarcerated June 4-6, 2025 (**APP-027 to APP-030** (Exhibit E) + **APP-031 to APP-034** (Exhibit F – Order of Release from Jail)). No written assignment order was issued, filed, served, or docketed before Catterton acted (**APP-003 to APP-008** (Exhibit B – July 3, 2025 Docket) + **APP-015 to APP-026** (Exhibit D – January 1, 2026 Docket)). To Randles's knowledge, the elected judge of the 231st District Court was not absent, disabled, recused, or disqualified on June 4 and 6 (**APP-001 to APP-002** (Exhibit A – Declaration of Sam Randles)). Randles received no notice of his *§ 74.053* objection right before incarceration (**APP-001 to APP-002** (Exhibit A – Declaration of Sam Randles)). Later, informal email notice regarding Judge Harris's assignment omitted statutory objection information and conflict disclosures (**APP-035 to APP-036** (Exhibit G – Email Correspondence, Harris Assignment, Sept. 11, 2025)). Both Catterton and Harris are active family court mediator who has ongoing business in the same courts where they sit by assignment (**APP-001 to APP-002** (Exhibit A – Declaration of Sam Randles) + **APP-201 to APP-202** (Exhibit M – Mediator List showing Catterton listed as mediator) + **APP-205 to APP-207** (Exhibit N – Facebook post promoting mediation with Catterton) + **APP-208 to APP-216** (Exhibit O – Harris posts referencing mediation/private judging/mediation activity)). Randles remains an active litigant with hearings anticipated within twelve months (**APP-015 to APP-026** (Exhibit D – January 1, 2026 Docket)).

#### B.  Ross (Matagorda County)

9.      Retired/former Judge Sherill Youngberg Dean exercised authority in Ross's proceedings, signing multiple orders including a May 2024 criminal-contempt order resulting in incarceration (**APP-102 to APP-126** (Exhibit C – Order Holding Respondent in Contempt, May 20, 2024)). Dean also presided over a DFPS "aid to investigate" matter without a timely written assignment order being filed before she acted (**APP-097 to APP-098** (Exhibit A – Declaration of Kaitlan Ross) + **APP-127 to APP-128** (Exhibit D – Docket Sheet)). Ross received no timely notice of her §

74.053 objection right until December 2025, after Dean had already exercised authority, including contempt power (**APP-097 to APP-098** (Exhibit A – Declaration) + **APP-099 to APP-101** (Exhibit B – Notice of Assignment, March 2023) + **APP-134 to APP-136** (Exhibit G – Court Register showing December 2025 proceedings)). Ross later learned that Dean is an active family court mediator (See her business website at https://www.sheriydean.com/) in the same courts where she sits by assignment (**APP-097 to APP-098** (Exhibit A – Declaration of Kaitlan Ross)). Ross remains an active litigant with hearings anticipated within twelve months. (**APP-134 to APP-136** (Exhibit G – Court Register showing December 2025 hearings))

### C. Tuter (Collin County)

10.     Tuter's case began February 11, 2022 (**APP-062 to APP-065** (Exhibit G – Docket Entries)). Judge Lindsey Wynne referred parties to mediator Laura Roach, who received $2,800 in mediation fees ($1,400 from each party) on June 2, 2022 (**APP-041 to APP-042** (Exhibit C – Mediation Receipt showing $1,400 payment)). On September 13, 2023, the case was assigned to Judge John Roach Jr.—Laura Roach's husband (**APP-062 to APP-065** (Exhibit G – Docket Entries)). No disclosure or conflict screening occurred regarding this spouse-mediator relationship (**APP-037 to APP-038** (Exhibit A – Declaration of Patrick Tuter) + **APP-039 to APP-040** (Exhibit B – State Commission on Judicial Conduct Ruling)). On September 17, 2024, Judge Roach found Tuter in criminal contempt and ordered incarceration through October 8, 2024 (**APP-066 to APP-096** (Exhibit H – Contempt Order, September 17, 2024)).

11.     On December 10, 2024, Tuter filed a recusal motion (**APP-049 to APP-061** (Exhibit F – Motion for Recusal of Judge John Roach and Judge Ray Wheless, December 10, 2024)). On December 11, 2024, Presiding Judge Wheless assigned former Judge Kim Cooks to hear the motion (**APP-043 to APP-044** (Exhibit D – Order Assigning Judge Kim Cooks, December 12, 2024)). Tuter received notice at 9:29 a.m. on December 12 and filed his *§ 74.053* objection at 3:21 p.m. that same day (**APP-045 to APP-048** (Exhibit E – Objection to Judge Kim Cooks, December 12, 2024)). Despite the timely objection and without notice of any hearing, Judge Cooks proceeded on December 12, 2024 and denied the recusal motion as to both Judge Roach and Presiding Judge Wheless (**APP-043 to APP-044** (Exhibit D) + **APP-045 to APP-048** (Exhibit E)). Tuter's final trial is set for February 16, 2026; Judge Roach continues to preside despite the spouse-mediator conflict (**APP-062 to APP-065** (Exhibit G – Docket Entries)).

