**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | |
|---|---|
| Samuel Randles, et al., | ) |
| | ) |
|      Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4-25CV1422-0 |
| | ) |
| Jimmy Blacklock, et. al. | ) |
| | ) |
|      Defendants, | ) |

**PLAINTIFFS' RESPONSE AND OBJECTION TO JUDGE RAY WHELESS'S MOTION TO DISMISS AND MEMORANDUM**

## Table of Contents

Table of Contents ................................................................................................................... 2

Table of Authorities................................................................................................................. 3

I.      INTRODUCTION ............................................................................................................. 4

II.     STANDARD OF REVIEW ................................................................................................ 5

III.    ARGUMENT AND AUTHORITIES ................................................................................. 6

   A.     Plaintiffs Have Article III Standing ............................................................................ 6

     *Standing Framework* ................................................................................................ 6

     *Injury in Fact: Concrete Procedural Deprivations* .................................................... 8

     *Redressability: Prospective Relief Would Remedy the Injury* ................................ 12

     *Standing of Co-Plaintiffs* ........................................................................................ 14

   B.     The Eleventh Amendment Does Not Bar This Suit................................................... 15

     *The Ex Parte Young Exception Applies* ................................................................... 15

     *The Violations Are Ongoing* ................................................................................... 16

     *Plaintiffs Seek Only Prospective Relief* .................................................................. 17

     *Standing And The Young Exception Overlap* .......................................................... 18

   C.     *Younger* Abstention Does Not Apply ....................................................................... 18

     *Middlesex and Moore Involved State-Initiated Proceedings, Not Applicable Here*............................ 18

     *Sprint Limits Younger To Three Exceptional Categories And Supersedes Pre-2013 Cases* .............. 19

     *Even If Younger Applied, State Remedies Are Inadequate* ..................................... 19

     *Fifth Circuit Cases Are Distinguishable And Misapplied* ........................................ 20

   D.     Plaintiffs Have Stated Valid Claims for Relief ......................................................... 21

     *Plaintiffs' Allegations Satisfy Twombly/Iqbal* ......................................................... 21

     *This Is Not Mere Dissatisfaction with State Court Rulings* ..................................... 23

     *The Prior Tuter Removal Case Is Irrelevant* ........................................................... 24

IV.     CONCLUSION................................................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................................ 26

## Table of Authorities

### Cases

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ..................................................................................... 5

*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003 ......................................................................... 7

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ................................................................... 5

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024) ...................................................... 6

*Burgess v. Cox*, 2015 WL 5578310 (E.D. Tex. 2015) ........................................................... 21

City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) .......................................................... 17

*Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147 (1942) ................................................ 9

*Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc) .................................... 13, 19

*Dawkins v. Meyer*, 825 S.W.2d 444, 448 (Tex. 1992) .......................................................... 9

*DeSpain v. Johnston*, 731 F.2d 1171 (5th Cir. 1984) ......................................................... 19

*Diaz v. Cantu*, 123 F. 4th 736 (5th Cir. 2024) .................................................................. 7, 9

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) ......................................................... 6

*Ex parte Young*, 209 U.S. 123 (1908) .................................................................................. 4

*Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306 (5th Cir. 2021) ...................... 13

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ........................................................... 21

*Green v. Mansour*, 474 U.S. 64 (1985) ............................................................................... 17

*Hicks v. Oklahoma, 447 U.S. 343 (1980)* ............................................................................ 23

*In re Houston Lighting & Power Co.*, 976 S.W.2d 671 (Tex. 1998) (per curiam) (orig. proceeding) ............ 11

*In re Perritt*, 992 S.W.2d 444 (Tex. 1999) (per curiam) (orig. proceeding) ..................... 10

*In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (per curiam) (orig. proceeding) ................ 10

*La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025) ....................... passim

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ..................................................... 23

*Machete Productions, L.L.C. v. Page*, 809 F.3d 281 (5th Cir. 2015) ................................ 17

*Mi Familia Vota v. Ogg*, 101 F.4th 313 (5th Cir. 2024) ...................................................... 18

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ......... 18

*Mitchum v. Foster*, 407 U.S. 225 (1972) ............................................................................ 20

*Moore v. Sims*, 442 U.S. 415 (1979) .................................................................................. 18

NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389 (5th Cir. 2015) ........................................ 16

*Reed v. Goertz*, 598 U.S. 230 (2023) ............................................................................ 13, 17

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) ............................................................. 9

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) ....................................... 18, 19

*Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669 (5th Cir. 2022) ..................................... 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................................................... 6

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) .......................................... 7, 14

*Wightman v. Tex. Supreme Ct.*, 84 F.3d 188 (5th Cir. 1996) ..................................... 19, 20

### Statutes

*42 U.S.C. § 1983* ................................................................................................................. 4

*Tex. Const. art. V, § 1* .......................................................................................................... 9

*Tex. Const. art. V, § 11* ........................................................................................................ 9

*Tex. Gov't Code § 74.053(b)* ................................................................................................ 4

TO THE HONORABLE JUDGE O'CONNOR:

NOW COME Plaintiffs Samuel Randles, Kaitlan Ross, Patrick Tuter, and Conghua Yan ("Plaintiffs"), and respectfully submit this Response in Opposition to Defendant Judge Ray Wheless's Motion to Dismiss. For the reasons stated below, Defendant Wheless's Motion should be DENIED in its entirety.

