IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

|  |  |
|---|---|
| Samuel Randles, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) Case No. 4-25CV1422-0 |
|  | ) |
| Jimmy Blacklock, et. al. | ) |
|  | ) |
| Defendants, | ) |

PLAINTIFFS' RESPONSE AND OBJECTION TO JUDGE JOHN ROACH, JR.'S MOTION TO DISMISS AND MEMORANDUM

Table of Contents

Table of Contents ..................................................................................................... 2

Table of Authorities ................................................................................................ 3

I.    INTRODUCTION ........................................................................................... 4

II.   CLARIFICATION REGARDING INDIVIDUAL CAPACITY CLAIMS .......................... 6

III.  STANDARD OF REVIEW ................................................................................ 7

   A.   DEFENDANT ROACH IS CONSTITUTIONALLY DISQUALIFIED AND ACTS
   ULTRA VIRES ................................................................................................... 8

      1)   The Texas Constitution Mandates Disqualification ........................................ 8

      2)   Defendant Roach Is "Interested" Under Article V, § 11(a) Because He Has a Direct
      Pecuniary Stake ............................................................................................ 10

      3)   This Theory Does Not Open the Floodgates .................................................. 11

   B.   PLAINTIFF TUTER HAS ARTICLE III STANDING ................................................ 11

      1)   *Bauer* Is Misread Out of Context as a Categorical Gate ................................. 11

      2)   Injury in Fact: Adjudication by a Constitutionally Disqualified Judge ................ 14

      3)   Traceability: Injury Flows Directly from Defendant Roach's Continued Presiding .... 15

      4)   Redressability: Declaratory Relief Would Directly Remedy the Injury ................. 15

   C.   THE ELEVENTH AMENDMENT DOES NOT BAR THIS SUIT ................................ 17

      1)   The Ex Parte Young Exception Applies ........................................................ 17

   D.   YOUNGER ABSTENTION DOES NOT APPLY .................................................... 18

      1)   *Sprint* Limits Younger to Three Exceptional Categories ................................. 18

      2)   Pre-Sprint Cases Do Not Control .............................................................. 19

      3)   Roach's Perfunctory *Younger* Argument Skips *Sprint* and Forfeits Abstention ......... 19

      4)   State Remedies Are Structurally Inadequate ................................................. 20

   E.   PLAINTIFF TUTER HAS STATED VALID CLAIMS FOR RELIEF ........................... 22

      1)   The Complaint Alleges Specific Facts, Not Legal Conclusions ......................... 22

      2)   Caperton Establishes the Constitutional Standard ......................................... 23

      3)   Section 1983 Permits Declaratory Relief Against Judicial Officers ..................... 24

      4)   The Prior Tuter Removal Case Is Irrelevant ................................................. 24

      5)   Defendant Roach's Brief Fails to Engage the Core Constitutional Theory ............ 25

IV.   CONCLUSION ............................................................................................. 25

Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 7

*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52 (1872) ............................ 12

*Cain v. White*, 937 F.3d 446 (5th Cir. 2019) .................................................. 13

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) .......................... 14, 23

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ............ 19

*Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc) ................ 16, 24

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) .................................... 8

*Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621 (Tex. 2012) .... 4, 9, 16, 24

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ....................................................... 22

*Green v. Mansour*, 474 U.S. 64 (1985) ........................................................... 18

*In re Murchison*, 349 U.S. 133, 136 (1955) ................................................... 14

*Kugler v. Helfant*, 421 U.S. 117 (1975) .......................................................... 22

*La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025) ...... passim

*Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam) .............................. 12

*Moore v. Sims*, 442 U.S. 415 (1979) ............................................................... 19

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) ...... 20

*Nguyen v. United States*, 539 U.S. 69 (2003) ................................................. 10

*Norton v. Shelby County*, 118 U.S. 425 (1886) ................................................ 9

*Reed v. Goertz*, 598 U.S. 230 (2023) .............................................................. 17

*Ryder v. United States*, 515 U.S. 177 (1995) ................................................. 10

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) ........................ 19

*Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ........................................ 12

*Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669 (5th Cir. 2022) ................ 13

*Tumey v. Ohio*, 273 U.S. 510 (1927) ............................................................... 14

*Tuter v. Tuter*, No. 4:25-CV-00075-ALM-AGD (E.D. Tex. 2025) .............. 24

**Statutes**

42 U.S.C. § 1983 ...................................................................................... 12, 15, 22

*8 U.S.C. § 1441* ................................................................................................ 23

*Tex. Const. art. V, § 11(a)* ............................................................................ 4, 8

TO THE HONORABLE JUDGE O'CONNOR:

NOW COME Plaintiffs Samuel Randles, Kaitlan Ross, Patrick Tuter, and Conghua Yan ("Plaintiffs"), and respectfully submit this Response in Opposition to Defendant Judge John Roach, Jr.'s Motion to Dismiss. For the reasons stated below, Defendant Roach's Motion should be DENIED in its entirety.

