IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **SAMUEL RANDLES**, *et al.* § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:25-cv-01422-O-BP |
| § | |
| **JIMMY BLACKLOCK**, *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Dismiss and Brief in Support that Ray Wheless filed on February 4, 2026 (ECF Nos. 15, 16) and Response that Plaintiffs filed on February 12, 2026 (ECF No. 34). By order entered on February 5, 2026, the Court notified Plaintiffs that that they should respond to the Motion as if all Defendants made similar arguments for dismissal. *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010); *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993). ECF No. 18. After reviewing the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** the Motion to Dismiss (ECF No. 15) and **DISMISS** Plaintiffs' claims against all Defendants.

**I.     BACKGROUND**

Plaintiffs assert that visiting judges in Texas state family law cases to which they are parties unconstitutionally deprived them of their statutory right to object under Tex. Gov't Code § 74.053 and of a duly identified and impartial tribunal. ECF No. 9 at 5. Plaintiffs argue that various state court rulings entered within this allegedly unconstitutional visiting judge system are invalid. *Id.* at 12. While Plaintiffs cast their claims as requests for prospective relief and assert that they do not seek "review, reversal, vacatur, or collateral attack on any state-court judgment," their suit asks

the Court to invalidate an entire system implemented by state courts and several judgments entered by state courts operating in this system. *See id.*

Plaintiffs also allege they were unlawfully charged court fees despite their indigent status, received improper or inadequate notice of court proceedings due to illegible handwriting, and were unlawfully denied access to assignment records. *Id.* at 40. They claim that several presiding judges participated in proceedings despite conflicts of interests created by their own private financial interests in alternative dispute resolution ("ADR") businesses. *Id.* at 35. They also contend that "Tarrant County and the District Clerk's Office have adopted and implemented a pattern and practice of facilitating Rule 145 contests against indigent litigants." *Id.* at 25.

Plaintiffs sue the Chief Justice of the Supreme Court of Texas, the Presiding Judges of the First, Eighth, and Eleventh Administrative Judicial Regions, four retired judges sitting by assignment, the presiding judges of the 296th Judicial Court of Denton County, Texas and 325th Judicial District Court of Tarrant County, Texas, the court coordinator, court clerk, and court reporter of the 325th District Court, and Tarrant County, Texas. *Id.* at 9-11. Plaintiffs seek relief under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth amendments to the United States Constitution and for violations of state law. *Id*. at 5. They also request declaratory judgment and damages. *Id.*

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because "[f]ederal courts are courts of limited jurisdiction[, t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). If a Court lacks subject matter

2

jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). In determining whether subject matter jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). This "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* Dismissal for lack of subject matter jurisdiction "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

### B. *Younger* Abstention Doctrine

Federal courts generally must decide cases within their jurisdiction. "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). However, under the abstention doctrine explained in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, courts recognize "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint*, 571 U.S. at 72. *Younger* abstention applies in three "exceptional" circumstances: "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 73 (internal quotation marks omitted) (quoting

3

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367-68 (2013)). Federal courts have a duty to ensure abstention under *Younger* would not be proper for the cases before them and may raise the issue *sua sponte*. *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003); *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n.1 (5th Cir. 1999).

### C.     Eleventh Amendment

Under the Eleventh Amendment of the Constitution, states may not be sued in federal court unless they unequivocally consent to the suit or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). The Eleventh Amendment also bars § 1983 claims against agencies of a state of officials sued in the official capacities. *Fox v. Mississippi*, 551 Fed. Appx. 772, 774-775 (5th Cir. 2014) (citing *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)).

However, there are three possible exceptions to Eleventh Amendment sovereign immunity: (1) for claims seeking injunctive or declaratory relief against a state official under *Ex Parte Young*, 209 U.S. 123 (1908); (2) a state's waiver or consent, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997); and (3) Congress's abrogation of the state's immunity through section 5 of the Fourteenth Amendment, *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 364 (2001).

