**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **SAMUEL RANDLES, et al.,**<br>Plaintiffs,<br><br>v.<br><br>**JIMMY BLACKLOCK, et al.,**<br>Defendants. | **Civil Action No. 4:25-cv-01422-O-BP** |

**PLAINTIFFS' OBJECTIONS TO FINDINGS, CONCLUSIONS, AND
RECOMMENDATION**

1

TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................................2

TABLE OF AUTHORITIES .......................................................................................................3

PRELIMINARY STATEMENT ...................................................................................................5

OBJECTION NO. 1: THE FCR EMPLOYED AN UNFAIR SUA SPONTE DISMISSAL
PROCEDURE AND IMPROPERLY CONVERTED WAIVABLE, DEFENDANT-SPECIFIC
DEFENSES INTO GLOBAL BARS...........................................................................................6

   I.     Procedural Background.......................................................................................6

   II.    Rule 12(b) and the Party-Presentation Principle Bar Court-Supplied Defenses................7

   III.   The "Integrally Related" Rationale Is Factually Contradicted by the Record ...............7

   IV.   The FCR Mixed Threshold Jurisdictional Questions with Defendant-Specific Defenses 8

   V.    ECF No. 18 Could Not Reallocate Substantive Burdens.....................................................9

   VI.   The FCR Applied Judicial Immunity to an Expressly Abandoned Claim......................9

   VII.  Section 1983's Text Shows the FCR's Immunity Analysis Did Not Address the Actual
Claim  10

   VIII.  The FCR Did Not Perform the Function-Specific Immunity Analysis ........................10

   IX.   The FCR Improperly Moved from Title to Immunity Without Analyzing the Function
Actually Challenged..........................................................................................................11

   X.    The FCR's 12(b)(1) Discussion Cannot Substitute for a Separate 12(b)(6) Analysis......11

OBJECTION NO. 2: THE FCR RECASTS PLAINTIFFS' CLAIMS INTO A STRAWMAN
AND FAILS TO ADJUDICATE THE THEORIES ACTUALLY BRIEFED ...........................12

   I.     The FCR Ignored the Controlling *La Union / Ex parte Young* Framework ....................12

   II.    The FCR Applied the Wrong Younger Framework After Sprint and Daves .................13

   III.   Wheless Is Sued for Administrative Implementation of Chapter 74, Not Adjudication
      15

   IV.   Roach Is Sued for Ongoing Participation Despite Alleged Constitutional
Disqualification..................................................................................................................17

   V.    The FCR's Citation Errors Confirm the Analytical Slippage ...........................................20

   VI.   Conclusion on Objection No. 2..........................................................................................21

OBJECTION NO. 3: THE FCR'S SEPARATE MONELL, COURT-PERSONNEL, AND
FUTILITY RULINGS WERE NOT INDEPENDENTLY ESTABLISHED AND CANNOT
SUSTAIN DISMISSAL..............................................................................................................21

   I.     These Were Separate Rule 12(b)(6) and Affirmative-Defense Rulings, Not Jurisdictional
Housekeeping.....................................................................................................................21

   II.    The Separate County Monell Ruling Was Not Independently Established .....................22

   III.   The Separate Court-Personnel Rulings Were Not Independently Established .............23

IV.     The Futility Ruling Is Derivative and Cannot Stand ................................................... 25

OBJECTION NO. 4: THE FCR'S BLANKET "WITHOUT PREJUDICE" DISMISSAL IS LEGALLY ERRONEOUS AND INTERNALLY INCONSISTENT WITH ITS NO-LEAVE RULING ........................................................................................................................... 26

COMBINED PRAYER FOR RELIEF .............................................................................. 27

## TABLE OF AUTHORITIES

### Cases

*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003)........................................................................... 19

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ........................................................................... 19

*Bradley v. Fisher*, 80 U.S. 335 (1871)...................................................................................... 10

*Cain v. White*, 937 F.3d 446 (5th Cir. 2019)..................................................................... 12, 17

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)................................................. 12, 17

*Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) ................................................. 22

*Century Sur. Co. v. Blevins*, 799 F.3d 366 (5th Cir. 2015).............................................. 7, 22

*Clay v. Allen*, 242 F.3d 679 (5th Cir. 2001)............................................................................ 23

*Daves v. Dallas Cnty.*, 22 F.4th 522 (5th Cir. 2022) (en banc) ....................................... 10, 14

*Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307 (5th Cir. 2014) ................................. 7, 22

*Dennis v. Sparks*, 449 U.S. 24 (1980) ..................................................................................... 11

*Diaz v. Cantu*, 123 F.4th 736 (5th Cir. 2024) ........................................................................ 16

*Ex parte Young*, 209 U.S. 123 (1908)...................................................................................... 13

*Ferri v. Ackerman*, 444 U.S. 193 (1979) ................................................................................. 11

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................... 25, 26

*Forrester v. White*, 484 U.S. 219 (1988) ................................................................................. 15

*Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306 (5th Cir. 2021) ........................... 10

*Gomez v. Toledo*, 446 U.S. 635 (1980)................................................................................ 8, 24

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002).. 25, 26

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................. 24

*In re Gault*, 387 U.S. 1 (1967) ................................................................................................ 19

*La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025) ............................. 12, 13

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993)......... 22

*Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636 (5th Cir. 2007) .......................................... 6, 22

*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996) ..................................................................................... 19

*Mireles v. Waco*, 502 U.S. 9 (1991)......................................................................................... 11

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)......... 8, 22

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012)..................................................................... 8

*Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572 (5th Cir. 2009).......................................... 24

*Sparks v. Duval Cnty. Ranch Co.*, 604 F.2d 976 (5th Cir. 1979)........................................... 11

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) .................................................. 13

*Stump v. Sparkman*, 435 U.S. 349 (1978) ............................................................................... 11

*Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981) ...................................................................... 23

*Tower v. Glover*, 467 U.S. 914 (1984)..................................................................................... 11

*Tumey v. Ohio*, 273 U.S. 510 (1927) ................................................................................. 12, 17

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020) ....................................................... 7, 22

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ............................................................ 19
*Williams v. Pennsylvania*, 579 U.S. 1 (2016) ........................................................................... 17
*Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341 (5th Cir. 2020) (en banc) ........................... 26
*Younger v. Harris*, 401 U.S. 37 (1971) ................................................................................... 13

Statutes

*42 U.S.C. § 1983* ..................................................................................................................... 10
*Tex. Gov't Code § 52.047* ....................................................................................................... 24
*Tex. Gov't Code § 52.051(a)* ................................................................................................... 24
*Tex. Gov't Code § 659.020* ..................................................................................................... 24
*Tex. Gov't Code § 74.053* ....................................................................................................... 16
*Texas Constitution Article V, § 1* ........................................................................................... 16
*Texas Constitution Article V, § 11(a)* ..................................................................................... 16

## PRELIMINARY STATEMENT

1.     These objections identify three principal errors in the Findings, Conclusions, and Recommendation ("FCR").

2.     **First**, the FCR employed an **unfair** *sua sponte* dismissal method that converted **waivable**, defendant-specific defenses into court-supplied global bars without meaningful notice and without requiring each Defendant to properly invoke the **claim-based** defense applied on that Defendant's behalf.

3.     Second, the FCR did not adjudicate the theories Plaintiffs actually briefed. Its standing analysis relied on *Machetta*, which addresses claims by litigants challenging judicial action in an ordinary adjudicative posture. Plaintiffs' theories are different. Defendant Wheless is sued for alleged administrative conduct in operating the Chapter 74 assignment-and-notice process, not for adjudicating the merits of any case. Defendant Roach is sued on a structural due-process theory: that he allegedly continued to preside despite a constitutionally disqualifying financial-interest conflict under *Tumey, Caperton* and *Cain (ECF No. 35, ¶¶ 1–6, 17, 29, 34–40)*. Those theories required a function-specific and injury-specific analysis the FCR never performed. It likewise did not apply the controlling *La Union / Ex parte Young* framework (ECF No. 34, ¶¶ 11–12, 41–44, 52; ECF No. 35, ¶¶ 36, 52), did not conduct the category-first *Sprint / Daves Younger* analysis (ECF No. 34, ¶¶ 53–58; ECF No. 35, ¶¶ 61–66), and did not address the Chapter 74 administrative-injury and structural-disqualification theories on their own terms.

4.     Third, the FCR's separate *Monell*, court-personnel, and futility rulings were not independently established and cannot sustain dismissal as fallback grounds. The FCR also applied

judicial immunity to an individual-capacity damages claim against Defendant Roach that Plaintiff

Tuter had *expressly* abandoned before the FCR issued. (ECF No. 35, ¶¶ 7–9).

5.      In substance, the FCR adjudicated a strawman— **recasting** this case as a routine

"disgruntled family-court litigant" suit against judges—rather than addressing the defendant-

specific claims and theories Plaintiffs actually presented. De novo review should therefore reject

the FCR's global framing and address the pleaded theories, defendant by defendant and function

by function, under the correct standards.

### OBJECTION NO. 1: THE FCR EMPLOYED AN UNFAIR SUA SPONTE DISMISSAL PROCEDURE AND IMPROPERLY CONVERTED WAIVABLE, DEFENDANT-SPECIFIC DEFENSES INTO GLOBAL BARS

### I.Procedural Background

6.       Judge Wheless filed a motion to dismiss on February 4, 2026. The next day, February 5,

2026, the Court entered an order directing Plaintiffs to respond as though all Defendants had made

similar arguments for dismissal. Plaintiffs' response was due February 12, 2026—**seven** days

later—rather than the ordinary **twenty-one** days contemplated by Local Rule 7.1(e).

7.      Plaintiffs' request for additional time was denied. The FCR then recommended granting

Wheless's motion and dismissing claims against **all** Defendants on the ground that Plaintiffs'

claims are "integrally related" and that "abstention and various immunities" are common to all

Defendants.

8.      That procedure was unfair in a specific and documentable way. The Fifth Circuit permits

*sua sponte* dismissal only when "the procedure employed is fair," and fairness requires notice

adequate to the specific ground on which the court acts. *Lozano v. Ocwen Fed. Bank, FSB*, 489

F.3d 636, 642–43 (5th Cir. 2007); *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310–11 (5th

Cir. 2014); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372–73 (5th Cir. 2015). ECF No. 18 told Plaintiffs to respond to **Wheless's** arguments "as if all Defendants made **similar** arguments." That notice was **limited** to arguments **Wheless** actually raised (Standing, *Younger*, Eleventh Amendment Immunity). It did **not** give notice that the Court was also broadly considering **non-similar** clerk-specific immunity for Wilder, quasi-judicial immunity for Grimaldi, qualified immunity for Moss, or *Monell* pleading deficiencies for Tarrant County. Plaintiffs therefore lacked a fair opportunity to brief the grounds on which the FCR later dismissed those Defendants. That is the same fairness defect recognized in *Davoodi*, where the district court dismissed beyond the claim actually put in play by the motion before it.

### II. Rule 12(b) and the Party-Presentation Principle Bar Court-Supplied Defenses

9.      Federal Rule of Civil Procedure 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading." "**Must**" is mandatory, and "**every**" is universal. When a defendant does not assert a defense, the court should not supply that defense on the defendant's behalf. The complaint alleged seven distinct counts, and not every Defendant is named in every count. It is the Defendant—**not** the Court—who chooses **which** claims to defend.

