# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

|  |  |
|---|---|
| Samuel Randles, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) Case No. 4-25CV1422-0 |
|  | ) |
| Jimmy Blacklock, et al. | ) |
|  | ) |
| Defendants, | ) |

**PLAINTIFFS' TARGETED OBJECTION TO ECF NOS. 44, 45, 50, 51, 52, 53, 56, AND 57 AS TO CHAPTER 74 CLAIMS AGAINST DEFENDANTS TERRY, EVANS, BLACKLOCK, AND BROWN ONLY**

## Table of Contents

Table of Contents ........................................................................................................................ 2

I.    INTRODUCTION ............................................................................................................. 4

II.   STANDARD OF REVIEW ................................................................................................ 6

III.  ARGUMENT AND AUTHORITIES ................................................................................. 6

  A.   Plaintiffs Have Article III Standing .......................................................................... 7

  B.   The Eleventh Amendment Does Not Bar This Suit .................................................... 9

  C.   Younger Abstention Does Not Apply ....................................................................... 11

  D.   Plaintiffs Have Stated Valid Claims for Relief ........................................................ 15

    Evans: Judicial Immunity, Damages, and Yan v. Texas ............................................. 16

    Blacklock: Legislative Immunity and Traceability .................................................... 19

    Terry: No Written Recusal Order, Rule 12, and Mootness......................................... 20

    Brown: Section 24.124(c), No Waiver, Qualified Immunity, and Ultra Vires ............ 21

IV.   CONCLUSION ................................................................................................................ 24

V.    PRAYER .......................................................................................................................... 24

**Cases**

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) ............................................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 6

*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003) .............................................................................. 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 6

*Boddie v. Connecticut*, 401 U.S. 371 (1971) .............................................................................. 15

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998) ............................................................................... 19

*Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023) (en banc) .............................................. 12

*Diaz v. Cantu*, 123 F.4th 736 (5th Cir. 2024) ............................................................................ 18

*English v. Crochet*, 154 F. 4th 369 (5th Cir. Oct. 8, 2025) ....................................................... 14

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) ................................................................ 6

*Ex parte Young*, 209 U.S. 123 (1908) .......................................................................................... 5

*Forrester v. White*, 484 U.S. 219 (1988) .............................................................................. 16, 17

*La Union Del Pueblo Entero v. Abbott*, 123 F.4th 288 (5th Cir. 2024) .................................... 23

*La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025) ............................. 5, 7, 20

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987) ......................................................................... 13

*Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024) ................................................................... 5, 18

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013) ............................................... 11, 12

*Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980) ..... 19

*Truong v. Bank of Am., N.A.*, 717 F.3d 377 (5th Cir. 2013) ...................................................... 14

**Statutes**

*Tex. Civ. Prac. & Rem. Code § 30.017(a)–(c)* ........................................................................... 12

*Tex. Const. art. V, § 11* ............................................................................................................. 18

Plaintiffs submit this targeted objection to the Judge Terry' Motion to Dismiss and Brief in Support (ECF Nos. 44 and 45), Judge David L. Evans's Motion to Dismiss and Brief in Support (ECF Nos. 50 and 51), Judges Brown's Motion to Dismiss and Brief in Support (ECF Nos. 52 and 53), and Chief Justice Blacklock's Motion to Dismiss and Brief in Support (ECF Nos. 56 and 57), but only as to the Chapter 74 assignment / notice / objection claims pleaded against Defendants Terry, Evans, Blacklock, and Brown's conduct.

This objection is limited to that Chapter 74 lane. It does not address other FAC theories outside the Chapter 74 assignment mechanism.

## I.    INTRODUCTION

1.     This targeted objection intentionally follows the same structure as Plaintiffs' response to Judge Wheless. It proceeds in the same order and answers the same common dismissal themes while applying them to Defendants Terry, Evans, Blacklock, and Brown.

2.     The Chapter 74 theory pleaded in the FAC is narrower and more concrete than the motions acknowledge. Plaintiffs have not sought to reverse or modify that family-court rulings later came out badly. They challenge the *loss* of the pre-adjudication protection itself: the right to receive, test, and object to a visiting-judge assignment *before* judicial power is exercised. FAC ¶¶ 1–2, 35–40, 50, 84–93, 143-156, 185–190.

3.     The four motions repeatedly *recast* that theory as nothing more than dissatisfaction with state-court results. That *strawman* misses the pleaded *source of injury*. The Chapter 74 lane targets assignment, notice, filing, docketing, access, verification, and supervisory practices that allegedly *nullified* the statutory objection opportunity *before* later rulings were entered.

