# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| Samuel Randles, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) Case No. 4-25CV1422-0 |
|  | ) |
| Jimmy Blacklock, et al. | ) |
|  | ) |
| Defendants, | ) |

**PLAINTIFF CONGHUA YAN'S TARGETED OBJECTION TO ECF NOS. 42, 43, 46, 47, 48, AND 49 AS TO COUNT VI ONLY**

## Table of Contents

Table of Contents ................................................................................................................ 2

Table of Authorities ........................................................................................................... 3

PRELIMINARY STATEMENT .......................................................................................... 4

OBJECTION NO. 1: THE FAC PLEADS A DEFENDANT-SPECIFIC RULE 145
DEPRIVATION THEORY; THE MOTIONS RECAST IT AS A MERE ATTACK ON THE
STATE-COURT RESULT ................................................................................................. 6

OBJECTION NO. 2: YOUNGER AND ROOKER-FELDMAN DO NOT DISPOSE OF THE
RULE 145 THEORY AS PLEADED ............................................................................... 13

OBJECTION NO. 3: ALL IMMUNITY ISSUES MUST BE ANALYZED FUNCTION BY
FUNCTION, CAPACITY BY CAPACITY, AND OFFICE TITLE ALONE DOES NOT
DISPOSE OF COUNT VI ............................................................................................... 15

OBJECTION NO. 4: THE DA'S REPRESENTATION OF MOSS CORROBORATES THE
FAC'S STATE-ACTION ALLEGATIONS AND UNDERMINES HIS PURELY PRIVATE-
ACTOR FRAMING ........................................................................................................ 20

OBJECTION NO. 5: THE FAC STATES A PLAUSIBLE RULE 145 DUE-PROCESS CLAIM
AGAINST WILDER, GRIMALDI, AND MOSS ............................................................ 21

PRAYER .......................................................................................................................... 25

CERTIFICATE OF SERVICE ......................................................................................... 25

Table of Authorities

## Cases

*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993) ...................................................... 18, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 26

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ......................................................................... 23

*Boddie v. Connecticut*, 401 U.S. 371 (1971) .............................................................................. 25

*Book People v. Wong*, 91 F.4th 318 (5th Cir. 2024) .................................................................. 11

*Burns v. Reed*, 500 U.S. 478 (1991) ........................................................................................... 18

*Carey v. Piphus*, 435 U.S. 247 (1978) ....................................................................................... 12

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) ............................................................ 11

*Clay v. Allen*, 242 F.3d 679 (5th Cir. 2001) ............................................................................... 18

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) .......................................... 23

*Daniels v. Williams*, 474 U.S. 327 (1986) .................................................................................. 25

*Daves v. Dallas County*, 64 F.4th 616 (5th Cir. 2023) (en banc) .............................................. 15

*Diggles v. Surratt*, No. 4:23-CV-78, 2023 WL 6963666 (S.D. Tex. Oct. 20, 2023) .................. 18

*English v. Crochet*, 154 F.4th 369 (5th Cir. Oct. 8, 2025) ........................................................ 15

*Ex parte Young*, 209 U.S. 123 (1908) ......................................................................................... 13

*Forrester v. White*, 484 U.S. 219 (1988) .................................................................................... 18

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ..................................................................................... 23

*Griffin v. Illinois*, 351 U.S. 12 (1956) ........................................................................................ 25

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ........................................................................... 26

*Kay v. Ehrler*, 499 U.S. 432 (1991) ........................................................................................... 26

*La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025) ..................................... 11

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .................................................................... 21

*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996) ........................................................................................ 25

*Miller v. Dunn*, 35 F.4th 1007 (5th Cir. 2022) .......................................................................... 16

*North Carolina State Board of Dental Examiners v. FTC*, 574 U.S. 494 (2015) ....................... 20

*Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018) ....................................................................... 21

*Severin v. Parish of Jefferson*, 357 F. App'x 601 (5th Cir. 2009) (per curiam) ........................ 18

*Skinner v. Switzer*, 562 U.S. 521 (2011) .................................................................................... 26

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ............................................................... 15

*Tarter v. Hury*, 646 F.2d 1010 (5th Cir. Unit A June 1981) ...................................................... 18

*Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ............................................... 11

*Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002) ................................................. 17

*Wyatt v. Cole*, 504 U.S. 158 (1992) ........................................................................................... 21

## Statutes

*Tex. R. C. P. Rule 145* ................................................................................................................... 4

*Tex. R. Civ. P. 145(f)* .................................................................................................................. 22

Plaintiff Conghua Yan submits this targeted objection to Defendant Tom Wilder's Motion to Dismiss and Brief in Support (ECF Nos. 42, 43), Defendant Kirk Moss's Motion to Dismiss and Brief in Support (ECF Nos. 46, 47), and Defendant Lisa Grimaldi's Motion to Dismiss and Brief in Support (ECF Nos. 48, 49), only as to Count VI of the First Amended Complaint ("FAC"). This objection is limited to the Rule 145 indigency-deprivation theory pleaded against Wilder, Grimaldi, and Moss and to the Rule-145-linked November 6, 2024 contest-and-notice deprivation mechanism. It does not address other counts, other defendants, or issues unnecessary to defeat dismissal of Count VI.

