# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| Samuel Randles, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Case No. 4-25CV1422-0 | |
| | ) | |
| Jimmy Blacklock, et al. | ) | |
| | ) | |
| Defendants, | ) | |

## PLAINTIFFS' TARGETED OBJECTION AND RESPONSE TO ECF NOS. 44, 45, 52, AND 53 AS TO COUNT I ONLY
## (AS TO DEFENDANTS DEAN, CATTERTON, AND HARRIS ONLY)

Table of Contents

Table of Contents ............................................................................................................. 2

I.      COUNT I'S DIRECT-CONFLICT THEORY AND THE CONTROLLING FEDERAL
STANDARD ...................................................................................................................... 5

II.     THE FAC PLEADS A PLAUSIBLE COUNT I CLAIM AGAINST DEAN, CATTERTON,
AND HARRIS ................................................................................................................... 9

III.    COMMON THRESHOLD ARGUMENTS ARE INCORPORATED, NOT RE-
ARGUED ......................................................................................................................... 11

IV.     DEFENDANT-SPECIFIC REBUTTALS .................................................................. 15

V.      CONCLUSION AND PRAYER ................................................................................ 17

CERTIFICATE OF SERVICE .......................................................................................... 18

Table of Authorities

**Cases**

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) ............................................... 6

*In re Murchison*, 349 U.S. 133 (1955) ........................................................................... 7

*Rippo v. Baker*, 580 U.S. 285 (2017) (per curiam) ........................................................ 7

*Tumey v. Ohio*, 273 U.S. 510 (1927) .............................................................................. 6

*Williams v. Pennsylvania*, 579 U.S. 1 (2016) ............................................................... 7

**Statutes**

Florida Canon 5F(2) .................................................................................................... 7, 10

*Florida Rule 10.340(e)* .................................................................................................... 8

Texas Canons 4D(1) .................................................................................................... 7, 10

Texas Canons 6F(1) ..................................................................................................... 7, 10

1.  Plaintiffs respectfully submit this targeted objection and response to ECF Nos. 44 and 45 only insofar as those filings seek dismissal of Count I against Defendants Crawford R. "Randy" Catterton and William Wren "Bill" Harris, and to ECF Nos. 52 and 53 only insofar as those filings seek dismissal of Count I against Defendant Sherill Youngberg Dean. This objection is limited to Count I and to those three defendants only.

2.  Count I is not a generalized attack on family-court rulings or on Chapter 74 assignments in the abstract. As the Preliminary Injunction motion explained (ECF Nos. 10, 11), Plaintiffs seek narrow, prospective relief requiring compliance with existing constitutional and statutory safeguards before visiting judges exercise judicial power, and that relief targets administrative assignment and notice practices rather than any state-court ruling or adjudication. ECF No. 11, at 3. The PI further explains that the source of injury is the challenged pre-adjudicative assignment and notice machinery, not review of state-court merits rulings. ECF No. 11 at 21–22.

3.  As pleaded against Dean, Catterton, and Harris, Count I is a narrow Fourteenth Amendment due-process claim that these assigned judges exercised, or stood ready to exercise, state judicial power while maintaining ongoing, fee-generating mediation or ADR businesses tied to the same lawyer market from which appearing counsel, repeat users, and referral sources are drawn. ECF No. 11, at 14; FAC ¶¶ 106, 110, 161.

