# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

| | |
|---|---|
| **SAMUEL RANDLES, et al.,** | **Civil Action No. 4:25-cv-01422-O-BP** |
| Plaintiffs, | |
| v. | |
| **JIMMY BLACKLOCK, et al.,** | |
| Defendants. | |

1

**Table of Contents**

Table of Contents..............................................................................................................................2

Table of Authorities .........................................................................................................................2

INTRODUCTION: VISIBLE MAP OF DISTINCT PLAINTIFFS, DISTINCT INJURIES, DISTINCT CLAIMS, AND DISTINCT DEFENDANTS ............................................................................................4

RELEVANT PROCEDURAL HISTORY ..........................................................................................6

RULE 59(e) STANDARD...................................................................................................................7

I. THE JUDGMENT RESTS ON A MANIFESTLY ERRONEOUS UNIVERSAL-PROXY THEORY. .........8

II. THE JUDGMENT IMPROPERLY COLLAPSED PLAINTIFF-SPECIFIC NOTICE AND ARTICLE III ANALYSIS IN GROSS.....................................................................................................................11

III. THE "BEST CASE" RATIONALE FAILS BECAUSE THE COURT NEVER GAVE CLAIM-SPECIFIC NOTICE OF THE DEFICIENCIES IT LATER TREATED AS DISPOSITIVE. ......................................16

IV. THE MARCH 11 ORDER'S OMISSION OF ECF NOS. 25 AND 48 CONFIRMS THAT THE JUDGMENT DID NOT ENGAGE THE ACTUAL MOTION POSTURE OF THE CASE...........................19

V. THE FAILURE TO ENGAGE THE LATER RESPONSES AND OBJECTIONS PRODUCED MANIFEST INJUSTICE.....................................................................................................................21

VI. THE FCR'S YOUNGER APPLICATION INDEPENDENTLY RESTS ON A MANIFESTLY ERRONEOUS PREMISE ABOUT THE AVAILABLE TEXAS FORUM. ....................................................22

VII. THE APPROPRIATE RULE 59(e) REMEDY IS MODEST AND PROCEDURAL...............................24

PRAYER...........................................................................................................................................24

**Table of Authorities**

**Cases**

*Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003)................................................................................14

*Bonny v. Society of Lloyd's*, 3 F.3d 156 (7th Cir. 1993)..................................................................9

*Brown v. Taylor*, 829 F.3d 365 (5th Cir. 2016) ..............................................................................8

*Carver v. Atwood*, 18 F.4th 494 (5th Cir. 2021) .............................................................................8

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001) ..............................................16

*Creekside Rural Investments, Inc. v. Hicks*, 644 S.W.3d 896 (Tex. App.—Eastland 2022) ..............22

*Daves v. Dallas Cnty.*, 64 F.4th 616 (5th Cir. 2023) (en banc)......................................................22

*Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307 (5th Cir. 2014) ...............................................17

*Doran v. Salem Inn*, Inc., 422 U.S. 922 (1975) .............................................................................23

*Felder v. Casey*, 487 U.S. 131 (1988)............................................................................................13

*Haywood v. Drown,* 556 U.S. 729 (2009)......................................................................................13

*Henderson v. United States*, 517 U.S. 654 (1996) .........................................................................20

*Howlett v. Rose*, 496 U.S. 356 (1990)............................................................................................13

*In re Lincoln*, 114 S.W.3d 724 (Tex. App.—Austin 2003, orig. proceeding) ...............................22

*King v. Taylor*, 694 F.3d 650 (6th Cir. 2012) ................................................................................20

*Lindsey v. U.S. R.R. Ret. Bd.*, 101 F.3d 444 (5th Cir. 1996)..........................................................20

*Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636 (5th Cir. 2007)........................................................................17

*Pulliam v. Allen*, 466 U.S. 522 (1984)........................................................................14

*Roach v. Ingram*, 557 S.W.3d 203 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)................................22

*Rochon v. Dawson*, 828 F.2d 1107 (5th Cir. 1987)........................................................................20

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)........................................................................22

*Taylor v. Acxiom Corp.*, 612 F.3d 325 (5th Cir. 2010)........................................................................8

*Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004) ........................................................................7

*Thompson v. Brown*, 91 F.3d 20 (5th Cir. 1996) ........................................................................20

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................................................12

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ........................................................................14

*Williams v. Reed*, 145 S. Ct. 465 (2025)........................................................................12

## Statutes

*Tex. Civ. Prac. & Rem. Code § 30.017*........................................................................7, 20

**PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e)**

Plaintiffs Samuel Randles, Kaitlan Ross, Patrick Wayne Tuter, and Conghua Yan move under Federal Rule of Civil Procedure *59(e)* to alter or amend the March 11, 2026 judgment. The March 11 orders adopted a **proxy-dismissal** path that treated Ray Wheless's motion as a vehicle for dismissing every plaintiff's distinct claims against every defendant, even though the First Amended Complaint pleads different injuries, different claim lanes, and different defendant-specific conduct. The limited authority the magistrate judge invoked permits extension only in a same-allegations or truly integrally related setting; it does not support the omnibus proxy treatment used here. The motion should be granted because the judgment rests on manifest legal error and produces manifest injustice. The Court should vacate ECF Nos. 61 and 62, restore the case to the active docket, and require claim-specific and defendant-specific adjudication of the motions actually filed.