### D. Yan (Tarrant County)

12.     On May 1, 2024, Yan filed a Rule 145 Statement of Inability to Afford Payment of Court Costs **(APP-145 to APP-147 (Exhibit B – Statement of Inability))**. Yan proceeded for several months without any contest, and his financial circumstances did not materially change during that period. On October 7, 2024, Yan filed a Notice of Appeal, and on October 16, 2024, he filed a Motion for New Trial and Request for Findings of Fact and Conclusions of Law disclosing his appellate grounds and constitutional challenges (**APP-137 to APP-138 (Exhibit A – Declaration of Conghua Yan**)).

13.     After this appellate activity, the public docket reflected a Rule 145 contest entry—docket entry #602 (October 28, 2024)—that Yan alleges was processed by the District Clerk's office, including that the contest was submitted in court reporter Moss's name and that Deputy Clerk LaToya Turner accepted/processed it on Moss's behalf without assessing required contest filing fees **(APP-138 to APP-139 (Exhibit A – Declaration of Conghua Yan))**.

14.     Yan alleges he received only a single-page composite "notice" that combined a fragment of the contest with Court Coordinator Lisa Grimaldi's handwritten hearing setting/signature, with a hearing date that was not clearly legible; the page had no clerk file-stamp, no e-filing acceptance/confirmation, no certificate of service, and no judge-signed hearing-setting order. Yan further alleges the notice provided only nine days' notice before the November 6, 2024 hearing, and that Rule 145 requires ten days' notice before an indigent-status contest proceeding may be conducted. Yan sought clarification but received none (APP-138 to APP-140 (Exhibit A – Declaration of Conghua Yan)).

15.     On November 6, 2024, retired Judge Crawford R. "Randy" Catterton proceeded in Yan's absence; Yan alleges his nonappearance resulted from unclear and insufficient notice. Yan alleges that no written Chapter 74 assignment order authorizing Catterton to act was filed, docketed, or served before November 6, and that Yan received no timely notice of any § 74.053 objection right before the hearing. The order denying Yan's Rule 145 Statement was later filed on November 12, 2024

(docket entry #593) **(APP-139 to APP-140 (Exhibit A – Declaration of Conghua Yan))**.

16.     On January 6, 2025, the Thirteenth Court of Appeals vacated the November 6 denial and abated for findings; Yan alleges the appellate order did not direct the assignment of any particular visiting judge. Nevertheless, on January 13, 2025, at Judge Terry's instruction, Grimaldi requested Defendant Catterton and allegedly mischaracterized the appellate order by claiming the appellate court had explicitly requested Defendant Catterton to sit in the trial court. Yan further alleges that Defendant Catterton issued another Rule 145 order on January 13, 2025, without notice to Yan **(APP-140 to APP-141 (Exhibit A – Declaration of Conghua Yan) + APP-197 to APP-200 (Exhibit L – Thirteenth COA Order of Abatement))**.

17.     Yan later received notice (docket entry #636) on February 6, 2025 of an assignment/appointment action bearing a January 9, 2025 signature date—i.e., backdated relative to Grimaldi's actual request (APP-140 to APP-141 (Exhibit A – Declaration of Conghua Yan) + APP-173 to APP-176 (Exhibits F–G – Assignment Request and Assignment Order)). On February 11, 2025, Yan filed his first § 74.053 objection in the case (docket entry #638) (APP-182 to APP-186 (Exhibit I – Objection to Assignment Order)). Judge Catterton denied the objection and referred it to Presiding Judge Evans (docket entry #640) (APP-187 to APP-188 (Exhibit J – Order of Referral)). As of the date of Yan's declaration, Yan has not received a written order from Evans granting or denying that objection (APP-141 (Exhibit A – Declaration of Conghua Yan)).

18.     Yan alleges that, although he objected after receiving assignment notice, the objection was denied/referred and remains unresolved by any written Evans order. Yan alleges that the resulting loss of Rule 145 protection arose from the deprivation of a meaningful pre-hearing opportunity to exercise § 74.053 and predictably created

cost barriers to appellate review, including dismissal of at least one appeal for want of prosecution based on failure to pay required costs.

19.     Yan further alleges that Judge Cynthia Terry was not absent, disabled, recused, or disqualified on November 6, 2024 or January 13, 2025 (or thereafter).

20.     Separately and later, Yan alleges that Evans assigned retired Judge Bill Harris (docket entry #706); Yan filed a verified objection/recusal request regarding Harris's assignment (docket entry #734, October 6, 2025); and subsequent proceedings resulted in sanctions of approximately $6,000 (docket entry #752).

21.     Yan further alleges the retaliatory pattern continued through additional clerk-facilitated "proxy contests" after his appellate activity, including contests filed on or about August 5, 2025 in Cause No. 048-344791-23 and December 5, 2025 in Cause No. 360-707596-21. In another matter (Cause No. 325-584465-15), Moss likewise contested a Rule 145 statement without paying contest filing fees, illustrating the same pattern. Yan remains an active litigant with additional hearings anticipated within twelve months.