## I.  INTRODUCTION

1.    Defendant Wheless seeks dismissal based on a fundamental mischaracterization of Plaintiffs' claims and the applicable law. This case does **not** seek to have a federal court review the merits of state court decisions or direct state judges in the performance of their duties. Rather, Plaintiffs challenge a systemic pattern of constitutional violations perpetrated through the machinery of Texas family courts, violations that fall squarely within federal jurisdiction under *42 U.S.C. § 1983* and the remedial authority of *Ex parte Young*, 209 U.S. 123 (1908).

2.    Defendant Wheless's arguments fail for several critical reasons:

3.    First, Plaintiffs have Article III standing. They allege concrete and particularized procedural injuries, including the denial of Chapter 74 meaningful notice right and the practical nullification of the *Tex. Gov't Code § 74.053(b)* objection right, injuries traceable to Defendant Wheless's challenged assignment-and-notice practices and redressable by prospective relief. (ECF No. 9, ¶¶ 143-58, 159-98, 224-31).

4.    Second, the Eleventh Amendment does not bar this suit. *Ex parte Young* permits suits against state officials acting in violation of federal law, and Plaintiffs seek only prospective injunctive

relief to prevent ongoing constitutional violations, precisely the type of relief contemplated by *Young*.

5.    Third, *Younger* abstention does not apply. The Supreme Court has repeatedly held that *Younger* does not bar federal suits where state proceedings are fundamentally flawed or where adequate state remedies are unavailable, both conditions present here.

6.    Finally, Plaintiffs have stated viable claims for relief. Their Complaint alleges specific, factual allegations of constitutional violations, not conclusory statements. (ECF No. 9, ¶¶ 59-66, 106-42).

7.    The issues and arguments in this filing apply to all Defendants alleged to be involved in the challenged Chapter 74 practices, except those involved in the challenged Rule 145 indigency practices.

## II.   STANDARD OF REVIEW

8.    On a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiffs' favor, but disregards legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The question is not whether Plaintiffs will ultimately prevail, but whether they have stated a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

9.    Rule 8 sets a minimal pleading threshold: a complaint need only contain "a short and plain statement" showing entitlement to relief, and it need not plead detailed facts. On a motion to dismiss, the court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor. These principles apply with particular force to pro se

pleadings, which must be liberally construed and not held to the technical standards expected of

lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam).

## III.    ARGUMENT AND AUTHORITIES

10.    This Opposition proceeds in four parts. Part A addresses Article III standing. Part B addresses

Eleventh Amendment immunity and the *Ex parte Young* exception. Part C explains why *Younger*

abstention is unavailable under Sprint. Part D addresses the Rule *12(b)(6)* merits arguments.

### A.  Plaintiffs Have Article III Standing

11.    Defendant Wheless misframes Plaintiffs' injuries and the basis for federal jurisdiction.

Plaintiffs satisfy Article III standing under the three-part test: injury in fact, traceability, and

redressability. *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 274 (5th Cir. 2025);

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Book People, Inc. v. Wong*, 91 F.4th 318

(5th Cir. 2024).

12.    Defendants' "no justiciable controversy" theory as to Defendant Wheless is foreclosed by *La

Union*, where the Fifth Circuit held that the Article III standing inquiry and the *Ex parte Young*

"connection" inquiry "significantly overlap" and are "inextricably intertwined." 163 F.4th at 255.

Consistent with that overlap, the panel treated standing in defendant-specific terms, asking whether

the asserted injury is traceable to, and redressable by relief against, the particular official whose

enforcement/administrative connection is challenged. Because the standing and *Young* analyses

converge, the Court addresses both frameworks together below, with the *Young*-specific elements

addressed separately in Part B only to the extent they raise distinct issues.

*Standing Framework*

13.    Defendant Wheless's reliance on *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003), is misplaced because Bauer's no-controversy rationale depends on a predicate absent here. *Bauer* involved a facial *§ 1983* attack on a statutory scheme, probate procedures, where the court found no case or controversy with the probate judge because the asserted injury flowed from the law itself, and the judge was named only as a potential adjudicator of disputes arising under that law. *Id*. at 359 ("The case or controversy requirement … is not satisfied where a judge acts in [his] adjudicatory capacity."). Thus, *Bauer*'s holding is limited to the posture in which a plaintiff challenges the constitutionality of a statute and names the judge only because that judge would apply it.

14.    *Bauer*'s 'no justiciable controversy' language is limited to facial statutory challenges where the judge is named solely as a potential neutral arbiter, not cases challenging a judge's enforcement or administrative conduct. Defendant Wheless's broad reading of *Bauer* would render judicial immunity doctrine superfluous.

15.    The Supreme Court later framed the same principle in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021): there is ordinarily no Article III controversy "between a judge who adjudicates claims under a statute **and** a litigant who attacks the constitutionality of the statute." (emphasis added). Defendant Wheless's brief quotes **only** the **first** clause while **omitting** the **limiting second** clause, which confines the rule to facial statutory challenges.