## I.  INTRODUCTION

1.      Defendant Roach's motion sidesteps a threshold question of constitutional authority—not case-management discretion—namely, whether he is constitutionally disqualified from presiding over Plaintiff Tuter's pending case and whether his continued presiding constitutes an ongoing Fourteenth Amendment due-process violation. Plaintiff does not ask this Court to review the correctness of any ruling; Plaintiff seeks prospective relief to halt ongoing adjudication before a decisionmaker alleged to have a direct pecuniary conflict and undisclosed ex parte influence.

2.      The Texas Constitution commands: "[N]o judge shall sit in any case wherein the judge may be interested." *Tex. Const. art. V, § 11(a)* (emphasis added). This is not a discretionary recusal provision. It is a mandatory constitutional disqualification. As established supra, this disqualification is jurisdictional. *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012). When a judge is constitutionally disqualified, his orders are not merely voidable on appeal, they are void *ab initio*. A constitutionally disqualified judge lacks authority to act in the case. These objective disqualification facts also state an ongoing federal due-process injury: adjudication before an interested decisionmaker.

3.      Here, Defendant Roach's spouse, Laura Roach, served as a court-recommended mediator in Plaintiff Tuter's case and received $2,800 in mediation fees from Plaintiff Tuter and the

opposing party. (ECF No. 9, ¶¶ 59, 107, 161). Under Texas community property law, Defendant Roach holds a legal ownership interest in that income. *Tex. Fam. Code § 3.002*. This makes Defendant Roach "interested" in the payment of the parties and constitutionally disqualified under *Article V, Section 11(a)*. Yet he was assigned to preside, made no disclosure, refused to recuse when asked, and most alarmingly, incarcerated Plaintiff Tuter for 21 days based on knowledge derived from *ex parte* communications with his spouse, the mediator. (ECF No. 9, ¶¶ 61, 161).

4.    The *ex parte* communications allegation is critical. This is not a case of a mere technical conflict of interest. Defendant Roach's spouse was a participant in confidential mediation proceedings in Plaintiff Tuter's case. Defendant Roach then presided over that same case and found Plaintiff Tuter in criminal contempt for failing to pay child support fees, incarcerating him for 21 days, allegedly based on influence that could only have been obtained through his spouse's role as mediator. (ECF No. 9, ¶¶ 59, 61, 107, 161). A judge who obtains case information through his mediator-spouse and then jails a party later based on that influence presents not merely a "probability of bias" under *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), it presents the actuality of bias in its most dangerous form.

5.    Also, money is fungible. Defendant Roach cannot justify jailing Plaintiff Tuter for failing to pay a fee when that fee ultimately went into Roach's own pocket.

6.    Defendant Roach occupies a unique posture in this litigation. Unlike a judge whose rulings are challenged as incorrect on the merits, Defendant Roach is challenged for ongoing *ultra vires* conduct—continuing to preside despite a mandatory constitutional disqualification and undisclosed conflict. This is not a suit "attacking the constitutionality of a statute" (Bauer/Whole

Woman's Health); the injury alleged is not caused by any law, but by Roach's own continuing conduct in this case. See Part B and Part C, *infra*.

## II.  CLARIFICATION REGARDING INDIVIDUAL CAPACITY CLAIMS

7.     As a threshold matter, Plaintiff Tuter clarifies that he seeks only equitable relief (declaratory and injunctive) against Defendant Roach in his official capacity. Plaintiff Tuter does not seek monetary damages from Defendant Roach in his individual capacity and expressly abandons any such claims.

8.     Plaintiff Tuter seeks declaratory relief as the primary remedy, with injunctive relief requested only to the extent a declaratory decree is violated or declaratory relief is unavailable (ECF No. 9, ¶ 226).

9.     To the extent Paragraph 29 references Defendant Roach's "individual capacity," Plaintiff Tuter amends that language and seeks only official-capacity declaratory and injunctive relief. Because Plaintiff seeks no monetary damages from Roach, Defendant's judicial-immunity argument is inapplicable.

10.     Notably, co-Defendant Judge Ray Wheless, represented by the same counsel from the Office of the Attorney General, does not even raise judicial immunity in his own Motion to Dismiss (Doc. 16), confirming that judicial immunity has no application where only official-capacity equitable relief is sought.

11.     Clarification re Plaintiffs as to Defendant Roach. Although this Response is filed by "Plaintiffs," the Roach-specific claims and requested relief are asserted by Plaintiff Patrick Tuter. The factual predicate for Roach's constitutional disqualification and the resulting due-process

injury arises from Roach's presiding over Tuter's case after his spouse served as the court-recommended mediator and received mediation fees in that same matter, and from the contempt incarceration alleged in that case.

12.     The other Plaintiffs do not allege injury traceable to Roach; their standing is tied to the judicial actors of their own Administrative Judicial Regions (e.g., Evans, Brown, Terry, as applicable). Whether these related claims should proceed together is a separate joinder or consolidation question under Rules 20 and 42, not a Rule 12 basis to dismiss Tuter's claims against Roach. Moreover, "only one plaintiff need establish standing for each claim to satisfy Article III's 'case or controversy' requirement." *La Union*, 163 F.4th at 274. Even if some co-Plaintiffs lack direct interaction with Defendant Roach, so long as at least one Plaintiff (such as Tuter) has standing for each challenged administrative practice, the claims may proceed.