*Young* allows only the granting of "prospective injunctive relief to prevent a continuing violation of federal law" against state officers in their official capacities and does not allow damages or other retrospective relief. *Green v. Mansour*, 474 U.S. 64, 68 (1985). "Determining if the exception applies involves 'a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 680 (5th Cir. 2020) (quoting *Va. Off. for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (cleaned up)).

Sovereign immunity is a jurisdictional bar. *See Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021). "Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

D.   **Qualified immunity**

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cty.*, 948 F.3d 281, 287 (5th Cir. 2020).

"[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). Qualified immunity can be decided at the motion to dismiss stage as it is the earliest possible stage in litigation. *Carswell v. Camp*, 37 F.4th 1062, 1068 (5th Cir. 2022).

E.   **Judicial Immunity**

Judicial immunity is an absolute immunity from suit, not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Allegations of bad faith, malice, or corruption do not overcome judicial immunity. *Id*. Judicial immunity is inapplicable only when: (1) a judge

takes an action that is not within his or her official capacity; or (2) as it concerns judicial actions "taken in the complete absence of all jurisdiction." *Id*. Courts must construe jurisdiction broadly for purposes of judicial immunity. *Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).

    **F.**    *Pro Se* **Standard**

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, "even a liberally-construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

The liberal construction of *pro se* pleadings stems from a "well-established policy that [plaintiffs] be given every opportunity to state a claim." *Ramming*, 281 F.3d at 161 (citing *Hitt*, 561 F.2d at 608). It is federal policy to decide cases on the merits rather than technicalities, and thus whenever possible the Fifth Circuit recommends that suits be dismissed without prejudice on Rule 12 motions. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Id.* However, a complaint may be dismissed with prejudice, thus foreclosing that opportunity, whenever amendment of the pleadings would be futile. *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016).

### III. ANALYSIS

#### A. Plaintiffs do not have standing to bring their suit.

The Court must address standing before evaluating any argument on the merits or any attack on the pleadings' sufficiency. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992); *United States v. Rodriguez*, 33 F.4th 807, 811 (5th Cir. 2022) ("Standing is a matter of jurisdiction, and courts must assess their jurisdiction before turning to the merits."). The Court first considers whether Plaintiffs have standing to bring their claims. A plaintiff in federal court must have standing before the court can exercise subject matter jurisdiction. *Arbraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2002) (emphasis added). In ruling on motions to dismiss, the court is free to weigh evidence and satisfy itself that subject matter jurisdiction exists. Fed. R. Civ. P. 12(b)(l). "Article III's case-or-controversy requirement imposes an 'irreducible constitutional minimum of standing.'" *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *Lujan*, 504 U.S. 555, 560-561 (1992). To satisfy Article III standing, a plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability. U.S. Const. art. 3, § 2, cl. 1; *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

To show injury in fact, a plaintiff must "implicate 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Gabriel v. Outlaw*, No. 3:20-cv-60-K-BK, 2002 WL 617628, * 1 (N.D. Tex. Feb. 14, 2022) (quoting *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted)). Next, the causation prong requires the injury to be "fairly traceable to the defendant's allegedly unlawful conduct." *Nat'l Park Hosp. Ass 'n v. Dept. of Interior*, 538 U.S. 803 (2003) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Finally, "redressability requires that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Notably, "the party invoking federal subject matter jurisdiction bears the burden of

establishing each element [of the standing requirement]." *Id*. (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

Plaintiffs have not established standing for any of their claims because they do not satisfy the case or controversy requirement. Plaintiffs argue that the visiting judge system they believe is unconstitutional created directly traceable injuries for each Plaintiff to the respective presiding judges of the administrative judicial region. ECF No. 34 at 14. Plaintiffs also claim that state court actors refused to recuse themselves, misused public funds, denied access to records, maintained conflicts of interest, unequally applied fees, obstructed indigent litigants' ability to obtain judicial review, and retaliated against Plaintiffs. ECF No. 9 at 20, 32, 36, 40, 64, 66-67,