10.      The same point follows from the party-presentation principle. "In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Courts rely on the parties to frame the issues and serve as *neutral* arbiters of the matters the parties actually present. The FCR's method departed from that principle by converting one defendant's motion into a global defense platform for all Defendants.

### III. The "Integrally Related" Rationale Is Factually Contradicted by the Record

11.     The FCR used the amorphous phrase "integrally related" to justify extending dismissal

from Wheless and Roach to all Defendants without any function-specific analysis. But Defendants'

own submissions drew a narrower line. The Wheless response stated that the issues and arguments

in that filing applied only to Defendants involved in the challenged Chapter 74 practices, "**except**

those involved in the challenged Rule 145 indigency practices." ECF No. 34, ¶ 7. That express

limitation **refutes** any claim that all issues were **interchangeable** across all Defendants.

12.     The mismatch is most obvious as to Tarrant County. A *Monell* claim against a municipality

requires a policy, a policymaker, and moving-force causation. *Monell v. Department of Social

Services of the City of New York*, 436 U.S. 658, 690–94 (1978). That framework is **not** remotely

identical to a judge's standing or immunity defense. ECF No. 18's instruction to treat Wheless's

arguments as though all Defendants had made them could not fairly extend to a county government

that made no such arguments and occupied a wholly different legal posture.

### IV. The FCR Mixed Threshold Jurisdictional Questions with Defendant-Specific Defenses

13.     The FCR collapsed standing, sovereign immunity, judicial immunity, qualified immunity,

and Rule 12(b)(6) pleading defects into a single court-supplied basis for dismissal. That conflation

was legally wrong. Standing may be examined by the Court on its own, but the other doctrines still

require the Court to identify the actual defendant, the actual claim, and the actual procedural basis

before dismissal.

14.     Qualified immunity is an affirmative defense. *Gomez v. Toledo*, 446 U.S. 635, 640–41

(1980); *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). Judicial immunity, quasi-judicial

immunity, and *Monell* deficiencies likewise do not become common jurisdictional defects merely

because a court chooses to discuss them in the same FCR. The FCR therefore could not use

threshold standing analysis as a vehicle for imposing separate, unasserted merits defenses on differently situated defendants.

## V. ECF No. 18 Could Not Reallocate Substantive Burdens

15.    A case-management order may regulate briefing schedules, but it cannot **reallocate substantive burdens** established by Rule 12, Article III, and controlling precedent. It cannot convert one defendant's motion into every defendant's motion for every purpose. It cannot transform affirmative defenses into jurisdictional prerequisites. And it cannot cure the absence of fair notice required before a *sua sponte* merits dismissal.

## VI. The FCR Applied Judicial Immunity to an Expressly Abandoned Claim

16.    The FCR's judicial immunity analysis as to Defendant Roach is a nullity because it was applied to a claim Plaintiff Tuter had expressly abandoned before the FCR issued. The Roach response stated unambiguously: "Plaintiff Tuter does **not** seek monetary damages from Defendant Roach in his individual capacity and expressly abandons any such claims." (ECF No. 35, ¶¶ 7–9).

17.    Judicial immunity is a defense to individual-capacity damages claims. Once Plaintiff Tuter abandoned any such claim against Roach, there was **no** live judicial-immunity issue left for the FCR to decide as to that damages theory. Yet the FCR devoted multiple pages to the abandoned issue while failing to address the live theory Plaintiff actually presented. That is not harmless mismatch. It shows that the FCR did **not** analyze the operative claim on its actual terms.

18.    The same point is reinforced by the adjacent Wheless filing. The Roach response observed that Judge Wheless—represented by the same counsel from the Office of the Attorney General— did **not** even raise judicial immunity in his own motion to dismiss because only official-capacity

equitable relief was sought. ECF No. 35, ¶ 10. The FCR nevertheless applied judicial immunity over both the express abandonment and the on-record concession.

### VII. Section 1983's Text Shows the FCR's Immunity Analysis Did Not Address the Actual Claim

19.     The FCR also failed to address the statutory argument Plaintiffs actually made. Section 1983 expressly contemplates declaratory relief against judicial officers. It provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *42 U.S.C. § 1983*. That text presupposes the availability of declaratory relief. See *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 312 (5th Cir. 2021); *Daves v. Dallas Cnty*, 22 F.4th 522 (5th Cir. 2022) (en banc).

20.     Because Plaintiffs sought declaratory relief as their primary remedy and sought injunctive relief only in the manner the statute permits, the FCR's judicial-immunity discussion did not answer the live claim presented. Judicial immunity is a defense to individual-capacity damages. It is not a blanket bar to official-capacity declaratory relief expressly contemplated by the statute.

### VIII. The FCR Did Not Perform the Function-Specific Immunity Analysis

21.     Even if immunity could be raised *sua sponte*, the FCR still had to analyze each defendant's function before extending absolute judicial or quasi-judicial immunity. Absolute immunity is exceptional and function-based, not title-based. For judges, it protects judicial acts within jurisdiction. For clerks, coordinators, and court reporters, the question is whether the challenged conduct was adjudicative or instead ministerial, administrative, or recordkeeping in nature.

22.     The controlling Supreme Court cases define judicial immunity by function and jurisdiction, not by office label. *Bradley v. Fisher*, 80 U.S. 335 (1871); *Stump v. Sparkman*, 435 U.S. 349, 355–

57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Before a court may extend quasi-judicial immunity to court personnel, it must ask what act is challenged and whether that act was taken pursuant to a judicial function or specific court direction, as opposed to ministerial or administrative conduct. The FCR never performed that analysis.