4.     First, Plaintiffs have Article III standing. The FAC alleges concrete procedural injuries traceable to each defendant's pleaded role in the Chapter 74 mechanism and redressable by prospective declaratory and injunctive relief. See *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025); *Reule v. Jackson*, 114 F.4th 360 (5th Cir. 2024).

5.     Second, the Eleventh Amendment does not bar this suit. *Ex parte Young* permits official-capacity suits for prospective relief against ongoing violations of federal law, and the FAC pleads an ongoing Chapter 74 mechanism rather than a completed historical wrong only. *Ex parte Young*, 209 U.S. 123 (1908).

6.     Third, *Younger* abstention does not apply. *Sprint* makes clear that abstention is **exceptional**, not automatic. The underlying domestic-relations proceedings are effectively compulsory in the *Boddie* sense, but this *§ 1983* case is a separate federal action voluntarily brought against state actors to challenge antecedent Chapter 74 assignment-and-notice practices. It does not seek review of the merits of the underlying dispute between private parties, and those private parties are not defendants here and are not alleged to have committed the challenged conduct. *Younger* therefore does not fit.

7.     Fourth, Plaintiffs have stated valid claims for relief, and the contention that *equitable* relief is categorically unavailable under *42 U.S.C. § 1983* is overbroad. Declaratory relief remains available, and the judicial-officer limitation on injunctions does not erase claims directed to non-adjudicative assignment, notice, and supervisory conduct. Thus, the common defenses raised across these four motions - Rule 12 standard of review, Eleventh Amendment / sovereign immunity, *Younger* abstention, and the contention that equitable relief is unavailable under section *1983* - are rebutted here equally, and in the same structure, as to Terry, Evans,

Blacklock, and Brown, just as they were rebutted in the response to Wheless. The additional discussion below addresses only the points unique to those four defendants.

## II.    STANDARD OF REVIEW

8.    On a Rule 12(b)(6) motion, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiffs' favor, but disregards legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The question is not whether Plaintiffs will ultimately prevail, but whether they have stated a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

9.    Rule 8 sets a minimal pleading threshold: a complaint need only contain a short and plain statement showing entitlement to relief, and it need not plead detailed facts. These principles apply with particular force to pro se pleadings, which must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam).

## III.    ARGUMENT AND AUTHORITIES

10.    This targeted objection proceeds in the same four parts as Plaintiffs' Response and Objection to Judge Ray Wheless's Motion to Dismiss and Memorandum, ECF No. 34. Plaintiff expressly adopts and incorporates by reference the entirety of that response, including its arguments, authorities, and cited record materials, to the extent applicable to the common Chapter 74 assignment-and-notice issues presented here. This targeted objection then adds the supplemental and defendant-specific arguments applicable to Terry, Evans, Blacklock, and Brown. To the extent this objection supplements or refines the Wheless response, this objection controls as to these defendants.

6

## A.    Plaintiffs Have Article III Standing

**Standing Framework**

11.    The motions misframe the pleaded injury and the basis for federal jurisdiction. Article III standing is analyzed defendant by defendant, injury by injury, and remedy by remedy. *La Union*, 163 F.4th at 255, explains that the standing inquiry and the *Ex parte Young* connection inquiry significantly overlap and are inextricably intertwined.

12.    *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003), does not dispose of this claim. Bauer involved a challenge in which judges were named only because they would adjudicate disputes under the challenged law. *Whole Woman's Health v. Jackson* later framed the same principle in similarly limited terms. This case is different because the FAC does not sue these defendants merely as neutral adjudicators.

13.    The FAC instead pleads administrative and supervisory roles in an operative Chapter 74 mechanism. Terry is tied to allowing the challenged visiting-judge assignment to operate in Yan's case. Evans is tied to assignment, notice, and assignment-record irregularities in Randles's and Yan's proceedings. Blacklock is tied to statewide OCA-level supervision, nondisclosure policy, and failure to implement corrective directives. Brown is tied to regional assignment, notice, and conflict-screening failures affecting Ross's proceedings. FAC ¶¶ 20, 22, 35-40, 52-58, 114, 117-119, 129, 155-157, 197, 229.

**Injury in Fact: Concrete Procedural Deprivations**

14.    The injury pleaded here is concrete. Plaintiffs allege loss of the statutory opportunity to know of, assess, and object to a visiting-judge assignment before judicial power was exercised.

That is a procedural injury with real-world consequences, including incarceration, loss of liberty, compelled proceedings before an allegedly unlawfully constituted tribunal, and the destruction of the one-time Section *74.053* strike right through nondisclosure. FAC ¶¶ 1-2, 39-40, 48-58, 83-93, 181-187.