**PRELIMINARY STATEMENT**

1.     The Rule 145 theory pleaded by Yan is narrower, more concrete, and more defendant-specific than the dismissal papers filed by Wilder (ECF Nos. 42, 43), Moss (ECF Nos. 46, 47), and Grimaldi (ECF Nos. 48, 49) acknowledge. The First Amended Complaint ("FAC") does not merely allege that the state court reached the wrong indigency result. It alleges a completed deprivation mechanism: a Rule 145 contest was accepted, docketed, and advanced without the sworn-evidence predicate the rule requires; a composite and allegedly defective notice was transmitted in a manner that foreseeably increased the likelihood of nonappearance; Rule 145 protection was then stripped; and predictable cost barriers followed. ECF No. 9, ¶¶ 42-44, 67-83, 95-98, 204-217.

2.     That distinction matters because the pleaded injury is not simply "the order denying indigency." The FAC alleges pre-deprivation and deprivation-stage administrative acts by specific defendants before and around the November 6, 2024 proceeding, together with a continuing risk that the same Rule 145 contest-and-notice mechanism will be used again. ECF No. 9, ¶¶ 44, 67-

83, 95-98, 204-217, 229(5). This targeted objection is directed only to the dismissal arguments asserted in ECF Nos. 42, 43, 46, 47, 48, and 49 as to Count VI.

3.    Wilder, Grimaldi, and Moss are the Count VI Rule 145 defendants. ECF No. 9, ¶¶ 204-217. This objection is limited to Count VI and to the Rule 145 deprivation mechanism itself. It objects only to the Rule 12(b)(1) and Rule 12(b)(6) dismissal arguments raised by Wilder, Moss, and Grimaldi in ECF Nos. 42, 43, 46, 47, 48, and 49 as to that count.

4.    Because this objection is limited to Count VI, it does not address other FAC theories outside the Rule 145 deprivation mechanism pleaded against Wilder, Grimaldi, and Moss. It does not address other counts, other defendants, or any issue unnecessary to defeat dismissal of Count VI.

5.    The motions instead recast the Rule 145 theory as a forbidden collateral attack on a state-court decision, then move from that strawman into global standing, abstention, immunity, and pleading conclusions. That is the same structural defect identified in Plaintiff Conghua Yan's earlier response to Judge Ray Wheless's Motion to Dismiss and Memorandum, ECF No. 34, Plaintiff Patrick Tuter's response to Judge John Roach, Jr.'s Motion to Dismiss, ECF No. 35, and Plaintiffs' Targeted Objection to ECF Nos. 44, 45, 50, 51, 52, 53, 56, and 57 as to Chapter 74 Claims Against Defendants Terry, Evans, Blacklock, and Brown Only, ECF No. 58: a defendant-specific federal claim is converted into a generalized grievance and then dismissed through doctrinal shortcuts that do not answer the claim actually pleaded.

6.    The motions also fail to address a threshold contradiction that materially undermines Moss's effort to frame himself as a purely private actor at the pleading stage. That contradiction is addressed in Objection No. 4 as corroborative support for the FAC's state-action allegations.

7.     This targeted objection proceeds in the same general Rule 12 sequence as those earlier filings. Plaintiff Conghua Yan expressly adopts and incorporates by reference those filings, including their arguments, authorities, and cited record materials, but only to the extent applicable to the common threshold issues presented here, including Rule 12 standards, Article III standing, traceability, redressability, *Ex parte Young*, *Sprint/Younger*, the source-of-injury distinction, the availability of declaratory relief under *42 U.S.C. § 1983*, and function-specific immunity analysis.

8.     This targeted objection remains limited to Count VI and to the Rule 145 contest-processing-and-notice mechanism pleaded against Wilder, Grimaldi, and Moss, and it adds the supplemental Rule-145-specific and defendant-specific arguments applicable to those defendants. It also adds a DA-representation argument against Moss specifically, which provides corroborative support for the FAC's state-action allegations in addition to the function-specific immunity analysis. To the extent this objection supplements, narrows, or refines any prior filing, this objection controls as to Count VI.

## OBJECTION NO. 1: THE FAC PLEADS A DEFENDANT-SPECIFIC RULE 145 DEPRIVATION THEORY; THE MOTIONS RECAST IT AS A MERE ATTACK ON THE STATE-COURT RESULT

9.     Rule 145, as pleaded in the FAC, is not just a state procedural preference. The FAC alleges that Rule 145 creates a state-law entitlement to proceed without prepayment of costs unless and until that entitlement is terminated through rule-compliant and constitutionally adequate procedures. It further alleges that the sworn-evidence requirement is the rule's pre-deprivation safeguard because a contest itself immediately forces the indigent litigant to respond, appear, and risk loss of fee-waiver status. ECF No. 9, ¶¶ 42-44, 204.

10.     On that theory, the wrong is not exhausted by the later denial order. The wrong begins when court-affiliated actors allegedly bypass the sworn-evidence predicate, use clerk-facilitated processing outside ordinary adversarial channels, and employ defective notice practices that increase the likelihood of default and loss of indigent protection. ECF No. 9, ¶¶ 67-83, 95-98, 204-217.