4.  Plaintiffs do not reargue from the ground up the common threshold issues already briefed in earlier filed papers. Plaintiffs expressly adopt and incorporate by reference, to the extent applicable to common threshold issues, Plaintiffs' Response and Objection to Judge Ray Wheless's Motion to Dismiss and Memorandum (ECF No. 34), Plaintiffs' Response and Objection to Judge John Roach, Jr.'s Motion to Dismiss and Memorandum (ECF No. 35),

Plaintiffs' Targeted Objection to ECF Nos. 44, 45, 50, 51, 52, 53, 56, and 57 as to Chapter 74 Claims Against Defendants Terry, Evans, Blacklock, and Brown Only (ECF No. 58), Plaintiff Conghua Yan's Targeted Objection to ECF Nos. 42, 43, 46, 47, 48, and 49 as to Count VI Only (ECF No. 59), and Plaintiffs' Objections to Findings, Conclusions, and Recommendation as to Wheless and Roach (ECF No. 55). Those incorporated filings supply the common Rule 12 standards, source-of-injury distinction, *Bauer*'s limited scope, defendant-specific standing, traceability, redressability, *Ex parte Young*, *Sprint*/*Younger*, declaratory relief under *42 U.S.C. § 1983*, the ban on recasting defendant-specific theories into global barriers, and function-specific immunity analysis.

5.      More specifically, Plaintiffs rely on Roach for *Bauer* and structural-injury standing. See ECF No. 35 ¶¶ 30–35, 37–42, 75–77. Plaintiffs rely on Wheless, the Chapter 74 objection, the Rule 145 objection, and the FCR objections for the *Sprint*-based *Younger* framework. See ECF No. 34 ¶¶ 53–58; ECF No. 55 at 13–15; ECF No. 58 at 11–13. Plaintiffs rely on Rule 145 for *Twombly*/*Iqbal* pleading structure and function-specific immunity analysis. See ECF No. 59, Obj. No. 3 at 15–20. Plaintiffs rely on Chapter 74, the FCR objections, and the *La Union* framework recognized in late 2025 for source-of-injury, traceability, *Ex parte Young*, and defendant-specific relief analysis. See ECF No. 58 at 7–9, 21–24; ECF No. 55 at 12–13.

6.      For avoidance of doubt, Plaintiffs incorporate those prior filings only for the shared threshold rules and analytic framework, not to obscure the present Count I theory; the operative Count I application to Dean, Catterton, and Harris is set out below. This objection adds only the Count-I-specific and defendant-specific points necessary to defeat dismissal as to Dean, Catterton, and Harris. To the extent this objection supplements, narrows, or refines prior briefing, this objection controls as to Count I and these defendants.

7.      The motions repeat the same structural error identified in the earlier filings: they recast a defendant-specific federal claim into a generalized grievance about state-court results and then invoke standing, sovereign immunity, *Younger*, and pleading boilerplate against that strawman rather than the Count I theory actually pleaded.

### I.    COUNT I'S DIRECT-CONFLICT THEORY AND THE CONTROLLING FEDERAL STANDARD

8.      The Roach filing is used here as a threshold cross-reference and structural analogue only. Roach involved a spouse-based financial interest in the same case. Count I against Dean, Catterton, and Harris is different. It rests on those judges' own ongoing private mediation and ADR businesses, their dependence on lawyer referrals and repeat fee-generating work from the same legal market in which they sit by assignment, and the resulting objective probability of bias. The FAC pleads that due process protects against the probability of bias and that prospective conflict screening and disclosure are constitutionally required remedies. FAC ¶¶ 160-164, 225(1), (4)-(7), (10). The PI likewise explains that the constitutional violation lies in structural incentives inconsistent with neutrality, not in proof of subjective hostility or a confessed bias. ECF No. 11, at 14.

9.      The controlling federal standard is *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), read together with *Tumey v. Ohio*, 273 U.S. 510 (1927). Tumey supplies the foundational pecuniary-conflict principle: due process is violated when the arrangement offers a possible temptation to the average judge not to hold the balance nice, clear, and true. *Tumey*, 273 U.S. at 532. *Caperton* supplies the modern formulation: recusal is constitutionally required when the objective probability of actual bias is too high to be constitutionally tolerable. *Caperton*, 556 U.S. at 883-84, 886-87.