**INTRODUCTION: VISIBLE MAP OF DISTINCT PLAINTIFFS, DISTINCT INJURIES, DISTINCT CLAIMS, AND DISTINCT DEFENDANTS**

1.    The premise of Dkt. 18 was that ECF No. 15 presented grounds that "**would apply to all Defendants**," so Plaintiffs were ordered to respond to Wheless's motion "as if all defendants made similar arguments for dismissal." ECF No. 18 at 1. The First Amended Complaint pleads the opposite. It addresses four **different** family-court matters, arising from **different** factual backgrounds, with **different** injuries assigned to **different**

defendants and **different** counts. FAC at 5-6, 15-16 (¶¶47-51), 20-21 (¶¶61-66), 22-23 (¶¶68-72), 49-67.

| Plaintiff / lane | Counts / defendants tied to the lane | Distinct pleaded injury | Why ECF No. 15 could not stand in |
|---|---|---|---|
| Randles / Chapter 74 and lawfully constituted tribunal | Counts II-V; Evans, Catterton, Harris, Blacklock | Randles alleges that Catterton signed an ex parte contempt commitment on June 4, 2025; Randles was jailed from June 4 through June 6, 2025; no written assignment order was issued, filed, served, or docketed before Catterton acted; and Evans did not provide timely written notice sufficient to permit a section 74.053 objection before the judicial act. | Wheless did not move to dismiss Randles's Evans-specific damages lane or Catterton/Harris-specific notice-and-assignment facts. Randles's injury is tied to Tarrant County assignment events and a June 2025 confinement under Catterton. |
| Ross / Chapter 74 and Count I | Counts I-IV; Brown, Dean, Blacklock | Ross alleges that Dean presided without timely assignment documentation, later signed a May 2024 contempt order that resulted in Ross's incarceration, and also presided in a DFPS aid-to-investigate matter without a timely filed and docketed written assignment order. Ross alleges loss of liberty and impairment of family-integrity interests before she was ever timely informed of her objection right. | Wheless could not stand in for Brown or Dean. Ross's injuries arise in Matagorda County, not the First Region lane pleaded through Wheless, and turn on Brown/Dean-specific notice, confinement, and family-integrity facts. |
| Tuter / Roach conflict lane and Chapter 74 objection lane | Counts I-IV; Roach, Wheless, Cooks | Tuter alleges that Laura Roach mediated his case and received fees from it; Roach later presided despite the spouse-mediator conflict; Tuter was incarcerated from September 17, 2024 through October 8, 2024; Wheless is sued here for his own assignment-role conduct, including the alleged assignment of Cooks to hear the recusal motion in the same conflict lane; Cooks proceeded anyway; and Tuter alleges exhaustion of his one objection right while Roach continues to preside. | This is the clearest example of asserted relatedness at too high a level of generality. Randles, Ross, and Yan could not litigate Tuter's Roach-specific spouse-mediator theory through a proxy response to ECF No. 15, and Wheless's motion did not eliminate the need to adjudicate Roach's own motion, ECF No. 25. |
| Yan / Rule 145 deprivation and access-to-courts lane | Counts VI-VII; Wilder, Grimaldi, Moss, Tarrant County | Yan alleges a clerk-facilitated Rule 145 contest without the rule-required sworn-evidence predicate, composite and unreadable notice, loss of Rule 145 protection, predictable cost barriers, dismissal of at least one appeal for want of prosecution due to inability to pay, financial pressure, and access-to-courts injuries. This is a completed clerk-side deprivation mechanism, not a visiting-judge theory. | Wheless cannot stand in for Wilder, Grimaldi, Moss, or Tarrant County on the Rule 145 lane. ECF No. 15 did not present the clerk-side, notice, sworn-evidence, fee-barrier, retaliation, and access-to-courts issues pleaded in Counts VI and VII. |
| Yan / separate Chapter 74 lane | Counts II-IV; Terry, Grimaldi, Evans, Catterton | Yan separately alleges proceedings before Catterton without proper authorization, no adequate notice, assignment irregularities, a timely section 74.053 objection, no written ruling from Evans on that objection, and continuing inability to verify assignment authority and records. | Even as to Yan, the FAC pleads two different lanes: a Rule 145 lane and a Chapter 74 lane. Treating all Yan allegations as though they rose or fell with Wheless's motion still collapsed distinct claims and distinct defendants. |
| All Plaintiffs / structural conflict lane | Count I and Count IV; Blacklock, Evans, Brown, Wheless; plus assigned judges tied to each case | All Plaintiffs allege a broader structural due-process injury: the assignment regime permitted retired or former judges with active mediation or ADR income streams, or spouse-related financial interests, to preside without mandatory conflict screening or written disclosure. As to Wheless specifically, the FAC therefore ties him to two lanes only: Tuter's assignment-and-recusal lane and the broader structural-conflict lane. He is not the defendant for Yan's Rule 145 clerk-side lane, Ross's Matagorda County confinement-and-family-integrity lane, or Randles's Evans/Catterton-specific notice-and-confinement lane. That systemic lane is different from the plaintiff-specific notice, jail, and Rule 145 injuries described above. | *Taylor* and *Bonny* reach only same-allegations or truly integrally related claims. This FAC pleads multiple plaintiff-specific lanes, so Wheless's motion cannot serve as a universal proxy. |

**RELEVANT PROCEDURAL HISTORY**

2.     On February 5, 2026, Dkt. 18 stated that Wheless's motion "presents grounds for dismissal that would apply to all Defendants" and ordered Plaintiffs to respond to ECF No. 15 "as if all defendants made similar arguments for dismissal." Dkt. 18 at 1.