### E.  Structural Conflicts and Systemic Practices

22.     Plaintiffs allege Defendants Catterton, Harris, and Dean (https://www.sheriydean.com/) maintain for-profit mediation/ADR businesses in the same counties where they preside as visiting judges, soliciting referrals from attorneys appearing before them. Texas Code of Judicial Conduct Canon 4F bars active judges from compensated mediation precisely because it creates impartiality concerns—yet Chapter 74 permits retired judges to do both. Texas Government Code § 74.055(c)(6) requires senior judges to certify they "will not engage in the private practice of law," and § 74.0551 further restricts private practice. These provisions reflect the Legislature's judgment that outside legal and quasi-legal work creates disqualifying conflicts.

23.     Plaintiffs further allege that the Office of Court Administration ("OCA"), which reports to Defendant Blacklock, maintains and publishes the statewide Chapter 74 eligibility list used for assignments, including listings for Defendants Catterton and Harris while they simultaneously operate for-profit mediation businesses.

24.     Plaintiffs allege Defendant Blacklock has statutory authority to issue corrective administrative directives through OCA under Tex. Gov't Code §§ 74.021 and 74.023, yet did not

adopt statewide conflict-screening or disclosure safeguards applicable to the Chapter 74 assignment system.

25.    The pattern across Plaintiffs' cases is consistent: visiting judges exercise authority without filed-and-docketed written assignment orders, without timely notice enabling § 74.053 objections, and without conflict disclosure. Assignment records are treated as non-public, creating a "black box" that prevents litigants from verifying authority or exercising objection rights.

26.    Plaintiffs allege this opacity is maintained at both the statewide and regional levels: OCA (under Chief Justice Blacklock) and regional presiding judges (including Defendant Evans in the Eighth Administrative Judicial Region and Defendant Brown in the Eleventh) have denied, failed to produce, or treated written assignment orders/records as unavailable as public records—leaving litigants unable to confirm before a hearing whether a valid written assignment order exists and has been docketed.

27.    Plaintiffs further allege Defendant Evans routinely issues or approves open-ended assignment orders granting broad authority ("any other matters" / "other cases") while elected judges remain available, compounding the lack of pre-hearing notice and the inability to exercise § 74.053 rights in time.

28.    Plaintiffs also allege a corroborating statewide example of the same "pre-act safeguard gap": in June 2023, it was publicly reported that multiple appointed judicial actors in Dallas County exercised judicial authority for an extended period despite an eligibility defect (statutory residency).

29.    Plaintiffs allege that, following that public reporting, Defendant Blacklock (through OCA) did not implement statewide verification-and-notice protocols to prevent recurrence, and that Plaintiffs' later injuries and ongoing risk occurred in the same administrative environment.

## IV.    ARGUMENT

### A. PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS

i.    **Standing**

30.    Each Plaintiff remains an active litigant facing a real and immediate threat of recurrence. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (requiring a "real and immediate" threat

of future injury for injunctive standing, not mere speculation about possible future harm). The threat here is "real and immediate," not speculative, because: (a) each Plaintiff is currently in ongoing state proceedings with upcoming hearings or continuing case activity (Facts ¶¶ 8–11, 18) (**APP-015 to APP-026** (Exhibit D – January 1, 2026 Docket)); (b) Plaintiffs allege the challenged practices have already recurred across multiple counties and contexts (Facts ¶¶ 8–18, 22–24); (c) Plaintiffs allege that assignment orders/records are withheld, denied, or treated as non-public—creating a "black box" that prevents litigants from confirming lawful authority or filing a timely § 74.053 objection before the "first hearing" (Facts ¶¶ 22–24); and (d) the publicly reported Dallas County residency-eligibility episode corroborates the same "pre-act safeguard gap," showing that eligibility/assignment defects can persist for extended periods absent statewide verification-and-notice protocols (Facts ¶¶ 25–26); and (e) unlike the speculative future police encounters in *Lyons*, Plaintiffs face certain exposure in their active cases.

31.     Defendants have repeatedly implemented the challenged practices in Plaintiffs' matters, and—distinguished from the post-violation remedies available in *O'Shea*—the injury—loss of mandatory pre-deprivation safeguards—cannot be fully cured after the fact. *O'Shea v. Littleton*, 414 U.S. 488, 495-97 (1974) (past exposure alone insufficient for injunctive standing absent continuing adverse effects or imminent repetition; prospective relief unwarranted where injury can be remedied post-violation). And the recurrence risk is traceable to the challenged statewide/regional administration of the Chapter 74 assignment ecosystem (OCA/eligibility list and regional assignment practices) together with the local notice/record practices that defeat pre-hearing objections; Plaintiffs allege they cannot reliably learn who will preside, or whether a valid written assignment order exists and is docketed, until after judicial power is exercised. Prospective relief requiring pre-hearing filing/docketing and disclosure/record access directly prevents the irreparable, one-time *§ 74.053* injury (loss of mandatory objection right before the first hearing) and is therefore redressable. Yan's unresolved *§ 74.053* absolute objection right (denied/referred with no written Evans disposition) shows continuing effects and supports a real and immediate risk of recurrence.

ii.     **Denial of Notice and Statutory Objection Right (Counts I, III)**

32.     Texas Government Code § 74.053 creates a mandatory, peremptory scheme: parties receive one absolute, automatic objection to a retired/former visiting judge if timely filed ("each party to

the case is only entitled to one objection"). Upon timely objection, the assigned judge is disqualified as a matter of law and has no authority to overrule, deny, or rule on the objection; subsequent acts are void. Section 74.053(a) requires the assignment order to identify whether the assigned judge is active, retired, former, or senior. This pre-deprivation safeguard is meaningful only with timely notice. See Legal Framework § C.