16.    This case falls on the other side of that line. Plaintiffs do not bring a facial challenge to any statute. They do not claim any injury "caused by the law." They allege ongoing injuries caused by Defendant Wheless's own administrative conduct, his own assignment-and-notice practices that contradict Chapter 74, which are ministerial, not adjudicatory. As the Fifth Circuit recently confirmed, the Article III inquiry turns on function, not title: "Of course, titles—like 'judge' or 'court'—do not control; function does." *Diaz v. Cantu*, 123 F.4th 736, 747 (5th Cir. 2024). And

where a judge acts as an enforcer or administrator of the challenged regime rather than as an adjudicator, a case or controversy may exist. *Reule v. Jackson*, 114 F.4th 360, 365–66 (5th Cir. 2024).

17.    Accordingly, *Bauer* and *Whole Woman's Health* supply no categorical bar to Article III standing where, as here, the defendant official's challenged conduct is administrative and the injury flows not from any statute but from the official's own practices in implementing the statutory scheme. Because Plaintiffs challenge Defendant Wheless's administrative implementation of *§ 74.053*, not the constitutionality of *§ 74.053* itself, the *Bauer*/*Whole Woman's Health* framework does not apply.

18.    Under Fifth Circuit precedent, Plaintiffs must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *La Union*, 163 F.4th at 274. On a motion to dismiss, courts "presume that general allegations embrace those specific facts that are necessary to support the claim," and only one plaintiff need establish standing for each claim to satisfy Article III's case or controversy requirement. *Id*.

*Injury in Fact: Concrete Procedural Deprivations*

19.    Plaintiffs allege current, concrete deprivations of (1) Chapter 74's mandatory notice-and-objection protections and (2) federal procedural due process in ongoing proceedings. These are "concrete and particularized" and "actual or imminent" procedural injuries under *La Union*, not "conjectural or hypothetical" future harms. 163 F.4th at 274.

20.    Federal courts must determine and apply state law when state-law rules define the parties' rights and the character of the challenged conduct in a federal case. *Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991). Here, the text of Texas Government Code *§ 74.053* shows the Chapter 74 assignment-and-objection mechanism is administrative and ministerial, not adjudicative.

21.    Section *74.053(a)* requires the presiding judge to issue the assignment and give notice, case-administration steps that occur before any merits decision. Section *74.053(b)* then gives parties a unilateral objection right, confirming the objection is not a merits filing or request for judicial resolution of a disputed issue. Section *74.053(f)* expressly provides that the *§ 74.053(a)* assignment order/notice may be delivered by electronic mail, thereby shortcutting the formal service methods required by Texas Rule of Civil Procedure 21a, further indicating that the order/notice is not treated as a merits filing or a formal judicial record.

22.    *Cramer v. Sheppard*, 140 Tex. 271, 284, 167 S.W.2d 147 (1942) (holding that "[t]hose who are called upon to construe the Constitution are not authorized to thwart the will of the people by reading into the Constitution language not contained therein, or by construing it differently from its plain meaning. The people have the sole power to change or modify the plain language adopted by them. Until that is done, it remains the supreme law of the land, and should be obeyed.) *Dawkins v. Meyer,* 825 S.W.2d 444, 448 (Tex. 1992) (reaffirming that judges/courts must give full effect to the constitution's plain language and may not "question or vary" from constitutional mandates; citing *Cramer*).

23.    *Tex. Const. art. V, § 1* does not vest any judicial power in an administrative judicial region. The administrative judicial region is a statutory creation under Court Administration Act for administrative purposes, and although the officeholder is titled "presiding judge," the office itself does not possess adjudicatory jurisdiction. See *Diaz*, 123 F.4th at 747 (function, not title, controls).

9

24.    Additionally, Chapter 74's appointment mechanism is rooted in the "prescribed by law" language in *Tex. Const. art. V, § 11*, which provides: "When a judge of the District Court is disqualified by any of the causes above stated, **the parties** may, by consent, appoint a proper person to try said case; or **upon** their **failing** to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be **prescribed by law**." (emphasis added). This shows that the Legislature's Chapter 74 appointment procedure operates as a *fallback* after the parties fail to agree on a substitute. And because parties, who plainly lack adjudicatory authority deciding the merits of the controversy, may participate in selecting the substitute decisionmaker, the *selecting* function, aka *appointing* itself cannot be characterized as an adjudicatory function.

25.    The "presiding judge" of an administrative judicial region cannot acquire adjudicatory power merely because all judicial actors in Texas collectively consented. Because subject-matter jurisdiction cannot be created by consent, waiver, or agreement.

26.    If Defendant Wheless, or any presiding judge of an administrative judicial region, Evans or Brown, contends that the administrative judicial region office is vested with jurisdiction to determine the merits of a district-court case, the burden is on that defendant to identify the constitutional or statutory source of that adjudicatory authority.