13.     Accordingly, Plaintiff Tuter satisfies Article III injury, traceability, and redressability as to Roach, and the Court need not (and should not) decide whether the co-plaintiffs separately have standing to seek Roach-specific relief.

### III.   STANDARD OF REVIEW

14.     On a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiffs' favor, but disregards legal conclusions and "[t]hreadbare recitals of the elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

15.     Rule 8 sets a minimal pleading threshold: a complaint need only contain "a short and plain statement" showing entitlement to relief, and it need not plead detailed facts. On a motion to dismiss, the court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor. These principles apply with particular force to pro se pleadings, which must be liberally construed and not held to the technical standards expected of lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam).

## ARGUMENT AND AUTHORITIES

16.     This Opposition proceeds in five parts. Part A establishes the threshold constitutional authority question—that Defendant Roach is constitutionally disqualified and therefore acts ultra vires. Part B addresses Article III standing. Part C addresses Eleventh Amendment immunity and the *Ex parte Young* exception. Part D explains why *Younger* abstention is unavailable. Part E addresses the Rule 12(b)(6) merits arguments.

## A.    DEFENDANT ROACH IS CONSTITUTIONALLY DISQUALIFIED AND ACTS ULTRA VIRES

17.     Before addressing standing, sovereign immunity, or abstention, this Court must confront the threshold federal question that controls every other issue here: whether Defendant Roach's continued presiding in Plaintiff Tuter's case—despite the pleaded spouse-mediator financial conflict, nondisclosure, and refusal to recuse—violates the Fourteenth Amendment's impartial-tribunal guarantee and is actionable for prospective relief. The Texas Constitution's mandatory disqualification rule supplies the objective predicate for the disqualifying interest alleged.

### 1)  The Texas Constitution Mandates Disqualification

18.     The Texas Constitution provides:

"No judge shall sit in any case wherein the judge may be interested …" *Tex. Const. art. V, § 11(a)* (emphasis added).

19.     This provision is not discretionary. The word "shall" imposes a mandatory obligation. The Constitution does not say a biased judge's rulings are subject to appellate review, it says the judge "shall not sit" in the first instance.

20.     Critically, Texas courts have held that constitutional disqualification is jurisdictional. The Texas Supreme Court confirmed: "A judge is 'interested' in a case—and thus disqualified under Article V, Section 11—if an order or judgment in the case will directly 'affect him to his personal or pecuniary loss or gain.' . . . Thus, *the disqualification of a judge is a jurisdictional issue that cannot be waived.*" *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) (emphasis added).

21.     The consequence is that the judge's orders are treated as void, not voidable. Just as a court without subject-matter jurisdiction cannot render valid judgments regardless of how correct its analysis might be, a constitutionally disqualified judge cannot exercise valid judicial authority regardless of the quality of the rulings.

22.     Federal constitutional law reflects the same first-principles point: an adjudicator may not exercise power the Constitution withholds. Where the asserted defect concerns the lawful authority of the decisionmaker itself, the problem is structural, not a mere error-correction question. See *Norton v. Shelby County*, 118 U.S. 425, 442 (1886) (an unconstitutional act "creates no office" and is "as inoperative as though it had never been passed").

23.     When a litigant timely challenges the authority of the decisionmaker, the Supreme Court rejects the idea that "de facto" status can cure the defect; the remedy is a hearing before a properly authorized tribunal. *Ryder v. United States*, 515 U.S. 177, 182–88 (1995).

24.     Likewise, when a tribunal is improperly constituted, the defect is structural and the resulting judgment cannot stand. *Nguyen v. United States*, 539 U.S. 69, 73 (2003) (vacating where the appellate panel lacked authority).

> 2)  Defendant Roach Is "Interested" Under Article V, § 11(a) Because He Has a Direct Pecuniary Stake

25.     Under Texas law, a judge is "interested" in a case when the judge has a direct financial stake that will be affected by orders or judgments in the case. As detailed in the Introduction (above), Defendant Roach's spouse received $2,800 in community-income mediation fees from the parties in the very case over which he presides. (ECF No. 9, ¶¶ 59, 107, 161). Because Texas is a community-property state, those fees are community income, giving Defendant Roach a direct pecuniary interest in the matter.

26.     This financial interest is not a remote or speculative connection. It is a direct pecuniary interest arising from the very litigation over which Defendant Roach presides. The constitutional question does not turn on whether the amount is "large," but on whether the judge has a direct personal pecuniary stake that would cause a reasonable observer to question impartiality. A reasonable person would question whether a judge can be impartial in a case from which the marital community has profited without disclosure and recusal.

27.     Even if the $2,800 were viewed as de minimis in isolation (which Plaintiff Tuter disputes), the pecuniary interest is reinforced by the pleaded nondisclosure and the spouse-mediator

relationship's confidential-information dimension. As detailed in the Introduction (above), Defendant Roach's spouse participated in confidential mediation proceedings, possessing privileged information about Plaintiff Tuter's positions, strategies, and vulnerabilities—and the Complaint alleges Defendant Roach relied on that information to incarcerate Plaintiff Tuter. (ECF No. 9, ¶¶ 61, 161). On these allegations, the pecuniary conflict and the spouse-mediator confidentiality problem are reinforcing facts supporting an objective probability of bias.