However, Plaintiffs have no case or controversy with these Defendants. If Plaintiffs disagree with a state court ruling or the actions of a state court clerk, coordinator, or reporter, they can appeal any such ruling in state court. However, they do not have a remedy in federal court directly against a state judge or court employee for damages or injunctive relief. *See Machetta v. Moren*, 726 F. App'x 219, 219-20 (5th Cir. 2018) ("no case or controversy exists between 'a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" (quoting *Bauer v. Texas*, 341 F.3d 352, 361 (5th Cir. 2003)). While Plaintiffs' pleadings include an amalgam of exceptional allegations, their arguments rely on the untenable foundation that they have standing to sue in federal court for unfavorable outcomes in a state court proceeding. Fifth Circuit precedent is clear that they do not. *See, e.g., Machetta,* 726 F. App'x at 219-20 (5th Cir. 2018) (internal citation omitted) (providing that a disgruntled family court litigant lacked standing to sue the family law judge in federal court for an unfavorable decision).

Consequently, the Court finds that there is no case or controversy as to Plaintiffs' claims arising from the state family law court system. Because there is no "case or controversy there is no standing, and without standing, no subject matter jurisdiction." *Machetta*, 726 F. App'x at 220 (citing *Ruiz v. Estelle*, 161 F.3d 814, 829 (5th Cir. 1998)). The Court should dismiss Plaintiffs' claims without prejudice. *See Ehm v. San Antonio City Council*, 269 F. App'x 375, 376 (5th Cir. 2008) (dismissing without prejudice a pro se plaintiff's claims for lack of standing).

### B. *Younger* abstention also applies.

Even if Plaintiffs did have standing, the Court should abstain from exercising subject matter jurisdiction under the *Younger* doctrine. *See Younger* 401 U.S. 37. *Younger* requires *sua sponte* abstention where "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (analyzing two of the three elements in a 42 U.S.C. § 1983 case); *Murphy*, 168 F.3d at 737 n.1 (authorizing *sua sponte* abstention).

Here, the Court should abstain because all three conditions are met. Plaintiffs acknowledge their state court proceedings are ongoing. ECF No. 34 at 16. Continuation of this case in federal court necessarily would interfere with the state court proceedings because Plaintiffs request relief from the various state court proceedings they allege violated their rights. Moreover, divorce and family law issues like those at issue in the state cases are important state interests. *See id.* at 16 (referring to one of the underlying state court proceedings as a family law case); ECF No. 9 at 19 (explaining that another involved divorce proceedings adjudicating property rights); *Moore v. Sims*, 442 U.S. 415, 434 (1979) ("Family relations are a traditional area of state concern"); *Crouch*

9

*v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978) (emphasizing "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts."). Finally, the right to appeal an adverse judgment to the applicable state appellate court or to seek extraordinary relief from that court affords Plaintiffs an adequate opportunity to litigate their claims. *See Middlesex Cnty.*, 457 U.S. at 435. As a result, the grounds for abstention under *Younger* are present in this case.

Even though Plaintiffs ask this Court to provide relief in seemingly unrelated issues such as invalidating the visiting judge system, the effect of these actions would effectively rule on the validity of ongoing state court cases. And while they argue in their Response (ECF No. 34) that "adequate state remedies are unavailable," the right to seek extraordinary relief and to appeal adverse judgments within the state court system provides a sufficient opportunity to litigate their claims.

Therefore, any constitutional questions regarding the validity of the Texas visiting judge system must be brought in state court, and the Court should abstain from ruling under the *Younger* doctrine even if Plaintiffs did have standing. On the facts presented here and because Plaintiffs have not shown any reason that abstention would be inappropriate, the Court should abstain from entertaining their claims under Rule 12(b)(1) and *Younger* and dismiss the claims without prejudice. *See Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (stating that "[u]nder *Younger* and its companion cases, a federal district court must abstain from exercising jurisdiction over a suit when state criminal proceedings are currently pending against the federal plaintiff."); *see also Foster v. City of El Paso*, 308 F. App'x 811, 812 (5th Cir. 2009) (dismissal under *Younger* abstention is without prejudice).