23.    The same is true for private actors. The Supreme Court has narrowly bounded absolute immunity for private attorneys and private parties. *Ferri v. Ackerman*, 444 U.S. 193 (1979); *Tower v. Glover*, 467 U.S. 914 (1984). The Fifth Circuit has likewise rejected extending judicial-type immunity to private persons who corruptly induce judicial action. *Sparks v. Duval Cnty. Ranch Co.*, 604 F.2d 976, 980 (5th Cir. 1979), rev'd on other grounds sub nom. *Dennis v. Sparks*, 449 U.S. 24 (1980). The FCR therefore could not use a generic judicial-immunity rationale to dispose of private-actor allegations without engaging the distinct legal framework governing them.

### IX.    The FCR Improperly Moved from Title to Immunity Without Analyzing the Function Actually Challenged

24.    As to Defendant Wheless specifically, the challenged conduct concerned his assignment-and-notice role under Chapter 74 of the Texas Government Code. Whether that function is adjudicative or administrative is a distinct question that the FCR never answered. Instead, the FCR moved from title to immunity without identifying the source and character of the authority actually exercised. That is precisely the kind of shortcut a function-specific immunity analysis forbids.

### X.    The FCR's 12(b)(1) Discussion Cannot Substitute for a Separate 12(b)(6) Analysis

25.    Finally, the FCR treated nonjurisdictional doctrines as though they were Rule 12(b)(1) defects requiring blanket dismissal without prejudice, while simultaneously using them as merits bars that mooted any separate Rule 12(b)(6) analysis. That structural collapse was error. Immunity

and pleading sufficiency answer different questions and require different analyses. The FCR could not generate findings under one framework and then use them as substitutes for the other.

### OBJECTION NO. 2: THE FCR RECASTS PLAINTIFFS' CLAIMS INTO A STRAWMAN AND FAILS TO ADJUDICATE THE THEORIES ACTUALLY BRIEFED

### I. The FCR Ignored the Controlling *La Union / Ex parte Young* Framework

26.     Before turning to *La Union*, the threshold error in the FCR's standing analysis should be identified. The FCR treated *Machetta v. Moren* as though it imposed a categorical standing bar whenever a state judicial officer is named as a defendant. But *Machetta* addressed a different type of injury: an outcome-based grievance arising from ordinary adjudication.

27.     That is not the theory pleaded here. As to Defendant Wheless, Plaintiffs challenge alleged administrative conduct in operating the Chapter 74 assignment-and-notice process, not the merits of any adjudicative ruling. As to Defendant Roach, Plaintiffs do not allege merely that he ruled incorrectly; they allege he continued to preside despite a constitutionally disqualifying conflict, which states a structural due-process injury under *Tumey v. Ohio*, 273 U.S. 510 (1927), *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), and *Cain v. White*, 937 F.3d 446 (5th Cir. 2019). Those alleged injuries differ in kind from the outcome-based injury addressed in *Machetta*.

28.     Once that distinction is recognized, the relevant framework is *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025), which governs the relationship between Article III standing and *Ex parte Young* in suits seeking prospective relief against state officials. The FCR never cites it once. That omission matters because *La Union* is the current circuit authority on defendant-specific traceability, the "scintilla of enforcement" standard, and the rule that an official need only be able to provide partial relief to satisfy redressability.

29.    The FCR's Eleventh Amendment analysis answered questions Plaintiffs did not present. It stated that Plaintiffs had not shown waiver of sovereign immunity and that *§ 1983* does not abrogate immunity. Plaintiffs' point was not waiver and it was not abrogation. Both responses expressly invoked *Ex parte Young*, 209 U.S. 123 (1908), and argued ongoing violations, prospective declaratory relief, and a defendant-specific causal connection to the injury. (ECF No. 34, ¶¶ 11–12, 41–44, 52; ECF No. 35, ¶¶ 36, 52). The correct question was whether each named official had the requisite connection to the challenged conduct and whether prospective relief would redress an ongoing injury. The FCR did not answer that question.

30.    Under *La Union*, standing and the *Young* connection inquiry "significantly overlap" and are "inextricably intertwined." 163 F.4th at 255. The relevant inquiry is therefore defendant-specific. Traceability and the *Young* connection require at least a "scintilla of enforcement," and redressability is satisfied where the named official can provide even partial relief. *Id.* at 257, 275. The FCR's generalized "no case or controversy" formulation bypassed that framework.

31.    De novo review should therefore apply the actual framework Plaintiffs briefed: whether the pleaded facts show, as to each defendant, a concrete implementation role, a causal connection to the alleged injury, and at least partial redressability through prospective relief.

**II.    The FCR Applied the Wrong Younger Framework After Sprint and Daves**

32.    Both responses argued that *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), controls the threshold abstention inquiry. *Sprint* narrowed *Younger v. Harris*, 401 U.S. 37 (1971), to three exceptional categories: state criminal prosecutions, state civil enforcement proceedings akin to criminal prosecutions, and civil proceedings involving orders uniquely in furtherance of the state courts' ability to perform their judicial functions. (ECF No. 34, ¶¶ 53–58; ECF No. 35,

¶¶ 61–66). The FCR cited *Sprint* in its legal standards section, but its operative analysis reverted to the older framework of ongoing proceeding, important state interest, and adequate opportunity to raise constitutional claims.

33.     That was error after *Daves v. Dallas Cnty*, 22 F.4th 522, 540–41 (5th Cir. 2022) (en banc), which holds that *Younger* goes "no further" than *Sprint*'s three exceptional categories and that the *Middlesex* factors are **not** dispositive unless the case first fits within one of those categories. The FCR **never** actually identified which *Sprint* category this case fits, nor did it explain why the particular relief sought here—directed to Chapter 74 assignment-and-notice practices and alleged ongoing constitutional disqualification—would interfere with proceedings uniquely in furtherance of the state courts' judicial functions.

34.     Plaintiffs' live theories are narrower than the FCR's characterization. The Wheless theory challenges administrative implementation of the Chapter 74 assignment regime. The Roach theory challenges ongoing participation by a judge alleged to be constitutionally disqualified. Those theories do not on their face seek appellate review of a custody decree or a federal takeover of an ordinary family-law merits dispute. The FCR therefore could not rely on generic family-law subject matter to short-circuit the category-first analysis required by *Sprint* and *Daves*.