15.    That injury is complete before any later merits order is entered. Once the litigant loses meaningful pre-assignment notice and the practical ability to invoke the Chapter 74 objection mechanism, the deprivation has already occurred. A later appeal from a family-court order does not retroactively restore that lost pre-adjudication protection.

16.    The FAC plausibly ties that deprivation to each of the four defendants sued in this lane. At the pleading stage, that is enough. The motions answer a generalized version of a family-court grievance, but they do not defeat the pleaded mechanism-based injury actually alleged.

**Redressability: Prospective Relief Would Remedy the Injury**

17.    Redressability is also plausibly alleged. Plaintiffs seek prospective declaratory and injunctive relief directed to the ongoing Chapter 74 mechanism - relief such as proper filing and docketing of assignment orders, timely notice identifying the assigned judge and status, meaningful opportunity to object before a visiting judge acts, transparency in assignment records, and conflict-screening/disclosure safeguards. FAC ¶¶ 155-157, 182-183, 197, 229.

18.    That relief would remedy the injury because it would restore the pre-adjudication opportunity the FAC says was denied. The motions overread the availability of state appeals. An appeal after an assigned judge has already exercised authority does not restore the lost right to receive and test assignment information before authority is exercised.

**Standing of Co-Plaintiffs**

19.     Standing here must remain lane-specific. This targeted objection concerns only the Chapter 74 claims pleaded against Terry, Evans, Blacklock, and Brown. It does not expand the case beyond the plaintiffs and injuries actually tied to those defendants in the FAC. At Rule 12, Plaintiffs need only plausibly allege standing for the plaintiffs whose Chapter 74 injuries are linked to each challenged defendant.

20.     Accordingly, the standing defense is rebutted here in the same manner as in the Wheless response: by identifying the concrete procedural deprivation, the defendant-specific causal role, and the prospective relief that would remedy the ongoing mechanism. That answer applies equally to Terry, Evans, Blacklock, and Brown.

**B.      The Eleventh Amendment Does Not Bar This Suit**

**The Ex Parte Young Exception Applies**

21.     The Eleventh Amendment does not bar the official-capacity prospective-relief lane pleaded here. *Ex parte Young* permits suits against state officials who maintain an ongoing mechanism that allegedly violates federal law. The FAC does not seek retrospective money relief from the State treasury in this targeted Chapter 74 objection.

22.     The Chapter 74 theory targets ongoing assignment, notice, filing, docketing, access, verification, and supervisory practices. Because the alleged violations continue to affect the operation of the assignment mechanism, *Young* remains available.

**The Violations Are Ongoing**

23.     The motions try to reduce the FAC to past episodes in particular family-law cases. But the FAC alleges more than isolated completed events. It alleges a continuing mechanism that allows assigned judges to act without timely filed-and-docketed orders, without timely notice sufficient to trigger a meaningful objection opportunity, without transparency in assignment records, and without conflict screening or disclosure. FAC ¶¶ 117-120, 129, 155-157, 182-183, 197, 229.

**Plaintiffs Seek Only Prospective Relief**

24.     In this targeted Chapter 74 lane, Plaintiffs principally seek prospective declaratory and injunctive relief. To the extent Evans separately argues that Randles sought money damages against him in another posture, that point does not justify dismissal of the equitable Chapter 74 lane. At minimum, the prospective-relief claim remains independently justiciable.

25.     The motions' shared contention that equitable relief is unavailable under section 1983 also fails for the same reason it failed in the Wheless response. Declaratory relief remains available, and the statutory limitation on injunctions against judicial officers does not categorically bar relief aimed at non-adjudicative assignment and supervisory conduct.

**Standing And The Young Exception Overlap**

26.     As *La Union* explains, standing and *Young* overlap substantially. That overlap defeats the motions' attempt to separate traceability from official connection. If the FAC plausibly alleges that these defendants play the pleaded roles in the Chapter 74 mechanism and that prospective relief would redress the injury, both Article III and *Young* are satisfied at the pleading stage.

10

27.    The common sovereign-immunity defense is therefore rebutted equally as to Terry, Evans, Blacklock, and Brown. Their remaining individualized points do not change that conclusion. The immunity theories Defendants invoke are functional, not title-based, and the FAC challenges ongoing nonadjudicative Chapter 74 practices rather than protected status in the abstract. Blacklock's invocation of legislative immunity is overbroad because the FAC does not challenge only abstract rulemaking; it challenges the ongoing administration of an existing Chapter 74 regime. Evans's and Terry's reliance on judicial title does not end the inquiry because function, not title, controls. Brown's description of her role as purely administrative does not help her because administrative participation in the challenged mechanism is exactly what creates the *Young* connection. The distinct abstention question is addressed separately below; this suit targets state actors alleged to administer the Chapter 74 mechanism, not the private opposing parties in the underlying domestic-relations disputes.