11.     That is why the FAC assigns distinct roles to distinct defendants. Wilder is alleged to have accepted, docketed, processed, implemented, maintained, and ratified a two-tier clerk practice under which Moss's contest was processed without ordinary fee, service, and sworn-proof requirements. ECF No. 9, ¶¶ 69–70, 78–79, 95–98, 204(1), 207, 216–217. Grimaldi is alleged to have transmitted and endorsed a composite "contest/notice," failed to correct an allegedly illegible hearing date after being informed of the problem, and participated in the same deprivation mechanism. *Id.* ¶¶ 71–75, 80(1), 204(3), 206, 216–220. Moss is alleged to have acted under color of state law through joint participation with Wilder and Grimaldi and through clerk-facilitated handling of his contest and notice. *Id.* ¶¶ 69–70, 71–75, 78–80, 204(2), 205, 216–217.

12.     The motions do not really answer that integrated mechanism. They repeatedly recast the FAC as though Yan were merely challenging the abstract ability of someone to contest indigency or merely disagreeing with the later denial order. The FAC itself forecloses that recasting on its face.

13.     As to Wilder, the FAC does not allege that Wilder simply "present[ed] evidence" to controvert indigency. It alleges that the District Clerk's Office itself initiated and filed the Rule 145 contest, that the contest was advanced without ordinary fee treatment, that the clerk-side process did not proceed through the ordinary pre-deprivation safeguards Yan pleads Rule 145

required, and that Wilder, as final policymaker, implemented, maintained, and/or ratified those office-level filing, fee, and processing practices. ECF No. 9, ¶¶ 69–70, 78–80, 95–98, 204(1), 207, 216–217. That is a structural administrative claim about accepting, processing, and advancing a Rule 145 contest through a clerk-run mechanism that allegedly lacked the pleaded safeguards required before Rule 145 protection could be stripped, not a mere disagreement with evidentiary sufficiency.

14.    As to Grimaldi, the FAC does not challenge "coordinating court activities" in the abstract. It alleges that Grimaldi engaged the court's hearing-setting function even though Moss had not completed an ordinary filed-and-served Rule 145 contest presentation through the court record; that Yan received only a single composite page combining a partial fragment of Moss's contest with Grimaldi's handwritten hearing-date notation and signature; that the handwritten hearing date was illegible to Yan; that Yan told Grimaldi before the hearing that he could not read the date and requested clarification, a legible written setting, and confirmation of the actual filed contest; that no corrected written notice issued before the hearing; and that the FAC characterizes her conduct as a one-sided, extra-record accommodation rather than neutral routine coordination within an ordinary adversarial filing process. ECF No. 9, ¶¶ 71–75, 80(1), 87. At the pleading stage, Yan's allegation that he did not locate any written policy, instruction, or directive authorizing that notice method supports the inference that the challenged acts were not simply the routine execution of an identified directive. Id. ¶ 87.

15.    As to Moss, the FAC does not allege only that he invoked Rule 145 in the ordinary manner available to any litigant. It alleges that the District Clerk's Office itself initiated and filed the contest on his behalf, that the contest was advanced through zero-fee, clerk-facilitated handling, that Yan did not receive ordinary service of a complete filed contest through regular adversarial

channels before the hearing, and that the deprivation mechanism moved forward without the sworn-evidence predicate Rule 145 allegedly requires before Rule 145 protection may be stripped through a compelled hearing-and-deprivation process. ECF No. 9, ¶¶ 69–70, 71–75, 78–80, 204(2), 205, 216–217. The FAC therefore does not challenge Moss's right to contest indigency in the abstract; it challenges the specific method pleaded—no sworn predicate, no ordinary service of the complete filed contest, composite notice, clerk-facilitated handling, and an alleged private economic motive—facts that support the *Wyatt*/private-economic-interest theory and the official-mechanism-for-private-benefit concern discussed in *North Carolina State Board of Dental Examiners*.

16.     The same mischaracterization runs across all three motions when they recast the FAC as a collateral attack on the state-court order or a mere disagreement with the indigency ruling. The FAC expressly alleges that the sworn-evidence requirement is Rule 145's own pre-deprivation safeguard because acceptance of a contest immediately forces the indigent litigant to respond, appear, and risk loss of fee-waiver status; that the source of injury is Defendants' own conduct, independent of any state judgment; and that Count VI challenges an integrated deprivation mechanism, not simply the later result. ECF No. 9, ¶¶ 42, 44, 50, 204, 216–217. On the FAC's theory, the wrong is complete at the point of defective acceptance and defective notice; it does not depend on whether the trial court's later ruling was correct.

17.     The motions therefore answer a different claim from the one Yan pleaded. Under Rule 8, the FAC was not required to pin Count VI to a punctiliously stated legal theory; it was enough to allege facts giving fair notice of the Rule 145 due-process deprivation actually pleaded. The Court should therefore address the Rule 145 deprivation mechanism as actually pleaded, defendant by defendant, rather than as recast into a generalized disagreement with a state-court ruling. See

*Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam); *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

18.    Article III standing and *Ex parte Young* must be analyzed defendant by defendant, provision by provision, and function by function. *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239 (5th Cir. 2025); *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179–80 (5th Cir. 2020). *La Union* explains that an official has a sufficient enforcement connection when the official has a particular duty to enforce the challenged mechanism, has shown a willingness to exercise that duty, and through her conduct compels or constrains persons to obey the challenged law; it also reiterates that only a scintilla of enforcement is required and that standing and *Ex parte Young* substantially overlap in this setting. *Book People v. Wong*, 91 F.4th 318 (5th Cir. 2024) confirms that traceability is not defeated merely because the State works through another actor, so long as the challenged conduct has a determinative or coercive effect within the deprivation mechanism. *City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019) remains the limiting principle: abstract supervisory authority alone is not enough.