10.     That standard is objective, not subjective. Plaintiffs need not prove an admission of prejudice or an outcome-determinative payoff. It is enough that the alleged financial structure creates an objectively intolerable risk of bias. *In re Murchison*, 349 U.S. 133, 136 (1955); *Williams v. Pennsylvania*, 579 U.S. 1, 8-9 (2016); *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam).

11.     Texas's ethics rules reflect the same neutrality concern, but less explicitly than Florida's. *Texas Code of Judicial Conduct Canon 4D(1)* requires a judge to refrain from financial and business dealings that reflect adversely on impartiality or involve frequent transactions with lawyers or persons likely to come before the court, and *Canon 6F(1)* does not exempt assigned senior or former judges from Canon 4D(1). But Texas does not impose a Florida-style bright-line mediator restriction on assigned retired or senior judges. *Canon 4F* bars only an active full-time judge from acting as an arbitrator or mediator for compensation outside the judicial system, and *Canon 6F(1)* expressly exempts assigned senior and former judges from *Canon 4F*. Thus, Texas has not adopted a categorical state-law prohibition on assigned retired or senior judges maintaining compensated mediation practices; the constitutional standard under *Caperton* must therefore be applied directly.

12.     Florida is not controlling in Texas, but it is powerful persuasive secondary authority. *Caperton v. A.T. Massey Coal Co.* was decided on June 8, 2009, and Florida's current senior-judge and mediator rules are notably more explicit in addressing the same general neutrality risk. Florida Code of Judicial Conduct Canon 5F(2) requires disclosure when a party, attorney, or law firm in the pending case is utilizing or has utilized the senior judge as mediator, arbitrator, or voluntary trial resolution judge; absent express consent, it bars the senior judge from presiding over matters involving such users within the previous three years; and its commentary explains

that these restrictions exist to ensure that the impartiality of a senior judge is not subject to question.

13.    *Florida Rule 10.340(e)* imposes the same three-year bar in the mediator rules. These Florida rules do not define the federal constitutional floor, but they strongly confirm that the overlap between assigned judging and referral-dependent private dispute-resolution business creates an objectively recognizable risk to neutrality. The contrast between Texas and Florida underscores Count I's point.

14.    Texas draws its clearest mediation boundary largely by judicial status: active full-time judges may not serve as compensated mediators outside the judicial system, while assigned retired or senior judges are exempted from that categorical bar. But the public-facing neutrality risk alleged in Count I does not turn on whether a judge is active or retired. It turns on function: whether the same person is exercising judicial power in the same legal market from which the judge's private dispute-resolution business draws attorneys, repeat users, and referral goodwill.

15.    Florida's current rules track that function-based risk more directly by focusing on the judge's service in the local forum where dispute-resolution business is provided. Texas has not adopted a comparable bright-line rule. That does not lower the Fourteenth Amendment floor established by *Caperton*; it means only that in Texas the constitutional standard must be applied directly rather than through a more explicit state-law prophylactic rule.

16.    Texas's current status-based line therefore does not answer the Fourteenth Amendment question. The structural difference between the two states' approaches is not a difference in the constitutional standard — it is a difference in whether the state has drawn a bright line at that standard. The following comparison makes that distinction visible:

17.    The First Amended Complaint pleads concrete Count I facts against these defendants. FAC ¶ 106 alleges that both Catterton and Harris simultaneously maintained active, for-profit mediation and ADR businesses in Tarrant County, with Harris soliciting business and Catterton appearing on local approved-mediator lists while marketing former-judge status to secure fee-generating work from attorneys who appear, or are reasonably likely to appear, before them as visiting judges. FAC ¶ 161 further alleges that Dean likewise maintains a for-profit mediation business in the same county where she presides by assignment.

18.    FAC ¶ 110 alleges the resulting structural conflict directly: attorneys who act as referral sources or repeat mediation clients for Catterton, Harris, or Dean also appear before them in court, intertwining judicial assignments with private income streams. FAC ¶ 115 further alleges the same conflict is not isolated to one courtroom, but reflects an assignment regime that expands the number of subpar-ethics judicial seats by allowing privately compensated mediator-judges to continue serving by assignment without baseline conflict controls.