3.     On February 18, 2026, the Findings, Conclusions, and Recommendation stated that the matters before the magistrate judge were ECF Nos. 15, 16, and 34, relied expressly on Dkt. 18's proxy-dismissal instruction, and recommended granting ECF No. 15 and dismissing Plaintiffs' claims against all Defendants. Dkt. 40 at 1, 18-20.

4.     The docket, however, did not stop with ECF No. 15. Plaintiffs filed an objection to Roach's motion, ECF No. 35; later objections and responses addressing the later-filed motions, ECF Nos. 58, 59, and 60; and Roach, Wilder, the Tarrant County judges, Moss, Grimaldi, Evans, Brown and Dean, and Blacklock all filed separate motions or briefs.

5.     On March 11, 2026, the district court adopted the FCR, granted only ECF No. 15, denied ECF Nos. 42, 44, 46, 50, 52, and 56 as moot, and dismissed all claims against all defendants. ECF No. 61.

6.     ECF No. 61 did **not** mention ECF No. 25, Roach's motion to dismiss, and did **not** mention ECF No. 48, Grimaldi's motion to dismiss, even though the judgment dismissed all claims against all defendants. Final Judgment ECF No. 62 then dismissed the entire action without prejudice.

7.     As to Tarrant County, ECF No. 63 later showed that the summons was issued on February 17, 2026, was received by the process server on March 9, 2026, and service

6

was completed on March 24, 2026 — thirteen days after the March 11 judgment. ECF No. 63.

**RULE 59(e) STANDARD**

8.     A Rule 59(e) motion may be granted to correct a manifest error of law or fact or to prevent manifest injustice. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Reconsideration is an extraordinary remedy, but it remains proper where the judgment rests on a procedurally unfair path or on a legal premise that the record itself refutes. That is so here for an additional reason independent of the proxy-dismissal error: the FCR's *Younger* analysis rested on a premise about the availability of the underlying Texas family proceedings as the relevant forum for judge-directed claims, but Texas law requires such claims to be severed into a **separate** cause with a **different** judge. *Tex. Civ. Prac. & Rem. Code § 30.017(a)-(c)*. This motion does not ignore that Final Judgment ECF No. 62 dismissed the action without prejudice. But that label does not answer the Rule 59(e) problem presented here. The error asserted is not merely the denial of one more chance to amend. It is the use of one defendant's motion as a universal dismissal vehicle to terminate distinct claims against distinct defendants without the same-allegations fit that the cited authorities require and without claim-specific notice of the deficiencies later treated as dispositive. The FCR then treated Plaintiffs as having already pleaded their "best case," even though *Brown* treats that posture as narrow and *Carver* confirms that fairness and notice still govern sua sponte dismissal practice. See

7

*Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016); *Carver v. Atwood*, 18 F.4th 494, 498-99 (5th Cir. 2021).

## I. THE JUDGMENT RESTS ON A MANIFESTLY ERRONEOUS UNIVERSAL-PROXY THEORY.

9.      Dkt. 18 rested on a narrow premise: the court believed ECF No. 15 presented grounds that would apply to all defendants, so Plaintiffs were ordered to respond as if all defendants made similar arguments. That premise is unsustainable on the face of the FAC. The complaint itself states that it addresses four different Texas family-court matters arising from different factual backgrounds. The visible map above shows that the FAC assigned different injuries to different defendants in different counts.

10.      No Defendant presented a *Taylor*/*Bonny* theory under which ECF No. 15 could operate as a universal dismissal vehicle for all defendants and all claims. At most, Dkt. 18 gave a generalized proxy instruction. The dispositive *Taylor*/*Bonny* extension theory was first articulated by the court and then used in the FCR as the basis for dismissing all claims against all defendants through Wheless's motion. Plaintiffs specifically objected to that *sua sponte* extension theory, but the final *de novo* order did **not** address the objection. In that posture, Rule 72 supplied only a formal opportunity to object, not a meaningful opportunity to respond to the actual dispositive theory the court adopted.