33.     To constitute "meaningful exercise" of the § 74.053 right, notice must provide reasonable time for the party to: (1) receive and review the assignment order; (2) investigate potential conflicts or grounds for objection; (3) prepare and file the objection; and (4) have the objection processed before the visiting judge takes any judicial act. At minimum, this requires actual notice substantially in advance of the first hearing—consistent with the statute's 7-day window from actual notice and analogous to Texas Rule of Civil Procedure 21(b)'s requirement of "reasonable notice" for hearings generally. Same-day notice (as in Tuter's case, Facts ¶11) or post-act notice (as in Randles's, Ross's, and Yan's cases, Facts ¶¶8-9, 15) (**APP-001 to APP-002** (Exhibit A – Declaration) + **APP-035 to APP-036** (Exhibit G – Email)) defeats the objection right entirely. Notice must also be in writing, filed and docketed, and served in a manner that creates a record enabling verification of the assignment's validity and timing. Informal, extra-record, or staff-transmitted notices (Facts ¶¶14, 37) are insufficient because they prevent timely confirmation and exercise of the absolute pre-hearing objection right.

34.     *Randles and Yan*: Catterton acted, including signing contempt commitments and stripping Rule 145 protections, without any filed assignment order and without notice of *§ 74.053* rights. Yan later received assignment notice and filed his § 74.053 objection; Catterton denied/referred it to Evans, and no written Evans ruling has issued. (**APP-027 to APP-030** (Exhibit E – Contempt Order) + **APP-003 to APP-026** (Exhibits B & D – Dockets) + **APP-001 to APP-002** (Exhibit A – Declaration) + APP-139 to APP-141 (Volume IV, Exhibit A – Yan Declaration re no pre-act assignment/notice and no Evans order) + APP-173 to APP-176 (Volume IV, Exhibits F–G – Assignment request and order) + APP-182 to APP-186 (Volume IV, Exhibit I – Yan § 74.053 objection) + APP-187 to APP-188 (Volume IV, Exhibit J – referral to Evans)).

35.     *Ross*: Dean exercised authority, including contempt power resulting in incarceration, without timely notice (**APP-102 to APP-126** (Exhibit C – Contempt Order, May 2024)). Ross did

not learn of her *§ 74.053* right until December 2025, after Dean had already acted. (**APP-097 to APP-098** (Exhibit A – Declaration) + **APP-134 to APP-136** (Exhibit G – Court Register))

36.    *Tuter*: Same-day notice and proceeding (notice at 9:29 a.m., objection at 3:21 p.m., hearing proceeded without notice to Tuter) defeated the objection right entirely (**APP-045 to APP-048** (Exhibit E – Objection filed 3:21 p.m.) + **APP-043 to APP-044** (Exhibit D – Assignment Order filed 9:44 a.m.)). Judge Cooks acted despite the timely-filed objection; under § 74.053, no assigned judge may deny, overrule, or "rule on" a timely objection, rendering such acts void (**APP-045 to APP-048** (Exhibit E – Objection) + **APP-037 to APP-038** (Exhibit A – Declaration)).

37.    These facts establish arbitrary and inconsistent notice practices that render § 74.053 illusory. See Legal Framework § B. The State cannot defeat this mandatory pre-deprivation safeguard through nondisclosure or inadequate notice and then claim waiver by default.

### iii.    <u>The § 74.053 Objection Right Is Non-Waivable and Self-Executing</u>

38.    Tex. Gov't Code § 74.053 creates an absolute, self-executing objection right. Upon a timely objection, the assigned judge "shall not hear the case"—disqualification is automatic and mandatory, with no judicial discretion to overrule or rule on the objection; subsequent acts are void. No judicial merits review is authorized; subsection (d) confirms that a party need not prove grounds.

39.    Because each party is entitled to only one § 74.053 objection, the State cannot nullify that one-time protection through inadequate or post-act notice. Practices that hinder or prevent timely exercise of the right—such as nondisclosure of assignments—cannot create constructive waiver. Construing the statute to permit constructive waiver would defeat the Legislature's design. See *Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 254 (Tex. 2019) (due process prohibits government from enforcing procedural requirements after misleading or hindering a party's ability to comply, denying access to statutory protections).