27.    The Texas Supreme Court has treated a *§ 74.053* objection as a "**statutory strike**": an assigned judge may be removed because he is "subject to a statutory strike" under § 74.053(d). *In re Union Pac. Res. Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (per curiam) (orig. proceeding). And the Court has repeatedly held the consequence is mandatory and non-discretionary: once any party timely objects, removal is automatic, no reason need be stated, and replacement is required, enforceable by mandamus as a ministerial duty. *In re Perritt*, 992 S.W.2d 444, 445–46 (Tex. 1999)

(per curiam) (orig. proceeding) (citing *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex. 1997)); *In re Houston Lighting & Power Co.*, 976 S.W.2d 671, 672 (Tex. 1998) (per curiam) (orig. proceeding).

28.    Because *§ 74.053* requires no justification, it leaves nothing to "decide" on the merits; the state actor's only lawful role is to implement the binary rule—meaningful notice equals mandatory removal. So allegations that officials treated notices as discretionary or ignored timely objections challenge administrative implementation of the assignment system, not adjudication of a case's merits amongst parties, making defendant-specific connection/traceability and *Ex parte Young* the proper framework for prospective relief.

29.    Recently the Fifth Circuit authority confirms the analytical framework. In *La Union*, the Fifth Circuit held that traceability is satisfied when a defendant official "ha[s] a role in causing the claimed injur[ies]" through administrative authority, even when other officials also participate. 163 F.4th at 275. The court emphasized that direct interaction with plaintiffs is not required; what matters is administrative authority to "compel or constrain" other officials. *Id*. The court held that the Secretary of State's authority to prescribe ballot application forms created traceability even though county officials actually processed the applications.

30.    Similarly here, Defendant Wheless's authority to assign visiting judges and prescribe assignment and notice procedures creates traceability even though visiting judges conduct the hearings. His "authority to compel or constrain" visiting judges through administrative directives establishes the requisite causal connection.

31.    Indeed, Defendant Wheless's connection to Plaintiffs is more direct than the Secretary of State's connection to voters in *La Union*. Section *74.053(a)(2)* imposes a mandatory duty on the presiding judge to "give notice of the assignment to each attorney representing a party." *Tex. Gov't*

*Code § 74.053(a)(2)*. This duty runs directly from the presiding judge to the parties' counsel — not through any intermediary official. Section *74.053(b)* then provides that upon timely objection, "the judge shall not hear the case." This right is absolute, requires no cause, and leaves no discretion at any link in the chain. And *§ 74.053(e)* exempts active judges from objection while preserving the right for former, retired, and senior judges — confirming the Legislature's deliberate choice to give litigants a mandatory veto over non-active assigned judges like Defendant Cooks. The presiding judge alone controls the entire protective mechanism: notice (§ 74.053(a)(2)), deadline extensions (*§ 74.053(c)*), and the assignment order itself (*§ 74.053(a)(1)*). When Defendant Wheless's notice practices deprive a party of actual notice sufficient to exercise the *§ 74.053(b)* right, the injury flows directly from his administrative act to the party, with no intervening exercise of discretion by any other official.

32.    *La Union* also clarified that "enforcement" for *§ 1983* purposes encompasses far more than adjudication or prosecution. The Fifth Circuit held that a state official enforces a challenged provision if: "(1) the state official has 'more than the general duty to see that the laws of the state are implemented,' i.e., a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compel[s] or constrain[s] persons to obey the challenged law.'" 163 F.4th at 257-58. Defendant Wheless satisfies all three prongs through his specific statutory duty under Chapter 74, his active exercise of assignment authority, and his administrative directives that compel or constrain visiting judges.

*Redressability: Prospective Relief Would Remedy the Injury*

33.    Plaintiffs cannot exercise their absolute statutory "strike" right unless the presiding judge of the judicial administrative region initiates the process by providing meaningful notice as required

by statute, which has not occurred. Without prospective relief compelling compliance with the notice requirement, Plaintiffs cannot effectively invoke that statutory right in the future proceedings.

34.   A defendant official need only be able to provide partial relief to satisfy redressability. *La Union*, 163 F.4th at 275 ("is in a position to redress it at least in part" and "that is enough to confer standing"). Defendant Wheless is in such a position by modifying his administrative assignment and notice procedures to comply with Chapter 74's mandatory requirements and constitutional standards.

35.   The Supreme Court recently reaffirmed that declaratory and injunctive relief can satisfy redressability in *§ 1983* challenges to state procedural regimes. In *Reed v. Goertz*, 598 U.S. 230, 236-38 (2023), the Court held that a declaratory judgment would redress the injury because it would remove the legal barrier and it was "substantially likely" that state officials would comply. Likewise here, Plaintiffs' injury is the alleged denial of Chapter 74's mandatory protections. A declaration that the challenged practices violate Chapter 74 and due process would remove the unlawful procedural barrier without dictating substantive custody outcomes.

36.   Section 1983 expressly contemplates declaratory relief against judicial officers and authorizes injunctive relief in limited circumstances. *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 312 (5th Cir. 2021); *Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc). The statute permits declaratory relief without limitation and contemplates a two-step process: (1) obtain a declaratory decree establishing constitutional violations; (2) if the decree is violated or violations continue, seek injunctive relief to enforce it. This is precisely what Plaintiffs request (ECF No. 9, ¶ 226).