### 3) This Theory Does Not Open the Floodgates

28.    This Court may be concerned about opening the floodgates, that every disgruntled litigant could file a *§ 1983* action seeking to halt a state proceeding. But constitutional disqualification under *Article V, Section 11(a)* is a narrow, objective, categorical bar. It requires a direct financial interest or familial connection to the case. This is not a subjective bias standard that any litigant could invoke based on disagreement with rulings. It is a concrete, verifiable, constitutional criterion that will be satisfied in only a small universe of cases. Here, there is no dispute that Laura Roach served as mediator, received fees, and is married to the presiding judge. The factual predicate is objective and verifiable.

### B.    PLAINTIFF TUTER HAS ARTICLE III STANDING

29.    Defendant Roach's standing arguments fail because Plaintiff Tuter satisfies all three elements of Article III standing: injury in fact, traceability, and redressability. *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 274 (5th Cir. 2025).

### 1)  *Bauer* Is Misread Out of Context as a Categorical Gate

30.     Defendant Roach's reliance on *Bauer* is misplaced for a basic reason: Bauer's "no controversy" rationale depends on the plaintiff alleging that the injury is caused by the challenged

statute. *Bauer* was a facial *§ 1983* attack on a statutory scheme; the asserted injury flowed from the law, and the judge was named only because he could later adjudicate disputes under that law.

31.    Read as Roach urges, *Bauer* would collapse Article III adverseness into a categorical "no controversy" rule whenever the defendant is a judge, regardless of what constitutional wrong is alleged. That overreading would render largely superfluous the Supreme Court's long line of common law precedents holding that judges are generally absolutely immune from damages for judicial acts within jurisdiction, but not when they act in the clear absence of all jurisdiction. *See, e.g.*, *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52 (1872). The Court has never replaced that doctrine with a universal Article III bar; Roach's reading would do exactly that.

32.    This case is not a statutory-constitutionality challenge. Plaintiff Tuter does not allege that any statute is unconstitutional or that his injury is "caused by the law." He alleges a present due-process injury caused by Roach's ongoing adjudication of Tuter's matters while allegedly constitutionally disqualified by an undisclosed pecuniary conflict. In other words, the injury is not "the existence of a law" that Roach might someday apply; the injury is being subjected now to an allegedly biased and constitutionally disqualified tribunal. That is an Article III controversy between the injured litigant and the official who is allegedly inflicting the ongoing constitutional injury by continuing to preside.

33.    The Supreme Court later stated the same posture-limited principle in *Whole Woman's Health v. Jackson*: ordinarily, there is no Article III controversy "between a judge who adjudicates claims under a statute **and** a litigant who attacks the constitutionality of the statute." (emphasis added). The limiting clause matters. Roach's reliance on *Bauer/Whole Woman's Health* fails

because this case is not a litigant's attack on a statute with a judge named only as a neutral adjudicator under that statute. It alleges an ongoing deprivation of the right to an impartial decisionmaker caused by Roach's continuing exercise of adjudicatory authority while allegedly disqualified. *Bauer* cannot be broadened beyond its statutory-challenge posture to bar this claim.

34.     This case fits the other side of *Bauer*'s line. Plaintiff Tuter does not bring a facial challenge to a statutory scheme or ask this Court to review state-court rulings. He alleges a present due-process injury: being subjected to the ongoing exercise of judicial power by a decisionmaker who is constitutionally disqualified, i.e., not a "disinterested neutral." That injury is concrete, traceable to Roach's continuing conduct, and redressable by prospective relief halting the ongoing violation. See, e.g., *Tumey v. Ohio*, 273 U.S. 510 (1927); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). And the Fifth Circuit has recognized that judges can be proper defendants where the claimed due-process injury arises from a judge's own financial interest creating unconstitutional incentives. See *Cain v. White*, 937 F.3d 446 (5th Cir. 2019).

35.     Accordingly, *Bauer*/*Whole Woman*'s Health supply no categorical bar to Article III standing or prospective relief where, as here, the defendant official is the source of the ongoing constitutional violation being challenged.

36.     Standing and E*x parte Young* "significantly overlap" because both inquiries ask the same practical question: whether this defendant is the right target for prospective relief that would meaningfully redress the injury. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669 (5th Cir. 2022); *La Union*, 163 F.4th at 255. Having shown here that Roach is the source of the ongoing due-process injury and that prospective relief would redress it, the same analysis supports Young's "connection" element. *La Union*, 163 F.4th at 257–58.

2) Injury in Fact: Adjudication by a Constitutionally Disqualified Judge

37.    Plaintiff Tuter alleges a current, ongoing constitutional injury: adjudication of his family law case by a judge who is constitutionally disqualified from presiding. This is not a speculative future harm but a present violation occurring each day the case proceeds before Defendant Roach.