### C. The Eleventh Amendment bars Plaintiffs' claims against the judges in their official capacities.

"Official-capacity suits are not 'against the official personally, for the real party in interest is the entity.'" *Diaz v. Cantu*, 123 F.4th 736, 744 (5th Cir. 2024) (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). "For purposes of state sovereign immunity, the relevant question is whether 'the state is the real, substantial party in interest.'" *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 663, (1974)).

Here, Plaintiffs sue various judges who are the presiding judges of several Texas Administrative Judicial Regions in their official capacities. ECF No. 9 at 1. "An administrative judicial region is a state entity created by statute." *Rylander v. Brown*, No. 4:25-cv-2079, 2025 WL 2306829, at *2 (S.D. Tex. Aug. 6, 2025) (citing Tex. Gov't Code § 74.042(1)). Therefore, suits against these judges are "properly construed as [suits] against the State of Texas," and sovereign immunity applies. *Id.* Similarly, Texas District courts are "arms of the state," and therefore their judges are entitled to Eleventh Amendment immunity. *Diaz*, 123 F.4th at 745. And "the Texas Supreme Court is entitled to Eleventh Amendment immunity." *Washington Legal Found. v. Tex. Equal Access to Justice Found.*, 94 F.3d 996, 1005 (5th Cir. 1996), *aff'd sub nom. Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998).

Plaintiffs allege that there is an ongoing violation of their Fourth and Fourteenth Amendment rights through the visiting judge system in Texas. However, Plaintiffs neither pleaded nor directed the Court to authority showing that the State has waived its Eleventh Amendment immunity from suits brought under 42 U.S.C. § 1983. *Cox v. Texas*, 354 F. App'x 901, 903 (5th Cir. 2009). The Supreme Court has expressly held that § 1983 does not abrogate a state's Eleventh Amendment immunity. *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979) ("section 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity

of the States[.]"); *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's Eleventh Amendment immunity.").

Therefore, the Eleventh Amendment bars Plaintiffs' claims against the justices of the Texas Supreme Court, presiding judges of the Administrative Judicial Regions of Texas, and district courts judges in their official capacities because the State has not consented to suit, and Congress has not abrogated the State's immunity. Accordingly, even if the Plaintiffs had standing and *Younger* abstention did not apply, the Court still should dismiss Plaintiffs' claims against Chief Justice Blacklock and Judges Evans, Brown, Wheless, Catterton, Harris, Dean, Cooks, Roach, and Terry in their official capacities, without prejudice.

### D. Judicial immunity also bars the Plaintiffs' claims against the judges and court employees.

Because the judges sued in this case enjoy judicial immunity from civil actions for any judicial act over which their court has jurisdiction, dismissal is proper. *Stump*, 435 U.S. at 356 (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Judicial immunity is an immunity from suit, not just from the ultimate assessment of damages. *Mireles*, 502 U.S. at 11. Allegations of bad faith, malice, or corruption do not overcome judicial immunity. *Id*. Repeatedly, federal courts have found that judges are absolutely immune from claims for damages arising out of acts performed in the exercise of their judicial functions. *Ramirez v. Abdal Khallaq*, 4:17-cv-093-Y, 2019 WL 764420, at *3 (N.D. Tex. Feb. 21, 2019); *Morgan v. City of Fort Worth, Tex.*, 4:13-cv-004-Y, 2013 WL 3196580, at *2 (N.D. Tex. June 25, 2013) (involving, among others, a Tarrant County associate family law judge); *see Mireles*, 502 U.S. at 11 (citing *Forrester v. White*, 484 U.S. 219, 227-29 (1988) & *Stump*, 435 U.S. at 360); *see also Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

A plaintiff can overcome absolute judicial immunity only if he shows that the alleged actions were nonjudicial in nature or that the actions were taken in the complete absence of all

jurisdiction. *Mireles*, 502 U.S. at 11; *Boyd*, 31 F.3d at 284. Section 1983 also provides absolute judicial immunity to judicial officers against claims for injunctive relief. 42 U.S.C. § 1983.