35.     The same point defeats the FCR's cursory adequacy-of-remedies analysis. Plaintiffs' argument was not that state appellate review is merely slow or inconvenient. It was that Defendant Wheless allegedly controlled the assignment machinery through which the recusal question itself was routed while also being a defendant in the same constitutional dispute. A generic reference to appellate review did not answer that structural argument.

36.     The FCR's standing and *Younger* analyses rest on **incompatible premises** the opinion never reconciles. It says Plaintiffs have no federal remedy for these injuries, yet also says state procedures are adequate to remedy them. If the federal forum is **categorically unavailable**, the FCR's separate **adequacy** analysis becomes **superfluous**; if state procedures are **adequate** to address these injuries, then the **injuries** are not **nonexistent**. The opinion never explains why these injuries are sufficiently cognizable to make state remedies "adequate," yet categorically unavailable for federal adjudication as to these specific defendants and these specific functions. Nor does it identify any feature of the *state* forum that makes it **uniquely capable** of addressing these injuries while rendering the *federal* forum **categorically unavailable**. (ECF No. 35, ¶¶ 69–72).

### III. Wheless Is Sued for Administrative Implementation of Chapter 74, Not Adjudication

37.     The FCR's reliance on *Machetta* as to Defendant Wheless rests on a category mismatch. *Machetta* addresses claims challenging adjudicative action and unfavorable judicial outcomes. Plaintiffs' theory against Wheless is different. It challenges alleged **administrative implementation** of the Chapter 74 assignment-and-notice process—such as assignment, notice timing, and objection procedure—not the merits of any judicial ruling. On the theory pleaded, Wheless is sued for appointment-and-administration conduct rather than adjudication. (ECF No. 34, ¶¶ 16–17, 20–21, 24, 27–32).

38.     That distinction matters because the law requires a function-specific analysis. The Supreme Court has held that acts performed by a judge in an administrative capacity are not treated as judicial acts merely because the actor holds judicial office. *Forrester v. White*, 484 U.S. 219, 227–29 (1988). The Fifth Circuit likewise emphasizes that **function**, **not title**, **controls**. *Diaz v. Cantu*,

123 F.4th 736, 747 (5th Cir. 2024). A standing analysis therefore cannot assume that all conduct by a judicial officer is adjudicative conduct for purposes of *Machetta*.

39.     The Texas Constitution and Chapter 74 confirm the administrative character of the function challenged here. *Texas Constitution Article V, § 11(a)* gives the parties the initial substitution right and authorizes appointment "in such manner as may be prescribed by law" only upon their failure to act, indicating that the Chapter 74 mechanism is one of appointment and administrative designation, not merits adjudication. *Texas Constitution Article V, § 1* vests judicial power in constitutional courts, while the administrative judicial region is a statutory creation established to manage assignments and related court operations rather than to exercise independent original adjudicatory jurisdiction.

40.     Chapter 74's text points the same way. *Tex. Gov't Code § 74.053(a)* requires the presiding judge to issue the assignment order and provide notice before any merits proceeding begins. *Tex. Gov't Code § 74.053(b)* makes removal mandatory upon a timely objection: the assigned judge "shall not hear the case." *Tex. Gov't Code § 74.053(c)* ties the objection deadline to notice of assignment, making notice administration directly relevant to the exercise of the statutory right. Those provisions regulate front-end assignment procedure, not adjudication on the merits.

41.     The record also alleges a concrete injury tied to Wheless's administration of that regime. The Wheless response alleged that notice of the assignment and hearing was effectively compressed into hours and that the assigned visiting judge ruled after Tuter filed a written *Tex. Gov't Code § 74.053* objection before the hearing began. That is not conjectural injury. It is an alleged nullification of a mandatory statutory right. (ECF No. 34, ¶ 68 (quoting ECF No. 9, ¶ 191); see also ECF No. 9, ¶¶ 62–64).

16

42.     Under *La Union*, traceability is satisfied where a named official has a role in causing the claimed injury through administrative authority. Defendant Wheless's alleged control over the assignment order, timing of notice, and operation of the objection process satisfies that standard. Standing therefore turns on traceability and redressability as to those specific administrative functions, not on Wheless's title alone.

43.     The FCR never performed that function-specific analysis. Although its legal-standards section cited Forrester, it did not apply that framework to the conduct actually challenged.

**IV.Roach Is Sued for Ongoing Participation Despite Alleged Constitutional Disqualification**

44.     The Roach response did not present a generic recusal grievance. It alleged an ongoing due-process injury arising from adjudication by a judge who was constitutionally disqualified from continuing to act. Before turning to the factual predicate, the standing theory should be stated clearly because the FCR did not address it. *Tumey*, 273 U.S. at 523, holds that due process is violated when a judge with a disqualifying financial interest presides. *Caperton*, 556 U.S. at 876–77, confirms that due process is likewise implicated where the circumstances create an objective probability of bias. *Cain*, 937 F.3d at 454–55, likewise recognizes that due process is violated when a court's structure creates an unconstitutional risk of bias. The injury asserted under those cases is not merely disagreement with a ruling; it is being subjected to adjudication by a tribunal allegedly rendered constitutionally defective. (ECF No. 35, ¶¶ 1–6, 17, 29, 34–40).