## C.    Younger Abstention Does Not Apply

**Middlesex and Moore Involved State-Initiated Proceedings, Not Applicable Here**

28.    *Younger* abstention has no foothold here. Under *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78–82 (2013), abstention is exceptional and applies only where the ongoing state proceeding falls within one of three narrow categories: ongoing criminal prosecutions, certain quasi-criminal civil-enforcement proceedings, or civil proceedings involving orders uniquely in furtherance of the state courts' ability to perform their judicial functions. That predicate is absent here. The state officials sued in this action — Terry, Evans, Blacklock, and Brown — are not adversary parties in the underlying family-law proceedings, and the injury alleged here — deprivation of the Chapter 74 pre-assignment notice and objection right — is not the merits

11

dispute being litigated there. Nor is the remedy sought here — prospective declaratory and injunctive relief directed to state officials' administration of the Chapter 74 assignment mechanism — relief the family court is adjudicating between the private parties. This federal case therefore does not duplicate the underlying domestic-relations proceedings; it challenges distinct antecedent state action by different defendants.

29.    Texas law reinforces the same distinction. When a claim is asserted against a sitting judge in a case pending in that judge's own court, Texas does not treat that claim as part of the ordinary merits dispute; it must be verified, is automatically severed, assigned a new cause number, and heard by a different judge. *Tex. Civ. Prac. & Rem. Code § 30.017(a)–(c)*. That structure confirms that the judge-directed injury challenged here is a separate controversy, not one to be folded into the underlying family-law proceeding.

30.    Plaintiffs expressly preserve the further argument, apparently presenting an issue of *first impression* in this Circuit, that when Texas law itself requires judge-directed claims to be verified, severed, assigned a new cause number, and heard by a different judge, that statutory structure defeats any contention that the judge-directed controversy is parallel to the underlying merits proceeding for *Younger* purposes.

**Sprint Limits Younger To Three Exceptional Categories And Supersedes Pre-2013 Cases**

31.    *Sprint* sharply limited *Younger* to three exceptional categories, and federal courts must start there, not with generalized abstention rhetoric. See *Sprint*, 571 U.S. at 78–82; *Daves v. Dallas County*, 64 F.4th 616, 625 (5th Cir. 2023) (en banc). This case is outside that narrow framework because it is not a forbidden merits appeal from the state domestic-relations disputes; it is a separate federal action against state actors challenging antecedent Chapter 74 practices.

Nor do *Middlesex* and *Moore* alter that conclusion. To the extent Defendants invoke the first two *Sprint* categories, those categories concern criminal or quasi-criminal state-initiated enforcement proceedings, which this case is not. And this case does not fall within *Sprint*'s third category either. Plaintiffs do not challenge contempt, execution, bond, or any other process by which the State compels obedience to an existing court order or preserves the operative force of a state-court judgment. *Cf. Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 12–13 (1987). Plaintiffs instead challenge the denial of a pre-assignment statutory notice-and-objection opportunity that is logically and temporally antecedent to merits adjudication.

**Even If *Younger* Applied, State Remedies Are Inadequate**

32.     Even apart from *Sprint*, the FAC plausibly alleges inadequacy of the supposed state remedies for this specific injury. The deprivation alleged is the loss of the pre-assignment notice-and-objection right itself. A post-hoc appeal does not restore the lost pre-assignment notice right or the practical ability to object before the visiting judge acts. Nor does later review of merits orders cure the completed deprivation of the statutory opportunity to be heard before the challenged assignment takes effect. The motions therefore confuse later appellate review of merits orders with a timely remedy for a pre-adjudication deprivation.

**Fifth Circuit Cases Are Distinguishable And Misapplied**

33.     The Fifth Circuit cases on which Defendants rely are distinguishable because they involved efforts to interfere with ongoing state adjudication, to relitigate merits rulings, or to control how state courts decide controversies committed to them. This targeted objection does none of those things. It instead challenges antecedent administrative and supervisory defects in the Chapter 74 mechanism allegedly carried out by state actors, not the merits of the underlying

13

domestic-relations disputes. Federal precedent likewise distinguishes injuries caused by defendants' conduct from injuries caused by the state-court judgment itself. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382–83 (5th Cir. 2013); *accord English v. Crochet*, 154 F. 4th 369, 373 (5th Cir. Oct. 8, 2025). Those decisions arise in the Rooker-Feldman context, not *Younger*, but they reinforce the same structural point here: Plaintiffs' federal claim targets an antecedent injury allegedly inflicted by judicial actors through the Chapter 74 assignment-and-notice mechanism, rather than seeking appellate-style review of the underlying domestic-relations merits.