19.    As to Wilder, traceability is sufficiently pleaded at Rule 12 because the Court must accept the FAC's factual allegations as true and draw reasonable inferences in Yan's favor. The FAC does not plead that Wilder merely received a filing and that a judge later ruled. It pleads that Wilder, as District Clerk and final policymaker for the District Clerk's Office, accepted, processed, implemented, maintained, and ratified a clerk-side Rule 145 practice under which contest papers were accepted and advanced without the rule's sworn-evidence predicate and **without** ordinary fee and notice safeguards, thereby triggering the very pre-deprivation burden Rule 145's predicate was meant to prevent. ECF NO. 9, ¶¶ 42, 44, 50, 67–70, 204(1)–(3), 216–217. Under *La Union*, *Texas Democratic Party*, and *Book People*, that pleaded control over the operative filing-and-

processing mechanism is enough at the pleading stage to allege compulsion or constraint rather than mere abstract authority. Here, by contrast, the requested prospective relief runs against the clerk-office mechanism itself—the acceptance, processing, and advancement of Rule 145 contests without the pleaded predicate and notice safeguards—so no prediction about how a future judge will rule on indigency is required to see how relief against that mechanism would prevent recurrence of the same pre-hearing procedural deprivation.

20.    As to Grimaldi, traceability does not depend on how Judge Catterton later ruled. Yan does not challenge the later merits ruling as the source of his constitutional injury; he challenges the pre-hearing notice-and-processing mechanism that allegedly deprived him of meaningful notice and a meaningful opportunity to appear at all. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). The FAC alleges that Grimaldi signed and transmitted the composite notice, failed to correct the illegible hearing date after being informed of the defect, and helped implement the very instrument through which the deprivation was carried out. ECF NO. 9, ¶¶ 71–75, 80(1), 85(1)–(2), 87. Under *La Union* and *Texas Democratic Party*, control over the operative notice instrument and the process by which it is transmitted can supply the needed *Young* connection; under *Book People*, the later participation of another decisionmaker does not erase traceability where the challenged conduct helped determine whether Yan would receive the required pre-deprivation process at all.

21.    As to Moss, the FAC does not sue him merely because he disagreed with Yan's indigency filing. It alleges that Moss used court-staff assistance and clerk-facilitated handling to set the Rule 145 deprivation mechanism in motion for his own fee-related benefit. ECF NO. 9, ¶¶ 67–70, 75, 78–80, 205, 216–217. That is enough at the pleading stage to allege a direct causal role in the challenged mechanism itself. *Book People* confirms that traceability does not fail simply because another actor later acts within the same chain; what matters is whether the pleaded conduct helped

produce the injury. And *La Union* reinforces that Article III analysis in this setting focuses on concrete participation in the operative mechanism, not on whether the defendant held final adjudicatory authority.

22.    Because this objection is limited to Count VI and to Wilder, Grimaldi, and Moss, the Court need decide only whether these three defendants are plausibly alleged to have participated in the contest-processing and notice mechanism that triggered the loss of Rule 145 protection. On the FAC's allegations, the answer is yes.

23.    Redressability is likewise pleaded. As to Wilder and Grimaldi, the FAC seeks prospective relief prohibiting further processing of Rule 145 contests absent the sworn-evidence predicate and rule-compliant notice, and it seeks declarations directed to the challenged contest-processing mechanism. ECF No. 9, ¶ 229(5). That is classic partial-relief redressability under *La Union* and *Ex parte Young*, 209 U.S. 123 (1908). The fact that another state actor later entered an order does not erase the redressability of relief directed to the administrative machinery that allegedly caused the deprivation; relief requiring legible, complete, timely, rule-compliant notice would prevent recurrence of the same pre-hearing procedural injury regardless of how any future judge rules on indigency.

24.    The requested relief is correspondingly narrow. As to Wilder and Grimaldi, the FAC seeks prospective relief prohibiting further processing of Rule 145 contests absent the sworn-evidence predicate and rule-compliant notice, and it seeks declarations directed to the challenged contest-processing mechanism. ECF No. 9, ¶ 229(5). As to Moss, the FAC seeks defendant-specific declaratory and injunctive relief directed to his own participation in that same mechanism—relief forbidding future use of the same clerk-assisted, extra-record Rule 145 shortcut and declaring that

such participation cannot be used to deprive a declarant of Rule 145 protection absent the sworn-evidence predicate and ordinary rule-compliant notice. Even if a future court remained free to decide indigency on a lawful record, eliminating that alleged shortcut would redress the pleaded injury by removing one alleged cause of the deprivation mechanism itself. This Count VI objection therefore requires no ruling on any theory outside the Rule 145 contest-processing and notice mechanism.

25.    The Court therefore can resolve the present Rule 12 issues without reaching recusal-based arguments or any separate theory tied to judicial office. For this narrowed objection, the only question is whether the FAC plausibly states Count VI against Wilder, Grimaldi, and Moss under the correct defendant-specific, function-specific, and remedy-specific standards.