19.    Texas's current status-based line therefore does not answer the Fourteenth Amendment question. The structural difference between the two states' approaches is not a difference in the constitutional standard — it is a difference in whether the state has drawn a bright line at that standard. The following comparison makes that distinction visible:

| Bright-Line Element | Texas | Florida |
| --- | --- | --- |
| **Defined trigger event** | **None**. "Frequent transactions" and "tends to reflect adversely" require a fact-specific judgment call with no defined threshold event. Canon 4D(1). | **Yes**. Any prior use of the judge as mediator, arbitrator, or voluntary trial resolution provider by any party, attorney, or law firm in the pending case. Canon 5F(2); Rule 10.340(e). |
| **Defined time boundary** | **None**. Canon 4D(1) sets no lookback period. The "frequent transactions" standard is indefinite in time. | **Yes**. Three years from the date of prior mediator service. Canon 5F(2); Rule 10.340(e). |
| **Automatic consequence** | **No express per se bar**. Canon 4D(1) imposes a general anti-conflict standard, but Texas does not provide a Florida-style rule-based trigger, disclosure mechanism, lookback period, or automatic pre-presiding | **Yes**. Defined pre-presiding restrictions: a senior judge who provides ADR services may not preside over civil cases in a circuit where the judge provides those services; may preside over criminal cases in that circuit; may preside in other circuits |

| | | |
|---|---|---|
| | disqualification for assigned senior or former judges who maintain compensated mediation practices. Canon 6F(1) exempts assigned senior and former judges from Canon 4F's categorical mediator ban. | where the judge does not provide those services; and, absent express consent, may not preside over any case involving any party, attorney, or law firm that has used the judge within the previous three years. |
| **Defined override / escape valve** | **None**. No mechanism for parties to consent after disclosure, because no disclosure is required. | **Yes**. Express consent of the parties overrides both the disclosure requirement and the bar. Without that consent, the bar is absolute. Canon 5F(2)[1]; Rule 10.340(e)[2]. |
| **Does a bright line exist?** | **No.** Texas Canons 4D(1) and 6F(1) together impose a general qualitative standard — no defined trigger, no defined period, no per se bar, no consent mechanism. Whether the standard is met is a case-by-case judgment. | **Yes.** Florida Canon 5F(2) and Rule 10.340(e) together create a rule-based structure: defined trigger + defined period + automatic bar + express-consent override. Whether the bar applies is determined by objective facts alone. |
| **Governing constitutional floor** | *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927). | **Same federal floor**: *Caperton* and *Tumey*. Florida's Canon 5F(2) commentary states the purpose is to ensure a senior judge's impartiality 'is not subject to question,' which is persuasive prophylactic support for the same neutrality concern, but it is not itself the federal constitutional standard. |
| **Adopted in response to *Caperton*?** | **No**. Texas's relevant ethics structure predates *Caperton*, and the current Code does not, on its face, articulate a *Caperton*-specific rationale for exempting assigned senior or former judges from Canon 4F's categorical mediator ban while leaving Canon 4D(1)'s general anti-conflict rule in place. | **Yes**. Florida's current rules are post-Caperton and are notably more explicit in addressing the same neutrality risk. They reflect a more explicit prophylactic rule structure aimed at the same dual-role danger without displacing the federal constitutional standard. |
| **What line does the state draw?** | **Primarily status-based.** Active full-time judges face the categorical mediator ban in Canon 4F; assigned senior/former judges do not, though they remain subject to Canon 4D(1)'s general anti-conflict rule. | **Function/forum/relationship-based**: the rule turns on whether the senior judge is presiding over civil cases in the same circuit where the judge provides ADR services, and whether parties, attorneys, or firms in the pending case have used the judge within the previous three years. |