11.      *Taylor v. Acxiom Corp.*, 612 F.3d 325, 330 (5th Cir. 2010), is the controlling Fifth Circuit authority Plaintiffs address here, and *Taylor* does **not** authorize what occurred. *Taylor*'s no-prejudice reasoning was expressly tied to the circumstance that the plaintiffs made the **same** allegations against **all** defendants. That same-allegations condition

8

supplied *Taylor*'s built-in safeguard. *Taylor* arose in a *putative* class setting with structurally uniform allegations across the pleading: the **same** type of personal information, allegedly taken from the **same** Texas DPS source, by defendants engaged in the **same** bulk-resale conduct, under the **same** statute. Thus, *Taylor*'s statement that "the plaintiffs make the **same** allegations against **all** defendants" described the case before the court; it did **not** create a freestanding rule permitting one defendant's Rule 12 motion to be extended across **distinct** plaintiffs, **distinct** defendants, and **distinct** claim lanes whenever a court perceives overlap at a high level of generality. This case pleads **multiple** plaintiff-specific lanes, **multiple** defendant-specific injuries, and **multiple** theories not presented by ECF No. 15. **No** comparable structural uniformity existed here, so *Taylor*'s no-prejudice rationale does not apply.

12.    *Bonny* arose in a materially **different** <u>forum-selection</u> setting and does **not** justify omnibus Rule 12 dismissal here. *Bonny* was a Seventh Circuit **forum-selection** and **forum-non-conveniens** case enforcing English forum clauses arising from the same Lloyd's membership transactions. The passage on which the FCR relied did not authorize proxy merits dismissal under Rule 12. It explained why local defendants could be sent to the **same contractual forum** because the claims arose from the **same** transaction set, the local defendants were agents of the contracting parties, both sides agreed the parties were indispensable to each other, and the dismissal was **conditioned** on the local defendants' agreement to **appear voluntarily in England**. *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160-62 (7th Cir. 1993). A doctrine used to determine which forum

should hear a contract-based dispute cannot be repurposed to determine whether distinct constitutional claims by distinct plaintiffs against distinct defendants survive Rule 12 scrutiny on standing, immunity, or pleading sufficiency. The FCR's reliance on *Bonny* was therefore not merely an overextension of a valid principle; it was a material **mismatch** between a <u>forum-allocation</u> case and a **multi**-defendant <u>Rule 12 dismissal</u> path. At most, *Bonny* illustrates that extension beyond a moving defendant requires **true** similarity and a **protective** safeguard. **Neither** existed here.

13. Even if *Bonny* had some persuasive value outside its forum-selection setting, it would still not support what occurred here. *Bonny* allowed extension **only** in a genuinely similar setting and **only** with a protective safeguard against the risk that nonmoving defendants would escape adjudication altogether. *Id*. at 162 (directing the district court to qualify dismissal on the **condition** that the local defendants agree to **appear** voluntarily in the alternative **forum**). No such protection was imposed here. Roach, Grimaldi, Wilder, Moss, and Tarrant County were dismissed without any requirement that they appear, respond, or remain answerable to the specific claims directed at them.

14. No cited authority supports the broader procedure actually used here: compelling pro se plaintiffs in a multi-plaintiff, multi-defendant, multi-injury case to treat one defendant's motion as a universal proxy, then dismissing all claims against all defendants despite materially distinct claim lanes and party alignments and without any *Bonny*-style safeguard. Here, the Rule 145 lane against Wilder, Grimaldi, Moss, and Tarrant County is not the same as Tuter's Roach lane; Ross's Matagorda County jail-

and-family-integrity lane is not the same as Yan's clerk-side indigency lane; and Randles's Evans-specific damages claim is not the same as Wheless's administrative-assignment arguments. So neither *Taylor*'s same-allegations limitation nor *Bonny*'s protective-condition limitation existed here. As to defendants who did not appear through Wheless's motion, the problem is even sharper: no condition required them to appear anywhere, respond anywhere, or remain answerable to the lane-specific claims dismissed through the proxy path.

15.    The FCR then amplified the error by concluding that the claims against all defendants were "integrally related" and recommending grant of ECF No. 15 as the dismissal vehicle for the entire case. That approach converted overlap at a high level of generality into identity. Rule 12 does not allow claim-specific allegations to be erased by recasting the case as a generalized attack on family-court outcomes. Nor could counsel for Wheless become universal counsel for all defendants merely because some arguments overlapped. At the time of Dkt. 18, counsel for Wheless was counsel for Wheless, **not** universal counsel for **all separately** situated parties and **all distinct** claims. Wheless was sued for his own assignment-role and structural-conflict allegations, not as a universal proxy for every defendant and every lane in the FAC.

## II. THE JUDGMENT IMPROPERLY COLLAPSED PLAINTIFF-SPECIFIC NOTICE AND ARTICLE III ANALYSIS IN GROSS.

16.    Dkt. 18 did not give each plaintiff fair notice of the actual grounds being applied to that plaintiff's own claims. Instead, it ordered all Plaintiffs to respond to ECF No. 15 "as if all defendants made similar arguments for dismissal," even though the FAC

pleaded plaintiff-specific injuries, defendant-specific conduct, and multiple doctrinal lanes. That was the critical procedural error. Randles's confinement and assignment-notice allegations, Ross's Matagorda County liberty and family-integrity allegations, Tuter's Roach spouse-mediator and exhausted-objection allegations, and Yan's Rule 145 clerk-side deprivation allegations were not interchangeable. A single proxy response to Wheless's motion could not fairly substitute for claim-specific notice as to all of those distinct lanes.