40.    Accordingly, Judge Cooks lacked authority to deny Tuter's § 74.053 objection (Facts ¶ 11) (**APP-045 to APP-048** (Exhibit E – Objection) + **APP-043 to APP-044** (Exhibit D – Assignment Order)). A timely objection automatically disqualifies the challenged judge and requires reassignment; any contrary practice converts a mandatory strike into discretionary recusal. The § 74.053 strike is distinct from Tex. R. Civ. P. 18a.

41.    Due process reinforces this reading. When state law creates a mandatory procedural safeguard entitling litigants to specific protections, they have a protected federal interest that cannot be arbitrarily deprived. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) (state cannot arbitrarily disregard statutory entitlement to procedural right, creating liberty interest preserved against capricious denial). Systemic practices that render § 74.053 illusory through arbitrary nondisclosure or inconsistent notice inject the arbitrariness condemned in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) (state procedures cannot randomly or systematically extinguish access to protected statutory claims without due process).

iv.    **Financial Conflicts of Interest (Count I)**

42.    Defendants Catterton, Harris, and Dean maintain active mediation businesses while sitting by assignment in the same courts where those attorneys appear (**APP-097 to APP-098** (Exhibit A – Declaration of Kaitlan Ross) [for Dean] + APP-201 to APP-202 (Volume IV, Exhibit M – Mediator List showing Catterton listed as mediator) + APP-205 to APP-207 (Volume IV, Exhibit N – Facebook post promoting mediation with Catterton) + APP-208 to APP-216 (Volume IV, Exhibit O – Harris posts referencing mediation/private judging/mediation activity)). This ongoing financial dependence on attorney referrals and goodwill creates the "possible temptation" to impartiality that due process forbids, even absent direct stakes in particular cases. This creates exactly the "possible temptation" that Tumey v. Ohio, 273 U.S. 510 (1927), and Ward v. Village of Monroeville, 409 U.S. 57 (1972), condemn (due process violated where judge has direct or institutional financial incentive offering "possible temptation to the average man as a judge" to bias rulings, denying neutral adjudication). See Legal Framework § A. Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), further requires recusal where circumstances create a serious probability of actual bias. The injury exists whenever the structural incentive exists, without proof of actual bias in the individual case. Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr., 508 U.S. 602, 617 (1993) (due process implicated by interests posing realistic temptations to impartiality).

43.    Spouse-Mediator Conflict: Defendant Roach's spouse received $2,800 in mediation fees from the parties in Tuter's case. Under Texas community property law, Judge Roach has a direct, personal financial interest in income from the litigation over which he presides (**APP-039 to APP-040** (Exhibit B – State Commission on Judicial Conduct Ruling))—presenting an even more direct

and substantial conflict than the ongoing referral relationships in the mediation businesses above. No conflict screening or disclosure occurred before any of these judges acted (**APP-037 to APP-038** (Exhibit A – Declaration of Patrick Tuter)).

v.   **Unlawful Concurrent Jurisdiction (Count II)**

44.     The Texas Constitution permits a visiting judge only as a temporary substitute when the elected judge is "absent, or is from any cause disabled or disqualified from presiding." Tex. Const. art. V, § 7(e). In Randles's case, to his knowledge, the elected judge was not absent, disabled, recused, or disqualified on June 4 or June 6, 2025, yet Catterton exercised authority on both dates without any filed assignment order documenting the constitutional predicate (**APP-001 to APP-002** (Exhibit A – Declaration) + **APP-003 to APP-026** (Exhibits B & D – Dockets) + **APP-027 to APP-030** (Exhibit E – Contempt Order)). See Legal Framework § D (*Nguyen*).

45.     Items 1–2 prevent this Count II violation by requiring a written assignment order that states the basis for the assignment and is filed, docketed, and served with sufficient time for meaningful exercise of § 74.053. That requirement forces the constitutional predicate to appear on the public record before the visiting judge acts.

46.     This theory also explains why § 74.053 cannot be forfeited through inadequate or post-act notice. If the constitutional predicate is missing, the tribunal is unlawfully constituted and the defect is fundamental and jurisdictional; subject-matter jurisdiction cannot be waived or presumed. Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990) (subject-matter jurisdiction essential to court's authority; absent it, actions void and challengeable at any time). Opaque assignment practices conceal the predicate until after the first hearing, when the statutory strike is already lost.

47.     Because the deprivation is predictable under established assignment and notice practices, pre-deprivation safeguards are required. *Zinermon v. Burch*, 494 U.S. 113, 136–39 (1990).

48.     Nor is post hoc review an adequate cure. Tribunal-composition defects are structural and not subject to harmless-error analysis. Nguyen v. United States, 539 U.S. 69, 83–84 (2003) (improper judicial composition requires automatic vacatur); Williams v. Pennsylvania, 579 U.S. 1, 8–14 (2016) (due process violations from biased or improper judicial participation are structural); Ryder v. United States, 515 U.S. 177, 182–83 (1995) (timely challenge to improper judicial

appointment entitles party to relief, including new hearing before valid tribunal). Prospective relief preventing recurrence is therefore necessary for active litigants.

vi.   **325th District Court Administrative Practices (Yan)**

49.     Defendant Grimaldi transmitted assignment and hearing information through informal, extra-record channels—including a composite page with an illegible handwritten date (APP-166)—instead of a filed-and-docketed assignment order and a judge-signed hearing-setting order. This staff-driven practice, under Defendant Terry's supervision, bypassed official notice mechanisms and facilitated the notice failures alleged in Counts I–III. Prospective relief should require that assignment authority and hearing settings be communicated through filed, docketed, and served orders.