37.    Plaintiffs seek declaratory relief as the primary remedy (ECF No. 9, ¶¶ 224-25), and request any injunction against a judicial officer only to the extent a declaratory decree is violated or declaratory relief is unavailable (ECF No. 9, ¶¶ 226-231).

38.    Contrary to Defendant Wheless's argument, *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), supports Plaintiffs' position. The Court held that *Ex parte Young* generally does not permit injunctions against state judges whose role is to adjudicate private litigation, because those officials do not enforce the challenged law. But the Court allowed claims to proceed against executive officials with enforcement or administrative authority. *Id*. at 532-33. Here, Plaintiffs seek relief against administrative assignment and case-management practices, not adjudication itself. They do not ask this Court to enjoin Texas family courts from hearing custody matters or control merits outcomes.

*Standing of Co-Plaintiffs*

39.    Plaintiff Tuter has direct injury traceable to Defendant Wheless because Tuter's case arises within Wheless's Administrative Judicial Region and challenges Wheless's regional administration of Chapter 74 assignment/notice procedures. The other Plaintiffs do not allege injury traceable to Wheless; their standing is tied to the presiding judge(s) of their own Administrative Judicial Regions (e.g., Evans, Brown, Terry, as applicable). Whether these related claims should proceed together is a separate joinder or consolidation question under Rules 20 and 42, not a Rule 12 basis to dismiss Tuter's claims against Wheless.

40.    Moreover, "only one plaintiff need establish standing for each claim to satisfy Article III's 'case or controversy' requirement." *La Union*, 163 F.4th at 274. Even if some co-Plaintiffs lack direct interaction with Defendant Wheless, so long as at least one Plaintiff (such as Tuter) has standing for each challenged administrative practice, the claims may proceed.

B.  The Eleventh Amendment Does Not Bar This Suit

41.     Defendant Wheless's Eleventh Amendment argument fails because the *Ex parte Young* exception squarely applies. This Court should apply the Fifth Circuit's authoritative guidance in *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025), which comprehensively addresses the *Ex parte Young* exception.

*The Ex Parte Young Exception Applies*

42.     As noted in Part A, the standing and *Young* analyses "significantly overlap." *La Union*, 163 F.4th at 255. To invoke *Young*, Plaintiffs must additionally show that the named official has "some connection" with enforcing the challenged conduct — a threshold requiring only "a **scintilla** of enforcement." *Id*. at 257-58. *La Union* articulated three guideposts: (1) a "particular duty to enforce the statute in question"; (2) "a demonstrated willingness to exercise that duty"; and (3) conduct that "compel[s] or constrain[s] persons to obey the challenged law." *Id*. at 257.

43.     The statutory analysis in Part A (above) establishes that Defendant Wheless satisfies all three guideposts. His particular duty arises from *§ 74.053*'s mandatory assignment-and-notice obligations — duties running directly from the presiding judge to the parties, with no intermediary. His willingness is demonstrated by the specific instances of exercised authority alleged in the Complaint (ECF No. 9, ¶¶ 60, 62, 119–120). And his capacity to compel compliance flows from his sole control over the assignment machinery, analogous to the Secretary of State's authority over ballot application forms in *La Union*. See 163 F.4th at 258–62.

44.     Indeed, Defendant Wheless's enforcement connection is stronger than that of the Secretary in *La Union*, where the Court found a sufficient connection based on the Secretary's authority to prescribe forms that local officials were required to use. *Id*. at 261. Here, Defendant Wheless does

not merely prescribe forms, he personally issues the assignment orders, personally controls notice to counsel, and personally administers the objection process. This far exceeds *La Union*'s "**scintilla**" threshold.

45.    The statutory structure, Defendant Wheless's demonstrated willingness, and his power to compel compliance are fully set forth in Part A and incorporated here. The *Young* exception applies.

*The Violations Are Ongoing*

46.    Plaintiffs challenge systemic administrative practices affecting pending family court proceedings, not isolated past rulings. These practices remain in effect and continue to govern current proceedings. *La Union* upheld challenges to thirty-eight provisions of election law because their enforcement was ongoing. 163 F.4th at 249-52, 479-80. Plaintiffs' challenge to ongoing administrative policies is analogous.

47.    Defendant Wheless's reliance on *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015), for the proposition that future harm is "purely speculative" is misplaced. *NiGen* involved a *completed, one-time* enforcement action, a cease-and-desist letter, where the state had already taken the challenged action and the plaintiff could not demonstrate a real and immediate threat of recurrence. *Id.* at 394. The Fifth Circuit held that without a concrete likelihood of *future* enforcement, prospective relief would address only speculation.

48.    That predicate is absent here. Defendant Wheless's own brief **concedes** that Plaintiffs' state court proceedings are "**ongoing**." (Doc. 16, p. 6). Pending family law cases necessarily entail future hearings, future judicial assignments, and future exercises of the same Chapter 74 assignment-and-notice apparatus. Unlike *NiGen*'s discrete past letter, the challenged administrative practices here are *systemic and recurring*—they operate each time a visiting judge

is assigned to any of Plaintiffs' pending cases. Defendant Wheless has not resigned, been reassigned, or modified his practices; he retains the same administrative authority over the First Administrative Judicial Region that produced the injuries alleged. The threat of continued injury is not speculative—it is the predictable and virtually certain consequence of unchanged practices applied to pending proceedings. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (distinguishing cases where future injury is speculative from those where it is "certainly impending"); *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (ongoing procedural barrier in pending case satisfies injury requirement).