38.    The Supreme Court has held that denial of an impartial tribunal is itself a common law rule violation of the Due Process Clause and constitutes a constitutional injury, without requiring a separate showing of outcome prejudice. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883-84 (2009). "The Due Process Clause incorporated the common law rule that a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case." *Id.* at 876 (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). Thus, the impartial-tribunal requirement is a due-process guarantee grounded in the common-law tradition.

39.    The impartial-tribunal guarantee is deeply rooted, tracing from common-law origins through its constitutionalization in the Fifth and Fourteenth Amendments, and it is structural: the constitutional wrong is being subjected to an unlawfully constituted tribunal at all, regardless of outcome. Because the right is constitutional, it cannot be legislated away or cured by waiver. Because it is secured by the Fourteenth Amendment, it is enforceable through *42 U.S.C. § 1983* for prospective relief to halt ongoing adjudication by a constitutionally disqualified tribunal. See *Caperton*, 556 U.S. at 876–84; *Tumey*, 273 U.S. at 523; *In re Murchison*, 349 U.S. 133, 136 (1955).

40.    Standing does not require a showing that the outcome would have differed. Federal law treats tribunal-composition defects as structural and judicially cognizable. See Part A.1 (above) (discussing *Norton*, *Ryder*, and *Nguyen*). The constitutional harm is the denial of an impartial

tribunal itself, not a provable change in outcome. *Caperton*, 556 U.S. at 883–84. The judge's qualification—not the content of any particular ruling—is the relevant inquiry.

41.    The specific factual allegations supporting this injury are set forth in the Introduction (above) and Part A.2 (above), and documented at ECF No. 9, ¶¶ 59–63, 107, 161.

42.    These allegations establish a concrete, particularized injury in fact. The injury is not merely a technical conflict—it culminated in a 21-day deprivation of liberty under the circumstances detailed supra, transforming the financial conflict from theoretical to concrete.

> 3)  Traceability: Injury Flows Directly from Defendant Roach's Continued Presiding

43.    The injury is directly traceable to Defendant Roach's decision to continue presiding despite the constitutional disqualification. When Plaintiff Tuter filed a recusal motion raising the spouse-mediator conflict, Defendant Roach had the constitutional duty to step aside. Instead, he declined to recuse and continues to preside. (ECF No. 9, ¶ 61).

44.    Defendant Roach argues that Plaintiff Tuter "has already lost his attempts at recusal" and any future concern is "purely speculative." (Roach Brief, p. 5). This argument fails. First, the past denial of recusal does not eliminate the ongoing injury—each day Defendant Roach presides, the constitutional violation continues. *Caperton* does not require a showing that the judge will rule a particular way; the probability of bias itself violates due process. 556 U.S. at 883-84. Second, Plaintiff Tuter's case is ongoing with future hearings, rulings, and enforcement actions certain.

> 4)  Redressability: Declaratory Relief Would Directly Remedy the Injury

45.    Plaintiff Tuter primarily seeks declaratory relief, a judicial declaration that presiding over Plaintiff Tuter's case while Defendant Roach's spouse had received mediation fees in the same

matter, without written disclosure and recusal, violates the federal Due Process Clause's impartial-tribunal guarantee. The Texas Constitution's mandatory disqualification rule supplies the objective predicate for the direct pecuniary interest alleged. (ECF No. 9, ¶ 225).

46.     Section 1983 expressly contemplates declaratory relief against judicial officers. The statute limits only injunctive relief, which "shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. This language presupposes that declaratory relief is available and imposes no preconditions for obtaining it. See Part E.3, infra (discussing the statutory framework in detail).

47.     A declaratory judgment establishing that Defendant Roach is constitutionally disqualified would directly redress the injury. It would authoritatively establish the constitutional violation and provide the legal basis for Defendant Roach's removal from the case through the state's own processes. *See Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 312 (5th Cir. 2021); *Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc).

48.     The Supreme Court's remedial practice in structural tribunal-defect cases confirms redressability. When adjudication occurs before an improperly constituted decisionmaker, the Court vacates and remands for fresh proceedings before a properly constituted tribunal. *Nguyen*, 539 U.S. at 83; *Ryder*, 515 U.S. at 188.

49.     A defendant official need only be able to provide partial relief to satisfy redressability. *La Union*, 163 F.4th at 275 ("is in a position to redress it at least in part" and "that is enough to confer standing"). Defendant Roach can remedy the injury by recusing or by disclosing the conflict and submitting to the state's recusal/disqualification process. A declaratory judgment from this Court would make clear the constitutional obligation to do so.

50.     The Supreme Court recently reaffirmed that declaratory relief can satisfy redressability in *§ 1983* challenges to state procedural regimes. In *Reed v. Goertz*, 598 U.S. 230, 236–38 (2023), the Court held that a declaratory judgment would redress the injury because it would remove the legal barrier and it was "substantially likely" that state officials would comply. Likewise here, a declaration that Defendant Roach is constitutionally disqualified would remove the barrier to a lawfully constituted tribunal and make compliance through recusal and reassignment substantially likely.