Plaintiffs sue the judges in their official capacities. However, Plaintiffs do not show that the judges' actions were nonjudicial in nature or that they took them in the complete absence of jurisdiction. Plaintiffs' first claim that retired Senior Judge Catterton signed an ex parte order without prior notice to the parties and that David Evans did not provide notice that Judge Catterton was a retired Senior Judge sitting by assignment. ECF No. 9 at 61. Then they claim that Senior Judge Harris was assigned to preside in a matter without providing them with sufficient notification. *Id.* at 17. Plaintiffs make nearly identical allegations against Judge Dean. *Id.* at 18-19. They also allege Judge Roach's spouse served as their mediator, creating an undisclosed conflict of interest. *Id.* at 19-20. They claim that Judge Cooks denied their motion to recuse despite their objections, violating procedural laws. *Id.* at 20. They contend that the retired judge's for-profit mediation and ADR businesses create unconstitutional appearances of partiality. Finally, they allege systemic assignment practices, denial of access to assignment records, absence of conflict screening, and expansion of the "visiting judge" practice violate state and constitutional law. *Id.* at 37-42.

None of the Plaintiffs' claims relate to nonjudicial acts by the judges, nor actions that were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11; *Boyd*, 31 F.3d at 284. And as for Plaintiffs' allegations regarding judges who did not recuse, the decision not to recuse also warrants immunity. *See Brenham v. Rosenberg*, No. 3:21-cv-2972-B-BN, 2021 WL 6297750, at *2 (N.D. Tex. Dec. 6, 2021) (quoting *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 412 (5th Cir. 2009)) ("Neither '[r]ecusal' nor, by implication, the failure to recuse is 'the type[ ] of administrative or ministerial conduct for which judicial immunity is unavailable.'"), *rec. adopted*, 2022 WL 60350 (N.D. Tex. Jan. 6, 2022).

13

Because the pleadings show that the judges' actions in the state cases were within their capacities as district judges, they are entitled to absolute judicial immunity from Plaintiffs' claims in this case. *See* Tex. Const. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body."); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("A Texas district court . . . is a court of general jurisdiction" and "all claims are presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere.").

Similarly, § 1983 does not permit such suits against court clerks like Wilder. Here, Plaintiffs allege Wilder improperly charged Plaintiffs court fees. ECF No. 9 at 27. Court clerks have immunity for actions taken in the scope of their professional duties. Court clerks "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's direction . . . ." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981). Clerks enjoy "only qualified immunity for those routine duties not explicitly commanded by a court decree or by the judge's instructions." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). Therefore, Wilder as District Clerk of Tarrant County is also immune from this suit.

Additionally, claims against court coordinators like Grimaldi are not permitted. Here, Plaintiffs sue Grimaldi alleging she issued a contest notice that bore an illegible handwritten hearing date. ECF No. 9 at 24. Plaintiffs claim she took no corrective action when they notified her of the illegibility. *Id.* Court coordinators sued in their "individual capacity are barred by quasi-judicial immunity and qualified immunity." *Diggles v. Surratt*, No. 4:23-cv-78, 2023 WL 6963666, at *5 (S.D. Tex. Oct. 20, 2023). As for official capacity claims, even if Grimaldi "is not considered a state official protected by sovereign immunity," Plaintiffs' claims are unsuccessful

14

because they have not "plead facts establishing the elements of municipal liability in order to state a claim against her in her official capacity." *Id.* at 5, 6 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* at 7. Plaintiffs did not establish a factual basis as to any of these three elements. As a result, Plaintiffs' claims against Grimaldi in both her individual and official capacities are barred.

Plaintiffs claim that Moss, as a court reporter, "sought approximately $500,000 in reporter-related fees/costs." ECF No. 9 at 27. However, claims against court reporters like Moss, brought "in [their] individual capacity are barred by qualified immunity." *Id.* at 7. These court employees whom Plaintiffs accuse of constitutional violations all have immunity from those accusations, and Plaintiffs have not pleaded facts to show that they are liable in their individual capacities or that they would not have qualified immunity from any such claims.