45.     That alleged injury differs in kind from the outcome-based injury addressed in *Machetta*. Plaintiffs' theory does not challenge the correctness of Roach's rulings as such. The Supreme Court's decision in *Williams v. Pennsylvania*, 579 U.S. 1 (2016), reinforces the same principle. There, the Court held that an unconstitutional failure to recuse is **structural error** not subject to

harmless-error review, regardless of whether the judge's **participation** was outcome-determinative. That principle forecloses any implicit premise that Plaintiff Tuter cannot show injury unless he proves Roach's **participation** changed the result. Under *Williams*, the injury is the **structural defect** itself—submission to a tribunal the Constitution forbids. Plaintiffs' theory thus challenges Roach's alleged continued **participation** despite a disqualifying conflict. On that theory, the alleged injury is traceable to his continued exercise of judicial authority, and prospective relief directed to preventing further **participation** would address that alleged injury, subject to the limits governing prospective relief against judicial officers. (ECF No. 35, ¶¶ 37, 43–50).

46.    The FCR never cited **or** applied *Tumey*, *Caperton*, *Cain*, or *Williams*. It did not engage the impartial-tribunal framework at all. De novo review requires the district court to address the controlling legal theories the parties actually presented — not a generalized substitute of the court's own making. Where these directly applicable Supreme Court and Fifth Circuit authorities go entirely unaddressed, the FCR has not adjudicated the claim Plaintiff Tuter actually brought.

47.    The factual predicate was specific: Defendant Roach's spouse allegedly served as court-recommended mediator in Plaintiff Tuter's case, received mediation fees that allegedly became community income under Texas law, and Roach was later assigned to preside over the same case without disclosure. Plaintiffs further alleged incarceration on a contempt finding derived from information communicated through the mediator-spouse. Whether those allegations ultimately prevail is a merits question. At the pleading stage, they present a concrete, nonabstract claim of ongoing constitutional injury. (ECF No. 35, ¶¶ 3–4, 25–27, 41; ECF No. 9, ¶¶ 59–63, 107, 161).

48.    *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003), does not dispose of that theory. *Bauer* applies where a judge is named solely as the neutral adjudicator of disputes under a challenged statute. Neither predicate is present here. Plaintiffs do not challenge any statute, and Roach is not named as a neutral adjudicator of disputes arising under a statute Plaintiffs contend is unconstitutional. He is named because his own continued participation is alleged to be the source of the injury. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021), confirms the same limit.

49.    Nor do *Machetta* and *Bauer* create a categorical no-standing rule for all suits against judges or court-related officials. Those cases do not address the administrative and structural-injury theories alleged here. Plaintiffs' theories here are different: Wheless is sued for non-adjudicative administration of the Chapter 74 assignment regime, and Roach is sued for his own ongoing participation despite alleged constitutional disqualification. Standing therefore rises or falls on traceability and redressability as to those specific functions, not on title alone. That is the analysis the FCR never performed.

50.    The FCR's framing is overbroad. It states that Plaintiffs have no federal remedy directly against state judges or court employees for injuries arising from the state family-law system. But the Supreme Court has **never** treated family or juvenile proceedings as constitutional enclaves beyond federal review. To the contrary, the Court has held that due process applies in juvenile proceedings, In *re Gault*, 387 U.S. 1 (1967), that due process protects meaningful access to divorce courts when the State monopolizes that forum, *Boddie v. Connecticut*, 401 U.S. 371 (1971), and that access-to-courts principles apply with special force in parental-rights termination proceedings, *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996). Those decisions foreclose any categorical suggestion that constitutional injuries arising in family-law or closely related proceedings are beyond federal judicial cognizance merely because they arise in that setting.

19

51.    Nor do Plaintiffs challenge the validity of a family-law statute itself. They allege that specific officials caused injury by failing to follow governing law and constitutional limits in the exercise of their own authority. Article III still requires a concrete, traceable, and redressable injury, but that is the question the FCR did not answer. The relevant inquiry is whether these Plaintiffs alleged such an injury as to these specific defendants and these specific functions.

52.    The FCR instead folded Roach into a generalized standing analysis and then into a generalized immunity analysis without confronting the core constitutional question Plaintiff Tuter posed: not whether Roach made bad rulings, but whether he was constitutionally qualified to rule at all. ECF No. 35, ¶ 86 ("The issue is not what Judge Roach ruled. It is whether he was constitutionally qualified to rule at all."). That standing question is distinct from the immunity question, and the FCR did not separately analyze either one.

53.    That distinction also matters because Plaintiff Tuter had already abandoned any individual-capacity damages claim against Roach before the FCR issued. Judicial immunity is a defense to damages. Once the damages claim was abandoned, a generic damages-immunity analysis did not answer the live claim for prospective relief.

54.    At minimum, the FCR could not dispose of the Roach theory by invoking a generalized damages-immunity rationale after the damages claim had already been withdrawn. The live theory was prospective, structural, and directed to ongoing participation despite alleged constitutional disqualification. The FCR did not adjudicate that theory on its own terms.

### V. The FCR's Citation Errors Confirm the Analytical Slippage

55.    The FCR contains **documentable citation errors** in the same sections where it departed from controlling doctrine. It cited *New Orleans Public Service, Inc. v. Council of New Orleans*,

491 U.S. 350, as a "2013" case rather than a 1989 decision; cited *Arbaugh v. Altimus*, 26 F.4th 298 (5th Cir. 2022), with an impossible "2002 WL" citation for a 2022 decision; and cited *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981)—a *§ 1981* case—as authority on *§ 1983* immunity. These errors do not independently require reversal, but they corroborate the same lack of doctrinal precision reflected in the FCR's standing, abstention, and immunity analysis.

### VI. Conclusion on Objection No. 2

56.     In substance, the FCR did not adjudicate the theories Plaintiffs actually briefed. It answered generalized versions of standing, abstention, and immunity while leaving untouched the Chapter 74 administrative-injury theory against Wheless, the structural constitutional-disqualification theory against Roach, the defendant-specific *La Union / Young* framework, and the post-*Sprint Younger* analysis. De novo review should address those theories as actually presented rather than as recast by the FCR.

### OBJECTION NO. 3: THE FCR'S SEPARATE MONELL, COURT-PERSONNEL, AND FUTILITY RULINGS WERE NOT INDEPENDENTLY ESTABLISHED AND CANNOT SUSTAIN DISMISSAL

#### I. These Were Separate Rule 12(b)(6) and Affirmative-Defense Rulings, Not Jurisdictional Housekeeping

57.     Even if the Court could examine standing *sua sponte*, the FCR went further. After discussing standing, *Younger*, and sovereign immunity, it separately dismissed Wilder, Grimaldi, and Moss on office-specific immunity and pleading theories and separately dismissed Tarrant County on *Monell* grounds. Those are not mere restatements of Article III. They are separate Rule 12(b)(6) and affirmative-defense rulings directed to different defendants in different legal postures.

58.     That distinction matters because the Court's power to examine jurisdiction on its own does not authorize it to invent and adjudicate unasserted merits defenses for nonappearing or differently

situated defendants as though each had filed a tailored motion. The Fifth Circuit permits sua sponte dismissal only when "the procedure employed is fair," and fairness ordinarily requires notice of the precise ground and a meaningful opportunity to respond. *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642–43 (5th Cir. 2007); *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310–11 (5th Cir. 2014); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Century Sur. Co. v. Blevins*, 799 F.3d 366, 372–73 (5th Cir. 2015).

59.    The same point follows from the party-presentation principle. Courts are neutral arbiters of issues the parties present; absent extraordinary circumstances, they do not assume the role of counsel and supply new defenses for litigants who have not fairly raised them. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). The FCR nevertheless performed separate, defendant-by-defendant rulings as to Wilder, Grimaldi, Moss, and Tarrant County without the notice and adversarial presentation those rulings required.

## II. The Separate County Monell Ruling Was Not Independently Established

60.    The FCR's County ruling is expressly a *Monell* pleading ruling. It states that Plaintiffs did not show an official policy, a policymaker, and moving-force causation. But at the Rule 12(b)(6) stage, a plaintiff need plead plausible facts, not prove them. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–94 (1978), requires a policy, a policymaker, and moving-force causation, but the Supreme Court has rejected any heightened pleading standard for municipal-liability claims. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993).

61.    That is why the FCR's phrasing matters. Language such as "did not show" and "did not establish a factual basis" sounds in proof, not plausibility. The County ruling therefore cannot be

treated as generic jurisdictional housekeeping derivative of Wheless's motion. It was a separate merits-based dismissal of a municipal-liability theory, and it required its own fair notice, its own Rule 12(b)(6) analysis, and its own adversarial presentation.

62.    At minimum, if the Court concludes that the County allegations require more factual detail as to policy, policymaker, or moving force, that conclusion sounds in curable pleading deficiency, not incurable jurisdictional defect. It therefore cannot serve as an unexamined fallback ground for dismissing Tarrant County while simultaneously denying leave to amend.

### III. The Separate Court-Personnel Rulings Were Not Independently Established

63.    Wilder, Grimaldi, and Moss occupy different offices and are accused of different conduct. The governing inquiry is therefore function-specific and claim-specific, not office-title specific. The FCR could not dispose of all three through a generalized extension of Wheless's motion.

64.    As to Wilder, Fifth Circuit law distinguishes between acts specifically required under court order or a judge's direction, which may receive absolute immunity, and routine duties, which receive at most qualified immunity. *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981); *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). The FCR did not identify which alleged acts were commanded by court order, which were routine, or which claim failed on which capacity theory. It simply moved from office title to immunity conclusion.

65.    As to Grimaldi, the FCR relied on nonbinding district-court authority and then treated official-capacity defects as if they were automatically resolved by a generalized municipal-liability deficiency. But that again is a separate Monell ruling, not a common jurisdictional defect, and it required the same policy-policymaker-moving-force analysis discussed above. Grimaldi's title did not itself resolve municipal liability, personal involvement, or capacity.

23

66.     As to Moss, Texas law distinguishes an official court reporter's **salary** from **transcript fees**. *Tex. Gov't Code § 52.051(a)* provides that an official district court reporter's salary "is in addition to transcript fees." *Tex. Att'y Gen. Op. No. GA-0164 (Mar. 15, 2004)* explains that authorized transcript fees retained by the reporter do not constitute a "salary supplement" for purposes of *Tex. Gov't Code § 659.020*, and that *§ 52.047)* supplies authority for a reporter to impose—and retain—those fees. Accordingly, transcript fees are treated as compensation distinct from salary and are retained by the reporter rather than paid as part of the reporter's salary.

67.     The FCR erred by applying qualified immunity to individual-capacity claims without first distinguishing between the defendants' official judicial functions and the personal conduct alleged to give rise to individual-capacity liability. That is a textbook *Rule 12(b)(6)* and qualified-immunity analysis. Qualified immunity, however, is an affirmative defense that must be pleaded by the defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578–80 (5th Cir. 2009). To the extent Moss's challenged conduct involved personal fee-collection activity rather than preparation of the record under judicial direction, that only strengthens the conclusion that the FCR could not assume absolute immunity from office title alone. If any individual-capacity claim remained live, any clearly-established-law inquiry had to be performed claim by claim and defendant by defendant after the defense was actually invoked.

68.     Defendant Moss did not raise qualified immunity when the FCR was issued. The FCR's *sua sponte* extension of that defense therefore conflicts with the Supreme Court's treatment of qualified immunity as a pleaded affirmative defense and with the party-presentation principle that courts are neutral arbiters of the issues the parties present. *Sineneng-Smith*, 590 U.S. at 375.

24

69.     In short, the FCR did not identify a single common defect equally dispositive of all claims against all court personnel. It instead supplied three different office-specific defenses and pleading defects, none of which had been independently established through fair, defendant-specific motion practice and analysis.