34.    Plaintiffs further expressly preserve the additional argument, also apparently presenting an issue of *first impression* in this Circuit, that the conduct-versus-judgment distinction recognized in *Truong* and *English*, though developed in the *Rooker-Feldman* context, applies structurally in the *Younger* analysis as well and confirms that the antecedent Chapter 74 assignment-and-notice injury is distinct from any later merits adjudication.

35.    Accordingly, the common *Younger* defense is rebutted here equally, and in the same manner, as to Terry, Evans, Blacklock, and Brown, just as it was rebutted in the Wheless response. The relevant state action challenged here is the alleged Chapter 74 assignment-and-notice mechanism administered by judicial officials, not the underlying domestic-relations disputes among private parties. Defendant-specific variations in job title or motion wording therefore do not alter the *Sprint* analysis.

36.    At minimum, Plaintiffs expressly preserve the further argument, apparently presenting an issue of first impression in this Circuit, that *compulsory* participation in the underlying state divorce proceeding materially undercuts *Younger*'s **equitable foundation** and weighs against

abstention in this distinct *§ 1983* action. See *Boddie v. Connecticut*, 401 U.S. 371, 376–77 (1971). Plaintiffs further preserve the supplemental *first-impression* arguments stated above regarding Texas's severance structure under *§ 30.017* and the conduct-versus-judgment distinction reflected in *Truong* and *English*. To the extent any of those unresolved questions matter here, they should be resolved in favor of federal jurisdiction because *Sprint* instructs that abstention is the exception, not the rule.

**D.    Plaintiffs Have Stated Valid Claims for Relief**

**Plaintiffs' Allegations Satisfy Twombly/Iqbal**

37.    The Rule 12 question is plausibility, not proof. The FAC alleges concrete roles for these defendants in the Chapter 74 mechanism and concrete consequences flowing from those roles. That suffices under Twombly and Iqbal. FAC ¶¶ 20-24, 35-40, 52-58, 84-93, 114, 117-119, 143-157, 181-187, 197, 229.

38.    The motions themselves identify those factual allegations. Terry allegedly allowed Catterton to preside over two dates in Yan's case. Evans allegedly entered assignment orders and participated in assignment administration. Brown allegedly assigned or allowed Dean to act without timely filed assignment documentation or meaningful notice. Blacklock allegedly maintained statewide OCA-level practices and failed to implement corrective directives. FAC ¶¶ 20-24, 52-58, 84-87, 102-105, 114, 117-119, 129, 155-157, 197.

39.    Those are not bare conclusions. They are role-specific factual allegations tied to a concrete legal theory: that Chapter 74 conferred a meaningful opportunity to object before a

visiting judge exercised authority, and that Defendants' challenged conduct nullified that protection.

**This Is Not Mere Dissatisfaction with State Court Rulings**

40.    The motions repeatedly recast the FAC as dissatisfaction with family-court rulings. That is not the pleaded source of injury. Plaintiffs challenge the loss of pre-adjudication notice, objection, and access rights in the assignment mechanism itself. The fact that later orders were entered does not convert the claim into a forbidden collateral appeal.

41.    The shared assertion that equitable relief is unavailable under section 1983 is likewise overbroad. Declaratory relief remains available. And the limitation on injunctive relief against judicial officers applies to acts or omissions taken in a judicial capacity; it does not automatically eliminate claims directed to nonadjudicative assignment, notice, filing, docketing, verification, and supervisory functions. *Forrester v. White*, 484 U.S. 219, 229-30 (1988); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432-36 (1993).

**The Prior Yan v. Texas Ruling Is Not Dispositive**

42.    Evans and Blacklock invoke prior Yan v. Texas rulings to argue that Yan already knew he lacked standing or redressability. That argument proves too much. A prior ruling in a different posture, involving different pleadings, defendants, or remedial framing, does not erase the defendant-specific Chapter 74 allegations now before the Court on this FAC and these motions.

**Evans: Judicial Immunity, Damages, and Yan v. Texas**

43.    Evans's standalone judicial-immunity argument does not justify dismissal of the official-capacity prospective-relief claim. The Chapter 74 lane does not rest merely on dissatisfaction with adjudicative rulings. It rests on pleaded administrative conduct involving assignment, notice, assignment-record opacity, and the use of assigned judges before the statutory preconditions for meaningful objection were satisfied. FAC ¶¶ 21, 35-40, 52-54, 84-85, 89-93, 116, 181-187, 197, 229.