## OBJECTION NO. 2: YOUNGER AND ROOKER-FELDMAN DO NOT DISPOSE OF THE RULE 145 THEORY AS PLEADED

26.    *Younger* does not independently dispose of the Rule 145 theory as asserted against Wilder, Grimaldi, and Moss. *Sprint* makes clear that *Younger* is exceptional, not automatic, and *Daves* confirms that *Sprint*'s categories are exhaustive.

27.    The motions never show that the particular clerk-side and coordinator-side conduct challenged here—acceptance of an unsworn contest, zero-fee and preferential processing, composite notice, and failure to provide or correct ordinary adversary notice—constituted the state civil proceeding itself, as opposed to antecedent administrative acts alleged to have distorted access to that proceeding. ECF No. 9, ¶ 50, ¶¶ 69-75, 78-84, 95-99, 204-17.

28.    The same point answers Moss's separate *Younger* argument. Even if Rule 145(e)(1) allowed a court reporter to file a contest through ordinary channels, Count VI challenges Moss's

alleged use of a one-sided, clerk-facilitated, extra-record mechanism that distorted access to the hearing itself. Relief against recurrence of that conduct would regulate his own alleged participation in the deprivation mechanism, not enjoin a state court from adjudicating indigency on a proper record.

29.     Yan does not ask this Court to supervise the merits of the underlying family-law case or to enjoin the state court from adjudicating indigency on a proper record. He challenges the pre-deprivation administrative acceptance, processing, and notice steps by which Rule 145 protection was allegedly stripped before any merits adjudication occurred.

30.     Even if the underlying divorce case remained active, that does not automatically transform every clerk or coordinator processing decision into a proceeding "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78-79 (2013); *Daves v. Dallas County*, 64 F.4th 616, 631-35 (5th Cir. 2023) (en banc). At minimum, the motions do not carry that burden on the pleadings.

31.     The FAC also does not seek federal appellate review of the November 6, 2024 order. It does not ask this Court to vacate that order, revise the state court's factfinding, or hold that the state court should have weighed the evidence differently.

32.     Instead, it alleges independent constitutional injury arising from the defendants' own pre-deprivation and deprivation-stage conduct and seeks prospective relief against recurrence of that mechanism. ECF No. 9, ¶ 50, ¶¶ 95-99, 229(5). *English v. Crochet*, 154 F.4th 369 (5th Cir. Oct. 8, 2025), reaffirmed that the key *Rooker-Feldman* inquiry is **the source of the injury**: if the injury arises from the defendants' conduct during the proceedings, the claim is **independent** even if that conduct contributed to a state-court judgment.

33.    That distinction defeats *Rooker-Feldman* as pleaded here. The source of the federal injury is not simply the state judgment itself; it is the allegedly unauthorized contest-processing and notice mechanism that led to the loss of Rule 145 protection and the resulting cost barriers. ECF No. 9, ¶ 50, ¶¶ 69-75, 78-80, 95-100.

34.    That is a claim about the defendants' own conduct, not a request to overturn the November 6, 2024 order. A federal claim does not become jurisdictionally barred simply because a state order exists in the background or because the order is part of the causal sequence. *English* confirms that point. *Miller v. Dunn*, 35 F.4th 1007, 1010-13 (5th Cir. 2022).

35.    The same reasoning also defeats any attempt to fold Count VI into generalized family-court abstention narratives. The FAC does not ask this Court to supervise the merits of the indigency ruling.

36.    It challenges pre-hearing administrative acts: acceptance and advancement of a contest without the pleaded sworn predicate, composite and unclear notice, refusal to clarify the unreadable hearing date after request, and the resulting loss of Rule 145 protection. ECF No. 9, ¶¶ 67–83, 95–98, 204–217.

37.    That is a process-specific challenge to the defendants' own conduct, not a generalized objection to family-court proceedings.

**OBJECTION NO. 3: ALL IMMUNITY ISSUES MUST BE ANALYZED FUNCTION BY FUNCTION, CAPACITY BY CAPACITY, AND OFFICE TITLE ALONE DOES NOT DISPOSE OF COUNT VI**

38.    Wilder's immunity arguments must be separated by capacity and remedy. As to forward-looking official-capacity relief, even assuming Wilder is treated as a state official for Eleventh

Amendment purposes, Ex parte Young permits prospective relief against a state official when the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002).

39.     The FAC does exactly that. It does not plead only a completed November 6 injury; it pleads an office-level Rule 145 contest-processing mechanism in the District Clerk's Office - acceptance, zero-fee processing, docketing, implementation, maintenance, and ratification of contests for court-affiliated filers without the sworn-evidence predicate and without ordinary notice channels - and it seeks forward-looking relief prohibiting further use of that mechanism. ECF No. 9, paragraphs 96-98, 204(1), 207, 216-217, 221-222, 229(5). That is enough at the pleading stage to invoke *Ex parte Young* as to Wilder's official-capacity prospective-relief defense.