## II. THE FAC PLEADS A PLAUSIBLE COUNT I CLAIM AGAINST DEAN, CATTERTON, AND HARRIS

---

[1] **Florida Code of Judicial Conduct, Canon 5F(2):**
A senior judge who provides mediation, arbitration, or voluntary trial-resolution services may preside over criminal cases in a circuit where the judge provides those services, and may preside over civil and criminal cases in circuits where the judge does not provide those services. But a senior judge may not preside over civil cases in a circuit where the judge provides those dispute-resolution services. The judge must disclose if any party, attorney, or law firm in the pending case is utilizing or has utilized the judge for such services, and absent express consent of all parties, the judge may not preside over any case involving such users within the previous three years.

[2] **Florida Rule 10.340(e):**
A mediator who is a senior judge may not mediate a case in which the judge is currently presiding as a senior judge. Absent express consent, the judge may not serve as a senior judge over any case involving any party, attorney, or law firm that has utilized the judge as a mediator within the previous three years. A senior judge who provides mediation services may not preside over the **same type of case** the judge mediates in the circuit where those services are provided, but may preside over other types of cases in that circuit and over cases in circuits where the judge does not provide mediation services.

20.     The First Amended Complaint pleads concrete Count I facts against these defendants. FAC ¶ 106 alleges that both Catterton and Harris simultaneously maintained active, for-profit mediation and ADR businesses in Tarrant County, with Harris soliciting business and Catterton appearing on local approved-mediator lists while marketing former-judge status to secure fee-generating work from attorneys who appear, or are reasonably likely to appear, before them as visiting judges. FAC ¶ 161 further alleges that Dean likewise maintains a for-profit mediation business in the same county where she presides by assignment.

21.     FAC ¶ 110 alleges the resulting structural conflict directly: attorneys who act as referral sources or repeat mediation clients for Catterton, Harris, or Dean also appear before them in court, intertwining judicial assignments with private income streams. FAC ¶ 115 further alleges the same conflict is not isolated to one courtroom, but reflects an assignment regime that expands the number of subpar-ethics judicial seats by allowing privately compensated mediator-judges to continue serving by assignment without baseline conflict controls.

22.     As to Catterton specifically, the FAC alleges he signed ex parte contempt and related orders after Plaintiffs were deprived of meaningful pre-act notice and before a timely filed-and-docketed assignment record disclosed his status, while Count I separately alleges his active mediation business in the same legal market. FAC ¶¶ 48–53, 106, 160–164. As to Harris, the FAC alleges the email notice to Randles did not disclose Harris's referral-dependent mediation business. FAC ¶¶ 48–53, 106, 110. As to Dean, the FAC alleges she exercised judicial power in Ross's Matagorda County proceedings, including orders resulting in confinement, while Ross allegedly lacked timely notice of the assignment and of the structural financial conflict. FAC ¶¶ 55–58, 161.

23.     Even if every Chapter 74 notice and assignment order had been perfectly filed, Count I would remain. Count I does not depend only on notice defects. It challenges the direct financial-conflict structure itself: the exercise of judicial power by judges who allegedly derive private income from the same attorney market appearing before them. FAC ¶¶ 160-164, 225(1), (4)-(7), (10).

24.     Those allegations are not conclusory. They identify the judges, the mediation or ADR businesses, the economic relationship to the same lawyer market, the affected proceedings, and the resulting harms. ECF No. 9 ¶¶ 48–58, 106, 110, 115, 160–164. The PI likewise framed Count I in the same concrete terms, identifying active mediation businesses, referral-dependent goodwill, and the resulting "possible temptation" and serious probability of bias. ECF No. 11 at 14.