17.    Article III standing is not dispensed in gross. Plaintiffs must demonstrate standing for **each claim and each form of relief**. The standard analysis requires the same. See *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The FAC followed that rule by tying concrete injuries to particular plaintiffs and particular defendants. The judgment did **not**. Instead, it treated Wheless's motion as though one motion could dispose of all plaintiffs' standing across all claims. That is a legal error in method, not merely a disagreement about outcome. Properly applied, those doctrines define role and remedy. They do **not** authorize **one** defendant's motion to operate as a universal federal defense for **all** defendants and **all** claim lanes. Even if some threshold doctrines overlapped, they still had to be applied claim by claim and defendant by defendant. See *Williams v. Reed,* 145 S. Ct. 465, 471 (2025) (explaining that Alabama's rule created a "catch-22" that "prevents the claimants here from obtaining a merits resolution of their *§ 1983* claims" and "in effect immunizes state officials").

18.     The point here is **not** that this Court applied a state exhaustion statute. It is that the proxy-dismissal path treated state-law and role-based barriers as though they furnished a universal federal defense, thereby producing the same forbidden effect: functional immunity from claim-specific *§ 1983* adjudication.

19.     That conclusion is reinforced by the Supreme Court's Supremacy Clause line. As a Supremacy Clause rule, those cases block a State from using state law, jurisdictional formalism, exhaustion rules, or state immunity doctrine to create new immunity or functional immunity from otherwise cognizable *§ 1983* claims. *Felder v. Casey* states the core rule: "a state law that immunizes government conduct otherwise subject to suit under *§ 1983* is preempted." 487 U.S. 131, 139-40 (1988). *Howlett v. Rose* applied that principle to reject Florida's attempt to extend sovereign-immunity protection to defendants the federal cause of action treated as suable. 496 U.S. 356, 375-78 (1990). *Haywood v. Drown* then held that New York could not evade the same principle by relabeling the barrier as jurisdictional, describing the statute as "effectively an immunity statute cloaked in jurisdictional garb." 556 U.S. 729, 742 (2009). And *Williams* reaffirmed the same line, holding that Alabama's rule was preempted because it created a catch-22 that prevented a merits resolution and "in effect immunize[d]" state officials from that class of *§ 1983* suits. *Williams*, 145 S. Ct. at 471.

20.     The proxy-dismissal path also collapsed distinct doctrines. The Due Process Clause defines the constitutional right, and *§ 1983* supplies the cause of action; *§ 1983* is not itself the source of the right. *Bauer v. Texas*, 341 F.3d 352, 359-60 (5th Cir. 2003),

is different: it addresses a **narrower** problem, **whether a judge** acting **purely** in an adjudicatory capacity **is a proper defendant** <u>in a facial challenge to the law</u> the judge applies. *Pulliam* itself involved relief directed at a judge's <u>own ongoing "practice" and "course of conduct,"</u> **not** merely an effort to stop a judge from hearing cases under generally applicable law. *Pulliam v. Allen,* 466 U.S. 522, 526 & n.2 (1984). *Whole Woman's Health* later distinguished *Pulliam* on the ground that *Pulliam* involved a judge's own "rule of her own creation," rather than a suit seeking to stop judges and clerks from hearing or processing cases under state statutory law. *Whole Woman's Health v. Jackson,* 142 S. Ct. 522, 533 (2021). *Whole Woman's Health*'s no-adversity rule for judges and clerks processing cases under state law does **not** extend to the **distinct** *Pulliam* situation the Court itself described.

21.    The FAC here does **not** plead a generalized challenge to substantive state-court rulings; consistent with the **distinct** *Pulliam* lane rather than *Whole Woman's Health*'s neutral-adjudicator setting, it pleads "**administrative** practices as applied regarding assignment authority, notice, and conflict screening and disclosure," FAC ¶ 2, and alleges that the **source of the injuries** is Defendants' "**independent administrative conduct** and **systemic practices**," FAC ¶ 50. As to Tuter, the FAC pleads more than mere neutral adjudication: it alleges Wheless's own assignment-role conduct in the spouse-mediator and recusal lane, FAC ¶¶ 60–66, against the backdrop of systemic assigning-authority practices alleged in FAC ¶¶ 191–198.

22.     That distinction matters here because the Court could **not** use Wheless's motion as a universal proxy to decide, in gross, **without** analyzing whether every judge-directed claim in this case fit the neutral-adjudicator category or instead implicated the **distinct** *Pulliam* situation. It does **not** justify using Wheless's motion to extinguish **distinct** claims against clerks, coordinators, court personnel, and the County.

23.     Judicial immunity is different again: it limits damages for judicial acts absent a nonjudicial act or a clear absence of all jurisdiction, and *§ 1983* separately limits injunctive relief against a judicial officer for judicial-capacity acts unless a declaratory decree was violated or declaratory relief was unavailable. Those doctrines do **not** erase the underlying right; they bear **only** on role and remedy. The court therefore could **not** use Wheless's motion as a universal proxy to extinguish distinct plaintiffs' distinct constitutional claims against distinct defendants by collapsing merits, proper-defendant, and remedy questions into one gross dismissal path.