50.     These practices fall below constitutional notice. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950) (publication insufficient when more reliable methods practicable; notice must enable meaningful response). A non-file-stamped composite page with no certificate of service and an illegible handwritten hearing date provides no reliable, verifiable notice; and the shortened timeline alleged here (nine days instead of the required ten) prevents meaningful exercise of statutory rights.

51.     The harm is not technical. Without a filed-and-docketed assignment order, a litigant cannot verify from the public record whether the visiting judge had constitutional authority under Tex. Const. art. V, § 7(e) or whether statutory prerequisites were satisfied (Tex. Gov't Code §§ 74.053(a), 74.056). When mandatory pre-hearing safeguards depend on opaque, informal staff communications, the deprivation becomes systemic and arbitrary in the manner Logan forbids. Logan v. Zimmerman Brush Co., 455 U.S. 422, 432–33 (1982) (state procedures cannot arbitrarily or systematically terminate protected property interest in statutory claim without due process).

52.     Subdelegating assignment-request and notice functions to non-judicial staff thus creates a structural risk to tribunal constitution and to the one-time § 74.053 strike. Because tribunal-composition defects are structural, and a timely challenge entitles the party to relief including a new hearing before a valid tribunal, the safeguard must operate before the hearing, not after. Ryder

v. United States, 515 U.S. 177, 182–83 (1995) (timely Appointments Clause challenge invalidates actions; de facto validity denied).

vii. **Rule 145 Contest Practices (Counts VI-VII, Yan)**

53.    Rule 145 creates a state-law welfare entitlement to proceed without prepayment unless a contest is properly filed and adjudicated through constitutionally adequate procedures, including the mandatory sworn-evidence predicate. See Legal Framework § E. The indigent status, once established, becomes a property interest that cannot be terminated without pre-deprivation due process.

54.    Yan's indigent status was stripped through: (1) a contest accepted without required filing fees (APP-168); (2) defective notice with illegible hearing date and only nine days' notice (APP-166); (3) no sworn evidentiary support as Rule 145 requires (APP-166); (4) no filed assignment order for the presiding judge (APP-166); and (5) no opportunity to respond before protection was terminated.

55.    This two-tier system, with preferential processing for court-affiliated contestants, imposes cost consequences disproportionately on indigent litigants, violating both procedural due process and equal protection. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (recognizing "class-of-one" equal protection claim for intentional differential treatment without rational basis). Yan satisfies the actual-injury requirement under *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (access-to-courts claims require actual prejudice to nonfrivolous litigation, such as dismissal for inability to pay costs): his appeal was dismissed for want of prosecution because he could not pay required costs, costs triggered directly by stripping his indigent status interest. Due process also protects meaningful access for indigent litigants where the State conditions adjudication or review on procedures or materials the litigant cannot obtain without assistance. *Little v. Streater*, 452 U.S. 1, 13-16 (1981) (due process violated by cost barrier foreclosing indigent defendant's opportunity for meaningful hearing in state-initiated proceeding).

56.    The timing supports retaliation: Yan filed his Rule 145 Statement on May 1, 2024 and proceeded five months without contest; the clerk-initiated contest materialized only after his October 2024 appellate filings. Non-sham litigation and appellate filings constitute protected petitioning activity. *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002). The First Amendment protects petitioning activity, and officials may not retaliate by imposing adverse procedural

burdens. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (Petition Clause protects against retaliation for protected petitions). County liability attaches because the challenged practices constitute policy, custom, or final policymaker conduct. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (municipal liability under § 1983 for constitutional violations caused by official policy or custom). Retaliation claims apply the familiar burden-shifting framework, under which plaintiff must show protected activity was a substantial or motivating factor, but defendant may defend by proving the same decision would have been made absent the protected conduct. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). In the Fifth Circuit, those elements are well established. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (elements: (1) protected activity, (2) adverse action that would chill a person of ordinary firmness, (3) causation).

**B.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM**

57.    Structural constitutional violations involving due process deprivations, including judicial bias and loss of mandatory procedural safeguards, are per se irreparable. Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of constitutional rights, even briefly, constitutes irreparable injury); Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012) (extending Elrod presumption to ongoing violations of rights protecting fundamental freedoms); Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981) (impairment of constitutional right mandates irreparable injury finding). Section 74.053's objection right is one-time and pre-hearing; once a visiting judge acts without notice, that right is forever lost, and subsequent remedies cannot fully restore the impartial tribunal to which Plaintiffs were entitled. Fuentes v. Shevin, 407 U.S. 67, 82 (1972) (post-deprivation remedies insufficient when initial deprivation is significant and hearing could have prevented it).