*Plaintiffs Seek Only Prospective Relief*

49.    Defendant Wheless mischaracterizes Plaintiffs' requested relief by citing *Machete Productions, L.L.C. v. Page*, 809 F.3d 281 (5th Cir. 2015). That case involved a demand for monetary payment from the state treasury disguised as equitable relief. Here, Plaintiffs seek no monetary relief whatsoever—only declaratory judgments establishing constitutional rights going forward and prospective injunctions preventing future violations in ongoing proceedings. This is precisely the relief *Ex parte Young* contemplates.

50.    *La Union* confirms that prospective relief is appropriate when the official has "a role in causing the claimed injuries" and "is in a position to redress it at least in part." 163 F.4th at 274-75. Both requirements are satisfied: Defendant Wheless's administrative authority causes the alleged injuries, and he can redress them by modifying administrative practices.

51.    Unlike *Green v. Mansour*, 474 U.S. 64 (1985), where declaratory relief was barred because there was "no claimed continuing violation of federal law," *Id* at 73, Plaintiffs here allege ongoing violations in pending proceedings. Plaintiffs ask this Court to declare what constitutional procedures must be followed going forward, not to award compensation for past violations.

17

*Standing And The Young Exception Overlap*

52.    As set forth in Part A (above), the standing and *Young* analyses "significantly overlap." *La Union*, 163 F.4th at 255; *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669 (5th Cir. 2022). Parts A and B together demonstrate that Plaintiffs' injuries are traceable to Defendant Wheless's administrative enforcement and redressable by prospective relief — satisfying both frameworks. See also *Mi Familia Vota v. Ogg*, 101 F.4th 313, 327–30 (5th Cir. 2024). The Eleventh Amendment does not bar this suit.

C.    *Younger* Abstention Does Not Apply

53.    Defendant Wheless's abstention argument fails for two threshold reasons: (1) every case he cites either involves state-initiated enforcement actions or pre-dates *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), which fundamentally narrowed *Younger*; and (2) *Sprint* controls and limits *Younger* to three exceptional categories—none of which apply here.

*Middlesex and Moore Involved State-Initiated Proceedings, Not Applicable Here*

54.    Defendant Wheless relies on *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), but that case involved state-initiated disciplinary proceedings against attorneys that were "akin to a criminal prosecution." *Id*. at 433-34. Similarly, *Moore v. Sims*, 442 U.S. 415 (1979), which Defendant Wheless cites for the proposition that family matters implicate important state interests, involved state-initiated child removal proceedings—not private custody disputes between parents. The Supreme Court has consistently limited *Younger* to cases involving state-initiated enforcement actions, not private civil disputes.

55.    This case involves private family-court proceedings between individuals, not state-initiated disciplinary or enforcement actions. Neither *Middlesex* nor *Moore* controls here.

*Sprint Limits Younger To Three Exceptional Categories And Supersedes Pre-2013 Cases*

56.    In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that *Younger* abstention applies only in three "exceptional" categories: a. State criminal prosecutions; b. State civil enforcement proceedings that are "akin to a criminal prosecution"; and c. Civil proceedings involving certain orders "uniquely in furtherance of the state courts' ability to perform their judicial functions," such as contempt orders. *Id*. at 78-79, 81.

57.    The Court emphasized that *Younger* is a "narrow exception" and that the threshold category inquiry controls. Id. at 78; see also *Daves v. Dallas Cnty*., 64 F.4th 616, 625 (5th Cir. 2023) (en banc) (reaffirming *Sprint*'s three-category framework). *Sprint* fundamentally reframed *Younger* analysis. Cases pre-dating Sprint—including *Middlesex* (1982), *Moore* (1979), *DeSpain v. Johnston*, 731 F.2d 1171 (5th Cir. 1984), and *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188 (5th Cir. 1996)—applied a more expansive *Younger* doctrine that *Sprint* expressly cabined.

58.    This case does not fall within any of *Sprint*'s categories. It is not a criminal prosecution, not a state-initiated civil enforcement action akin to criminal prosecution, and not a civil contempt or other proceeding uniquely necessary to the court's judicial functions. It is an ordinary private family-court dispute with an associated recusal challenge. On this threshold basis alone, Younger does not apply.

*Even If Younger Applied, State Remedies Are Inadequate*

59.    Even if *Younger* applied, abstention requires an adequate opportunity in the state forum to raise constitutional challenges. *Sprint*, 571 U.S. at 78. Texas law provides no adequate mechanism for the systemic relief Plaintiffs seek.

60.     Plaintiffs challenge the judiciary's own administrative apparatus — the Chapter 74 assignment-and-notice process detailed in Part A (above). Asking a state family court to supply system-wide prospective relief against that apparatus is circular. Texas family courts resolve custody disputes between private parties; they do not adjudicate system-level due process claims against assignment procedures. Case-specific appeals review particular orders; they do not provide prospective, region-wide relief governing assignment administration.