## C.     THE ELEVENTH AMENDMENT DOES NOT BAR THIS SUIT

51.     Defendant Roach's Eleventh Amendment argument fails because the *Ex parte Young* exception squarely applies.

### 1)  The Ex Parte *Young* Exception Applies

52.     To invoke *Young*, Plaintiff Tuter must show: (1) an ongoing violation of federal law; (2) a request for prospective relief; and (3) that the named official has some connection with enforcing the challenged conduct. *La Union*, 163 F.4th at 257-58. All three requirements are satisfied.

53.     *Ongoing Violation.* Defendant Roach continues to preside over Plaintiff Tuter's case while maintaining an undisclosed financial conflict. Each day the case proceeds under these circumstances, the due process violation continues. This is not a challenge to a completed past ruling, Plaintiff Tuter's family law case is pending with future proceedings certain.

54.     *Prospective Relief.* Plaintiff Tuter seeks only prospective declaratory and injunctive relief, not monetary damages or retrospective compensation. The relief requested would operate purely prospectively—preventing future constitutional violations. Unlike *Green v. Mansour*, 474 U.S. 64

(1985), where there was "no claimed continuing violation of federal law," Plaintiff Tuter alleges an ongoing violation in a pending proceeding.

55.     *Scintilla Connection to Enforcement. La Union* confirms that "all that is needed is a scintilla of 'enforcement' by the relevant state official." 163 F.4th at 257. Defendant Roach is the official whose continued presiding constitutes the challenged ongoing course of conduct, he declined recusal, continues to preside, and (as pleaded) incarcerated Plaintiff Tuter for 21 days as detailed in the Introduction (above). This does not depend on recasting Roach as an "administrator" rather than an adjudicator; it rests on the direct allegation that his continued presiding, while allegedly disqualified, is the ongoing federal violation to be halted by prospective relief.

56.      These facts satisfy *Young's* "some connection" requirement because Roach is the official currently exercising the challenged authority in Plaintiff Tuter's pending case. *La Union*, 163 F.4th at 257–58.

D.    YOUNGER ABSTENTION DOES NOT APPLY

57.     Defendant Roach's abstention argument fails for fours independent reasons.

1)  *Sprint* Limits Younger to Three Exceptional Categories

58.     In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78-79 (2013), the Supreme Court clarified that *Younger* abstention applies only in three "exceptional" categories: (a) state criminal prosecutions; (b) state civil enforcement proceedings "akin to a criminal prosecution"; and (c) civil proceedings involving certain orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." The Court emphasized that *Younger* is a "narrow exception" and that the threshold category inquiry controls.

59.     This case does not fall within those categories. It is not a criminal prosecution. It is not a state-initiated civil enforcement action. And while Plaintiff Tuter was held in contempt, the federal claim here is not about the contempt proceeding itself, but about the structural disqualification of the judge who presided over the entire case.

### 2)  Pre-Sprint Cases Do Not Control

60.     Defendant Roach relies on *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), and *Moore v. Sims*, 442 U.S. 415 (1979). But these cases pre-date *Sprint* by 31 and 34 years respectively and applied a more expansive Younger doctrine that *Sprint* expressly cabined. Neither case addresses whether Younger bars federal challenges to structural judicial disqualification in private family court proceedings.

### 3)  Roach's Perfunctory *Younger* Argument Skips *Sprint* and Forfeits Abstention

61.     Federal courts have a "virtually unflagging" obligation to exercise jurisdiction; abstention is "the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Sprint*, 571 U.S. at 77-78.

62.     Because *Younger* abstention is an exception to that duty, the party urging abstention bears the threshold burden to show *Younger* is even in play—i.e., that the state proceeding fits one of Sprint's three "exceptional" categories. *Sprint*, 571 U.S. at 77–82.

63.     *Sprint* forecloses using *Middlesex* as a freestanding three-factor test that expands Younger. The Court explained that the "three *Middlesex* conditions" were "not dispositive," but "additional factors appropriately considered" only after the case first falls within one of *Younger*'s

"exceptional" categories. *Sprint* 571 U.S. at 81–82. (quoting NOPSI); see also *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367–68 (1989).

64.     Roach never makes that showing. This 1983 suit arising out of systematic state court due process violation is not (i) a state criminal prosecution, (ii) a state-initiated quasi-criminal civil enforcement action, or (iii) a proceeding involving orders uniquely in furtherance of state courts' judicial functions. See *Sprint*, 571 U.S. at 79–80 (civil enforcement actions are "akin to a criminal prosecution," "characteristically initiated to sanction … a wrongful act," and brought by "the State in its sovereign capacity"; proceedings invoked to resolve disputes between private parties are not covered).

65.     Accordingly, Roach cannot invoke *Younger* by citing *Middlesex* and skipping *Sprint*'s dispositive threshold. If the proceeding does not fit a *Sprint* category, abstention is unavailable as a matter of law. *Sprint*, 571 U.S. at 78–82.

66.     Because Roach never crosses the *Sprint* threshold, no burden shifts to Plaintiff to brief *Middlesex* or any exceptions; the motion should be denied on that basis alone. See *Sprint*, 571 U.S. at 78–82.