Plaintiffs' accusations do not rebut judicial immunity as to the judges, or immunity as to the court coordinator, court clerk, or court reporter. Accordingly, even if the Court need not abstain from hearing the case under the *Younger* Doctrine and Plaintiffs had standing, the Court should dismiss Plaintiffs' claims against Chief Justice Blacklock, Judges Evans, Brown, Wheless, Harris, Dean, Cooks, Roach, and Terry, and Grimaldi, Moss, and Wilder. *See Devabhaktuni v. Godbey*, No. 3:19-cv-2215-K, 2019 WL 5068557, at *1 (N.D. Tex. Oct. 8, 2019) (adopting the findings of the magistrate judge, recommending dismissal of claims barred by judicial immunity).

    **E.**    **Qualified immunity bars the Plaintiffs' claims against the judges and court personnel in their individual capacities.**

"Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (internal citations omitted). The judicial defendants are entitled to qualified immunity as to

15

the claims against them in their individual capacities because Plaintiffs did not plead any facts to show that any of the judges, clerks, or other court personnel acted in their individual capacities as to the actions that allegedly violated Plaintiffs' rights. A plaintiff's complaint must "state with precision and specificity" the basis for the claim which necessarily includes why the defendant official cannot successfully maintain the defense of immunity. *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir. 1999). The Fifth Circuit adheres to a "heightened pleading" standard in civil rights cases against government officials. *See Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc) (affirming the continuing validity of *Elliot v. Perez,* 751 F.2d 1472 (5th Cir. 1985)).

Plaintiffs assert that the defendants' lack of notice and assignment in various state court matters through the visiting judge system violated their constitutional rights. However, Plaintiffs do not cite adequate legal authority for the contention that the visiting judge system constitutes such a violation. And merely stating so is not enough to establish a violation of any of Plaintiffs' constitutional rights. Even if Plaintiffs had pleaded facts to show that any of the judges, clerks, or other court personnel could be liable in his or her individual capacity, Plaintiffs' allegations do not demonstrate a violation of a constitutional right or that the constitutional right was clearly established at the time of the challenged conduct. *Ashcroft*, 563 U.S. at 741. Instead of stating facts that support their claims, Plaintiffs make "cursory and unsupported allegations," which the Court need not accept as true. *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021).

Thus, Plaintiffs have not pleaded facts that would overcome qualified immunity. Accordingly, Chief Justice Blacklock, Judges Evans, Brown, Wheless, Harris, Dean, Cooks, Roach, and Terry, and court employees Grimaldi, Moss, and Wilder would be entitled to qualified immunity from Plaintiffs' claims against them in their individual capacity, if Plaintiffs had pleaded facts to show any violations of the law in one of those Defendant's individual capacity. So, even

if Plaintiffs had standing to pursue their claims and the Court need not abstain under *Younger*, the Court should dismiss Plaintiffs' claims against these Defendants. *Reiter v. Treacy*, 220 F.3d 584 (5th Cir. 2000) (affirming dismissal of claims based on qualified immunity against defendants in their individual capacities.)

      **F.**    **The Court should dismiss Plaintiffs' claims against Tarrant County.**

Plaintiffs also sue Tarrant County, but their claims lack merit.

> [A] county "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Furthermore, a county "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." To succeed on this type of claim—called a *Monell* claim—the plaintiff must show that "(1) an official policy (2) promulgated by a municipal policymaker (3) was the moving force behind the violation of a constitutional right."

*Thornton v. Dallas Cnty.*, No. 3:23-cv-1945-D, 2024 WL 3357840, at *3 (N.D. Tex. July 10, 2024) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978), *Webb v. Town of St. Joseph*, 925 F.3d 209, 215 (5th Cir. 2019)).