### IV. The Futility Ruling Is Derivative and Cannot Stand

70.     The FCR's no-leave ruling is expressly derivative. It states that amendment would be futile because Plaintiffs lack standing, Younger applies, sovereign, judicial, and qualified immunity bar the judicial and court-personnel claims, and Monell defects bar the County claim. If those underlying rulings were not independently and properly established, the derivative futility conclusion cannot stand either.

71.     More fundamentally, several defects the FCR identified are classic pleading issues, not immutable legal bars: alleged Monell deficiencies, alleged failures to plead personal-capacity facts with greater specificity, and alleged failures to plead around qualified immunity. Under Rule 15(a)(2), leave to amend should be freely given when justice so requires, and the Fifth Circuit ordinarily affords at least one opportunity to cure pleading deficiencies unless the defect is clearly incurable. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002). That principle has special force here because the FCR itself supplied the new Monell, court-personnel, and futility rationales on a global sua sponte basis. If additional factual detail is required, fairness required an opportunity to amend rather than immediate dismissal on the premise that Plaintiffs had already pleaded their "best" case.

72.    Accordingly, the FCR's separate *Monell*, court-personnel, and futility rulings were not independently established and cannot serve as fallback grounds for dismissal even if the Court disagrees with portions of Objection Nos. 1 and 2.

## OBJECTION NO. 4: THE FCR'S BLANKET "WITHOUT PREJUDICE" DISMISSAL IS LEGALLY ERRONEOUS AND INTERNALLY INCONSISTENT WITH ITS NO-LEAVE RULING

73.    The FCR recommends that the Court "ABSTAIN" and "DISMISS Plaintiffs' claims against all Defendants WITHOUT PREJUDICE." That global remedy is improper because the FCR relies on a mix of jurisdictional and non-jurisdictional grounds, yet dismisses everything without prejudice while simultaneously denying leave to amend. Dismissal without prejudice is the proper course only for true subject-matter-jurisdiction defects, such as lack of standing. But the FCR also invokes non-jurisdictional doctrines—*Monell* pleading, office-specific immunity rulings, and futility—which are Rule 12(b)(6) merits or affirmative-defense determinations. Those are not automatically resolved by a blanket without-prejudice dismissal.

74.    The inconsistency is straightforward. If the alleged defects are jurisdictional, they may support dismissal without prejudice, but they do not justify a no-leave merits ruling on curable pleading issues. If the alleged defects are pleading or merits defects, they may require amendment or a proper Rule 12(b)(6) adjudication, but they cannot be repackaged as jurisdictional housekeeping. The FCR's remedy improperly collapses those categories. Under Rule 15(a)(2), leave to amend should be freely given where a defect is one of pleading rather than incurable law. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). And dismissals "without prejudice" do not create the same finality as a true merits disposition. See *Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341 (5th Cir. 2020) (en banc). The Court should therefore limit any without-prejudice dismissal to

genuine jurisdictional defects only and allow amendment as to any claim found deficient only in pleading detail.

**COMBINED PRAYER FOR RELIEF**

75.    For the foregoing reasons, Plaintiffs respectfully request that the District Court sustain these objections, decline to adopt the Findings, Conclusions, and Recommendation ("FCR"), and conduct de novo review under the correct doctrinal standards, claim by claim and defendant by defendant.

76.    Plaintiffs further request that the Court:

a)    **Reject the FCR's global sua sponte dismissal method** to the extent it supplied waivable, defendant-specific defenses on behalf of nonmoving or differently situated Defendants without fair notice and a meaningful opportunity to respond;

b)    **Recognize that the FCR applied judicial immunity to an abandoned claim**, namely the individual-capacity damages claim against Defendant Roach that Plaintiff Tuter had expressly abandoned before the FCR issued;

c)    **Require any standing, Ex parte Young, abstention, immunity, Monell, and futility analysis to remain defendant-specific and function-specific**, rather than title-based or globally extended;

d)    **Apply the correct post-Sprint Younger framework** and the correct defendant-specific standing and traceability framework to the actual theories Plaintiffs pleaded against Wheless and Roach;

e)    **Reject the FCR's separate Monell and court-personnel rulings** to the extent they were not independently and fairly established through defendant-specific motion practice and analysis;

f)    **Reject the derivative futility ruling** to the extent it rests on underlying rulings that were not independently and properly established;

g)    **Limit any without-prejudice dismissal to true jurisdictional defects only**; and

h)    **Grant leave to amend** as to any claim the Court concludes is deficient only in pleading detail.

77.    Plaintiffs further request such other and further relief as justice requires, including vacatur of any ruling entered without fair notice and, if necessary, targeted supplemental briefing on any defendant-specific issue the Court intends to resolve on grounds not fairly litigated by the parties.

Respectfully submitted,


*/s/ Samuel Randles*
Samuel Randles
5001 SH114E, Apt 1313, Roanoke, TX 76262
(214) 250-6187 | randles.sam@gmail.com


*/s/ Kaitlan Ross*
Kaitlan Ross
915 County Road 2719, Goldthwaite, TX 76844
(512) 529-0294 | Kaitlan.ross33@gmail.com


*/s/ Patrick Tuter*
Patrick Wayne Tuter
430 Christi Ln., Princeton, TX 75407
(214) 497-6152 | patrick762soldier@hotmail.com

*/s/ Conghua Yan*

Conghua Yan

2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092

(214) 228-1886 | arnold200@gmail.com

Pro Se

## CERTIFICATE OF SERVICE

I certify that on March 4, 2026, I filed the foregoing document via the Court's CM/ECF system, which will send notice of electronic filing to all registered CM/ECF users, and that I served all non-registered parties by USPS Certified Mail to their respective service addresses.

*/s/ Samuel Randles*

Samuel Randles, on behalf of all Plaintiffs

29