44.    Nor does Evans's discussion of money damages eliminate the Chapter 74 objection. Even if Randles sought damages against Evans in some other posture, that does not extinguish the separate prospective-relief lane directed to ongoing Chapter 74 practices in the Eighth Region and in Yan's and Randles's future proceedings. FAC ¶¶ 15-17, 21, 52-54, 89-93, 102-105, 155-157, 181-183, 197, 229.

45.    Evans's judicial-immunity defense does not warrant dismissal because Count V challenges administrative conduct, not protected adjudication. Absolute judicial immunity turns on the function performed, not the officeholder's title. *Forrester*, 484 U.S. at 224–30. As the incorporated Wheless response explains, the Chapter 74 assignment-and-objection mechanism is administrative and ministerial, not adjudicative. Section 74.053(a) requires the regional presiding officer to issue the assignment and provide notice before any merits decision, and § 74.053(b) gives the parties a unilateral objection right that does not ask that officer to resolve an adversarial dispute. The FAC pleads the same theory expressly: Evans acted in his "non-adjudicative statutory administrative capacity as the regional presiding officer under Tex. Gov't Code ch. 74," and the challenged conduct consisted of assignment, notice, and related administrative practices that deprived Randles of a meaningful opportunity to exercise the § 74.053 objection right before any judicial act occurred. FAC ¶¶ 200–202. Those allegations describe operation of a statutory

17

assignment-and-notice mechanism, not adjudication of a controversy between parties. Under *Forrester*, administrative acts of court management do not become judicial acts merely because they are performed by a sitting judge. *Diaz v. Cantu*, 123 F.4th 736, 747 (5th Cir. 2024); *Reule*, 114 F.4th at 365–66.

46.     The Texas Constitution reinforces the same conclusion. Article V, section 11 provides that when a district judge is disqualified, "the parties may, by consent, appoint a proper person to try said case; or upon their failing to do so, a competent person may be appointed . . . in such manner as may be prescribed by law." *Tex. Const. art. V, § 11*. Because private parties do not exercise adjudicative judicial power over the merits merely by selecting a substitute decisionmaker, the selecting and appointing function itself is not an adjudicative judicial function. Chapter 74 supplies the statutory fallback mechanism for that same selection function, and the FAC accordingly alleges that regional presiding judges perform those Chapter 74 duties as statutory administrative officers rather than as adjudicatory tribunals deciding the parties' dispute. FAC ¶¶ 37–39. Thus, when Evans allegedly issued or administered assignment orders, administered notice, and maintained or permitted assignment practices that allowed an assigned judge to act before the statutory prerequisites for meaningful objection were satisfied, he was not adjudicating Randles's controversy; he was administering pre-adjudicative assignment machinery. Count V therefore plausibly alleges conduct outside the core protected sphere of absolute judicial immunity.

47.     Defendants quote *Yan v. Texas* too broadly. That case did not involve a complaint limited to routine disagreement with rulings; it included allegations of collusion surrounding a fraudulent TRO, forged signature, and garnishment causing ongoing wage and property injury. The court nonetheless resolved the claims against Judge DeAngelis by treating them as claims arising from

her adjudicative acts and invoking the Bauer/Machetta no-case-or-controversy line. The cited passage therefore does not decide whether that line extends to nonadjudicative Chapter 74 assignment or administrative conduct.

**Blacklock: Legislative Immunity and Traceability**

48.    Blacklock's legislative-immunity argument is too broad. Legislative immunity turns on function, not title or branch label. *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998). *Consumers Union* treated promulgation of a code of general application as legislative rulemaking, but it did not hold that every statewide judicial-administration function is legislative. *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731–37 (1980). To the contrary, the same decision recognized that the court and chief justice were proper defendants for *declaratory* and *injunctive* relief in their *enforcement* capacities. *Id.* at 736–37. The issue here is therefore functional: whether the FAC challenges legislative promulgation of a general rule, or Blacklock's ongoing administration and maintenance, through OCA, of an existing Chapter 74 regime.

49.    The FAC here does not merely complain that Blacklock declined to promulgate a preferred abstract statewide rule. It pleads that Blacklock, through OCA, presently administers and maintains an operative Chapter 74 regime marked by systematic denial of access to assignment records, maintenance of opaque assignment practices, absence of filed-and-docketed assignment orders before judicial acts, and failure to correct known operational defects despite actual notice. FAC ¶¶ 155, 197–198, 229. Those allegations target maintenance and operation of an existing regime, **not** pure legislative promulgation of generally applicable rules.

19

50.    Blacklock's no-direct-interaction theory likewise overstates Article III. Direct personal interaction is unnecessary where the pleaded injury is fairly traceable to an official who, through OCA, allegedly maintains the transparency, access, and assignment-record practices that render § 74.053 rights unverifiable and threaten recurrence in future proceedings. FAC ¶¶ 151–157, 197–198, 229. At the pleading stage, those allegations are sufficient to plead a live Ex parte Young connection to ongoing nonimmune conduct. See *La Union*, 163 F.4th at 255, 274–75.

51.    Blacklock's redressability attack is also too generalized. The FAC does not plead only a completed past injury. It alleges an ongoing OCA-linked assignment-record and transparency regime, a live threat that the same defects will recur in Plaintiffs' pending and future proceedings, and prospective relief requiring filed-and-docketed written assignment orders and related safeguards before any future judicial act. FAC ¶¶ 155–157, 182–183, 197–198, 229. Blacklock's motion responds only at a high level of generality by labeling future harm speculative and equitable relief unavailable. At Rule 12, that does not negate the FAC's more specific allegations of ongoing injury, threatened recurrence, and at least partial redressability.

**Terry: No Written Recusal Order, Rule 12, and Mootness**

52.    Terry's recusal point does not warrant dismissal at Rule 12 because the FAC already alleges, as a factual matter, that no written order, docket entry, or finding in the record stated that Judge Terry was absent, disabled, recused, or disqualified when the visiting judge acted. FAC ¶ 86; see also FAC ¶¶ 84(4)-(5), 85(3), 102. That allegation tracks Rule 18a itself. The respondent judge must "sign and file with the clerk an order of recusal or disqualification" or a referral order, and any ruling on the matter must be by written order. Terry cannot defeat that pleaded fact by contrary assertion in a motion brief.

53.    Once that pleaded fact is taken as true, Terry's mootness theory collapses on its own predicate. Mootness depends on a legally effective change in circumstances. Terry's separate invocation of mootness also sits uneasily with her no-standing position, because mootness addresses whether a controversy that once supported jurisdiction has later ceased, whereas Plaintiffs allege that no legally effective recusal occurred at all. But if no written Rule 18a order was entered in Yan's state-court case, then a valid recusal has not been established by the record, and Terry cannot show that her connection to Yan's case or to the Chapter 74 mechanism in her court was legally severed. Plaintiffs seek prospective declaratory relief, as well as injunctive relief, against an ongoing assignment practice that allegedly permitted a disqualified or nonappointed judge to act and sign orders. FAC ¶¶ 84-88, 102-105, 155-157, 182-183, 197, 229. Terry's later assertion of recusal therefore does not moot the live controversy.

54.    Nor is the missing written order a mere procedural detail. It is itself part of the pleaded Chapter 74 defect, and it strengthens traceability, ultra vires, and prospective-relief theories. Terry's own framing confirms the point. She could not lawfully "allow" another judge to exercise district-court authority by informal permission. In the pleaded circumstances, any lawful substitution had to be effectuated through the procedures Texas law required - most immediately, a signed-and-filed Rule 18a order and a documented Chapter 74 assignment process. If no such records existed, then Terry's alleged "allowing" of Catterton to preside was not a lawful transfer of authority at all; it was part of the pleaded defect itself. FAC ¶¶ 24, 84-88, 102-105, 155-157, 197, 229.

**Brown: Section 24.124(c), No Waiver, Qualified Immunity, and Ultra Vires**

55.     Brown's reliance on Texas Government Code section 24.124(c) is misplaced. Plaintiffs do not challenge routine docket-sharing between the elected judges of the 23rd and 130th District Courts. They challenge Brown's alleged use of a retired or former visiting judge under Chapter 74 without timely filed assignment documentation and without notice sufficient to make the section *74.053* objection right usable before Dean acted. FAC ¶¶ 17, 22, 35-40, 55-58, 112-119, 155-157, 186, 197, 229.

56.     Brown also overreads the FAC as admitting waiver merely because Ross was represented by counsel and no objection was filed. The FAC alleges the opposite of a knowing waiver: Ross's counsel never informed her about the existence of the assignment order or her objection right, Ross was not adequately informed by the court or counsel until on or about December 3, 2025, and by then Dean had already exercised purported authority in earlier proceedings. FAC ¶¶ 56-58. The FAC expressly pleads that Ross received no timely written notice identifying Dean in Cause Nos. 18-E-0625 or 23-F-0331, and that her first written notice came only on December 3, 2025 in a different case, long after Dean had already acted, exercised contempt authority, and caused Ross's incarceration. FAC ¶¶ 57-58, 186. Brown cannot invoke waiver by silence when the notice that was supposed to make the section *74.053(b)* right usable was never timely provided.

57.     Brown's qualified-immunity argument is inapposite to this targeted objection. Qualified immunity is a personal immunity defense to individual-capacity liability for money damages; it does not apply to official-capacity claims for prospective declaratory or injunctive relief. This targeted objection is expressly limited to Brown in her official capacity and seeks only prospective relief directed to future compliance with Chapter 74's notice-and-objection requirements. See also FAC ¶¶ 17, 22, 117-119, 155-157, 182-183, 197, 229.

58.    That is also the more specific ultra vires theory. Brown's alleged role was not simply administrative in the abstract; it was administrative conduct outside lawful bounds - assigning, or allowing Dean to act, without a written assignment order filed and docketed in time, without meaningful notice, and without a functioning mechanism that preserved Ross's section *74.053* right before judicial action occurred. FAC ¶¶ 17, 55-58, 117-119, 155-157, 186, 197, 229. Because Ross remains a party or party-in-interest in pending Matagorda County proceedings and reasonably anticipates future hearings, Brown's alleged authority continues to matter prospectively as well.

59.    Brown's ongoing connection is also pleaded with enough specificity to support prospective relief. As the sitting Presiding Judge of the Eleventh Administrative Judicial Region under Texas Government Code section *74.042*, and with continuing assignment authority under Chapter 74, see section *74.056*, Brown retains present statutory authority to assign visiting judges within that region. FAC ¶¶ 17, 22, 117-119, 155-157. Prospective declaratory relief directing compliance with Chapter 74's notice and objection requirements before any future assignment authority is exercised in Brown's region would therefore directly redress the pleaded injury, or at minimum redress it in part. See *La Union Del Pueblo Entero v. Abbott*, 123 F.4th 288, 299, 307 (5th Cir. 2024). The belated December 2025 notice in Cause No. 25-F-0457 does not moot the claim; if anything, its contrast with the earlier non-notice in Cause Nos. 18-E-0625 and 23-F-0331 supports the pleaded inference that Brown's region did not provide Chapter 74 notice as a uniform pre-assignment practice, making recurrence in Ross's still-pending proceedings a live and redressable threat. FAC ¶¶ 57-58, 117-119, 155-157, 182-183, 186, 197, 229.

60.    In short, these defendant-specific points confirm that the individualized defenses do not alter the Rule 12 result. Brown's section *24.124(c)*, waiver, and generalized-immunity arguments do not refute the pleaded ongoing Chapter 74 defect. Terry's recusal defense depends on an unproven factual premise contrary to FAC allegations. Evans's immunity and *Yan v. Texas* arguments overread both the FAC and the prior ruling. Blacklock's legislative-immunity and traceability arguments mischaracterize the administrative and statewide-supervisory theory actually pleaded. FAC ¶¶ 20-24, 52-58, 84-88, 102-105, 114, 117-119, 129, 155-157, 182-186, 197, 229.

## IV.    CONCLUSION

61.    For these reasons, Plaintiffs respectfully request that the Court deny ECF Nos. 44, 45, 50, 51, 52, 53, 56, and 57 to the extent those filings seek dismissal of the Chapter 74 claims pleaded against Defendants Terry, Evans, Blacklock, and Brown.

62.    At minimum, if the Court concludes that any aspect of the Chapter 74 lane requires greater factual detail or sharper remedy framing, leave to amend should be granted rather than dismissal with prejudice.

## V.    PRAYER

63.    Plaintiffs respectfully request that the Court overrule the motions to dismiss as to the Chapter 74 claims against Terry, Evans, Blacklock, and Brown, grant such further relief to which Plaintiffs may be justly entitled, and award leave to amend if the Court finds any part of this targeted objection or the FAC insufficiently pleaded.

Respectfully submitted,

24

*/s/ Samuel Randles*

Samuel Randles

5001 SH114E, Apt 1313, Roanoke, TX 76262

(214) 250-6187 | randles.sam@gmail.com

*/s/ Kaitlan Ross*

Kaitlan Ross

915 County Road 2719, Goldthwaite, TX 76844

(512) 529-0294 | Kaitlan.ross33@gmail.com

*/s/ Patrick Tuter*

Patrick Wayne Tuter

430 Christi Ln., Princeton, TX 75407

(214) 497-6152 | patrick762soldier@hotmail.com

*/s/ Conghua Yan*

Conghua Yan

2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092

(214) 228-1886 | arnold200@gmail.com

Pro Se

## CERTIFICATE OF SERVICE

I certify that on March 9, 2026, I filed the foregoing document via the Court's CM/ECF system, which will send notice of electronic filing to all registered CM/ECF users, and that I served all non-registered parties by USPS Certified Mail to their respective service addresses.

*/s/ Samuel Randles*

Samuel Randles, on behalf of all Plaintiffs