40.     Wilder's individual-capacity damages defense is different. That lane does not rise or fall under Ex parte Young or a free-standing ultra vires exception; it runs through the ordinary section 1983 individual-capacity framework and Wilder's qualified-immunity defense. Because the FAC alleges that Wilder personally accepted, maintained, implemented, and ratified the challenged two-tier clerk practice, the individual-capacity claim remains analytically distinct from the official-capacity Young analysis and cannot be dismissed by collapsing the two immunity questions into one.

41.     Grimaldi's immunity argument misallocates the burden and overstates the scope of quasi-judicial protection. Her brief argues that Yan 'does not allege that Grimaldi did not act according to her judge's explicit instructions.' ECF No. 49 at 6. But quasi-judicial immunity is not a pleading element Yan had to negate in the FAC, and not every act by a court employee is presumptively quasi-judicial. The official seeking absolute immunity bears the burden of showing that the

challenged act falls within the protected function. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432-37 (1993); *Burns v. Reed*, 500 U.S. 478, 486 (1991).

42.    *Diggles v. Surratt*, No. 4:23-CV-78, 2023 WL 6963666, at *7 (S.D. Tex. Oct. 20, 2023) and *Severin v. Parish of Jefferson*, 357 F. App'x 601, 605 (5th Cir. 2009) (per curiam) protect court personnel only for acts explicitly required by a judge or otherwise performed in carrying out a judicial command. Yan's point is that the FAC alleges the opposite. The FAC alleges that Grimaldi engaged the hearing-setting function even though Moss had not completed an ordinary filed-and-served Rule 145 contest presentation through the court record; that Yan received only a composite page containing a partial fragment of Moss's contest plus Grimaldi's handwritten hearing-date notation and signature; that the handwritten date was unreadable; that Yan requested clarification before the hearing; and that no corrected written notice issued before the hearing.

43.    The FAC further does not show that any judge explicitly directed Grimaldi to handwrite a hearing date for Moss in an *ex parte* manner before Moss filed his contest through the court record, or to remain silent after Yan requested clarification. On the FAC, those are plausibly extra-record administrative acts, not self-proving judicially commanded conduct. Quasi-judicial immunity therefore does not support dismissal at Rule 12.

44.    The governing principle is straightforward: immunity is function-specific, not title-specific. See *Forrester v. White*, 484 U.S. 219, 229-30 (1988); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981); *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001). The question is not whether Wilder is a district clerk, Grimaldi a coordinator, or Moss a court reporter in the abstract. The question is what function each allegedly performed in the Rule 145 deprivation mechanism Yan pleads.

17

45.    Wilder's alleged conduct is not simply 'being a judge's arm.' The FAC alleges that, under Wilder's own authority as District Clerk and final policymaker for his office, the clerk's office initiated or accepted the contest, provided zero-fee and preferential processing, bypassed ordinary adversary channels, and implemented or ratified a two-tier Rule 145 practice that allowed court-affiliated contestants to advance fee-waiver challenges without the sworn-evidence predicate and notice protections the FAC identifies as Rule 145's own pre-deprivation safeguards. ECF No. 9, paragraphs 69, 76, 78-79, 204(1), 207, 216-217.

46.    For the official-capacity lane, Ex parte Young - not Monell - governs prospective relief against an allegedly ongoing clerk-office mechanism. For the individual-capacity lane, Wilder's defense is qualified immunity. But the FAC does not merely allege that Wilder lawfully received a filing and a judge later ruled; it alleges that Wilder personally accepted, maintained, implemented, and ratified the challenged two-tier clerk practice itself. On those allegations, the qualified-immunity question cannot be resolved by recasting the FAC as though it challenged only an ordinary Rule 145 filing accepted through ordinary channels. Routine or policymaking clerk conduct is not automatically judicial, and official-capacity declaratory relief is not barred by a generalized sovereign-immunity discussion that ignores *Ex parte Young*.

47.    Grimaldi therefore cannot obtain dismissal by simply assuming explicit judicial direction. If the challenged handwritten-setting and notice steps were not expressly directed by a judge, her quasi-judicial-immunity premise fails on its own terms. If she contends those steps were expressly directed, that assertion still does not defeat Count VI at Rule 12, because Yan's theory is then that the notice mechanism itself was constitutionally defective as implemented. The FAC's allegations - composite notice, unreadable handwritten setting, no corrected notice after a request for clarification, and the predictable loss of Rule 145 protection when Yan missed the hearing -

plausibly allege conduct outside any objectively reasonable understanding of ordinary Rule 145 notice practice. ECF No. 9, paragraphs 71-75, 80-83, 204-217.

48.     Moss's qualified-immunity argument likewise overreads both Rule 145(e)(1) and his office title. The FAC does not challenge the abstract ability of a court reporter to file a rule-compliant contest. It challenges Moss's alleged use of court-affiliated access, clerk-facilitated handling, and one-sided notice machinery to defeat Yan's inability-to-pay status in a matter affecting Moss's own fee-related economic interest. ECF No. 9, paragraphs 69-70, 205, 216-217.

49.     That pleaded function is not neutral transcription, preservation of the record, or execution of a judicial directive. *Antoine* rejected automatic immunity for court reporters because immunity turns on function, not office title. 508 U.S. at 436-37. The FAC does not depict Moss as performing a neutral adjudicative task on behalf of the State; it depicts him as the contesting court reporter who allegedly used Rule 145 and clerk-facilitated handling to preserve his own fee-related position. And although it arose in a different doctrinal setting, *North Carolina State Board of Dental Examiners v. FTC* reinforces the same basic point: state-affiliated actors do not receive automatic protection when they use official mechanisms to advance their own market interests rather than to perform a neutral governmental function. 574 U.S. 494, 505-11 (2015).

50.     Clearly established law likewise does not rescue Moss on the pleadings. Rule 145 itself required sworn evidence, and ordinary due-process law required meaningful notice and an opportunity to be heard before Rule 145 protection could be stripped. At minimum, the FAC plausibly alleges conduct outside any objectively reasonable understanding of ordinary Rule 145 invocation. Whether Moss can establish qualified-immunity eligibility and whether the right can

ultimately be framed with greater particularity are later questions, not a basis for Rule 12 dismissal now.

51.     That same functional distinction strengthens, rather than defeats, the FAC's under-color-of-law theory. If Moss used court-affiliated access, clerk processing, and the State's Rule 145 machinery to pursue a private economic objective, the FAC plausibly alleges joint participation under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982). But if Moss characterizes that same conduct as private fee-protection activity undertaken for personal benefit, *Wyatt v. Cole* confirms that qualified immunity does not automatically attach to private actors who invoke state procedures for their own ends. 504 U.S. 158, 168-69 (1992); see also *Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018). In either direction, Moss cannot collapse function into title and obtain dismissal by assuming that a court reporter's office makes fee-protection conduct either immune or non-state by definition.

52.     The same title-only approach fails more generally. Count VI turns on function, not labels. Wilder is sued for alleged clerk-side acceptance, processing, fee handling, and ratification of the challenged Rule 145 practice. Grimaldi is sued for alleged notice transmission, refusal to clarify the unreadable date, and related administrative facilitation. Moss is sued for allegedly using court-affiliated access and clerk-facilitated handling to pursue his own fee-related objective through the Rule 145 machinery. On the FAC as pleaded, none of those theories can be dismissed merely by invoking office title in the abstract.

**OBJECTION NO. 4: THE DA'S REPRESENTATION OF MOSS CORROBORATES THE FAC'S STATE-ACTION ALLEGATIONS AND UNDERMINES HIS PURELY PRIVATE-ACTOR FRAMING**

53.    The Tarrant County Criminal District Attorney's Office appears as counsel of record for Defendant Moss. ECF Nos. 46, 47. That institutional representation is not by itself dispositive of the color-of-law element. But it materially undercuts any attempt to characterize Moss, at the pleading stage, as a wholly private actor who merely used the same ordinary litigant channels available to any stranger to the court system.

54.    That representation matters most when read together with the FAC's own allegations. The FAC alleges zero-fee clerk processing, preferential handling, extra-record notice machinery, and coordinated advancement of Moss's contest through court-affiliated channels rather than through ordinary filed-and-served adversary practice. ECF No. 9, paragraphs 69, 71-80, 205, 216-217. Taken together, those allegations and the DA's appearance strengthen the plausible inference that Moss's challenged conduct cannot be cleanly characterized as purely private for Rule 12 purposes.

55.    At minimum, Moss cannot obtain dismissal by insisting that the challenged conduct was purely private as a matter of law. If he frames the conduct as state-assisted use of Rule 145 machinery, Lugar supports the FAC's state-action theory. If he instead frames it as private fee-protection activity undertaken for personal benefit, Wyatt and Perniciaro cut against any assumption that qualified immunity automatically follows. The DA-representation point therefore serves as corroborative support for the FAC's state-action allegations, not as the sole hinge of Count VI.

## OBJECTION NO. 5: THE FAC STATES A PLAUSIBLE RULE 145 DUE-PROCESS CLAIM AGAINST WILDER, GRIMALDI, AND MOSS

56.    Even apart from the DA-representation point discussed above, the FAC plausibly states a Rule 145 procedural-due-process claim against Wilder, Grimaldi, and Moss.

57.     Under *Goldberg v. Kelly*, 397 U.S. 254 (1970), *Board of Regents v. Roth*, 408 U.S. 564 (1972), and *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), once state law confers an entitlement, the State may not terminate it without constitutionally adequate procedures. That is the legal theory the FAC invokes with respect to Rule 145. ECF No. 9, paragraphs 42-44, 204.

58.     The FAC then pleads facts supporting that theory. It alleges that the contest was advanced without the sworn-evidence predicate, that the notice was composite and unclear, that Yan did not appear because of the notice problem, that the visiting judge denied the Statement of Inability in Yan's absence, and that cost barriers followed. ECF No. 9, paragraphs 67-83, 95-98, 204-217. Whether Yan will ultimately prove those allegations is not the Rule 12(b)(6) question. The only question at this stage is plausibility, and the FAC clears that threshold.

59.     Wilder's motion says Rule 145 did not prohibit him from presenting evidence to the court. That framing still misses the FAC's actual allegations. The FAC pleads not merely 'presenting evidence,' but continuation of a clerk-side practice after actual notice of prior Rule 145 improprieties, including acceptance, zero-fee processing, docketing, and implementation of a contest that allegedly lacked the sworn-evidence predicate required by Rule 145 itself. ECF No. 9, paragraphs 69, 76, 78-79, 96-98, 204(1), 207, 216-217.

60.     The FAC further alleges that the 2016 Campbell decision and the July 2023 settlement gave Wilder and Tarrant County actual notice regarding improper Rule 145 fee-and-cost practices, yet in late 2024 the District Clerk's Office again accepted and implemented a contest through allegedly noncompliant channels. ECF No. 9, paragraphs 96-98, 207, 216-217. At the pleading

stage, those allegations support more than an isolated clerical mistake; they support a plausible inference of knowing continuation or ratification of the challenged practice.

61.    Rule 145 itself required sworn evidence and rule-compliant notice before indigent protection could be stripped. See *Tex. R. Civ. P. 145(f)*. Texas fee law likewise did not confer free-floating discretion to waive ordinary filing fees for favored court participants while processing an indigency contest against the declarant. The FAC alleges the opposite occurred here - zero-fee clerk-facilitated processing for Moss's contest. ECF No. 9, paragraph 69(3)-(5). On those allegations, Wilder was not operating in a lawful discretionary gray area; the FAC plausibly alleges departure from the very safeguards Texas law built into the Rule 145 process.

62.    The FAC also plausibly alleges that Grimaldi's challenged acts were her own extra-record administrative initiative rather than execution of an explicit judicial command. It alleges that the instrument Yan received was a single page combining a partial contest fragment with Grimaldi's handwritten setting notation and signature, that the handwritten date was unreadable, and that no corrected notice issued after Yan requested clarification before the hearing. ECF No. 9, paragraphs 71-75, 80-83, 204-217.

63.    The FAC characterizes that arrangement as a one-sided, extra-record accommodation to Moss rather than the ministerial transmission of a clerk-filed document or a judge-signed hearing-setting order. ECF No. 9, paragraph 80(1). Read in Yan's favor, those allegations support the inference that Grimaldi's challenged acts were part of the same deprivation mechanism rather than mere passive transmission of a facially valid court order.

64.    Moss's motion says he was simply invoking Rule 145. That framing is too abstract. A movant may ordinarily file a Rule 145 contest through ordinary adversary channels. But the FAC

alleges something narrower and more serious: that Moss did not merely file a contest, but participated in a one-sided, state-facilitated mechanism that constrained Yan's access to the hearing itself and helped produce a default-like loss of Rule 145 protection. On the FAC's theory, the constitutional defect is not the bare fact that Moss challenged indigency; it is the manner in which the challenge was allegedly advanced and implemented.

65.    That pleads more than negligence. *Daniels v. Williams* bars section 1983 liability for simple carelessness, 474 U.S. 327, 328, 333 (1986), but these allegations support deliberate indifference or reckless disregard for the right to notice and a meaningful opportunity to be heard before cost barriers were imposed. At this stage, that is enough.

66.    Supreme Court court-access precedents reinforce the constitutional significance of the pleaded deprivation. *Griffin v. Illinois*, 351 U.S. 12, 17-19 (1956), *Boddie v. Connecticut*, 401 U.S. 371, 376-77, 380-83 (1971), and *M.L.B. v. S.L.J.*, 519 U.S. 102, 113-17 (1996), recognize that when the State conditions meaningful access to judicial proceedings on ability to pay - especially in the domestic-relations setting where the State monopolizes the lawful means of dissolving a marriage - wealth-based barriers and procedurally defective gatekeeping raise serious constitutional concerns. Those cases need not mirror every detail of this Rule 145 mechanism to supply the relevant background principle.

67.    To the extent Count VI also sounds in equal protection, the FAC pleads a structural two-tier regime in which court-affiliated contestants allegedly received preferential handling while the indigent declarant faced default risk, loss of Rule 145 protection, and predictable inability to continue litigating without advance payment. That alternative framing may reinforce, but does not replace, the due-process theory that independently states a claim.

24

68.     Moss's attorney-fees argument likewise does not identify any live claim for dismissal. The FAC expressly disclaims section 1988 attorney's fees for Plaintiffs' own pro se time and states that, as pro se litigants, Plaintiffs currently seek only taxable costs, while reserving any fee request for the event counsel is later retained and prevails. ECF No. 9, paragraph 244. *Kay v. Ehrler* bars pro se attorney's fees under section 1988, but it does not bar ordinary taxable costs. 499 U.S. 432, 437 n.3 (1991).

69.     In short, the FAC states a plausible Count VI due-process claim against Wilder, Grimaldi, and Moss. The motions do not refute those theories on their own terms. See *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014); *Skinner v. Switzer*, 562 U.S. 521, 530 (2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**PRAYER**

70.     For these reasons, Plaintiff Conghua Yan respectfully requests that the Court deny the motions to dismiss as to Count VI, the Rule 145 indigency-deprivation theory, against Defendants Wilder, Grimaldi, and Moss, and evaluate the present dismissal arguments under the correct defendant-specific, function-specific, and remedy-specific standards.

Respectfully submitted,

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092
(214) 228-1886 | arnold200@gmail.com
Pro Se

**CERTIFICATE OF SERVICE**

I certify that on March 9, 2026, I filed the foregoing document via the Court's CM/ECF system, which will send notice of electronic filing to all registered CM/ECF users, and that I served all non-registered parties by USPS Certified Mail to their respective service addresses.

*/s/ Conghua Yan*
Conghua Yan