### III.    COMMON THRESHOLD ARGUMENTS ARE INCORPORATED, NOT RE-ARGUED

25.     For *Bauer*, Article III standing, traceability, redressability, *Ex parte Young*, *Sprint*/*Younger*, declaratory relief, and function-specific immunity, Plaintiffs rely primarily on the incorporated briefs rather than restating those arguments in full. Roach supplies the best already-filed *Bauer* / no-justiciable-controversy and structural-injury analysis for a judge-defendant who is alleged to be the source of the constitutional injury rather than a neutral adjudicator. Wheless, the Chapter 74 objection, the Rule 145 objection, and the FCR objections together supply the already-filed Sprint framework, the inadequacy-of-remedies analysis, and the point that defendant-specific abstention defenses cannot be converted into global bars by recasting the pleaded theory.

26.     Rule 145 also supplies the strongest already-filed *Twombly*/*Iqbal* structure for answering the motions' no-facts criticism, while Roach supplies the closest already-filed conflict-specific

plausibility analysis. Chapter 74, the FCR objections, and the Fifth Circuit's *La Union* framework provide the best already-filed support for the overlap between traceability and *Ex parte Young*, the source-of-injury inquiry, and the requirement that relief be matched to the defendant's own connection to the challenged deprivation. Standing and recurrence are additionally reinforced by FAC ¶¶ 151-154, 179-183, and ECF No. 11 at 11, which explain that Plaintiffs face a real and immediate threat of repeated injury because the assignment process remains opaque and the pre-hearing objection right is lost once judicial power is exercised.

27.    The short application here is straightforward. Dean, Catterton, and Harris are not sued merely as neutral adjudicators. Count I alleges that, as ongoing owners and operators of private mediation and ADR businesses dependent on referrals, repeat users, and lawyer goodwill from the same legal market in which they sit by assignment, they could not constitutionally occupy the role of neutral adjudicator in matters involving that same market. The alleged due-process injury arises from that conflict structure itself, not from the mere existence of a statute and not from later disagreement with a ruling. That takes this case outside *Bauer*'s neutral-adjudicator posture and within the same source-of-injury distinction already briefed in the incorporated papers.

28.    Count I seeks prospective relief only as to Dean, Catterton, and Harris. Plaintiffs clarify that Count I's primary remedy is declaratory relief. Plaintiffs further clarify in this objection that no damages theory is advanced here against Dean, Catterton, or Harris. FAC ¶ 225 specifically requests declarations directed to conflict-permitting assignment practices and to the application of those practices to Catterton, Harris, and Dean. ECF No. 9 ¶ 225; ECF No. 11 at 3, 21–22.

29.    Plaintiffs do not seek an order directing how these defendants should decide any pending state-law issue; they seek only a federal declaration that continued acceptance or exercise of

judicial power under the alleged conflict structure violates due process, and any further prospective relief only to the extent permitted by *§ 1983*. ECF No. 11 at 21–22.

30.    The *Young* connection and ongoing-violation analysis for Dean, Catterton, and Harris follows the same framework applied in the Chapter 74 objection. See ECF No. 58 at 21–23. There, Plaintiffs showed that continuing assignment authority over pending proceedings—independent of whether any future assignment has yet been issued—is sufficient to establish both a live *Young* connection and a non-speculative threat of recurrence. *Id*. Dean, Catterton, and Harris present the same or stronger ongoing-violation showing. They are alleged to maintain active, operating mediator or ADR businesses in the same legal market in which they serve by assignment. FAC ¶¶ 106, 110, 161.

31.    The FAC further alleges a real and immediate threat of recurrence in pending proceedings because the assignment process remains opaque and the objection right is lost once judicial power is exercised. FAC ¶¶ 179–183; ECF No. 11 at 11. As to Dean specifically, Brown's continuing authority to assign visiting judges within the region makes recurrence traceable to the same official-capacity mechanism addressed in the Chapter 74 objection, while Ross's allegations confirm that the claimed conflict was not disclosed in time for a meaningful pre-act challenge. FAC ¶¶ 55–58. As to Catterton and Harris, the ongoing-violation theory rests on their continued acceptance or exercise of assigned judicial authority while maintaining the alleged mediator-business conflict structure in the same lawyer market. FAC ¶¶ 48–53, 106, 110, 161, 179–183. The *Young* "scintilla of enforcement" standard is therefore satisfied because Plaintiffs do not seek to regulate a private business in the abstract; they seek prospective relief against the continued use of judicial power under an ongoing conflict structure that allegedly

renders present and future adjudication constitutionally defective. See ECF No. 34 ¶¶ 42–44; ECF No. 55 at 12.

32.     Yan's allegations independently reinforce both traceability and the inadequacy of state corrective mechanisms. The FAC alleges that after Yan filed a verified Rule 18a / Rule 18 recusal request directed to Harris's assignment, Evans ordered the opposing party to seek sanctions, another visiting judge heard that sanctions matter, and subsequent proceedings led to approximately $6,000 in attorney's-fee sanctions. FAC ¶ 105(4)–(6). FAC ¶ 149 separately pleads that this sanctions episode caused concrete financial harm after Yan exercised his objection right, and FAC ¶ 148 alleges that the underlying Tarrant County matter remains active. On the pleadings, those allegations support the inference that, as pleaded, the **state corrective route did not provide an adequate neutral remedy** for Yan's Harris conflict challenge, because invoking the objection/recusal mechanism itself allegedly triggered **additional economic punishment** rather than neutral correction of the claimed conflict. They also make traceability concrete: Yan's injury is alleged to flow directly from Harris's conflicted assignment and from the official response to Yan's effort to challenge that assignment. FAC ¶¶ 148–149.

33.     Plaintiffs do not seek damages against Dean, Catterton, or Harris under this Count I objection. The motions' damages-based immunity discussion therefore overstates the actual Count I remedy posture.

34.     The same is true of the *Younger* argument. Plaintiffs specifically incorporate the Sprint analysis in Wheless, the distinct-controversy and separate-injury analysis in the Chapter 74 objection, the state-remedies inadequacy and category-first analysis in the Rule 145 objection, and the FCR objections' explanation that defendant-specific abstention defenses cannot be converted into global barriers by recasting the actual pleaded theory. The motions rely on

*Middlesex* and *Wightman*-style boilerplate, but the incorporated filings already show why *Sprint* controls and why a separate federal action challenging structural tribunal bias by state actors is not automatically swallowed by ongoing private family-law litigation.

35.     Title alone does not dispose of Count I. The incorporated briefs already explain that immunity and *§ 1983* remedies must be analyzed function by function, capacity by capacity, and remedy by remedy. See ECF No. 59, Obj. No. 3 at 15–17 (official seeking absolute immunity bears the burden of showing that the challenged act falls within the protected function; title does not control, function does); ECF No. 55 at 10–11 (function-specific analysis required; title-based immunity shortcut is error); ECF No. 58 at 15–18 (administrative selection or assignment functions are not automatically transformed into core adjudication merely because judges are involved). Here the relevant point is narrow: a prospective Count I challenge to continued adjudication before allegedly conflicted assigned judges is not defeated simply by relabeling the claim as dissatisfaction with earlier rulings. Because Plaintiffs seek declaratory relief rather than damages, judicial immunity does not dispose of Count I as pleaded, and *§ 1983*'s text presupposes that declaratory relief against judicial officers remains available in the proper case. See ECF No. 35 ¶¶ 46, 78–79; ECF No. 55 at 10.

## IV.     DEFENDANT-SPECIFIC REBUTTALS

36.     Dean's motion adds two points that still fail on Count I's own terms. First, Ross's representation by counsel and counsel's failure to object do not defeat a structural due-process claim based on an undisclosed *Caperton/Tumey* conflict. A litigant cannot knowingly waive an undisclosed *Caperton/Tumey* conflict merely because counsel appeared or failed to object without the required disclosure. ECF No. 9 ¶¶ 55–58. Second, the general-docket rule discussed in *In re Ross* and *Tex. Gov't Code § 24.124(c)* does not answer Count I. That point concerns

tribunal authority across two Matagorda district courts, not whether Dean's private mediation-business relationships created an objectively intolerable probability of actual bias. FAC ¶¶ 160-164, 225(7). Even if Dean had full state-law authority to hear the matter on the general docket, that would not resolve the separate Fourteenth Amendment question whether Dean's own referral-dependent private business relationships created a constitutionally intolerable risk of bias.

37.     The Tarrant Judges' motion likewise says Harris and Catterton are sued only for adjudicatory acts. That reframing ignores Count I's actual theory. Harris and Catterton are sued because they allegedly maintained active, referral-dependent, fee-generating mediation practices while accepting or exercising judicial assignments in the same legal market. FAC ¶¶ 106, 110, 160-164. As ongoing private mediation-business owners in that market, they are not sued merely as neutral adjudicators; Count I alleges that they could not constitutionally serve in a neutral adjudicative role while those referral-dependent business interests remained operative and undisclosed. FAC ¶ 225(5)-(6), (10). The due-process injury flows from that direct conflict structure, not merely from the fact that they later ruled.

38.     The Tarrant motion also points to apparent damages allegations against Catterton. This targeted objection removes any ambiguity for Count I: as to Dean, Catterton, and Harris, Plaintiffs pursue prospective declaratory relief as the primary Count I remedy and prospective injunctive relief only on the limited *§ 1983* terms already pleaded. FAC ¶ 225(1), (5)-(7), (10); ECF No. 11 at 21. No damages theory is advanced here against those three defendants.

39.     Nor can Defendants collapse Count I into a bare ethics complaint or a mere appearance-based objection. Texas canons and Florida's post-*Caperton* rules are used as corroborative authority, not as substitutes for the Fourteenth Amendment. The constitutional standard remains

objective probability of actual bias or a constitutionally intolerable risk of bias, not proof of subjective hostility and not mere appearance alone. The core Count I claim remains federal: Dean, Catterton, and Harris allegedly subjected Plaintiffs to adjudication before judges whose own ongoing private economic relationships with attorneys appearing, or likely to appear, before them created an objective probability of actual bias.

## V.    CONCLUSION AND PRAYER

40.    Count I as to Dean, Catterton, and Harris is narrow, defendant-specific, and adequately pleaded.

41.    The common dismissal grounds are already answered in the incorporated briefs and need not be reargued here from scratch. The only additional Count I work necessary is the direct-conflict analysis and the limited defendant-specific rebuttals set out above.

42.    Plaintiffs respectfully request that the Court deny ECF Nos. 44, 45, 52, and 53 as to Count I against Defendants Dean, Catterton, and Harris and grant all other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

*/s/ Samuel Randles*
Samuel Randles
5001 SH114E, Apt 1313, Roanoke, TX 76262
(214) 250-6187 | randles.sam@gmail.com


*/s/ Kaitlan Ross*
Kaitlan Ross
915 County Road 2719, Goldthwaite, TX 76844
(512) 529-0294 | Kaitlan.ross33@gmail.com


*/s/ Patrick Tuter*
Patrick Wayne Tuter
430 Christi Ln., Princeton, TX 75407
(214) 497-6152 | patrick762soldier@hotmail.com

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092
(214) 228-1886 | arnold200@gmail.com
Pro Se

CERTIFICATE OF SERVICE

I certify that on March 9, 2026, I filed the foregoing document via the Court's CM/ECF

system, which will send notice of electronic filing to all registered CM/ECF users, and that I

served all non-registered parties by USPS Certified Mail to their respective service addresses.

*/s/ Conghua Yan*
Conghua Yan, on behalf of all Plaintiffs