24.     The error was **not** harmless. Even if some threshold doctrines overlapped at a high level of generality, the FAC pleaded lanes that did not necessarily fail on the same theory. Yan's Rule 145 lane challenged a clerk-side deprivation mechanism culminating in cost barriers, defective notice, and loss of state-created indigency protection; that lane was directed to Wilder, Grimaldi, Moss, and Tarrant County, not Wheless. Tuter's Roach lane challenged ongoing adjudication before an allegedly interested judge after spouse-mediator involvement and exhaustion of a one-time objection right; that lane

required adjudication of Roach's own motion, ECF No. 25, not collapse into ECF No. 15.

25.    Because those lanes rested on different injuries, different defendants, and different doctrinal paths, the use of ECF No. 15 as a universal dismissal vehicle cannot be dismissed as immaterial.

### III. THE "BEST CASE" RATIONALE FAILS BECAUSE THE COURT NEVER GAVE CLAIM-SPECIFIC NOTICE OF THE DEFICIENCIES IT LATER TREATED AS DISPOSITIVE.

26.    The FCR invoked a "best, though legally insufficient, case" rationale, but that rationale cannot carry this judgment because Plaintiffs never received claim-specific notice of the deficiencies later treated as dispositive. *Brown* and *Carver* therefore matter only as narrow exceptions that were **not** satisfied on this record. *Brown* and *Carver* matter only because the FCR itself relied on a best-case theory, and those cases treat that theory as narrow: it applies when a plaintiff, after fair notice of the defects actually under consideration, repeatedly defends the challenged pleading and refuses to supplement. That is not this record.

27.    This record is different for an additional reason. The operative *Taylor*/*Bonny* proxy-dismissal theory was **not** first presented by a defendant in a motion directed to the distinct claims later dismissed. It was first supplied by the court and crystallized in the FCR itself. Plaintiffs then objected to that theory, but the final *de novo* order did **not** address the objection. An opportunity to file objections is **not** a meaningful opportunity

to respond where the newly supplied dispositive theory is **never** actually engaged at *de novo* review.

28.    *Coghlan* reinforces the same fairness principle here. There, the Fifth Circuit held that the district court went "well beyond the scope of the *12(b)(6)* motion before it" when it dismissed claims on a broader *sua sponte* path, and it emphasized that dismissal on the pleadings is improper if the allegations support relief on any possible theory. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir. 2001). The same method problem occurred here. The Court used ECF No. 15 as a universal dismissal vehicle far beyond the motion actually presented, then treated Plaintiffs as though they had already pleaded their 'best case' without first providing claim-specific notice of the deficiencies later treated as dispositive.

29.    Plaintiffs did **not** stand on a single challenged pleading after receiving claim-specific notice of identified defects. Instead, the court ordered them to answer Wheless's motion "as if all defendants made similar arguments for dismissal," even though the FAC pleaded different plaintiffs, different injuries, different defendants, and different doctrinal lanes. On this record, the court could not convert a short response to a proxy motion into the equivalent of *Brown*'s narrow "best case" posture.

30.    The Fifth Circuit has *repeatedly* held that fairness ordinarily requires notice and an opportunity to respond **before** a court dismisses claims on its own motion or on grounds **not** actually presented. See *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310-11 (5th Cir. 2014); *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642-43 (5th

Cir. 2007). Adequate notice means notice of the actual ground under consideration, plus an adequate opportunity to respond to that ground. *Davoodi* is especially instructive: dismissal after only one opportunity to state a case is ordinarily unjustified, and a claim may be dismissed on the court's own motion only if the procedure employed is fair. That baseline fairness rule still governs here. See also *Carver*, 18 F.4th at 498-99. *Brown* and *Carver* therefore do not dilute the fairness requirement; they confirm only a narrow exception, and that exception was not satisfied because Plaintiffs were never given a true motion-specific and claim-specific notice path before the FCR deemed the FAC their "best case."

31.     Here, the procedure was **not** fair because the supposed notice rested on asserted relatedness at too high a level of generality and on vagueness about the actual grounds under consideration. Plaintiffs were not told, "these are the specific defects in Randles's Count V, Ross's Count I/II/III lane, Tuter's Roach lane, or Yan's Counts VI and VII." They were told only to answer Wheless's motion as though all defendants made similar arguments. That is not the same thing as notice of claim-specific deficiency. The order did not identify what claims, plaintiffs, defendants, or doctrinal grounds were actually under consideration for dismissal beyond the generalized proxy instruction. The later FCR then said, in substance, that the court had done something, but still without first giving claim-specific notice of the actual dismissal path. That is categorical summary disposition by indirection, and it forced pro se Plaintiffs to respond in speculation rather than on identified grounds.

18

## IV. THE MARCH 11 ORDER'S OMISSION OF ECF NOS. 25 AND 48 CONFIRMS THAT THE JUDGMENT DID NOT ENGAGE THE ACTUAL MOTION POSTURE OF THE CASE.

32.    Order 61 granted ECF No. 15 and denied ECF Nos. 42, 44, 46, 50, 52, and 56 as moot. It did not mention ECF No. 25, Roach's motion, and it did not mention ECF No. 48, Grimaldi's motion. Yet Final Judgment 62 dismissed all claims against all defendants. Standing alone, that omission might be explained away as case-management shorthand or as a consequence of the court's choosing one dispositive path. But here it matters as corroborating evidence of the broader method problem: the final judgment did not proceed through the distinct motions and distinct lanes pleaded in the FAC.

33.    That omission also shows why *Bonny* cannot rescue the judgment. Bonny did not authorize dismissal of nonmoving defendants without protection against the risk that they would escape adjudication altogether. Here, no such protection was imposed. Roach's lane and Grimaldi's lane were extinguished without adjudication of their own motions and without any requirement that those defendants appear, respond, or remain answerable on the specific claims directed to them. As to any defendant who had not appeared through Wheless's motion, the absence of any *Bonny*-style safeguard is even more obvious.

34.    The point is especially telling because ECF No. 25 corresponded to Tuter's Roach lane and ECF No. 48 corresponded to Grimaldi's role in Yan's Rule 145 and notice-related lanes. Their omission confirms that the judgment followed the ECF No. 15 proxy

path across the case as a whole, rather than adjudicating the actual motion posture claim by claim and defendant by defendant.

35.     The same point is corroborated by the service posture as to Tarrant County. ECF No. 63 shows that the summons to Tarrant County was issued on February 17, 2026, was received by the process server on March 9, 2026, and was served on March 24, 2026 — thirteen days after the March 11 judgment dismissed all claims against Tarrant County. ECF No. 63. Tarrant County's Rule 12 response period therefore had not yet begun when judgment was entered. That unfinished process mattered. Tarrant County was not a State defendant asserting sovereign immunity, and because it had not yet answered, the Court could not know whether Tarrant County would admit, deny, waive defenses, or materially narrow the dispute. See *Fed. R. Civ. P. 8(b)(6), 12(a)*. By dismissing all claims before that pleading process occurred, the Court assumed away a live defendant-specific posture rather than allowing it to develop in the ordinary course.

36.     Rule 4(b) required the clerk to issue a properly completed summons, and Rule 4(m) afforded Plaintiffs the service period. The Supreme Court has described that service period as an "irreducible allowance." *Henderson v. United States*, 517 U.S. 654, 661–63 (1996). The Fifth Circuit has likewise recognized that, even absent good cause, a district court may extend the time for service under Rule 4(m). *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Lindsey v. U.S. R.R. Ret. Bd*, 101 F.3d 444, 447–48 (5th Cir. 1996) ; *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). And "a motion to

dismiss … made during the period for service may properly be denied as premature. See

*King v. Taylor*, 694 F.3d 650, 661 (6th Cir. 2012).

## V. THE FAILURE TO ENGAGE THE LATER RESPONSES AND OBJECTIONS PRODUCED MANIFEST INJUSTICE.

37.    Section IV showed that the March 11 order did not engage the actual motion posture of the case. The same defect carried forward into the court's treatment of the later responses and objections. After the FCR, the docket included plaintiff filings directed to later-filed motions: ECF Nos. 58, 59, and 60. Earlier, Tuter's Roach lane had already drawn a specific response at ECF No. 35. The final order nevertheless disposed of the entire case through the ECF No. 15 proxy path. That included Plaintiffs' specific objection to the court-supplied *Taylor*/*Bonny* proxy-extension theory, which the final *de novo* order never addressed. The result was not simply a short opinion. It was a judgment entered without claim-specific engagement with the later motion practice that the docket itself had generated.

38.    That procedural failure produced manifest injustice. The Rule 59(e) problem is procedural: the Court entered judgment through a method that bypassed claim-specific engagement with the later motion practice and treated materially distinct claims as though they were the same. That procedural error alone warrants vacatur and restoration of ordinary claim-specific adjudication. The Court need not decide the ultimate constitutional merits of every lane at this stage. It need only correct the manifest error in the path by which judgment was entered.

**VI. THE FCR'S YOUNGER APPLICATION INDEPENDENTLY RESTS ON A MANIFESTLY ERRONEOUS PREMISE ABOUT THE AVAILABLE TEXAS FORUM.**

39.    The FCR's *Younger* analysis supplies an independent basis for Rule 59(e) relief because it treated the underlying Texas family proceedings as though they furnished the relevant ongoing forum for the judge-directed federal claims asserted here. Texas law points the other way. Section *30.017* provides that a claim against a district court judge added to a case pending in that court must be made under oath, is automatically severed, receives a new cause number, and is assigned to a different judge. *Tex. Civ. Prac. & Rem. Code § 30.017(a)-(c)*. That statutory structure matters here because it undercuts any assumption that the underlying family proceeding itself was the forum in which those judge-directed claims could simply be adjudicated.

40.    Two published Texas appellate decisions confirm that *§ 30.017* operates **mandatorily**, not optionally. In *Roach v. Ingram*, the Houston Fourteenth Court of Appeals stated that the claims against Judge Elliott "were severed from this case" under *§ 30.017* "over the Parents' objection." *Roach v. Ingram*, 557 S.W.3d 203, 214-15 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). In *Creekside Rural Investments, Inc. v. Hicks*, the Eastland Court of Appeals recounted that the district clerk advised she was "**required** to sever claims against the district judge into a new case, with a different cause number, pursuant to Section 30.017(b)," and the court described *§ 30.017* as requiring that result. *Creekside Rural Investments, Inc. v. Hicks*, 644 S.W.3d 896, 900

n.2 (Tex. App.—Eastland 2022). Those authorities **confirm** that Texas itself does **not** treat judge-directed claims as part of the same pending case once asserted.

41.     *In re Lincoln* reinforces the same point at a practical level. There, the Austin Court of Appeals noted that, during the divorce litigation, *Lincoln* had initiated a federal civil-rights suit against the presiding family-court judge. *In re Lincoln*, 114 S.W.3d 724, 725 & n.1 (Tex. App.—Austin 2003, orig. proceeding). *Lincoln* is not a *Younger* holding, and Plaintiffs need not overread it. Its value is narrower: it shows a Texas appellate court proceeding with full awareness that **the federal suit** and **the divorce case** were **separate coexisting** matters, **not** a single undifferentiated proceeding.

42.     That matters under *Sprint* and *Daves*. *Younger* extends only to the limited Sprint categories, and it does not authorize abstention merely because federal claims arise in the same general domestic-relations atmosphere. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78-82 (2013); *Daves v. Dallas Cnty.*, 64 F.4th 616, 632-33 (5th Cir. 2023) (en banc). By treating the underlying family proceedings as the relevant parallel forum for judge-directed claims that Texas law requires to be split off, the FCR rested on a **false** premise about Texas procedure. That is **manifest legal error**.

43.     The error is especially acute because the case also includes **non-judge administrative** and **clerk-side claims**, including Yan's Rule 145 lane against Wilder, Grimaldi, Moss, and Tarrant County. Those claims do **not** become part of a judge-centered *Younger* analysis simply because they arose against the background of family-court litigation. And once the court proceeded by global proxy through ECF No. 15,

*Younger* was effectively applied in gross across multiple plaintiffs, defendants, counties, and claim lanes, **contrary** to the claim-specific approach reflected in *Doran v. Salem Inn*, Inc., 422 U.S. 922, 928-29 (1975).

## VII. THE APPROPRIATE RULE 59(e) REMEDY IS MODEST AND PROCEDURAL.

44.     Plaintiffs do not seek a Rule *59(e)* merits ruling in their favor on every count. The immediate relief needed is narrower. The Court should vacate ECF Nos. 61 and 62; reject the use of ECF No. 15 as a universal dismissal vehicle; restore the case to the active docket; and require plaintiff-specific, claim-specific, and defendant-specific treatment of the motions actually filed.

45.     At a minimum, the Court should expressly address ECF No. 25 and ECF No. 48; recognize that the Rule 145 lane cannot be disposed of through Wheless's motion; recognize that Tuter's Roach lane cannot be collapsed into the other plaintiffs' lanes; reject any *Bonny*-based extension absent a true similarly situated showing and a protective safeguard; and, if the Court believes any particular count requires additional pleading detail, permit targeted amendment after actual notice of the deficiency rather than relying on the seven-day proxy-response order as a substitute for fair notice.

## PRAYER

For these reasons, Plaintiffs respectfully request that the Court grant this Rule 59(e) motion, alter or amend the judgment, vacate ECF Nos. 61 and 62, restore the case to the active docket, require claim-specific and defendant-specific treatment of the motions actually filed, and grant all further relief to which Plaintiffs may be justly

entitled. Alternatively, if the Court declines to vacate the judgment in full, it should at minimum alter the judgment to withdraw any extension of ECF No. 15 beyond the claims and defendants actually presented by that motion and permit targeted amendment after actual claim-specific notice of any deficiency the Court deems dispositive.

In the further alternative, Plaintiffs request that the Court vacate the judgment under Rule 59(e) and grant leave to amend under Rule 15(a) after providing claim-specific notice of any deficiencies deemed dispositive.

Respectfully submitted,

*/s/ Samuel Randles*
Samuel Randles
5001 SH114E, Apt 1313, Roanoke, TX 76262
(214) 250-6187 | randles.sam@gmail.com

*/s/ Kaitlan Ross*
Kaitlan Ross
915 County Road 2719, Goldthwaite, TX 76844
(512) 529-0294 | Kaitlan.ross33@gmail.com

*/s/ Patrick Tuter*
Patrick Wayne Tuter
430 Christi Ln., Princeton, TX 75407
(214) 497-6152 | patrick762soldier@hotmail.com

*/s/ Conghua Yan*
Conghua Yan
2140 E Southlake Blvd, Suite L-439, Southlake, TX 76092
(214) 228-1886 | arnold200@gmail.com
Pro Se

**CERTIFICATE OF SERVICE**

I certify that on April 8, 2026, I filed the foregoing document via the Court's CM/ECF system, which will send notice of electronic filing to all registered CM/ECF

25

users, and that I served all non-registered parties by USPS Certified Mail to their respective service addresses.

*/s/ Samuel Randles*
Samuel Randles