58.    Three Plaintiffs, Randles, Ross, and Tuter, have been jailed: Randles and Ross by visiting judges acting without filed assignment orders or disclosing conflict of interest (**APP-102 to APP-126** (Exhibit C – Contempt Order) + **APP-099 to APP-101** (Exhibit B – Assignment Notice) + **APP-097 to APP-098** (Exhibit A – Declaration)); Tuter by an elected judge with an undisclosed spouse-mediator conflict (**APP-066 to APP-096** (Exhibit H – Contempt Order) + **APP-041 to APP-042** (Exhibit C – Mediation Receipt) + **APP-039 to APP-040** (Exhibit B – Judicial Conduct Ruling)). Yan suffered dismissal of his appeal and sanctions through the challenged practices. All four remain active litigants facing the same practices absent relief. State-court appeal cannot restore lost § 74.053 rights, undo proceedings before conflicted judges, or cure notice deprivations.

*Zinermon v. Burch*, 494 U.S. 113, 136-39 (1990) (pre-deprivation safeguards required where deprivation is predictable from established procedures). To the extent Defendants invoke post-deprivation remedies, that rule is limited to random and unauthorized acts; it does not apply where the deprivation predictably flows from established, repeatable procedures requiring pre-deprivation safeguards. Parratt v. Taylor, 451 U.S. 527 (1981) (post-deprivation remedies adequate only for unpredictable, random/unauthorized deprivations).

### C.  THE BALANCE OF EQUITIES FAVORS PLAINTIFFS

59.    The injunction requires only what Texas law already mandates: written assignment orders enabling *§ 74.053* objections, conflict screening *(§§ 74.055(c)(6), 74.0551)*, and compliance with constitutional prerequisites (*Art. V, § 7(e)*). Requiring OCA and regional presiding judges to ensure assignment orders/records are filed-and-docketed and meaningfully accessible before the first hearing is a modest administrative step that prevents the very "black box" failure mode Plaintiffs allege, and avoids Dallas-type systemwide breakdowns where judicial power was exercised for extended periods despite an eligibility defect. The burden on Defendants is minimal, routine administrative tasks. There is no legitimate governmental interest in continuing unlawful practices. Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 298 (5th Cir. 2012) (where irreparable constitutional injury is shown, government must present powerful evidence of harm from injunction to outweigh plaintiff's interests).

60.    Region-wide relief is necessary because presiding judges exercise discretionary authority to assign visiting judges and transfer cases across all courts within their respective Administrative Judicial Regions, and court-specific relief could be evaded through administrative transfer to a different court where identical practices would continue. Tex. Gov't Code §§ 74.054, 74.094. This scope is consistent with the principle that injunctive relief must be tailored to the extent of the violation but sufficiently broad to provide complete relief and prevent circumvention of the court's order. Califano v. Yamasaki, 442 U.S. 682, 702 (1979) (scope of injunctive relief dictated by extent of violation, permitting broad relief beyond individual plaintiffs if needed); Horne v. Flores, 557 U.S. 433, 450 (2009) (injunctions must remedy specific violation without unnecessary overbreadth but ensure full relief).

### D.  THE PUBLIC INTEREST SUPPORTS THE INJUNCTION

61.     "Courts ... have an independent interest in ensuring that ... legal proceedings appear fair to all who observe them." Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 889 (2009) (due process demands not only impartiality but the appearance of justice to maintain public confidence). Public reporting from Dallas County illustrates the systemic costs when eligibility/assignment prerequisites are not verified and disclosed before judicial power is exercised: litigants' rights are clouded, orders become vulnerable, and confidence in judicial neutrality erodes. The injunction requires only compliance with existing statutory and constitutional requirements, imposing no new obligations while advancing the paramount public interest in transparent, impartial adjudication. See Republican Party of Minn. v. White, 536 U.S. 765, 793 (2002) (Kennedy, J., concurring) (states bear responsibility for practices that undermine judicial impartiality).

### E.  EX PARTE YOUNG AND JURISDICTIONAL DEFENSES

#### i.  **Ex parte Young Applies**

62.     The relief Plaintiffs seek is purely prospective, alleging ongoing violations of federal due process, targets ongoing violations of federal law, and requires no payment from the state treasury. Ex parte Young, 209 U.S. 123, 159–60 (1908) (sovereign immunity no bar to prospective injunction against state officials enforcing unconstitutional practices); Edelman v. Jordan, 415 U.S. 651, 664 (1974) (distinguishing prohibited retroactive monetary relief). The requested injunction regulates administrative, ministerial conduct—not judicial adjudication on case merits. Pulliam v. Allen, 466 U.S. 522, 541–42 (1984) (judicial immunity no bar to prospective injunctive relief under § 1983); Gerstein v. Pugh, 420 U.S. 103, 108–09 (1975) (Young permits injunction against systemic pretrial procedures).

63.     Plaintiffs seek prospective relief directed at Defendants' ministerial/administrative administration of the Chapter 74 assignment system, including eligibility screening, issuance, filing, docketing, and service of written assignment orders, and pre-hearing notice sufficient to permit a meaningful § 74.053 objection.

64.     The injunction would not reopen or revise any state-court judgment, not award retrospective monetary relief, and not direct how any judge decides the merits of any case. These administrative acts are properly enjoined under Ex parte Young because Plaintiffs allege that the same assignment-and-notice regime continues to operate and will likely recur while Plaintiffs

remain active litigants. Texas courts likewise recognize that judicial assignment is a ministerial function, not an adjudication on the merits. In re Gonzalez, 115 S.W.3d 36, 39 (Tex. App.—San Antonio 2003, orig. proceeding) (mandamus appropriate for improper assignment as ministerial act); cf. Buckholts Indep. Sch. Dist. v. Glaser, 632 S.W.2d 146, 148 (Tex. 1982) (orders by disqualified judge void). Ex parte Young applies where, as here, Plaintiffs seek prospective declaratory and injunctive relief to end an ongoing violation of federal law. Verizon Md. Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (straightforward inquiry: ongoing federal violation + prospective relief). Defendants are proper parties because the injunction runs against them in their official capacities for conduct taken under color of state law. Hafer v. Melo, 502 U.S. 21, 25 (1991) (official-capacity suits proper for prospective relief under Young).

### ii.    **Younger Abstention Does Not Apply**

65.    Younger applies only to three "exceptional" categories of ongoing state proceedings: criminal prosecutions, civil enforcement actions akin to criminal, and civil proceedings uniquely furthering state courts' judicial functions. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78-79 (2013) (rejecting broad application merely due to parallel proceedings). This case falls outside all three. Plaintiffs do not ask the Court to stop any state proceeding; they challenge pre-assignment administrative practices that precede adjudication and operate independently of any one case, seeking prospective relief against systemic notice and assignment failures. Steffel v. Thompson, 415 U.S. 452, 462, 475 (1974) (declaratory relief proper against threatened enforcement absent pending prosecution); Google, Inc. v. Hood, 822 F.3d 212 (5th Cir. 2016) (Younger inapplicable to pre-enforcement challenge against investigative actions). Younger is "exceptional," and the Sprint categories control. Entm't Ass'n, Inc. v. Hegar, 10 F.4th 495, 504-05 (5th Cir. 2021); Evans v. Garza, No. 23-50541 (5th Cir. Dec. 9, 2025) (no abstention absent ongoing prosecution).

### iii.    **Rooker-Feldman Does Not Apply**

66.    Rooker-Feldman bars only cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (narrowing doctrine to de facto appeals of final state judgments). The key inquiry is the true source of the plaintiff's alleged injury: if it arises from the defendant's independent actions or conduct rather than the state judgment itself, the claim is not barred. Truong v. Bank of Am., N.A., 717 F.3d 377, 382–83 (5th

Cir. 2013) (establishing source-of-injury test; doctrine inapplicable where harm stems from banks' fraudulent submissions enabling foreclosure judgment). The "source of injury" alleged here is Defendants' administrative conduct (secret/non-public assignment records; assignments and notice practices that defeat pre-hearing objection rights; conflict-screening failures), not an adverse state judgment. See English v. Crochet, No. 25-30074 (5th Cir. Oct. 8, 2025) (reaffirming Truong; doctrine inapplicable where injury from defendants' conduct during proceedings, even if contributing to judgment). See also Miller v. Dunn, 35 F.4th 1007, 1010-13 (5th Cir. 2022) (no bar where state appeals pending at federal filing). Rooker-Feldman is narrow and does not bar independent federal claims for prospective relief targeting ongoing unconstitutional practices. Lance v. Dennis, 546 U.S. 459, 464-66 (2006).

## V.    CONCLUSION

67.    For the reasons set forth above, Plaintiffs have demonstrated: (1) substantial likelihood of success on the merits; (2) irreparable harm absent relief; (3) balance of equities in their favor; and (4) that the public interest supports the injunction.

68.    Plaintiffs respectfully request that this Court grant the Motion for Preliminary Injunction and enter relief consistent with the Requested Relief set forth therein.

Respectfully submitted,


*/s/ Samuel Randles*
Samuel Randles
5001 SH114E, Apt 1313, Roanoke, TX 76262
(214) 250-6187 | randles.sam@gmail.com

*/s/ Kaitlan Ross*
Kaitlan Ross
915 County Road 2719, Goldthwaite, TX 76844
(512) 529-0294 | Kaitlan.ross33@gmail.com

*/s/ Patrick Tuter*
Patrick Wayne Tuter
430 Christi Ln., Princeton, TX 75407
(214) 497-6152 | patrick762soldier@hotmail.com

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092

(214) 228-1886 | arnold200@gmail.com

## CERTIFICATE OF CONFERENCE

Pursuant to N.D. Tex. Local Civ. R. 7.1(b), Plaintiffs certify that this is the initial filing and Defendants have not agreed to the requested relief.

## CERTIFICATE OF SERVICE

I certify that on January 9, 2026, I served a true and correct copy of this motion on Defendants by USPS certified mail at their respective service addresses.

*/s/ Samuel Randles*
Samuel Randles, on behalf of all Plaintiffs