61.     The structural inadequacy is not hypothetical, it is demonstrated within this very litigation. Defendant Wheless is the Presiding Judge responsible for assigning visiting judges to hear recusal motions under Texas Rule of Civil Procedure 18a. Yet Defendant Wheless is himself a named defendant alleged to be part of the same systemic failure. In Plaintiff Tuter's case, Wheless assigned the visiting judge who heard the recusal motion against co-Defendant Roach, while Wheless himself was simultaneously the subject of a recusal motion in the same proceeding. (ECF No. 9, ¶¶ 62–63). Where the official who controls the recusal machinery is himself challenged as part of the constitutional violation, the state's remedy is not merely inadequate, it is structurally compromised. Requiring Plaintiffs to seek relief through the very system they challenge, administered by the very officials they challenge, is the definition of circularity.

62.     This is a systemic challenge to administrative practices, not a collateral attack on individual rulings. Federal jurisdiction under § 1983 was specifically designed for such challenges to state officials' constitutional violations. *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).

*Fifth Circuit Cases Are Distinguishable And Misapplied*

63.     *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188 (5th Cir. 1996), pre-dates *Sprint* by 17 years and applied the pre-*Sprint Younger* framework. Moreover, it involved bar exam challenges where plaintiffs could retake the exam, seek administrative review, or appeal through Texas courts, none

presenting the circularity problem here. *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016), involved a state-initiated enforcement action by the Mississippi Attorney General—fitting squarely within *Sprint*'s second category of "state civil enforcement proceedings akin to criminal prosecution." *Google* could raise all constitutional defenses in that state enforcement proceeding. Neither case addresses whether a family court can declare that the family court system itself violates the Constitution in an ordinary private civil dispute.

64.    *Burgess v. Cox*, 2015 WL 5578310 (E.D. Tex. 2015), was merely a Report and Recommendation (non-binding) acknowledging that allegations against the judiciary satisfy the "important state interests" prong. This is uncontroversial but does not address the threshold *Sprint* category question or the adequacy of state remedies for systemic challenges.

65.    For these reasons, *Younger* abstention does not apply, and this Court should exercise jurisdiction.

    D.  Plaintiffs Have Stated Valid Claims for Relief

66.    Defendant Wheless argues that Plaintiffs have failed to state a claim, characterizing their allegations as "purely conclusory." (ECF No. 16, pp. 7-8). This argument fails under even cursory scrutiny of the Complaint and the applicable pleading standards.

*Plaintiffs' Allegations Satisfy Twombly/Iqbal*

67.    Under the plausibility standard, Plaintiffs must allege facts that "raise a right to relief above the speculative level" and state a claim "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement." *Iqbal*, 556 U.S. at 678. As to Defendant Wheless and Plaintiff Tuter's injuries, the Complaint alleges:

a. "Defendant Wheless issued an assignment order assigning Defendant Cooks, a former judge, to hear and rule on the motion; Plaintiff Tuter was notified of that assignment on December 12, 2024, at 9:29 a.m." (ECF No. 9, ¶ 62);

b. "Plaintiff Tuter did not receive notice of a hearing on this recusal motion; later that day, he learned that on December 12, 2024, Defendant Cooks proceeded with a hearing and rendered an order denying the recusal motion as to both Defendant Roach and Defendant Wheless. The court did not serve the signed order on Plaintiff Tuter after rendition." (*Id.* ¶ 63);

c. "Neither Defendant Cooks nor any other authority provided Plaintiff Tuter any written or oral explanation for proceeding despite the objection." (*Id.* ¶ 64);

d. "In Tuter's case, notice of the assignment and hearing was effectively compressed into hours, and the assigned visiting judge proceeded to rule after Tuter filed a written *§ 74.053* objection before the hearing began." (*Id.* ¶ 191);

e. "Plaintiffs sought this information through administrative channels and were denied. OCA has determined that assignment records are not subject to open records disclosure. The Presiding Judges have not produced responsive records." (*Id.* ¶ 189);

f. "By withholding underlying assignment records and by failing to ensure a timely, filed-and-docketed written assignment order and notice identifying the assigned judge and status, Defendants deny Plaintiffs a meaningful opportunity to exercise the Section *74.053(b)* objection right." (*Id.* ¶ 190).

68.    These allegations identify specific actions (assignment order, lack of timely notice, proceeding despite a timely *§ 74.053* objection, denial of access to assignment records), specific dates and contexts, specific actors (Defendant Wheless and the assigned visiting judge), and

specific constitutional harms (procedural due process and the nullification of a state-created objection entitlement). They are factual, not conclusory.

69.    Accepting these allegations as true, as the Court must, they plausibly state due process claims. A State's arbitrary deprivation of a state-created procedural entitlement violates due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433–34 (1982); *Hicks v. Oklahoma, 447 U.S. 343 (1980)*. Section 74.053 is precisely such an entitlement: the Legislature used mandatory language throughout — "must," "shall," "shall not" — and deliberately preserved the objection right for former judges while exempting active judges (*§ 74.053(e)*), confirming this is a substantive procedural protection, not a discretionary courtesy. The allegations describe a coherent sequence of events in which that mandatory right was rendered meaningless. This is all Rule *12(b)(6)* requires.

70.    *Iqbal* itself involved systemic constitutional claims similar in structure. The Supreme Court did not dismiss for failure to state systemic claims; it dismissed because the plaintiff failed to allege sufficient facts showing specific officials' personal involvement. *Iqbal*, 556 U.S. at 678–79. Here, by contrast, Plaintiffs allege Defendant Wheless's direct, personal involvement, his specific actions and his administrative role with authority over the challenged policies.

*This Is Not Mere Dissatisfaction with State Court Rulings*

71.    Defendant Wheless characterizes this suit as mere "dissatisfaction with state court rulings and failed efforts to change judges in order to obtain favorable rulings." (ECF No. 16, p. 7). This fundamentally mischaracterizes Plaintiffs' claims.

72.    Plaintiffs do not challenge the merits of any substantive decision about custody, visitation, or child support. They do not argue that any judge ruled incorrectly on a factual or legal issue. They challenge the process, or lack thereof, by which decisions are made.

73.    There is a fundamental constitutional difference between these two types of claims:

a.    "The judge ruled against me on custody" = Not a federal claim (merely dissatisfaction with outcome)

b.    "The judge denied me notice and a fair hearing before ruling on custody" = Federal due process claim (challenge to procedures, not outcome)

74.    Plaintiffs' claims fall entirely in the second category. They seek constitutional procedures, not particular substantive outcomes. Even if every family court ultimately rules against them on the merits after providing proper procedures, Plaintiffs would have received what the Constitution requires. Their claims challenge how decisions are made, not what those decisions are.

*The Prior Tuter Removal Case Is Irrelevant*

75.    Defendant Wheless cites *Tuter v. Tuter*, No. 4:25-CV-00075-ALM-AGD, 2025 WL 2600011 (E.D. Tex. Aug. 21, 2025), to suggest that Plaintiff Tuter's unsuccessful removal attempt undermines the validity of Plaintiffs' current federal claims. That reliance is misplaced because *Tuter* addressed only whether the pending state domestic-relations case was removable and whether removal was timely, not whether Plaintiffs can state an original federal claim for relief.

76.    Removal jurisdiction and original federal-question jurisdiction are analytically distinct. A remand (or recommendation of remand) based on the well-pleaded complaint rule and removal procedure resolves only whether the federal court may take over the *state case* via removal; it does not adjudicate the merits or viability of a separate, later-filed *§ 1983* action.

77.    In *Tuter*, the court applied the well-pleaded complaint rule and explained that a removing defendant cannot create *§ 1441* federal-question removal jurisdiction by injecting federal issues through defenses, collateral attacks, or complaints about adverse state-court rulings.

78.    *Tuter* also rejected the premise that the state court's order denying the third recusal motion made the case removable or restarted the *§ 1446(b)(3)* thirty-day period, because the denial order was a summary procedural directive to proceed and did not provide an objectively ascertainable new basis for removability.

79.    Accordingly, *Tuter* does not establish that Plaintiffs' present original *§ 1983* claims are invalid. It establishes only that the underlying state case could not be shifted into federal court by removal on the theories and timing asserted there.

## IV.    CONCLUSION

80.    For the reasons set forth above, Defendant Wheless's Motion to Dismiss should be DENIED. Plaintiffs have Article III standing, the Eleventh Amendment does not bar this suit, Younger abstention is inapplicable, and Plaintiffs have stated plausible claims under the Fourteenth Amendment and *42 U.S.C. § 1983*. The controlling framework — *La Union*, *Sprint*, and *Twombly*/*Iqbal*, confirms Plaintiffs' position at every step.

81.    This case presents core federal constitutional questions about procedural due process and state-created entitlements that federal courts have both the authority and the duty to resolve.

WHEREFORE, Plaintiffs respectfully request that this Court DENY Judge Ray Wheless's Motion to Dismiss in its entirety and allow this case to proceed to discovery and adjudication on the merits.

Respectfully submitted,

*/s/ Samuel Randles*
Samuel Randles
5001 SH114E, Apt 1313, Roanoke, TX 76262
(214) 250-6187 | randles.sam@gmail.com

*/s/ Kaitlan Ross*
Kaitlan Ross
915 County Road 2719, Goldthwaite, TX 76844
(512) 529-0294 | Kaitlan.ross33@gmail.com

*/s/ Patrick Tuter*
Patrick Wayne Tuter
430 Christi Ln., Princeton, TX 75407
(214) 497-6152 | patrick762soldier@hotmail.com

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092
(214) 228-1886 | arnold200@gmail.com

## CERTIFICATE OF SERVICE

I certify that on February 12, 2026, I filed the foregoing document via the Court's CM/ECF system, which will send notice of electronic filing to all registered CM/ECF users, and that I served all non-registered parties by USPS Certified Mail to their respective service addresses."

*/s/ Samuel Randles*
Samuel Randles, on behalf of all Plaintiffs