> 4) State Remedies Are Structurally Inadequate

67.     Even if *Younger* applied, abstention requires an adequate opportunity in the state forum to raise constitutional challenges. *Sprint*, 571 U.S. at 78. Here, the state forum is structurally inadequate.

68.     Plaintiff Tuter challenges Defendant Roach's constitutional disqualification. Defendant Roach controls the state proceeding. Asking Defendant Roach's own court to provide relief from Defendant Roach's disqualification is circular.

69.     Plaintiff Tuter sought recusal through state procedures. Defendant Roach declined on December 11, 2024. (ECF No. 9, ¶ 62). A visiting judge assigned by the presiding judge—who was also the subject of the recusal motion—denied the motion. (Id. ¶ 63). The assignment of the visiting judge by the very judge whose impartiality was challenged creates an additional layer of structural inadequacy. The state system failed to provide an adequate remedy.

70.     The structural inadequacy of state remedies is confirmed by the posture of co-Defendant Judge Ray Wheless. As Presiding Judge of the First Administrative Judicial Region of Texas, Defendant Wheless is the official responsible for assigning visiting judges to hear recusal motions under Texas Rule of Civil Procedure 18a. *See Tex. Gov't Code § 74.042(b)*. Defendant Wheless's own Motion to Dismiss in this case acknowledges that he "entered an order appointing a judge to consider and rule on a recusal matter" in Plaintiff Tuter's case. (Doc. 16, p. 3). Yet Defendant Wheless is himself a named defendant in this action, alleged to be part of the same systemic failure that denied Plaintiff Tuter an impartial tribunal. The very official responsible for ensuring a neutral recusal process is alleged to be part of the constitutional violation. This is not a hypothetical concern about the adequacy of state remedies—it is a demonstrated structural breakdown. Where the gatekeeper of the recusal process is himself a co-defendant, the state's machinery for vindicating constitutional rights cannot be deemed adequate for *Younger* purposes.

71.     This is the type of extraordinary circumstance recognized where the state decisionmaking forum is alleged to be structurally biased or constitutionally disqualified as to the very issue

presented. See, e.g., *Gibson v. Berryhill*, 411 U.S. 564 (1973) (bias/structural defect); *Kugler v. Helfant*, 421 U.S. 117 (1975) (extraordinary circumstances). Where the state judiciary itself is alleged to be the source of the ongoing federal constitutional violation, insisting that the plaintiff seek relief only through that same allegedly compromised machinery defeats the purpose of prospective *§ 1983* relief.

72.    Moreover, while mandamus may exist in theory for some disqualification issues under Texas law, the presence of an abstract avenue of review does not establish an adequate opportunity where the pleaded facts show the recusal mechanism has already failed in practice in this very case (Roach declines recusal; visiting judge denies; assigning authority is a co-defendant). On these allegations, abstention is not warranted.

E.    PLAINTIFF TUTER HAS STATED VALID CLAIMS FOR RELIEF

1)   The Complaint Alleges Specific Facts, Not Legal Conclusions

73.    Contrary to Defendant Roach's assertion that the allegations are "purely conclusory" (Roach Brief, pp. 8-9), the Complaint contains detailed factual allegations with specific actions, specific amounts, specific dates, and specific constitutional harms:

> "Plaintiff Tuter paid Laura Roach $1,400 for mediation services on June 2, 2022, and the opposing party paid an equal amount, totaling $2,800." (ECF No. 9, ¶ 107).

> "On or about September 13, 2023, Plaintiff Tuter's case was assigned to Defendant John Roach Jr." (*Id*. ¶ 60).

> "The assignment ignored the spouse-mediator conflict; no disclosure or self-recusal occurred." (*Id*. ¶ 61).

> "In a hearing on September 17, 2024, Defendant Roach found Plaintiff Tuter in criminal contempt and ordered his incarceration, alleging that Plaintiff Tuter had

violated a temporary order that never existed, based on knowledge derived from ex parte communications with his spouse, Laura Roach." (*Id*.).

"Plaintiff Tuter was incarcerated pursuant to Defendant Roach's contempt order from September 17, 2024 through October 8, 2024." (*Id*.).

"On December 11, 2024, Defendant Roach declined to recuse." (*Id*. ¶ 62).

74.    These are specific, factual allegations with concrete details—particular actions, particular dates, particular amounts, particular actors, and particular harms. They satisfy *Twombly* and *Iqbal* with room to spare.

### 2)  Caperton Establishes the Constitutional Standard

75.    As established in Part B, *Caperton* holds that due process is violated when objective circumstances create a "serious risk of actual bias," without requiring proof of actual bias or outcome prejudice. 556 U.S. at 872, 883–84. The question here is whether the well-pleaded allegations satisfy that standard at the motion-to-dismiss stage. They do.

76.    The Complaint does not allege a single, isolated conflict. It alleges four reinforcing circumstances—each documented with specific dates, amounts, and record citations set forth in the Introduction (above), and Part A.2 (above) that, taken together, make the probability of bias overwhelming: (i) a direct community-property financial interest; (ii) *ex parte* spousal communications allegedly used to incarcerate Plaintiff Tuter; (iii) complete absence of disclosure; and (iv) refusal to recuse. (ECF No. 9, ¶¶ 59–63, 107, 161).

77.    These allegations, accepted as true, plausibly establish a *Caperton* violation. While *Caperton* involved $3 million in campaign contributions, the Court's analysis focused on the *probability of bias*, not any specific dollar threshold. 556 U.S. at 884. Here, the probability of bias

arises not merely from the dollar amount but from the *nature* of the conflict: the convergence of financial interest and insider knowledge flowing through the same spousal-mediator relationship, combined with a 21-day deprivation of liberty allegedly driven by that very relationship.

### 3) Section 1983 Permits Declaratory Relief Against Judicial Officers

78.    Section 1983 expressly contemplates declaratory relief against judicial officers and limits injunctive relief to narrow circumstances. The statute provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *42 U.S.C. § 1983*. This text presupposes declaratory relief is available, and makes injunctive relief a backstop remedy. See *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 312 (5th Cir. 2021); *Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc).

79.    Consistent with this framework, Plaintiff Tuter seeks declaratory relief as the primary remedy (ECF No. 9, ¶¶ 224–25), with injunctive relief requested only as the statute permits (ECF No. 9, ¶¶ 226–231).

### 4) The Prior Tuter Removal Case Is Irrelevant

80.    Defendant Roach cites *Tuter v. Tuter*, No. 4:25-CV-00075-ALM-AGD (E.D. Tex. 2025). That case addressed only whether the state domestic relations case was removable under 2*8 U.S.C. § 1441*. It **did not** adjudicate the merits or viability of an original § 1983 action filed in federal court. Defendant Roach's attempt to link the two proceedings is itself conclusory, the cases share a party name but nothing else. The removal action asked whether *§ 1441* permitted transfer; this

action asks whether the Constitution permits Roach to preside. **Removal jurisdiction** and original federal question jurisdiction are analytically **distinct**.

### 5) Defendant Roach's Brief Fails to Engage the Core Constitutional Theory

81.    Finally, this Court should note what Defendant Roach's Motion to Dismiss does not address. The Motion never engages with *Caperton*'s due-process framework, the community-property financial interest, the ex parte spousal communications, or the Texas Constitution's mandatory disqualification provision and its jurisdictional character under *Freedom Communications*. Instead, it relies on boilerplate immunity and abstention arguments substantively identical to co-Defendant Judge Wheless's filing (Doc. 16)—arguments that do not engage the specific constitutional disqualification theory at the heart of this case. The failure to address these arguments should not be mistaken for their absence. They are the central issue in this case, and they remain unrebutted.

## IV.   CONCLUSION

82.    Defendant Roach's Motion to Dismiss should be DENIED.

83.    The core constitutional question is straightforward: may a judge preside over a case in which his spouse received mediation fees from a party, without disclosure or recusal? The answer, under both the Texas Constitution and the federal Due Process Clause, is no.

84.    The Texas Constitution's mandatory disqualification is jurisdictional and cannot be waived. *Tex. Const. art. V, § 11(a)*; *Freedom Commc'ns*, 372 S.W.3d at 624. Plaintiff alleges a present structural due-process injury—ongoing adjudication by a constitutionally disqualified decisionmaker—supported by *Tumey* and *Caperton* and reinforced by Texas's categorical disqualification rule.

85.    Plaintiff has Article III standing for the reasons stated in Section III, Part B, and the Eleventh Amendment does not bar prospective declaratory relief under *Ex parte Young* for the reasons stated in Section III, Part C. *Younger* abstention does not apply (Section III, Part D), and the Complaint plausibly states claims for relief under *Twombly*/*Iqbal*.

86.    The issue is not what Judge Roach ruled. It is whether he was constitutionally qualified to rule at all.

87.    WHEREFORE, Plaintiff Tuter respectfully requests that this Court DENY Judge John Roach, Jr.'s Motion to Dismiss in its entirety and allow this case to proceed.

Respectfully submitted,

*/s/ Samuel Randles*
Samuel Randles
5001 SH114E, Apt 1313, Roanoke, TX 76262
(214) 250-6187 | randles.sam@gmail.com

*/s/ Kaitlan Ross*
Kaitlan Ross
915 County Road 2719, Goldthwaite, TX 76844
(512) 529-0294 | Kaitlan.ross33@gmail.com

*/s/ Patrick Tuter*
Patrick Wayne Tuter
430 Christi Ln., Princeton, TX 75407
(214) 497-6152 | patrick762soldier@hotmail.com

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092
(214) 228-1886 | arnold200@gmail.com

CERTIFICATE OF SERVICE

I certify that on February 12, 2026, I filed the foregoing document via the Court's CM/ECF system, which will send notice of electronic filing to all registered CM/ECF users, and that I served all non-registered parties by USPS Certified Mail to their respective service addresses.

*/s/ Samuel Randles*
Samuel Randles, on behalf of all Plaintiffs