Plaintiffs argue that the Tarrant County Criminal District Attorney's Office harassed them. ECF No. 9 at 5. They also allege that the Tarrant County District Clerk's Office had a "policy, practice, or custom of routinely waiving or failing to assess filing fees for Rule 145 contests filed by favored court reporters and other court-affiliated parties," which facilitated such contests against Plaintiffs. *Id.* at 22, 25-26. But Plaintiffs do not show any factual basis that Tarrant County implemented or executed "a policy statement, ordinance, regulation, or decision [that was] officially adopted and promulgated by that body's officers." *Thornton*, 2024 WL 3357840, at *3. Nor do Plaintiffs show that there was an official policy promulgated by a municipal policymaker,

that was the moving force behind the violation of a constitutional right. *Id.* As a result, the Court also should dismiss Plaintiffs' claims against Tarrant County.

### G. The Court should dismiss Plaintiffs' claims against all Defendants.

Dismissal of Plaintiffs' claims against all Defendants is appropriate. *See Taylor v. Acxiom Corp.*, 612 F.3d at 340 ("While the district court did dismiss *sua sponte* some defendants who did not join the motion to dismiss, there is no prejudice to the plaintiffs in affirming the judgment in its entirety because the plaintiffs make the same allegations against all defendants."); *Bonny v. Soc'y of Lloyd's*, 3 F.3d at 162 ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.").

The Court previously noted that due to the commonality of Plaintiffs' claims against Defendants, Plaintiffs should respond to Judge Wheless' Motion to Dismiss (ECF No. 15) as if all Defendants made similar arguments for dismissal. *See* ECF No. 18. Plaintiffs attack the visiting judge system in Texas and Tarrant County's internal administrative practices through a panoply of allegations against current and former judges, court employees, and Tarrant County itself. While their claims relate to separate actions in multiple state district courts, these disparate examples merely serve as the foundation for their common claim that the visiting judge system is unlawful and should be invalidated, and Tarrant County's operation of the state court system is improper. The claims against all Defendants in this action are integrally related. *Bonny*, 3 F.3d at 162. In addition, Plaintiffs' allegations, and the issues of abstention and various immunities that they raise, are common to all Defendants in this action. Accordingly, the Court should grant the Motion to Dismiss (ECF No. 15) and dismiss Plaintiffs' claims against all Defendants.

The undersigned concludes that dismissal of Plaintiffs' Amended Complaint should be without leave to amend. The decision to allow amendment of the pleadings is within the sound

discretion of the district court. *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir.1994). In determining whether to allow an amendment of the pleadings, the Court considers the following: undue delay in the proceedings, undue prejudice to the opposing parties, timeliness of the amendment, and futility of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.,* 690 F.2d 1157, 1163 (5th Cir. 1982). Allowing Plaintiffs an opportunity to amend their Amended Complaint would be an inefficient use of the Court's resources, would cause unnecessary delay, and would be futile because of the lack of standing, need for abstention under *Younger* even if the Plaintiffs had standing, and the sovereign, judicial, and qualified immunity that would bar Plaintiffs' claims against the judicial and court personnel Defendants.

Plaintiffs already have filed an 82-page Amended Complaint and a 26-page Response and Objection to Judge Wheless' Motion to Dismiss. *See* ECF Nos. 9, 34. that No amount of amendment or revised pleadings would change the legal requirement that Plaintiffs have standing to pursue their case, that the Court should abstain under *Younger*, and that sovereign, judicial, and qualified immunity bar their claims against the named judges and court personnel. Nor would it permit Plaintiffs' claims against Tarrant County to proceed. The undersigned concludes based on their extensive pleadings and the nature of their claims that Plaintiffs have pleaded their best, though legally insufficient, case against the Defendants, and further amendment of their Amended Complaint would be futile.

IV.    **CONCLUSION**

For these reasons, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** the Motion to Dismiss (ECF No. 15), **ABSTAIN** from exercising jurisdiction over Plaintiffs' claims, and **DISMISS** Plaintiffs' claims against all Defendants **WITHOUT PREJUDICE**.

A copy of these findings, conclusions, and recommendation shall be served on all parties

in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on February 18, 2026.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE